**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  09CV02858(WDM-BNB)

ILONA KIRZHNER, an individual,

    Plaintiff,

v.

DAVID SILVERSTEIN, an individual
EVERGREEN INDUSTRIES, INC., f/k/a
BREAKTHROUGH MANAGEMENT
GROUP INTERNATIONAL, INC., f/k/a
BREAKTHROUGH MANAGEMENT
GROUP, INC., a Colorado corporation,
DAVID SILVERSTEIN INVESTMENTS,
LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado
limited liability company,

    Defendants.

---

**DEFENDANTS DAVID SILVERSTEIN, DAVID SILVERSTEIN INVESTMENTS, LLC
AND DSI INVESTMENTS, LLC'S MOTION TO DISMISS**

---

Defendants David Silverstein ("Silverstein"), David Silverstein Investments, LLC ("Investments"), and DSI Investments, LLC ("DSI"), through undersigned counsel, move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the first four claims of Ilona Kirzhner's ("Kirzhner") Complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Kirzhner's complaint should be dismissed for three basic reasons: (i) all of her contract-based claims are barred by the contracts' sole remedy clause that limits her available damages to repossession of the stock she sold, (ii) her common law fraud claim is barred by the economic loss rule for she has alleged nothing more than a fraudulent breach of express contractual provisions, and (iii) her fraud claim should be dismissed because she has not and cannot allege that any misrepresentations or omissions of any facts were made to her by anyone.

The Complaint is a thinly veiled attempt to rewrite the "Sole Remedy for Default" clause in a Stock Sale Agreement and accompanying Note concerning Kirzhner's sale of stock to Silverstein. Both contracts provide that Kirzhner's "sole and exclusive remedy for the default or breach of the Agreement shall be for Seller [Kirzhner]… to recover possession of all stock not paid for at the time of default," and it precludes any claim for monetary damages. Kirzhner and her experienced counsel agreed to the inclusion of this sole remedy clause because Silverstein would only enter into the agreements that have already paid her more than $1,300,000 if Silverstein could end his obligation to pay her if, for example, Evergreen Industries, Inc. ("Evergreen")[1] ever later faced financial trouble.

### Key Contractual Provisions

While the facts set forth in this section (other than the express terms of the agreements in question) should <u>not</u> be considered when deciding this Motion, they do provide some telling background on how this case came to be.[2] On September 15, 2004, Kirzhner sold 5,000,000

---

[1] Evergreen was formerly known as Breakthrough Management Group, Inc.
[2] Defendants are only asking this Court to consider the Complaint, the Stock Sale Agreement and the Note when ruling on this Motion.

2

shares of Evergreen's stock (the "Stock") to Silverstein in a Stock Purchase and Sale Agreement ("Stock Sale Agreement") for the sum of $5,000,000 in conjunction with a Promissory Note Secured By Stock Pledge (the "Note"). Section 3.01 of the Stock Sale Agreement provides that the "sole and exclusive remedy for the default or breach of the Agreement shall be for Seller [Kirzhner]… to recover possession of all of the Stock not paid for at the time default is declared." (The Stock Sale Agreement is attached as Exhibit A to this Motion and the Note is attached as Exhibit B.)[3] Section 4 of the Note also provides that Kirzhner's sole remedy shall be to repossess her Stock for any default of any obligation under the Stock Sale Agreement.

Sections 3.01 of the Stock Sale Agreement defines "breach" and "default" as (a) a failure to pay for the Stock, (b) "any assignment of Corporation's [] assets or arrangement for the benefit of creditor(s) of the Corporation," such as a foreclosure sale, and (c) "breach of any other material provision of this Agreement…." Kirzhner even alleges in her Complaint that the Article 9 public foreclosure sale, which is the genesis of her Complaint, was a breach of the Stock Sale Agreement's express covenant of good faith and the company's valuation requirement (both found in § 2.03) – further establishing the applicability of this sole remedy clause.

Evergreen's Financial Crisis

Evergreen entered into multimillion dollar credit facility (the "Senior Loan") with First National Bank of Colorado ("First National"), and a separate multimillion dollar loan agreement

---

[3] When considering a Rule 12(b)(6) motion to dismiss, "courts may consider not only the complaint itself, but also… documents incorporated into the complaint by reference, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007); TMJ Implants, Inc. v. Aetna, Inc., 498 F.3d 1175, 1180 (10th Cir.2007)." Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009). Specifically, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir.2007) (internal quotation omitted); see also Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir.2002).

("the Junior Loan") with another financial institution that was owned by a Nebraska bank (the "Junior Bank").  Defendants Silverstein, Investments, and DSI had no direct or indirect ownership interest in either First National or the Junior Bank.  Kirzhner's Stock Sale Agreement contains no prohibitions against either (i) Evergreen entering into loan agreements or (ii) a Silverstein-owned entity from later purchasing one of those notes from a bank.

Beginning in April 2007, Silverstein was in an undeclared default of the Stock Sale Agreement and Note for failing to timely pay Kirzhner monies owed under those agreements. Evergreen's financial challenges were exacerbated by the global financial crisis, which, in turn, impacted Silverstein's ability to make payments under the Note since Evergreen was his source of income and his personal assets were potentially needed to fund Evergreen.  In a December 2, 2008 email, Silverstein advised Kirzhner that he would not make required payments under the Stock Sale Agreement and Note.  In that December 2, 2008 email, Silverstein told Kirzhner that he expected to receive a default notice from Kirzhner because he did not know when or if Kirzhner would be paid.  Kirzhner has, to date, refused to call default or breach under the agreements.

By June 2009, Evergreen had been in default under both the Senior and Junior Loans for some time, and both First National and the Junior Bank had sent Evergreen default notices.  On June 17, 2009, Silverstein tendered to Kirzhner the 3,670,000 shares of Evergreen Stock that had not yet been paid for by Silverstein.  Silverstein's June 17, 2009 letter explained to Kirzhner that Evergreen was considering filing for bankruptcy, and the letter further explained that Kirzhner needed to take her stock back so that she would be part of Evergreen's decision making process and her rights would best be protected.  Silverstein then flew to Virginia to meet with Kirzhner in

an effort to include her in a meeting of Evergreen shareholders, and while Kirzhner refused to acknowledge her status as a shareholder at that shareholder meeting held in Virginia, she was further advised at the shareholder meeting about the health of the company and the bleak prospects that she would be paid under the Stock Sale Agreement and the Note.

In a letter dated June 19, 2009, Kirzhner advised Silverstein that she had elected to not call default under the Stock Sale Agreement even though payments had not been timely made since 2007, and she returned the stock certificates. Her letter also thanked Silverstein for the transparency he had provided her through his detailed communications on the imminent risk that her collateral was facing.

In August 2009, Evergreen was still faced with threats and pressure from First National and the Junior Bank as a result of Evergreen's ongoing defaults under the two, separate loan agreements. In August 2009, DSI purchased the note from First National, but Silverstein, Investments and DSI could not afford to purchase the note under the Junior Loan. From the date that DSI purchased the Note from First National, contrary to Kirzhner allegations, <u>no additional monies were lent by DSI to Evergreen</u>.

Pursuant to the remedies afforded under the Senior Loan and its accompanying security agreement, DSI properly exercised its legal rights to sell the assets of Evergreen through a UCC Article 9 public sale held on September 24, 2009. The public sale was widely advertised, including through the Wall Street Journal, Denver Post, LA Times, trade publications, and the internet.

On September 2, 2009, more than three weeks before the advertised public sale, Kirzhner sent Silverstein an email wherein she objected to the September 24th Article 9 public sale – an

objection she had no standing to make since she refused to accept her Stock back. But Kirzhner continued to choose to refrain from either calling breach/default under the Stock Sale Agreement, repossessing her Stock so she could have a vote as to whether the company should object to the foreclosure or take actions to stop it (e.g., such as through bankruptcy), or taking any legal action to stop the sale. None of the assets formerly owned by Evergreen were purchased by Silverstein, Investments or DSI. While Kirzhner alleges that her representative formed the personal opinion that the public sale was "sham," her representative was advised at that public sale that no assets would be sold to Kirzhner's representative because an entity had made a multi-million dollar bid for a collection of assets that included the small, relatively worthless pieces of furniture her representative feigned interest in buying. There is simply no basis to support that the UCC Article 9 public sale was anything other than in full compliance with the law.

In a baffling, but presumably tactical, move to avoid this sole remedy clause, Kirzhner has <u>not</u> brought contract claims for Silverstein's admitted breach of failing to pay her millions of dollars under the Note or the Stock Purchase Agreement. Yet, Kirzhner has asked the Court to award her monetary damages "in the amount due and owing to under the Note" for her express and implied breach of contract claims.

Kirzhner's Factual Allegations

Kirzhner has brought the following claims against Silverstein: breach of contract (first claim for relief), breach of an express covenant of good faith and fair dealing (second claim); breach of an implied covenant of good faith and fair dealing (third claim); and common law fraud (fourth claim). (Kirzhner Complaint). Kirzhner also brought a common law fraud claim against

6

Investments and DSI (fourth claim).  (Id.).

In Kirzhner's first express Breach of Contract claim (the first claim), Kirzhner sole basis for the breach of contract claim is that under to Section 2.03 of the Stock Sale Agreement Silverstein covenanted and agreed to maintain the value of Evergreen, as determined by Evergreen's independent auditors, at a value at least equal to the unpaid purchase price of the Stock.  (Id. ¶ 40).  She did not bring a claim for Silverstein's admitted failure to pay her monies owed under the Note or the Stock Purchase Agreement.

Kirzhner's second express breach of contract claim (the second claim) is for a breach of the express covenant of good faith and fair dealing contained in Section 2.03 of the Stock Sale Agreement.  (Complaint ¶ 45).  Kirzhner alleges that Silverstein breached the express covenant of good faith and fair dealing in Section 2.03, as follows:

- "[b]y causing [Evergreen's] assets to become encumbered entirely by DSI," an entity that Silverstein owns through his ownership of Investments.  (Id. ¶ 47) ;

- "by causing DSI to foreclose on the Assets to transfer those Assets to DSI so that [Evergreen] and the Stock would be utterly devalued." (Id.);

- "[b]y causing substantial payments from [Evergreen] to be made to him while he was simultaneously defaulting[4] on his obligations under the Note." (Id. ¶ 48);

- By causing the "devaluation of [Evergreen] and the Stock in order to diminish the likelihood of fulfilling his payment obligations under the Note…." (Complaint ¶ 49); and

- "Engaging in conduct to devalue [Evergreen] and the Stock so Silverstein

---

[4] This is an illustration of the inconsistent position Kirzhner has taken in attempt to circumvent the sole remedy clauses contained in both contracts.  She alleges in paragraph 48 that Silverstein has "default[ed] on his obligations to Kirzhner under the Note…."  But the only obligation under the Note is to make payment, and she did not assert a contract claim for breaching the Note (or the Stock Sale Agreement) for failing to make any payment.  Kirzhner has even refused to call a default under the Note.

7

might diminish the likelihood of fulfilling his payment obligations under the Note….." (Id. ¶ 50).

Kirzhner's alleged breach of the implied covenant of good faith and fair dealing (the third claim) essentially mirrors her breach of the express covenant of good faith and fair dealing claim. (Id. ¶¶ 53-62).

In her Common Law Fraud Claim (the fourth claim), Kirzhner's lone allegation on the conduct that gives rise to her common law claim reveals that her fraud claim is the exact same conduct that she alleges constituted a breach of contract. Specifically, she alleges that Defendants "have been or are engaged in a scheme or artifice to defraud Kirzhner out of the value of the Stock by causing the encumbrance of Assets by DSI or the transfer of the Assets from [Evergreen] to DSI." (Id. ¶ 64). Kirzhner's Complaint does not allege that any misrepresentations or omissions of any fact (material or otherwise) were made. (Complaint). She also did not allege any actual or justifiable reliance on any representation made by any Defendant. (Id.).

## STANDARD OF REVIEW

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." United States v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217 (10th Cir. 2008); see also Ashcroft v. Iqbal, -- U.S. --, 129 S.Ct. 1937, 1949 (2009). Moreover, the Supreme has held:

> "[a] pleading that offers 'labels and conclusions' or a formalistic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

Ashcroft, 129 S.Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)). In short, conclusory allegations are "not entitled to the assumption of the truth." Ashcroft, 129 S.Ct. at 1950.

## ARGUMENT

I. **KIRZHNER HAS FAILED TO STATE A CLAIM FOR AN EXPRESS AND IMPLIED BREACH OF CONTRACT BECAUSE HER SOLE REMEDY IS TO REPOSSESS THE STOCK, WHICH HAS NOT BEEN REQUESTED AS RELIEF.**

Kirzhner's requested prayer for relief for the express and implied breach of contract claims (claims one through three) is for monetary damages: namely, "for damages to be determined at trial in the amount due and owing to her under the Note, plus statutory interest." (Complaint, prayer for relief "a" – "d," pp. 7-8; Id. ¶¶ 52 & 62). Kirzhner has failed to state a claim for breach of contract and/or breach of the express[5] and implied[6] covenants of good faith and fair dealing because her sole remedy under both the Note and the Stock Sale Agreement is to repossess that portion of the Stock that was not paid for by Silverstein – a remedy she has not sought in her Complaint.

Specifically, in Section 3.01 of the Stock Purchase Agreement, "Sole Remedy for Default," Kirzhner agreed that:

---

[5] A claim "for breach of [an] express covenant of good faith and fair dealing is in reality a breach of contract claim." Marsh v. Delta Air Lines, Inc., 952 F.Supp. 1458, 1465 (D. Colo. 1997).

[6] The damages for a breach of implied covenant of good faith and fair dealing claim are limited by a contract's sole remedy clause because it is a contract-based claim. See Gloucester Holding Corp. v. U.S. Tape & Sticky Prod., LLC, 832 A.2d 116, 129 (Del. Ch. 2003) (holding damages for such a claim are limited by a contract's sole remedy clause); see also Colorado Interstate Gas Co. v. Chemco, Inc., 833 P.2d 786, 792 (Colo. Ct. App. 1992) (holding that an implied covenant of good faith claim does not give rise to a claim outside of the contract and damages are limited to those available in contract); Guz v. Bechtel National, Inc., 24 Cal.4th 317, 352-353 (Cal. 2000) (holding in the noninsurance context, the remedy for the breach of implied covenant of good faith and fair dealing "is solely contractual").

> [i]n the event that Buyer is in breach of this Agreement for failing to pay any installment of the Purchase Price (except as is provided in Section 2.05, "Grace Period and Remedies Upon Default"), **or any other default event as defined hereafter**, then Seller's [Kirzhner's] **sole and exclusive remedy for the default or breach of the Agreement** shall be for Seller… **to recover possession** of all of the Stock not paid for at the time the default is declared."

(Stock Sale Agreement, p. 4, attached as Exhibit A) (emphasis added). Likewise, Section 4 of the Note, also entitled "Sole Remedy for Default," provides that:

> [i]n the event that Maker is in breach of this Note for failing to pay any installment payment when due… **or any other default event described or defined in the the [SIC] Purchase Agreement**, then Holder's [Kirzhner's] sole and exclusive remedy for the default or breach of this Promissory Note or the Purchase Agreement shall be for Seller… to recover possession of all of the Stock (as defined in the Purchase Agreement) not paid for at the time the default is declared.

(Note, p. 2, attached as Exhibit B) (emphasis added).

Section 3.01's definition of "breach" and "default" also establishes the applicability of the sole remedy clause. Specifically, "breach and/or default" under the Stock Sale Agreement is defined in Section 3.01 as:

- in subsection "a," as a payment default;
- in subsection "b," any conduct that constitutes a foreclosure sale, such as "assignment of the Corporation's… assets" or an "arrangement for the benefit of any creditor(s);" and
- in subsection "c," "breach of any other material breach of this Agreement," such as Section 2.03's express provisions concerning obligations of good faith and fair dealing and maintaining the value of Evergreen.

Kirzhner and her counsel contractually agreed to expressly assume the risks that the sole remedy clause might bring, such as, that the only collateral securing the payment obligations would become worthless if the company went into "bankruptcy," was the subject of a foreclosure where

10

there is an "assignment of the Corporation's… assets," or there was an "arrangement for the benefit of any creditor(s)".[7] (See Stock Sale Agreement, § 3.01(b)).

Colorado courts have aptly noted that an "unambiguous agreement must be enforced according to its express terms without our creating an ambiguity by torture of its words and phrases." Hawkeye Sec. Ins. Co. v. Woodward, 768 P.2d 1252, 1253 (Colo. Ct. App. 1988) (citing Mid-Century Ins. Co. v. Liljestrand, 620 P.2d 1064, 1067 (Colo. 1980)). Here, Kirzhner's claims fail because she has consistently refused over the last two years to accept her stock back in the face of ongoing, undeclared defaults under agreements and the knowledge that a public foreclosure was scheduled even though that is her sole remedy. Indeed, on June 19, 2009, Kirzhner returned the 3,670,000 shares of Evergreen's stock that had been issued to her and she advised Silverstein and Evergreen that she was still electing to refrain from calling a default.

### A. All of Kirzhner's Express And Implied Breach Of Contract Claims Are A Delineated Default Under The Stock Purchase Agreement That Unambiguously Trigger The Sole Remedy Clause.

The "sole remedy" clauses contained Section 3.01 of the Stock Sale Agreement and Section 4 of the Note covers any event of "default" defined in the Stock Purchase Agreement – not just a failure to pay the purchase price for the Stock. (Stock Sale Agreement, Ex. A) ("[i]n the event that Buyer is in breach of this Agreement for… any other default event as defined hereafter"); (Note, Ex. B) ("[i]n the event that Maker is in breach of this Note for… any other default event described or defined in the the [SIC] Purchase Agreement"). Section 3.01(a) through (c) of the

---

[7] The extreme risk that Kirzhner knowingly accepted when entering into these agreements is further illustrated by the fact that Silverstein had the unilateral ability to refrain from making any payment for a period of 110 days if, for example, the cash needs of the business prevented him from being able to make a payment to her. (Stock Purchase Agreement, § 2.05; Note, § 2).

Stock Sale Agreement provides that a "breach and/or default" shall include: (a) any failure to timely pay the purchase price for the Stock, (b) "any assignment of Corporation's or Buyer assets or arrangement for the benefit of creditor(s) of the Corporation," and (c) any other material breach of the agreement besides a payment default. As a result, Kirzhner's express and implied contract claims (one through three) must be dismissed because she has refused to request her sole contractual remedy: the repossession of her Stock

### B. Kirzhner Has Failed To State A Claim For Express And Implied Breach Of Contract Because She Has Not And Cannot Allege The Condition Precedent That Silverstein Refused To Tender The Stock To Her.

As set forth above, Kirzhner's sole remedy for any express or implied contract claim is the return of the Stock. In order for Kirzhner to properly allege an express or implied contract claim, she must allege the condition precedent that Silverstein has refused to tender the Stock to her, which Silverstein stands willing to tender to her today. As a result of her inability to allege the condition precedent, the first three claims should be dismissed.

### C. Kirzhner Has Failed To State A Claim For Express And Implied Breach Of Contract Because She Has Not Properly Alleged Damages.

Kirzhner's sole, available damage remedy is for the return of her Stock. Kirzhner has failed to plead a breach of contract or a breach of the express and implied covenant of good faith because she has intentionally failed to allege her only available damage remedy: the repossession of the Stock. Thus, her first three claims should be dismissed for failing to properly allege damages.

D.  **Any Claim For Monetary Damages For The Express And Implied Contract Claims Should Be Dismissed.**

Kirzhner's sole requested relief for her express and implied contract claims is for monetary damages. (Complaint, prayer for relief, pp. 7-8). Given that her sole remedy is repossession of the Stock, her claims for monetary damages should be dismissed in her first three claims.

## II. THE COMMON LAW FRAUD CLAIMS ARE BARRED BY THE ECONOMIC LOSS RULE.

Under the economic loss rule, "a party suffering only economic loss from a breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." A.C. Excavating v. Yacht Club Homeowners Ass'n, 114 P.3d 862, 865 (Colo. 2005). When "tort claims are based on duties that are imposed by contract, then contract law provides the remedies for the economic losses." Parr v. Triple L & J Corp., 107 P.3d 1104 (Colo. Ct. App. 2004) (citing BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66 (Colo. 2004)).

Here, Kirzhner's common law fraud claim is nothing more than an allegation of a fraudulent breach of contract, which is barred under the economic loss rule. Specifically, Kirzhner alleged in her Complaint that every alleged fraudulent act also constituted a breach of express contract provisions. The economic loss rule prohibits Kirzhner from bringing a fraud claim based on the following conduct that is covered in the contracts:

(i) Any allegations of the devaluation of Evergreen or the Stock.

Covered in the Contract: Section 2.03 of the Stock Sale Agreement requires the value of Evergreen to be at least equal to the unpaid portion owed under the Note. Kirzhner also averred in paragraphs 47, 49 and 50 of the Complaint that this alleged conduct constituted a breach of Section 2.03 of express covenant of good faith and fair dealing.

   (ii) Any allegations that the assignment of the assets to the purchaser at the September 24th public sale and/or the foreclosure itself harmed her.

   <u>Covered in the Contract:</u>  Section 3.01(b) of the Stock Sale Agreement defines a "default" and "breach" of contract to include any "assignment of the Corporation's [Evergreen's] [] assets". Section 3.01 also defines "breach" and "default" to include any "arrangement for the benefit of the creditor(s) of the Corporation". Kirzhner also averred in paragraph 47 of the Complaint that this alleged conduct constituted a breach of Section 2.03 of express covenant of good faith and fair dealing.

   (iii) Any allegation concerning allowing Evergreen's assets to be encumbered.

   <u>Covered in the Contract:</u>  Kirzhner averred in paragraph 47 of the Complaint that this alleged conduct constituted a breach of Section 2.03 of express covenant of good faith and fair dealing.

   (iv) Any allegation that substantial payments were made by Evergreen to Silverstein while simultaneously defaulting on his obligations to Kirzhner under the Note.

   <u>Covered in the Contract:</u>  Kirzhner averred in paragraph 48 of the Complaint that this alleged conduct constituted a breach of Section 2.03 of express covenant of good faith and fair dealing.

In <u>Parr</u>, the court held that economic loss rule prohibited any tort claims from being premised on refusal to give consent on an assignment of a lease because the duty to refrain from unreasonably withholding consent arose from a contract. 107 P.3d at 1108; <u>see also</u> <u>Hamon Contractors, Inc. v. Carter & Burgess, Inc.</u>, No. 07CA0987, 2009 WL 1152160 (Colo. Ct. App. April 30, 2009) <u>cert.</u> <u>dismissed</u> (Aug.14, 2009) (attached pursuant to Local Rule 7.1(D) as Exhibit C). Likewise, in <u>Hamon</u>, the court recognized the rule "[w]here the alleged fraud arises from duties implicated by a party's performance of contractual terms, the claim is barred by the economic loss rule." 2009 WL 1152160, at *4. The <u>Hamon</u> court recognized that "the parties to a contract can allocate the risk of intentional concealment and misrepresentation in the performance of a contract." <u>Id.</u> As a result, the <u>Hamon</u> court held that the implied covenant of

14

good faith and fair dealing precluded any fraud claims because those claims had "aris[en] out of a party's performance of contractual terms." Id.

The appropriateness of dismissing Kirzhner's fraud claim is even more apparent than in the Hamon case because all of Kirzhner's fraud claims stem from an alleged breach of express contractual provisions (section 2.03 and 3.01(b) of the Stock Sale Agreement). Whereas, in Hamon, the fraud claim in that case was precluded by application of the *implied* covenant of good faith and fair dealing – not express contract terms.

### III.  THE COMMON LAW FRAUD CLAIM SHOULD BE DISMISSED BECAUSE KIRZHNER HAS NOT AND CANNOT PLEAD THE REQUISITE ELEMENTS.

To establish fraud under Colorado law, "the plaintiff must show that the defendant made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff." Coors v. Security Life Ins. Co., 112 P.3d 59, 66 (Colo. 2005) (citation omitted). Here, Kirzhner has failed to plead even a single requisite element of fraud. Instead, her lone averment on the substance of her fraud claim is that "the Silverstein Defendants and BMGI have been or are engaged in a scheme and artifice to defraud Kirzhner out of the value of the Stock by causing the encumbrance of the Assets by DSI or the transfer of the Assets from BMGI to DSI."[8] (Complaint ¶ 64). But a "scheme and artifice to defraud" is not an element of common law fraud.

---

[8] This is the type of conclusory allegation that is "not entitled to the assumption of the truth" and that also does not meet the pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure. Ashcroft, 129 S.Ct. at 1950.

Kirzhner cannot allege that any Defendant made any misrepresentation or omission of any material fact to her.  Indeed, she was even aware of the pending foreclosure sale and had her representative attend.  (Complaint ¶ 25).

### IV. THE FRAUD CLAIM SHOULD BE DISMISSED BECAUSE IT IS NOT PLED WITH PARTICULARITY.

Rule 9(b) of the Federal Rules of Civil Procedure requires fraud to be pled with particularity. Kirzhner's fraud claim should be dismissed because it does not meet this strict pleading standard.

### CONCLUSION

Based on the foregoing, Silverstein, Investments, and DSI respectfully request that this Court dismiss counts one through four.

Respectfully submitted this 8th day of December, 2009.

          PAPPALARDO LAW GROUP, LLC

          *By:  s/ Marc Pappalardo*
          MARC F. PAPPALARDO #35339
          Pappalardo Law Group, LLC
          1921 Corporate Center Circle, 3F
          Longmont, CO 80501
          Telephone 303-250-1507
          Fax: 775-429-4091
          E-mail:  Marcpapp@hotmail.com

          *Attorneys for Defendants* David Silverstein, David Silverstein Investments, LLC, and DSI Investments, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2009, a true and correct copy of the foregoing **DEFENDANTS DAVID SILVERSTEIN, DAVID SILVERSTEIN INVESTMENTS, LLC, AND DSI INVESTMENTS, LLC'S MOTION TO DISMISS** was served electronically, addressed to:

Alan D. Sweetbaum (asweetbaum@fslpc.com)
Charles W. Westby (cwestby@fslpc.com)
Fisher, Sweetbaum, Levin and Sands, P.C.
1125 Seventeenth Street, Suite 2100
Denver, CO 80202
*Attorneys for Ilona Kirzhner*

Daniel Glasser *(dglasser@glasserlawgroup.com)*
Glasser Law Group, LLC
4582 S. Ulster St. Pkwy, Suite 1650
Denver, Colorado 80237
*Attorneys for Evergreen Industries, Inc.*

*s/ Marc Pappalardo*
Marc Pappalardo