**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-02858-CMA-BNB

ILONA KIRZHNER, an individual,

      Plaintiff,

v.

DAVID SILVERSTEIN, an individual,
EVERGREEN INDUSTRIES, INC., f/k/a Breakthrough Management Group
    International, Inc., f/k/a Breakthrough Management Group, Inc., a Colorado
    Corporation,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company, and
DSI INVESTMENTS, LLC, a Colorado limited liability company,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS AND DENYING MOTIONS FOR RULE 11 SANCTIONS**

---

      This matter is before the Court on Motions to Dismiss filed by Defendants David

Silverstein, David Silverstein Investments, LLC and DSI Investments, LLC (the

"Silverstein Defendants") (Doc. #3) and by Defendant Evergreen Industries, Inc., f/k/a

Breakthrough Management Group International, Inc. ("BMGI")[1] (Doc. #7).  This matter is

also before the Court on the Silverstein Defendants' "Motion for Rule 11 Sanctions

Against Plaintiff's [sic] and Plaintiff's Counsel Re: Plaintiff's Contract and Fraud Claims"

---

[1]  Although BMGI is now known as Evergreen, the Court will refer to the entity as BMGI
throughout this Order for simplicity purposes, given that the entity is identified as BMGI in the at-
issue Stock Purchase Agreement and Promissory Note.

(Doc. #26) and BMGI's "Motion for Rule 11 Sanctions Against Plaintiff's [sic] and Plaintiff's Counsel Re: Plaintiff's Accounting Claims." (Doc. #29). For the following reasons, the Defendants' Motions to Dismiss are granted in part and denied in part and their Motions for Sanctions are denied.

## I.   **BACKGROUND**[2]

On November 18, 2009, Plaintiff Ilona Kirzhner filed this action in the District Court, Boulder County, Colorado (Doc. #1-1), and on December 7, 2009, Defendants transferred the action to this Court on the basis of diversity jurisdiction. (Doc. #1).

This matter arises out of a sale of company stocks that went awry due to the purchaser's failure to comply with the terms of the Stock Purchase and Sale Agreement ("Agreement") (Doc. #3, Ex. A) and Promissory Note Secured by Stock Pledge ("Promissory Note") (Doc. #3, Ex. B). Plaintiff contends that the purchaser, Defendant David Silverstein's failure to comply is a result of Defendants' fraudulent conduct and intentional dissipation of BMGI's assets, in an attempt to diminish BMGI's stock value and diminish the likelihood that Silverstein would have to fulfill his obligations under the Agreement and Promissory Note.

As set forth in the Complaint, on September 23, 2004, Plaintiff Kirzhner and Defendant Silverstein[3] executed the Agreement, effective September 15, 2004, in which

---

[2]   Unless otherwise noted, the following facts are taken from the Verified Complaint.

[3]   Silverstein executed the Agreement both individually, as Buyer of the stocks in BMGI from Plaintiff, and on behalf of the Defendant BMGI. (Doc. # 3-1 at 11.)

Kirzhner agreed to sell and Silverstein agreed to purchase 5,000,000 shares of common stock in Defendant BMGI,[4] for $1.00 per share.

Defendant Silverstein paid the purchase price for the stock by executing and delivering to Plaintiff a Promissory Note secured by the stock at issue. (Doc. #3, Ex. A, ¶¶ 2-3). Both the Agreement and the Promissory Note set forth a payment schedule for the purchase price. (Doc. #3, Ex. A at ¶ 2; Ex. B at ¶ 1)). The Agreement also sets forth the following:

> 2.03 Corporation's [BMGI's] Collateralization Requirement. Until Buyer [Silverstein] has paid for all of the Stock in full, the Corporation [BMGI] and Buyer [Silverstein] covenant and agree that **the sum of the following figures shall at least be equal to the then unpaid portion of the Purchase Price**: (i) the valuation of the Corporation [BMGI], as determined by the Corporation's [BMGI's] independent auditors and (ii) the value of any replacement collateral.[5] Acknowledging that the Pledged Stock is the sole security for the Note, the parties both **warrant and covenant to conduct themselves at all times from and after the date of this Agreement**, personally, and in their respective capacities as employees, officers, directors, shareholders, and former shareholders of the Corporation [BMGI], **in the utmost good faith, and to deal with each other and the Corporation [BMGI] fairly and equitably** in all respects."[6]

> 3.01 Sole Remedy for Default. In the event that **Buyer** [Silverstein] is in breach of this Agreement for failing to pay any installment of the Purchase Price..., or any other default event as defined hereafter, then Seller's [Plaintiff's] sole and exclusive remedy for the default or breach of the

---

[4] As stated in the Complaint, Defendant Silverstein is the sole shareholder of Defendant BMGI and the sole owner and member of Defendants Silverstein Investments and DSI.

[5] Plaintiff refers to this provision as the "Maintenance Covenant." This is the only relevant obligation that the Agreement imposes on Defendant BMGI.

[6] Plaintiff refers to this provision as the "Good Faith Requirement."

Agreement shall be for Seller ... to recover possession of all of the Stock not paid for at the time the default is declared ....

    For purposes of this Agreement, the **Buyer** shall be deemed in <u>breach and/or default</u> upon the occurrence of any of the following:

(a)    <u>Non payment</u> of any required installment when due ... and failure to cure such default within seven (7) days of receiving notice in writing to do so;

(b)    Any voluntary or involuntary filing or declaration of <u>Bankruptcy</u> by the Corporation [BMGI] or Buyer or any creditor of Corporation ... any <u>assignment</u> of Corporation's or Buyer **assets or arrangement for the benefit of creditor(s)** of the Corporation or Buyer, unless such proceeding(s) are involuntary and dismissed within one hundred eighty (180) days of commencement or filing;

(c)    **Buyer's breach of any other material provision of this Agreement** except for non-payment, including any warranty, representation, or indemnification of **Buyer** set forth herein, and the occurrence of any event of default described in this Agreement ....

(Doc. # 3, Ex. A at 4-5) (emphasis added).[7]

    On September 14, 2009, Defendant Silverstein Investments gave public notice

via on-line classified advertisements of a "Public Sale/Auction" of BMGI's assets,

including accounts receivable, intellectual property, office equipment, and automobiles.

As stated in the ads, the auction was to take place at BMGI's offices in Longmont,

Colorado, on September 24, 2009. However, on the scheduled day for the auction,

Defendant Silverstein informed a representative of Kirzhner ("Kirzhner's

---

    [7]   The Promissory Note itself states that, in the event of Silverstein's default, Kirzhner's "sole and exclusive remedy" shall be to "recover possession of all of the [stock sold under the Agreement] ... or all of the [s]tock not paid for at the time the default is declared." (Doc. # 3, Ex. B, ¶ 4.)

Representative") that, in actuality, an auction was not scheduled; assets, such as the office furniture, were not for sale; and that the public notices were issued as required by law with respect to a foreclosure of assets. Defendant Silverstein also informed Kirzhner's Representative that he commenced foreclosure proceedings on BMGI's assets because he is a "lender" to BMGI and BMGI had defaulted on its debt obligations to him.

On September 24, 2009, Kirzhner's Representative discovered that Defendant DSI, a subsidiary of Defendant Silverstein Investments, is the senior creditor of all or substantially all of BMGI's assets, that DSI foreclosed on the assets, and that DSI intended to sell the assets at public sale.

Plaintiff contends that Defendant Silverstein has sought to diminish the value of BMGI's stock and its assets in various ways, such as causing BMGI to use its assets as collateral to borrow millions of dollars from DSI and "taking substantial draws out of BMGI without paying Kirzhner his obligations under the Note." (Doc. # 1-1, ¶ 32.) More specifically, Plaintiff contends that "the Silverstein Defendants and BMGI have engaged in a scheme or artifice to defraud Kirzhner by causing a transfer of the [a]ssets from BMGI to DSI, the wholly owned subsidiary of Silverstein Investments, which in turn is wholly owned by Silverstein, with the intent to cause the Stock to become worthless." (*Id.*, ¶ 34).

In light of the above, Plaintiff asserts the following claims: breach of contract against Silverstein and BMGI (Claim 1); breach of express agreement of good faith and

fair dealing by Silverstein (Claim 2); breach of implied covenant of good faith and fair dealing by Silverstein and BMGI (Claim 3); fraud against the Silverstein Defendants and BMGI (Claim 4); and accounting against BMGI (Claim 5).

On December 8, 2009, the Silverstein Defendants filed a Motion to Dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. # 3.) In pertinent part, the Silverstein Defendants contend that Plaintiff's contract claims fail because, pursuant to the Agreement, her sole remedy is to repossess the unpaid for stock.  (*Id.* at 9-13.)  The Silverstein Defendants also contend that Plaintiff fails to state a claim for fraud and, in any event, her fraud claims are barred by the economic loss rule.  (*Id.* at 13-16.)

Plaintiff responded on January 14, 2010.  (Doc. # 18.)  In pertinent part, Plaintiff contends that limiting Plaintiff's remedy to recovery of the stock would render meaningless the Agreement's requirements to act in good faith and to maintain a certain stock value and would leave her without a suitable remedy.  (*Id.* at 12-15.)  Plaintiff also disputes the application of the economic loss rule to her fraud claim.  (*Id.* at 18-26.)  The Silverstein Defendants replied on January 28, 2010.  (Doc. # 22.)

On December 11, 2009, Defendant BMGI filed a Motion to Dismiss, also on 12(b)(6) grounds, which addressed with particularity Plaintiff's fifth claim for relief for an accounting, the only claim brought exclusively against BMGI.  (Doc. # 7.)[8]  Plaintiff

---

[8]  BMGI incorporated by reference the arguments presented in the Silverstein Defendants' Motion to Dismiss, as they relate to Claims 1, 3, and 4.  (Doc. # 7, n.1.)

responded on January 14, 2010 (Doc. # 19) and BMGI replied on February 4, 2010 (Doc. # 24.)

On March 8, 2010, the Silverstein Defendants filed a Motion for Rule 11 Sanctions against Plaintiff and her counsel, in connection with Plaintiff's contract and fraud claims.  (Doc. # 26.)  In pertinent part, the Silverstein Defendants contend that Rule 11 sanctions are warranted because: (1) Plaintiff fails to plead properly her claims and (2) she seeks to apply improperly Article 2 of Colorado's Uniform Commercial Code to the sale of stocks, in defense of her contract claims.  (*Id.* at 5-11.)  Plaintiff responded on April 1, 2010 (Doc. # 34), and the Silverstein Defendants replied on April 19, 2010 (Doc. # 44.)

On March 22, 2010, Defendant BMGI filed a Motion for Rule 11 Sanctions in connection with Plaintiff's fifth claim for an accounting against BMGI.  (Doc. # 29.) BMGI contends that sanctions are appropriate because "an accounting claim can only be brought against a party responsible for making payment" and claims for an accounting are "only appropriate 'if the plaintiff is unable to determine how much, if any, money is due him from another.'" (*Id.* at 4-5.)  BMGI asserts that it is not responsible for making payment and the sum of moneys due to Plaintiff is set forth in the Agreement. (*Id.*)  Plaintiff responded on April 15, 2010 (Doc. # 39) and BMGI replied on May 3, 2010.  (Doc. # 50.)

## II.    STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "'accept[s] all the well-pleaded allegations of the complaint as true'" and "'construe[s] them in the light most favorable to the plaintiff.'"  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).  The Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *The Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that" the alleged claim might have occurred.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citation and quotation marks omitted).  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *The Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.

In evaluating the plausibility of a given claim, the Court "need not accept conclusory allegations" without supporting factual averments.  *S. Disposal, Inc., v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation omitted). Therefore, in this action, the Court may consider the Agreement and Promissory Note, even though they were not attached to the Complaint, but were attached to the Silverstein Defendants' Motion to Dismiss.

III. **ANALYSIS**

A. **BREACH OF EXPRESS CONTRACT CLAIMS (CLAIMS 1 AND 2)**

As noted above, Plaintiff has asserted three breach of contract claims, namely a breach of contract claim against Silverstein and BMGI (Claim 1), a breach of express agreement of good faith and fair dealing by Silverstein (Claim 2), and breach of the implied covenant of good faith and fair dealing by Silverstein and BMGI (Claim 3). The Court notes that the parties have not briefed whether the existence of an express covenant of good faith and fair dealing precludes the application of an implied covenant. Accordingly, the Court does not decide at this time whether the Sole Remedy provision bars Plaintiff's claim for breach of an implied covenant of good faith and fair dealing.

Thus, the following analysis is limited to Plaintiff's breach of express contract claims (Claims 1 and 2).

In pertinent part, Plaintiff contends that Silverstein and BMGI have breached their obligations under the Agreement's Maintenance Covenant and Good Faith Requirement. (*See* Doc. # 1-1, ¶¶ 40-43; Doc. # 3, Ex. A, ¶ 2.03.)

Plaintiff contends that Silverstein and BMGI breached the Agreement in the following ways. First, BMGI has not ensured that the value of its stock, combined with any replacement collateral, equals the sum of the unpaid purchase price under the Promissory Note, and Silverstein, as sole owner of BMGI, has caused BMGI to commit this breach (Claim 1). (Doc. # 1-1, ¶¶ 40-41.) Plaintiff seeks "to recover damages from Silverstein and BMGI in an amount to be determined at trial." (*Id.*, ¶ 43.)

Second, Silverstein has breached the express Good Faith Requirement by:

- (a) "causing BMGI's assets to become encumbered entirely by [Defendant] DSI," a company Silverstein wholly owns;

- (b) "by causing DSI to foreclose on the Assets ... so that BMGI and the Stock would be utterly devalued";

- (c) "by causing substantial payments from BMGI to be made to him while he was simultaneously defaulting on his obligations to [Plaintiff]";

- (d) by "caus[ing] devaluation of BMGI and the Stock in order to diminish the likelihood that [Silverstein] would fulfill his payment obligation[s]"; and

- (e) by "engaging in conduct to devalue BMGI and the [s]tock so Silverstein might diminish the likelihood of fulfilling his payment obligation under the Note while taking substantial sums out of BMGI."

(Claim 2) (*Id.*, ¶¶ 47-50.)  Plaintiff contends that she is entitled to money damages as a result of these breaches.  (*Id.*, ¶ 52.)

Silverstein and BMGI seek dismissal of these contract claims because, they contend, Plaintiff's "sole remedy" is to recover possession of all the stock for which payment has not been made.  (Doc. # 3 at 9-10; Doc. # 7 at 12.)

The parties agree that Colorado law applies to the construction of the contract and neither party contends that the Agreement is ambiguous.  Therefore, it must be enforced according to its express terms.  *See Hawkeye Sec. Ins. Co. v. Woodward*, 768 P.2d 1252, 1253 (Colo. Ct. App. 1988) ("[T]he unambiguous agreement must be enforced according to its express terms without [the court's] creating an ambiguity by torture of its words and phrases.") (citing *Mid-Century Ins. Co. v. Liljestrand*, 620 P.2d 1064, 1067 (Colo. 1980)).

When construing the terms of an agreement, courts must "interpret the agreement in a manner that best effectuates the intent of the parties."  *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003).  To ascertain the parties' intent, courts look to the plain language of the agreement and "enforce the agreement as written ... courts should neither rewrite the agreement nor limit its effect by a strained construction."  *Id.*  Further, the court "will also evaluate the agreement as a whole and construe the language in harmony with the plain and generally accepted meaning of the words employed, unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended."  *Id.*  (internal citations omitted).

The plain language of the Agreement provides that Silverstein, as Buyer, is in breach of the Agreement upon the occurrence of any of the events giving rise to a "breach and/or default" under Paragraph 3.01. Once Silverstein is in breach of the Agreement, the Agreement's Sole Remedy provision applies. However, nowhere does the Agreement state that the Sole Remedy provision applies when **BMGI** breaches the Agreement. Accordingly, contrary to BMGI's contention, the Court finds that the Sole Remedy provision **does not** bar Plaintiff's first and third claims for relief (breach of contract and breach of the implied covenant of good faith and fair dealing) to the extent they are premised on BMGI's conduct.

However, the Court finds that the Sole Remedy provision <u>does</u> bar Plaintiff's claims for breach of contract and breach of express covenant of good faith and fair dealing (Claims 1 and 2) to the extent they are premised on Silverstein's conduct. Without any equivocation, paragraph 3.01 of the Agreement states that "Seller's sole and exclusive remedy for the default or breach of the Agreement shall be for Seller ... to recover possession of all of the Stock not paid for at the time the default is declared." (Doc. # 3-1 at 4.) Quite clearly, then, Plaintiff's only contractual remedy upon a breach by Silverstein is to recover possession of the unpaid for stock.

In opposition to dismissal of her first three claims, Plaintiff contends, "Section 2.03 of the Purchase Agreement amply demonstrates that the parties did not intend that [Defendant Silverstein] should be able to intentionally devalue BMGI and leave Plaintiff with a meaningless sole remedy. In that event, the provisions Plaintiff bargained

12

for...would be swept away." (Doc. # 18 at 13.) Plaintiff further states that the provisions she "bargained for and obtained in the Maintenance Covenant and Good Faith Requirement" were intended to protect against "Silverstein engaging in Contractual Misconduct designed to devalue the Stock." (*Id.* at 12-13.)

Unfortunately, the provisions Plaintiff agreed to limited her remedy for such misconduct. "Where a party enters into a contract absent fraud, duress or incapacity, the courts will not relieve that party of the consequences of the bargain simply because it may have been improvident." *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998). Courts "do not open their doors to those that are suffering merely from their own bad bargains". *Id.* (quoting *Gertner v. Limon Nat'l Bank*, 257 P. 247, 257 (Colo. 1927)).

In the instant case, the very existence of the Maintenance Covenant and Good Faith Requirement underscores Plaintiff's awareness of the possibility that Silverstein might diminish the value of BMGI and/or that he might engage in bad faith. In other words, the alleged conduct and resulting damages were foreseeable. Plaintiff was satisfied to balance that risk with a right to repossess the stock at issue. Unfortunately, Plaintiff's bargain has proven insufficient to mitigate the identified risk. Plaintiff has not alleged that she was induced to enter into this Agreement through fraud, duress, or incapacity. Accordingly, although the end result of Plaintiff's bargain is unfair to her, there is no legal basis pursuant to which the Court can rewrite or restructure the parties' Agreement.

Therefore, for the foregoing reasons, Defendant Silverstein's Motion to Dismiss Plaintiff's claims for contractual relief (Claims 1 and 2) is granted to the extent that those claims are premised on **Silverstein's** conduct.  Defendant Silverstein's Motion is denied to the extent it seeks dismissal of Claim 3 for breach of an implied covenant of good faith and fair dealing.  Defendant BMGI's Motion to Dismiss Plaintiff's claims for contractual relief against BMGI (Claims 1 and 3) is denied.

## B.     FRAUD AGAINST ALL THE DEFENDANTS (CLAIM 4)

The Silverstein Defendants and BMGI seek dismissal of Plaintiff's fraud claim on two grounds: (1) Plaintiff's "common law fraud" claim is barred by the economic loss rule because it is "nothing more than an allegation of a fraudulent breach of contract"; and (2) Plaintiff has failed to plead adequately facts in support of the elements of "common law fraud".  (Doc. # 3 at 13-16; Doc. # 7 at 9-12.)

### 1.     Plaintiff's Fraud Claim

The Court will first address whether Plaintiff has pled adequately her fraud claim. At the outset, the Court notes that Defendants, not Plaintiff, have construed the fourth claim for relief, which is entitled "Fraud against the Silverstein Defendants and BMGI" to be a common law fraud claim.  Upon the Court's review, Plaintiff's fourth claim for relief appears to be akin to a claim for fraudulent conveyance.

In order to state a claim for fraudulent conveyance, a Plaintiff must allege:

(1)     that certain property was conveyed or assigned; and

(2)     the conveyance or assignment was done with an intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands.

COLO. REV. STAT. § 38-10-117 (2009); *see also* COLO. REV. STAT. § 38-8-105(1)

("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor ... if the

debtor made the transfer or incurred the obligation: (a) [w]ith actual intent to hinder,

delay, or defraud any creditor of the debtor ...").

In support of her fraud claim, Plaintiff alleges the following facts, in pertinent part:

(1)     "[T]he Silverstein Defendants and BMGI have been or are engaged in a scheme and artifice to defraud Kirzhner out of the value of the [s]tock by causing the **encumbrance of the assets** by DSI or the **transfer of the [a]ssets** from BMGI to DSI."  (Doc. # 1-1, ¶ 64) (emphasis added).

(2)     "The result of the scheme or artifice to defraud Kirzhner causes her damage by causing devaluation of the [s]tock thereby creating a situation in which **the likelihood of Silverstein fulfilling his payment obligation to Kirzhner** under the [Promissory] Note **is diminished** as a result of the [s]tock becoming worthless."  (*Id.*, ¶ 65) (emphasis added).

Accordingly, the Court finds that Plaintiff has alleged sufficient facts to render plausible

her claim that Defendants have fraudulently conveyed certain assets.

Although Plaintiff has failed to identify with specificity that her claim is one for

fraudulent conveyance or that her claim arises under either section 38-10-117 or section

38-8-105(1) of the Colorado Revised Statute, the Court does not find that these

technical deficiencies warrant a Fed. R. Civ. P. 12(b)(6) dismissal of her fraud claim.

Fed. R. Civ. P. 8(a) only requires "a short and plain statement of the claim showing that

15

the pleader is entitled to relief." "Rule 8(a)(2) does not require a claimant to set forth any legal theory justifying the relief sought on the facts alleged, but does require sufficient factual averments to show that the claimant may be entitled to some relief." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 8.04[3] at 8-40 (3d ed. 2010). Further, Fed. R. Civ. P. 9(b) requires that claims for fraud "state with particularity the circumstances constituting fraud or mistake."

In the instant case, Plaintiff has pled sufficient facts to state a claim to relief for fraudulent conveyance that is plausible on its face and gives Defendants fair notice of their potential liability for fraud and the underlying at-issue conduct so that Defendants may adequately defend against those claims. Plaintiff has pled with particularity the circumstances constituting the fraud (*i.e.*, the fraudulent conveyance), namely the who, what, where, when, and how. Accordingly, Defendants' Motions to Dismiss Plaintiff's fourth claim for fraud for failure to state a claim are denied.

2.    The Economic Loss Rule

The Court will now address whether the economic loss rule bars Plaintiff's fraud claim. "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 865 (Colo. 2005) (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo. 2004)). As the Colorado Supreme Court further explained:

In distinguishing between a tort obligation and a contract obligation, it is essential to discern the source of the party's duty. Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from the duties imposed by law to protect citizens from risk of physical harm or damage to their personal property. Where there exists a duty of care independent of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus falls outside the scope of the economic loss rule.

*Id.* at 865-66 (internal citations omitted).

Colorado courts adopted the economic loss rule to serve three main policy interests:

(1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort.

*Hamon Contractors, Inc. v. Carter & Burgess, Inc. d/b/a Carter and Burgess, Inc.*, 229 P.3d 282, 290 (Colo. Ct. App. 2009) (quoting *BRW*, 99 P.3d at 72).

"The existence and scope of a tort duty is a question of law to be determined by the court. The determination that a duty does or does not exist is 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection.'" *A.C. Excavating*, 114 P.3d at 866 (internal quotations and citations omitted).

In opposition to Defendants' Motions to Dismiss, Plaintiff maintains that Defendants have "a tort duty to her not to engage in any conduct that would cause injury to Plaintiff's property rights, *i.e.*, her security interest in the [s]tock." (Doc. # 18

17

at 20; *see also* Doc. # 19 at 11-12).  The Court agrees that the economic loss rule does not bar Plaintiff's fraud claim.  For the reasons discussed below, the Court finds that Defendants' duty not to convey fraudulently assets is separate and distinct from the negotiated duties set forth in the parties' Agreement.

As noted by the Chancery Court of Delaware, "a specific body of law – the law of fraudulent conveyance – exists precisely to protect creditors."  *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 787 (Del. Ch. 2004) (cited by *Paratransit Risk Retention Group Ins. Co. v. Kamins*, 160 P.3d 307, 319 (Colo. Ct. App. 2007)); *see also N. Am. Catholic Educ. Programming Found., Inc.*, 930 A.2d 92, 101-103 (Del. 2007) (holding that creditors may lodge derivative, not direct, claims for fraudulent conveyance).  The protections offered through the laws of fraudulent conveyance appear to be distinct from the protections available to creditors via negotiated contractual provisions, including express and implied covenants of good faith and fair dealing; bankruptcy law; general commercial law; and other sources of creditor rights, all of which the Chancery Court separately identified as means by which creditors are protected from fiduciaries' fraudulent conduct.  *Id.* at 790; *N. Am. Catholic Educ. Programming Found., Inc.*, 930 A.2d 92, 99 (Del. 2007).

While creditors typically must lodge their claims for payment of outstanding debt against the corporation, they may look to directors or stockholders for payment "in instances of fraud or when other grounds exist to disregard the corporate form."

18

*Prod. Res. Group, L.L.C.*, 863 A.2d at 787.  Additionally, when a firm is insolvent[9] or in a "zone of insolvency," creditors "become the class of constituents with the key claim to the firms' remaining assets."  *Id.* at 790 n.57; *N. Am. Catholic Educ. Programming Found., Inc.*, 930 A.2d at 102, 103.  "[T]he fact of insolvency places the creditors in the shoes normally occupied by the shareholders – that of residual risk-bearers."  *Prod. Res. Group, L.L.C.*, 863 A.2d at 791.  Therefore, "[w]hen a firm has reached the point of insolvency, it is settled that ... the firm's directors ... owe fiduciary duties to the company's creditors."  *Id.* at 790-91.  This fiduciary duty to creditors is justified as follows:

> In insolvency, creditors, as residual claimants to a definitionally-inadequate pool of assets, become exposed to substantial risk as the entity goes forward; poor decisions by management may erode the value of the remaining assets, leaving the corporation with even less capital to satisfy its debts in an ultimate dissolution.  The elimination of the stock holders' interest in the firm and the increased risk to creditors is said to justify imposing fiduciary obligations towards the company's creditors on the directors.

*Id.* at 791.  As with breach of fiduciary duty-related claims brought by stockholders, such claims brought by creditors are derivative[10] and, therefore, the "recovery logically flows to the corporation and benefits the derivative plaintiffs indirectly".  *Id.* at 792.

While the courts in *Production Resources Group* and *N. Am. Catholic Educ. Programming Found., Inc.* apply and discuss Delaware law, the aforementioned

---

[9]  "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."  COLO. REV. STAT. § 38-8-103(1).

[10]  The claims remain derivative, even where the firm becomes insolvent after the alleged breaches of fiduciary duty.  *Id.* at 792.

principles also apply in Colorado. *See Paratransit Risk Retention Group Ins. Co. v. Kamins*, 160 P.3d 307, 319-320 (Colo. Ct. App. 2007) ("Directors of an insolvent corporation are deemed to be trustees for the corporation and for its creditors and, therefore, they owe a fiduciary duty to creditors **not to divest corporate property for personal benefit, to prefer themselves over other creditors, or to defeat a corporate creditor's claim**.") (emphasis added) (internal citation omitted); *In re MS55, Inc.*, No. 06-cv-1233, 2008 WL 2358699, at *3 (D. Colo. June 6, 2008) (unpublished) ("creditors have standing to invoke that [fiduciary] duty and bring a derivative claim against directors on behalf of the debtor corporation in the zone of insolvency to remedy the injuries the creditor suffered as a result of the injuries to the debtor [corporation]"); *Walk-in Med. Ctrs., Inc. v. Breuer Capital Corp.*, 778 F. Supp. 1116, 1125 (D. Colo. 1991) (directors and officers of an insolvent corporation have a fiduciary duty not to favor their own interests over creditors' claims); *Alexander v. Anstine*, 152 P.3d 497, 498 (Colo. 2007) (same); *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1369-70 (Colo. Ct. App. 1993) (similar principle and noting that a fraudulent transferee can be held personally liable for damages resulting from a depreciation in the transferred property's value while in its possession); *see also Miller v. Kaiser*, 433 P.2d 772, 775 (Colo. 1967) ("the remedy sought [in an action for fraudulent conveyance] is to return the property fraudulently conveyed to its prior status of ownership thereby bringing it within reach of the judgment creditor of the fraudulent transferor.").[11]

---

[11]   To the extent that a personal judgment is granted, such judgment would be "limited in amount to the loss in value of the subject property or if the property involved has been

20

Because a director's fiduciary duty to corporate creditors arises only upon insolvency, in order to have standing as a breach of fiduciary duty claimant, a creditor must show either that the corporation was insolvent at the time of the alleged conduct or that the corporation *would become* insolvent as a result of the alleged conduct. *Paratransit Risk Retention Group Ins. Co.*, 160 P.3d at 320 (reversing and remanding trial court dismissal of breach of fiduciary duty claims in light of allegations that the defendant transferred assets to defeat settlement payments for accident claims).

In the instant case, Plaintiff has alleged facts that place her in a creditor position to whom Defendant Silverstein owed a fiduciary duty to avoid fraudulent transfers.[12] Specifically, Plaintiff has alleged that she is owed moneys under the Agreement, for which BMGI's stock serves as collateral; Defendants' fraudulent scheme could cause the stock of BMGI, of which Silverstein is an officer and sole shareholder, to become worthless or, in other words, cause BMGI to become bankrupt; and that the moneys are owed by Silverstein in connection with his unpaid debt and by BMGI for its failure to fulfill its obligations under the Maintenance Covenant. Plaintiff has further alleged that,

_____

completely disposed of and beyond the reach of the court, the judgment will be limited to the full value of the property which would have otherwise been subject to the creditor's claim." *Id*. at 776.

[12] Plaintiff's status as a creditor holds true even though she has not yet obtained a judgment against either BMGI or Silverstein. "As a matter of law, a party has creditor status before the cause of action is reduced to judgment." *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 778 F. Supp. 1116, 1122 (D. Colo. 1991) (citing *Pierce v. United States*, 255 U.S. 398 (1921)). "[T]he right to follow the distributed assets applies not only to those who are creditors in the commercial sense, but to all who hold unsatisfied claims. A corporation cannot by divesting itself of all property leave remediless the holder of a contingent claim, or the obligee of an executory contract or the holder of a claim in tort[.]" *Pierce*, 255 U.S. at 403 (internal citations omitted).

in conducting this scheme, Defendant Silverstein and his company Defendant DSI

favored themselves as creditors over Plaintiff's interests by encumbering, transferring,

or drawing from BMGI's assets.  (*See* Doc. # 1-1, ¶¶ 30, 32, 33.)  Additionally, Plaintiff

has alleged facts that implicate Defendants BMGI, DSI, and Silverstein Investments as

aiders and abettors in the scheme to convey fraudulently BMGI's assets by way of

Silverstein's ownership and use of those corporate defendants to accomplish the

scheme.[13]  Finally, as the Colorado Court of Appeals noted in *New Crawford Valley,*

*Ltd.*, DSI (and/or any other Defendant), as the fraudulent transferee of BMGI's assets,

could be held liable for any depreciation in the value of BMGI's assets while in its

possession.  877 P.2d 1363, 1370; *see also* COLO. REV. STAT. § 38-8-109(3).

Accordingly, based on the foregoing, the Court finds that Plaintiff's fraud claim

arises from a duty that is separate and distinct from the duties set forth in the

Agreement.  Therefore, the economic loss rule does not bar Plaintiff's fourth claim

for relief.

### C.    ACCOUNTING (CLAIM 5)

As set forth in Plaintiff's fifth claim for relief, which is exclusively against BMGI,

Plaintiff seeks "an accounting from BMGI with respect to its [a]ssets as a result of its

breaches of the Agreement and the scheme and artifice to defraud," which consisted of

---

[13]   The elements of aiding and abetting a breach of fiduciary duty are: (1) breach by a
fiduciary duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and
(3) damages.  *Nelson v. Elway*, 971 P.2d 245, 250 (Colo. Ct. App. 1998) (citing to *Holmes v.
Young*, 885 P.2d 305 (Colo. Ct. App. 1994) and RESTATEMENT (SECOND) OF TORTS § 876(b)
(1977) (requiring additional element of a defendant's "substantial assistance to the other in
accomplishing the tortious result").

BMGI's "encumbering and or selling its [a]ssets." (¶¶ 71, 74.)  Plaintiff also states that "an accounting will be necessary to determine the value of the [s]tock and the amount of compensatory damages Plaintiff is entitled to recover from [BMGI]" and "determining the value of [BMGI] requires information to which Plaintiff is not privy and an analysis that accounting professionals will need to undertake."  (*Id.* at 9.)  In sum, Plaintiff seeks an accounting to facilitate an accurate calculation of damages once a breach of contract is found.

BMGI seeks dismissal of Plaintiff's accounting claim for the following five reasons:

(1)  Plaintiff fails to allege that she previously demanded, but was refused, an accounting;

(2)  the amount Plaintiff is owed is clearly set forth in the Agreement and, therefore, an accounting is unnecessary;

(3)  BMGI is not the proper party to Plaintiff's accounting claim because it was not a party to the Note and, therefore, has no payment obligations;

(4)  the accounting claim is barred by the Sole Remedy provision in the Stock Sale Agreement; and

(5)  the accounting claim is an equitable claim that is barred by Plaintiff's legal remedies.

(Doc. # 7 at 5-9.)  For the reasons discussed below, the Court disagrees.

At the outset, the Court notes that an accounting is an extraordinary remedy, which "may be ordered if the plaintiff is unable to determine how much, if any, money is due him or her from another."  *Patterson v. BP Am. Prod.* Co., 159 P.3d 634, 642 (Colo. Ct. App. 2006), *overruled on other grounds by* 159 P.3d 634 (Colo. Ct. App. 2006)

(citing *Andrikopoulos v. Broadmoor Mgmt. Co.,* 670 P.2d 435, 440 (Colo. Ct. App. 1983)

(quoting *Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir. 1972)).

With respect to BMGI's first objection, a prior demand for an accounting that was refused is not a prerequisite for an accounting claim.  "Under Colorado law, a demand for an accounting and a refusal to comply with the demand must be pleaded and proved."  *Postal Instant Press v. Jackson*, 658 F. Supp. 739, 743 (D. Colo. 1987) (citing *Am. Woodmen's Life Ins. Co. v. Supreme Camp of Am. Woodmen*, 549 P.2d 423, 425 (1976)).  However, exceptions to the pre-suit demand requirement apply where a demand would have been futile or preclusion of the accounting claim would be unreasonable.  *See Van Schaack v. Phipps*, 558 P.2d 581 (Colo. Ct. App. 1976) (pre-suit demand would have been futile); *Patterson*, 159 P.3d at 642.

In *Patterson*, the Colorado Court of Appeals determined that preclusion of the accounting claim would have been unreasonable; the complaint concerned an alleged contractual breach for underpayment of royalties and the accounting claim was "ancillary to [the] breach of contract claim because its main purpose is to facilitate an accurate calculation of damages once a breach of contract is found."  159 P.3d at 642.  Further, complex variables impacted the royalty payment calculations and the information needed for the calculations was in the defendant's exclusive control.  *Id.*

Similarly, in the instant case, Plaintiff alleges that BMGI breached the Agreement by engaging in a series of complex transactions that resulted in the encumbrance or transfer of its assets and the ultimate devaluation of its stock.  Plaintiff's accounting

claim "pertains primarily to determination of the value of the [s]tock". (Doc. #19 at 8). As already stated, BMGI had a duty (with Silverstein) to ensure that the combined value of BMGI and the value of any replacement collateral equaled the outstanding balance on the Promissory Note. (Doc. # 3-1, ¶ 2.03.) Plaintiff has alleged that BMGI failed to fulfill this obligation, which was set forth in the Maintenance Covenant. The amount by which BMGI failed to fulfill this obligation is unknown.[14] Accordingly, to facilitate an accurate calculation of the damages stemming from BMGI's breach, Plaintiff needs an accounting of the present value of BMGI. Therefore, preclusion of the accounting claim would be unreasonable.

Turning to BMGI's second objection, the Court disagrees that the Agreement clearly sets forth the amount BMGI owes Plaintiff. As Plaintiff duly recognizes, Silverstein, not BMGI, has a payment obligation under the Promissory Note. (Doc. # 19 at 9.) Plaintiff's contract claims against BMGI are not for non-payment, but for failure to fulfill the Maintenance Covenant. The damages stemming from that breach are not identifiable by Agreement and must be calculated.

Turning to BMGI's third objection, for reasons already discussed, the Court disagrees that BMGI is not a proper party to Plaintiff's accounting claim. Although BMGI has no payment obligations under the Promissory Note, it would owe Plaintiff monetary damages if it is found in breach of the Agreement.

---

[14]   Though not articulated by Plaintiff, one possible theory for damages would be the difference between the amount Silverstein owes on the Promissory Note and the combined value of BMGI and any replacement collateral so designated under the terms of the Agreement.

Finally, BMGI's fourth and fifth objections also fail. As already discussed, Plaintiff's contract claims against BMGI are not barred by the Sole Remedy provision and, therefore, this ancillary accounting claim is not also barred.

Accordingly, based on the foregoing, BMGI's Motion to Dismiss Plaintiff's fifth claim of relief for an accounting is denied.

## IV. DEFENDANTS' MOTIONS FOR RULE 11 SANCTIONS

As noted above, the Silverstein Defendants and BMGI filed separate Motions for the imposition of Rule 11 sanctions against Plaintiff and her counsel. The Silverstein Defendants seek sanctions in connection with Plaintiff's contract and fraud claims. (Doc. # 26.) BMGI seeks sanctions in connection with Plaintiff's accounting claim. (Doc. # 29.)

Pursuant to Fed. R. Civ. P. 11(b), when filing a pleading, written motion, or other paper, an attorney or *pro se* party certifies, in pertinent part, that:

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)     it is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> * * *

Fed. R. Civ. P. 11(b). "The purpose of sanctions under Rule 11 is to deter frivolous litigation and filings. Thus, when a district court determines that a sanction is warranted

for violating Rule 11, the sanction imposed should be the minimum necessary to deter future violations." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 11.20 at 11-41 (3d ed. 2010).

The means for obtaining and imposing sanctions is set forth in Fed. R. Civ. P. 11(c), which states, in pertinent part:

> **(1)** **In General.** If after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court <u>may</u> impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation...
>
> * * *

Fed. R. Civ. P. 11(c) (emphasis added). Sanctions are not mandatory, but are imposed at the Court's discretion. MOORE'S FEDERAL PRACTICE § 11.23[2] at 11-53, 11-54.

The Silverstein Defendants contend that sanctions are appropriate under Rule 11(b)(2) because Plaintiff has asserted allegedly frivolous arguments for the extension, modification, or reversal of existing law or the establishment of new law. The Silverstein Defendants characterize Plaintiff's frivolous arguments as follows:

> (i)     the Court should overturn over 100 years of precedent requiring that fraud claims include allegations of misrepresentation/ concealment and detrimental reliance, and
>
> (ii)    the Colorado legislature intended to pass new legislation where Colo. Rev. Stat. § 4-2-105(1) no longer expressly excludes the sale of stock from the reach of Article 2 of the U.C.C.

(Doc. # 26 at 3.) BMGI contends that Plaintiff's accounting claim is frivolous, because BMGI has no monetary obligations to Plaintiff, and, therefore, sanctions are warranted. (Doc. # 29 at 3-6.)

The Tenth Circuit "has adopted the view that an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions." *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990) (citing *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988)). "A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances." *Id.*

In opposition to Defendants' Motions for Sanctions, Plaintiff contends that sanctions in connection with her fraud claim are inappropriate because Defendants have misconstrued the nature of her claim. (Doc. # 34 at 12.) Plaintiff also contends that sanctions for her contract-related arguments are inappropriate because the arguments at issue are not the "lynchpin of her Contract Claims." (*Id.* at 18.) Finally, Plaintiff contends that sanctions in connection with her accounting claim are inappropriate because her claim does not lack merit – it is ancillary to and supportive of her contract claims against BMGI. (Doc. # 39 at 7.) Having reviewed the Verified Complaint and the arguments presented in Plaintiff's briefs in response to Defendants' Motions to Dismiss, the Court finds that sanctions are not warranted for the following reasons.

As previously noted in the Court's consideration of the Motions to Dismiss, the Court finds that Plaintiff's fraud and accounting claims have merit. In addition, to the extent that Plaintiff has presented arguments requesting a novel interpretation or extension of the law, the Court finds that such arguments were not central to the

defense of her contract claims, but were among various arguments presented of varying merit and strength, which is a common practice among attorneys before this Court.[15]  In addition to the U.C.C. argument, Plaintiff also contended that her contract claims should survive because application of the Sole Remedy would render the Agreement's Maintenance Covenant and Good Faith Requirement meaningless and would leave Plaintiff without a suitable remedy – policy arguments of at least some merit.

Based on the foregoing, the Court does not find that Plaintiff's pleading practices or advocacy amount to sanctionable behavior.  Accordingly, the Silverstein Defendants' and BMGI's Motions for Rule 11 Sanctions (Doc. ## 26 and 29) are denied.

## V.    CONCLUSION

Therefore, based on the foregoing, IT IS ORDERED THAT:

(1)    Defendants David Silverstein, David Silverstein Investments, LLC and DSI Investments, LLC's Motion to Dismiss (Doc. # 3) is GRANTED IN PART AND DENIED IN PART;

(2)    The Motion to Dismiss filed by Defendant Evergreen Industries, Inc., f/k/a Breakthrough Management Group International, Inc. (Doc. # 7) is GRANTED IN PART AND DENIED IN PART;

(3)    Plaintiff's breach of contract claim for damages (Claim 1) is DISMISSED WITH PREJUDICE to the extent it is asserted against Defendant David Silverstein, **but not** dismissed to the extent it is asserted against Defendant BMGI;

(4)    Plaintiff's claim for breach of express agreement of good faith and fair dealing by Silverstein (Claim 2) is DISMISSED WITH PREJUDICE;

---

[15]   The Court does not necessarily condone this practice but does not deem it facially sanctionable conduct in the instant case.

(5)     Defendants David Silverstein, David Silverstein Investments, LLC and DSI Investments, LLC's Motion for Rule 11 Sanctions Against Plaintiff's and Plaintiff's Counsel Re: Plaintiff's Contract and Fraud Claims (Doc. # 26) is DENIED; and

(6)     Defendant Evergreen Industries, Inc.'s Motion for Rule 11 Sanctions Against Plaintiff's and Plaintiff's Counsel Re: Plaintiff's Contract and Fraud Claims (Doc. # 29) is DENIED.

DATED:  July __23__, 2010

                                    BY THE COURT:

                                    _____
                                    CHRISTINE M. ARGUELLO
                                    United States District Judge