## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-cv-2858-CMA-BNB

ILONA KIRZHNER,

      Plaintiff,

v.

DAVID SILVERSTEIN, an Individual,
EVERGREEN INDUSTRIES, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP
INTERNATIONAL, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP, INC., a
Colorado corporation,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company, and
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation
BMGI HOLDINGS, LLC, a Delaware limited liability company

      Defendants.

---

### FIRST AMENDED VERIFIED COMPLAINT

---

      Plaintiff Ilona Kirzhner, by and through her attorneys, Fisher, Sweetbaum, Levin

& Sands, P.C., hereby submits her First Amended Verified Complaint, as follows:

### GENERAL ALLEGATIONS

      1.    Plaintiff is a resident of the Commonwealth of Virginia, whose address is
12108 Walnut Branch Road, Reston, VA 20194.

      2.    Defendant David Silverstein ("Silverstein") is a resident of the State of
Colorado, whose address is 1445 Onyx Circle, Longmont, Colorado.

      3.    Defendant Evergreen Industries, Inc., f/k/a Breakthrough Management
Group International, Inc., f/k/a Breakthrough Management Group, Inc. ("BMGI"), is a
Colorado corporation, whose principal place of business is located at 1921 Corporate
Center Circle, Suite 3F, Longmont, Colorado.  On March 7, 2008, BMGI changed its
name to Breakthrough Management Group International, Inc.  On October 8, 2009,
Breakthrough Management Group International, Inc. changed its name to Evergreen
Industries, Inc.


EXHIBIT
B

4.      Defendant David Silverstein Investments, LLC, ("Silverstein Investments") is a Colorado limited liability company, whose principal place of business is located at 1921 Corporate Center Circle, Suite 3F, Longmont, Colorado. Silverstein Investments was formed on April 15, 2008 by Silverstein.

5.      Defendant DSI Investments, LLC, ("DSI") is a Colorado limited liability company, whose principal place of business is located at 1921 Corporate Center Circle, Suite 3F, Longmont, Colorado. DSI was formed on July 16, 2009 by Silverstein Investments. Where appropriate, Silverstein, Silverstein Investments, and DSI are referenced collectively as the "Silverstein Defendants."

6.      DSI is a wholly owned subsidiary of Silverstein Investments.

7.      Silverstein is the majority shareholder of BMGI, with 10,000,000 shares of Stock. The remaining outstanding shares, 548,523, belong to an employee stock ownership plan.

8.      Upon information and belief, Silverstein is the sole owner and member of Silverstein Investments.

9.      Upon information and belief, Silverstein Investments is the sole owner and member of DSI.

10.     The corporate address for BMGI, Silverstein Investments, and DSI is the same.

11.     BMGI Corporation ("BMGI Corp.") is a Delaware corporation with a principal place of business of 1921 Corporate Center Circle, Suite 3F, Longmont, Colorado.

12.     BMGI Holdings, LLC, ("BMGI Holdings") is a Delaware limited liability company with a principal place of business of 1921 Corporate Center Circle, Suite 3F, Longmont, Colorado.

13.     Venue and jurisdiction are appropriate in this Court based upon diversity of citizenship of the parties, and removal to this Court from Boulder County District Court by the Defendants.

14.     On September 23, 2004, Plaintiff, Silverstein, and BMGI executed a Stock Purchase and Sale Agreement (the "Agreement"), effective September 15, 2004, in which Plaintiff agreed to sell and Silverstein agreed to purchase 5,000,000 shares of BMGI common stock (the "Stock") for $1.00 per share.

15.     Pursuant to the Agreement, Silverstein paid the purchase price for the Stock by executing and delivering to Plaintiff a Promissory Note Secured by Stock Pledge (the "Note"), dated September 15, 2004, payable to Plaintiff in the amount of $5,000,000.00.

2

16. The Note was secured by the Stock.

17. The Note incorporated the entire Agreement.

18. Silverstein is in default of the Note and has been in default for more than a year.

19. Repeated demands have been made on Silverstein for payment of amounts due and owing on the Note and such demands have been refused by Silverstein.

20. Silverstein agreed in Section 2.03 of the Agreement to conduct himself personally, and in his capacity as an employee, officer, director, or shareholder of BMGI, toward Plaintiff and BMGI with the "utmost good faith" and "to deal" with Plaintiff and BMGI "fairly and equitably in all respects" (the "Good Faith Requirement").

21. Section 2.03 of the Agreement further provided that until Silverstein paid for all of the Stock in full, "the Corporation and [Silverstein] covenant and agree that the sum of the following figures shall at least be equal to the then unpaid portion of the Purchase Price: (i) the valuation of the Corporation, as determined by the Corporation's independent auditors and (ii) the value of any replacement collateral." (The "Maintenance Covenant").

22. Section 2.03 of the Agreement was incorporated into the Note.

23. On June 6, 2008, BMGI entered into a Business Loan Agreement with First National Bank of Boulder ("First National Bank"), creating a $2,000,000 line of credit. (The "First Loan"). The First Loan was evidenced by a Promissory Note and collateralized by a first lien against all inventory, chattel paper, accounts, equipment, and general intangibles of BMGI (collectively "the assets").

24. Silverstein and several of his affiliates personally guaranteed the First Loan with First National Bank.

25. On June 9, 2008, BMGI entered into a "mezzanine" Loan Agreement with First Capital Partners, LLC, ("First Capital Partners") creating a $5,000,000 line of credit (the "Mezzanine Loan"). The Mezzanine Loan was evidenced by a Subordinated Promissory Note and secured by a subordinated security interest in the Assets.

26. Silverstein did not personally guaranty the Mezzanine Loan.

27. Silverstein immediately distributed $2,000,000 from the Mezzanine Loan to himself.

28. Beginning May 11, 2009, Silverstein began to explore bankruptcy options concerning BMGI. In June and July, 2008 BMGI held a special meeting of shareholders regarding bankruptcy, and the board of BMGI authorized Silverstein to seek Chapter 7 or 11 bankruptcy protection, if needed.

29.     On July 13, 2009, BMGI declared itself insolvent and resolved that the company should file Chapter 7 or Chapter 11 Bankruptcy as soon as possible.

30.     DSI, created July 16, 2009 with the Colorado Secretary of State, began negotiating with First Capital Partners and First National Bank on or before July 17, 2009 concerning BMGI's debt with those entities.

31.     Silverstein funded DSI using the $2,000,000 distributed from BMGI, from the Mezzanine Loan, to Silverstein.  Rather than using the $2,000,000 to pay off the First Loan, Silverstein distributed the funds to himself to acquire the First Loan through one of his affiliates.

32.     On July 30, 2009, Silverstein - presumably acting for DSI Investments - First National Bank, and First Capital Partners began negotiating a proposed new Intercreditor Agreement.

33.     Silverstein was cautious when negotiating the terms of the Intercreditor Agreement to preclude collusion between his creditors, including Plaintiff.

34.     As of July 31, 2009, BMGI owed First National Bank $1,225,017 on the First Loan.

35.     On August 5, 2009, DSI and First National Bank executed a Loan Sale Purchase Agreement, wherein DSI purchased the First Loan from First National Bank, evidencing all of BMGI's debt to First National Bank, for $943,663.49.

36.     Silverstein attempted to return to Plaintiff 3,670,000 shares of BMGI's Stock, representing the unpaid amount still owing under the Note.  Plaintiff refused to accept the Stock, and returned the stock certificates to Silverstein.

37.     On August 7, 2009, DSI sent a letter to BMGI stating that DSI had acquired the First Loan from First National Bank, and that BMGI continued to be in default on the First Loan.

38.     On August 20, 2009 BMGI employee Gayle Howard was offered the position of CEO of BMGI, a position Ms. Howard declined stating she saw that Silverstein was attempting to create "some independence" to avoid a "conflict of interest."

39.     On August 21, 2009, DSI, through Silverstein, its sole member, sent a Notice of Acceleration letter to BMGI, with a copy to mezzanine lender First Capital Partners, and to the guarantors of the First Loan, excluding Silverstein.

40.     Though Silverstein had originally personally guaranteed the First Loan, he was no longer a personal guarantor of the loan, which was now owned by his affiliate, DSI.

41.     Despite having purchased the First Loan for $943,663.49, DSI called the

4

entire balance of the First Loan, including accrued interest thereon, for a total of $1,200,020.

42.    On August 21, 2009, DSI proposed to acquire all of the collateral for the First Loan, comprised of BMGI's Assets, as full satisfaction of the First Loan.

43.    On September 10 and 11, 2009, Silverstein, through either DSI or BMGI, published notices that a public sale of the Assets was to occur on September 24, 2009.

44.    On September 14, 2009, Silverstein Investments caused an advertisement to be placed in the on-line "Classifieds" of the Los Angeles Times, Wall Street Journal and others, giving public notice of a "Public Sale/Auction of Assets" of BMGI, described as accounts receivable, intellectual property, office equipment, automobiles, and more. (The "Auction"). The advertisements stated that the Auction was to take place at the offices of BMGI in Longmont, Colorado on September 24, 2009.

45.    The Assets were also listed for sale on the web-site of Silverstein Investments.

46.    The value of BMGI and, therefore, the Stock is in large part attributable to the Assets.

47.    Plaintiff's lawyer, Tim Schafer, went to the offices of BMGI in Longmont, Colorado on September 24, 2009 to inquire about purchasing office equipment at the Auction. Silverstein told Mr. Schafer that there really was no Auction and that the Notice was published because that is what "the law requires" with respect to a foreclosure of assets.

48.    The public foreclosure sale of BMGI's Assets by DSI might have extinguished First Capital Partners' subordinated security interest in the Assets, which also secured the Mezzanine Loan.

49.    On September 15, 2009, DSI filed a Declaratory Judgment action against First Capital Partners, seeking a declaration that DSI was entitled to sell BMGI's Assets at a public sale.

50.    DSI further sought damages against First Capital Partners for intentional impairment of a security interest.

51.    On September 17, 2009, DSI dismissed its Complaint against First Capital Partners.

52.    First Capital Partners acquiesced to DSI's foreclosure upon the Assets or transfer of the assets by conveyance in lieu of foreclosure.

53.    BMGI Corporation ("BMGI Corp.") and BMGI Holdings, LLC ("BMGI Holdings") were formed in Delaware on September 4, 2009.

54.    Those two new Delaware entities were formed with a name very similar to the name of the Colorado entity, BMGI, which had generated namesake and goodwill in the Six Sigma industry so that BMGI Corp. could continue to use, unchanged, substantially all the assets of BMGI, including websites and advertising.

55.    Pursuant to its Amendment to Articles of Incorporation, BMGI Corp. has 20,000 shares of stock.

56.    The BMGI Corp. and BMGI Holdings entities were formed while Silverstein, through DSI, was arranging the acquisition by DSI of the entirety of BMGI's Assets.

57.    BMGI Corp. has the same, or substantially the same, principals and officers as BMGI, Inc.

58.    The Public Foreclosure Sale, advertised for September 24, 2009, did not occur.

59.    BMGI executed a Deed in Lieu of Foreclosure with regard to the Assets.

60.    Except as set forth below, DSI sold substantially all of BMGI's assets to BMGI Corp. for $5,700,000.

61.    DSI sold BMG Taiwan and BMG China to BMG Holdings for $10,000.

62.    DSI obtained the funding to acquire the Assets from money distributed to Silverstein by BMGI.  BMGI obtained the funds it paid to Silverstein from loan proceeds from the Mezzanine Loan made to BMGI by First Capital Partners.  This transfer of funds depleted the Assets that had belonged to BMGI and were subsequently transferred to BMGI Corp.

63.    On October 5, 2009 at 2:07 pm DSI recorded a UCC-1 Financing Statement against all or substantially all of the assets of the newly created BMGI Corp.

64.    On October 5, 2009 at 2:12 pm First Capital Partners recorded a UCC Financing Statement against the assets of the newly created BMGI Corp.

65.    BMGI Corp.'s assets were encumbered by substantially the same debt structure previously encumbering BMGI's assets, but with DSI as primary lender and First Capital Partners as mezzanine lender.

66.    Upon completion of this series of transactions, BMGI's Stock was worthless.

67.    Silverstein and DSI had taken and used BMGI's funds to effect this scheme to the benefit of Silverstein and to the detriment of Plaintiff.

68.    Silverstein caused BMGI to breach its Maintenance Covenant to Plaintiff

6

contained in the Agreement.

69. On October 8, 2009 BMGI changed its name to Evergreen Industries, Inc.

70. BMGI Corp. now carries on BMGI's business within the Six Sigma Industry, using the same website, marketing and advertising materials, and name as BMGI, but free and clear of BMGI's obligation to Plaintiff.

71. No Defendant has offered Plaintiff, in writing, a security interest in BMGI Corp.'s 20,000 shares of stock. Silverstein, in his deposition on November 16, 2010, stated that Plaintiff has a security interest in BMGI Corp.'s stock by nature of successor liability.

72. The stock and assets of BMGI Corp. are distinct and different from the Stock and Assets of BMGI.

## FIRST CLAIM FOR RELIEF
(Breach of Contract against BMGI)

73. Plaintiff incorporates the foregoing paragraphs of this Amended Verified Complaint as if set forth in full herein.

74. Plaintiff and BMGI entered into the Agreement on September 23, 2004.

75. Pursuant to Section 2.03 of the Agreement BMGI covenanted and agreed that the sum of the value of BMGI, as determined by BMGI's independent auditors, and the value of any replacement collateral would be at least equal to the unpaid purchase price of the Stock.

76. Upon information and belief, BMGI has not maintained the value of BMGI and any replacement collateral at a value at least equal to the unpaid purchase price of the Stock as required by the Maintenance Covenant and is in breach of that Covenant.

77. Plaintiff has suffered damages as a result of BMGI's breach of the Maintenance Covenant.

78. Plaintiff is entitled to recover damages from BMGI in an amount to be determined at trial for its breach of the Maintenance Covenants.

## SECOND CLAIM FOR RELIEF
(Breach of the Implied Covenant of Good Faith and Fair Dealing by Silverstein and BMGI)

79. Plaintiff incorporates the foregoing Paragraphs of this Amended Verified Complaint as if set forth in full herein.

80. The law implies a covenant of good faith and fair dealing in every contract, including the Note and the Agreement.

7

81.     Silverstein has breached the implied covenant of good faith and fair dealing in the Note and the Agreement by causing BMGI's assets to become encumbered entirely by DSI, a wholly owned subsidiary of Silverstein Investments that is wholly owned by Silverstein, and by causing DSI to foreclose on the Assets to transfer those Assets to DSI so that BMGI and the Stock would be utterly devalued.

82.     Silverstein has also violated the implied covenant of good faith and fair dealing in the Note and the Agreement by causing substantial payments from BMGI to be made to him while defaulting on his obligations to Plaintiff under the Note.

83.     BMGI has breached the implied covenant of good faith and fair dealing in the Agreement by allowing the value of BMGI to become less than the unpaid purchase price of the Stock by allowing its Assets to be encumbered by DSI.

84.     BMGI's conduct in not maintaining its own value as required by Section 2.03 of the Agreement and causing the Stock to become worthless diminishes the likelihood that Silverstein will fulfill his payment obligation to Plaintiff under the Note.

85.     Silverstein and BMGI have in fact caused devaluation of BMGI and the Stock.

86.     Engaging in conduct to devalue the Stock so that the likelihood of Silverstein fulfilling his payment obligations under the Note may be diminished and Silverstein's failure to make payments under the Note while taking substantial sums out of BMGI both constitute breaches of the implied covenant of good faith and fair dealing in the Note and the Agreement.

87.     Silverstein's and BMGI's breaches of the implied covenant of good faith and fair dealing in the Note and the Agreement have caused Plaintiff damages.

88.     Plaintiff is entitled to money damages from Silverstein and BMGI to be determined at trial as a result of his breaches of the implied covenant of good faith and fair dealing in the Note and the Agreement in the amount Silverstein owes Plaintiff under the Note.

### THIRD CLAIM FOR RELIEF
(Artifice or Scheme of Fraud against Silverstein, Silverstein Investments, DSI, BMGI, BMGI Corp., and BMGI Holdings)

89.     Plaintiff incorporates the foregoing Paragraphs of this Amended Verified Complaint as if set forth in full herein.

90.     The Auction, the Web-Site, Silverstein's representations to Mr. Schafer, Silverstein's attempt to get Plaintiff to take back her Stock in BMGI, and the ownership relationships between and among the Silverstein Defendants and BMGI reveal that the Silverstein Defendants, BMGI, BMGI Corp. and BMGI Holdings, LLC have been or are engaged in a scheme and artifice to defraud Plaintiff out of the value of the Stock by causing the encumbrance of the Assets by DSI and the subsequent transfers of the

Assets from BMGI to DSI, and from DSI to BGMI Corp. and BMGI Holdings.

91.    The result of the scheme or artifice to defraud Plaintiff causes her damage by causing devaluation of the Stock thereby creating a situation in which the likelihood of payment to Plaintiff under the Note is diminished as a result of the Stock becoming worthless.

92.    Plaintiff has suffered damages by the Silverstein Defendants', BMGI's, BMGI Corp.s' and BMGI Holdings' scheme or artifice to defraud her through the devaluation of the Stock.

93.    Plaintiff is entitled to recover damages from the Defendants in the amount due and owing to her on the Note in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty against Silverstein)

94.    Plaintiff incorporates the foregoing Paragraphs of this Amended Verified Complaint as if set forth in full herein.

95.    At all times material to this Amended Verified Complaint, BMGI was insolvent.

96.    Directors of an insolvent corporation are deemed to be trustees for the corporation and for its creditors, and therefore, they owe a duty to creditors not to divest corporate property for personal benefit, to prefer themselves over creditors, or to defeat a corporate creditor's claim.   This duty includes that Silverstein not utilize cash distributed to him by BMGI to cause or make payments, directly or indirectly, to himself or to another corporation in which Silverstein was the primary or sole shareholder, defeating Plaintiff's claims.

97.    Plaintiff has a collateral interest in the Stock of BMGI and is therefore a creditor of BMGI.

98.    Silverstein is a director of BMGI.

99.    Silverstein owed Plaintiff a duty to not himself, or cause BGMI to, transfer corporate property for his own benefit to defeat Plaintiff's claims.

100.    Plaintiff has standing to assert a claim against Silverstein for breach of a fiduciary duty owed to Plaintiff if BMGI was insolvent or, as a result of distributions made by BMGI, it would become insolvent.

101.    BMGI was insolvent beginning in at least May 2009.   Plaintiff was a creditor of BMGI during the period of BMGI's insolvency.

102.    Silverstein, as an officer or director of the insolvent corporation, owed a fiduciary duty to Plaintiff to not utilize cash distributed to him by BMGI to cause or make

payments, directly or indirectly, to himself or to another corporation in which Silverstein was the primary or sole shareholder, defeating Plaintiff's claims.

103.   As set forth herein, Silverstein set up a network of closely held entities, transferring the assets of BMGI to DSI, and then from DSI to BMGI Corp., for his own personal benefit in eliminating his personal guaranty obligations on the First Loan, for the purpose of benefiting himself by taking and making money in the transfers, and for the purpose of defeating Plaintiff's claim against BMGI.

104.   Silverstein breached his fiduciary duties to Plaintiff.

105.   Plaintiff has been damaged, in an amount to be proven at trial, from Silverstein's breach of his fiduciary duty to Plaintiff.

## FIFTH CLAIM FOR RELIEF
### (Fraudulent Transfer Against All Defendants)

106.   Plaintiff incorporates the foregoing Paragraphs of this Amended Verified Complaint as if set forth in full herein.

107.   The Colorado Uniform Transfer Act, at COLO. REV. STAT. § 38-8-105 provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer of incurred the obligation:
  (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
  (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
    (I) Was engaged or was about to engage in a business transaction for which the remaining assets of the debtor wee unreasonably small in relation to the business or transaction; or
    (II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
(2) In determining the actual intent under paragraph (a) of subsection (1) of this section, consideration may be given, among other factors, to whether:
  (a) The transfer or obligation was to an insider;
  (b) The debtor retained possession or control of the property transferred after the transfer;
  (c) The transfer or obligation was disclosed or concealed;
              ***
  (e) The transfer was of substantially all the debtor's assets;
              ***

(g) The debtor removed or concealed assets;

***

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred

***

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

108.   The Colorado Uniform Transfer Act, at COLO. REV. STAT. § 38-8-108 provides the following remedies:

(1) In an action for relief against a transfer or obligation under the article, a creditor, subject to the limitations in section 38-8-109, may obtain:
   (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
   (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Colorado rules of civil procedure;

***

(2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

109.   Transferees of fraudulent conveyances are subject to the remedies provided by the Colorado Uniform Fraudulent Transfer Act, and are appropriate parties defendant in fraudulent transfer actions.

110.   Plaintiff is a "creditor" of BMGI and Silverstein under the Colorado Uniform Fraudulent Transfer Act as of the date BMGI or Silverstein breached their obligations under the Agreement.

111.   As a creditor of Defendants BMGI and Silverstein, Plaintiff has grounds to assert that the Defendants fraudulently transferred assets with the actual intent to hinder, delay, or defraud Plaintiff.

112.   This collusive transfer in lieu of foreclosure is a fraudulent transfer under the Colorado Uniform Fraudulent Transfer Act.

113.   As set forth in the foregoing sections, Silverstein engaged in a course of conduct, through his various entities, to transfer the Assets of BMGI, Inc. to BMGI Corp. and BMGI Holdings, using DSI and Silverstein Investments, LLC, as the intermediary.

114.   Defendant DSI is a transferee of the assets of BMGI.

115.   Defendant Silverstein Investments, LLC is a transferee of the assets of BMGI.

116.   Defendant BMGI Corp. is a transferee of the assets of BMGI.

117. Defendant BMGI Holdings is a transferee of the assets of BMGI.

118. Plaintiff has been damaged, in an amount to be proven a trial, by the Defendants' fraudulent transfer and conveyance of BMGI's assets.

## SIXTH CLAIM FOR RELIEF
(Conspiracy Against All Defendants)

119. Plaintiff incorporates the foregoing Paragraphs of this Amended Verified Complaint as if set forth in full herein.

120. Each Defendant agreed to work together with the other Defendants to convey BMGI's Assets to BMGI Corp. and BMGI Holdings to defeat Plaintiff's claim against BMGI's Stock.

121. As set forth in the foregoing sections, Defendants BMGI, Silverstein, DSI, and Silverstein Investments, together with BMGI Corp. and BMGI Holdings colluded and conspired to transfer the Assets of BMGI to BMGI Corp. and BMGI Holdings specifically to avoid BMGI's obligation to Plaintiff, and to devalue Plaintiff's corresponding collateralized interest in BMGI's Stock.

122. Plaintiff has been damaged because she no longer has an interest in valuable collateral and Silverstein continues to owe considerable sums on the Purchase Agreement and Note.

123. Plaintiff has suffered additional damages, in an amount to be proven at trial, arising from the Defendants' conspiracy to defeat her claim and interest in BMGI's Stock.

## SEVENTH CLAIM FOR RELIEF
(Joint and Several Liability for Action in Concert Against All Defendants)

124. Plaintiff incorporates the foregoing Paragraphs of this Amended Verified Complaint as if set forth in full herein.

125. Pursuant to COLO. REV. STAT. § 13-21-111.5(4), joint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act.

126. If two or more persons expressly or impliedly agree on a course of conduct they are jointly liable for any damages flowing from that conduct.

127. As set forth in the foregoing sections, Defendants BMGI, Silverstein, DSI, and Silverstein Investments, together with BMGI Corp. and BMGI Holdings acted in concert to transfer the assets of BMGI, Inc. to BMGI Corp. and BMGI Holdings specifically to avoid Silverstein's and BMGI's obligations to Plaintiff, and Plaintiff's corresponding collateralized interest in BMGI's Stock.

128.   Plaintiff has been damaged because, as a result of such action in concert, the value of her security interest in the Stock has been substantially diminished and Silverstein continues to owe considerable sums on the Purchase Agreement and Note.

129.   Plaintiff has suffered additional damages, in an amount to be proven at trial, arising from the Defendants' action in concert to defeat her claims against Silverstein and BMGI.

## EIGHTH CLAIM FOR RELIEF
(Aiding and Abetting Breach of Fiduciary Duty Against BMGI, DSI, Silverstein Investments, BMGI Corp., BMGI Holdings)

130.   Plaintiff incorporates the foregoing Paragraphs of this Amended Verified Complaint as if set forth in full herein.

131.   A party aids and abets a breach of fiduciary duty when such party knowingly participates in the breach, causing damage to a third-party.

132.   As set forth in the foregoing sections, Defendants BMGI, Silverstein, DSI, and Silverstein Investments, together with BMGI Corp. and BMGI Holdings acted in concert to transfer the assets of BMGI, Inc. to BMGI Corp. and BMGI Holdings specifically to avoid Silverstein's and BMGI's obligations to Plaintiff, and to devalue Plaintiff's corresponding collateralized interest in BMGI's Stock.

133.   Each Defendant worked with, aided, and abetted Silverstein in breaching his fiduciary duty to Plaintiff by cooperating with his scheme to transfer corporate property for his own benefit to defeat Plaintiff's claim, or in making payments to another corporation in which Silverstein was a sole or primary shareholder to defeat Plaintiff's claims.

134.   Plaintiff has been damaged because the value of her security interest in the Stock has been substantially diminished and Silverstein continues to owe considerable sums on the Purchase Agreement and Note.

135.   Plaintiff has suffered additional damages, in an amount to be proven at trial, arising from the Defendants' action aiding and abetting Silverstein in breaching his fiduciary duty to Plaintiff.

## NINTH CLAIM FOR RELIEF
(Accounting against BMGI)

136.   Plaintiff incorporates the foregoing Paragraphs of this Amended Verified Complaint as if set forth in full herein.

137.   The Note is secured by the Stock.

138.   Upon information and belief, BMGI has engaged in conduct of encumbering and or selling its Assets.  BMGI's value and, therefore, the value of its

Stock is intertwined with its Assets.  Pursuant to Section 2.03 of the Agreement, BMGI covenanted and agreed to keep its value and the value of any substitute collateral at least equal to the unpaid purchase price of the Stock.

139.   Upon information and belief, BMGI has failed to abide by its covenants and agreements in Section 2.03 of the Agreement.

140.   Plaintiff has a beneficial interest in the Stock.

141.   Plaintiff is entitled to an accounting from BMGI with respect to its Assets as a result of its breaches of the Agreement, the scheme and artifice to defraud, and the other wrongdoings of the Defendants alleged above.

WHEREFORE, Plaintiff requests judgment in her favor as follows:

a.  Against Silverstein and BMGI for damages to be determined at trial in the amount due and owing to her under the Note, plus statutory interest.

b.  Against Silverstein and BMGI for damages to be determined at trial for their breaches of the Agreement, plus statutory interest.

c.  Against DSI, Silverstein Investments, BMGI Corp., and BMGI Holdings for damages to be determined at trial for their participation in Silverstein's fraudulent transfer scheme, conspiracy with Silverstein to defeat, hinder, or delay Plaintiff's claims, and action in concert to the detriment and damage of Plaintiff.

d.  Against Silverstein for damages to be determined at trial from his breach of fiduciary duty.

e.  Against DSI, Silverstein Investments, BMGI Corp., BMGI Holdings for damages to be determined at trial for aiding and abetting Silverstein's breach of fiduciary duty.

f.  Against Silverstein and BMGI for Plaintiff's costs, attorney fees, and expert witness fees.

g.  Against BMGI in the form of an Order requiring BMGI to undertake an accounting of its Assets and the value of its common stock for the benefit of Plaintiff.

h.  Further relief as this Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated:  December 10, 2010.

Respectfully submitted,

**SWEETBAUM, LEVIN & SANDS, P.C.**

*s/Thomas L. DeVine, Jr.*
Thomas L. DeVine, Jr., Esq.



## VERIFICATION OF FACTUAL ALLEGATIONS

STATE OF  Virginia                          )

                                            )

CITY AND COUNTY  Fairfax                    )

I, Ilona Plaintiff, hereby certify under oath that the within factual allegations in this Verified Complaint are true and correct to my best knowledge and belief.

_____

Ilona Kirzhner

Subscribed under oath before me this ___9th___ day of December, 2010.

_____

Notary Public

My commission expires:  March 31, 2011

VANESSA L. QUIROGA
COMMONWEALTH
ID# 338436
OF VIRGINIA
NOTARY PUBLIC

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2010, a true and correct copy of the foregoing **FIRST AMENDED VERIFIED COMPLAINT** was served electronically, to:

Marc F. Pappalardo, Esq.
Pappalardo Law Group, LLC
1921 Corporate Center Circle, 3F
Longmont, CO 80501

Daniel W. Glasser, Esq.
Glasser Law Group, LLC
4582 S. Ulster Street Parkway, Suite 1650
Denver, CO 80237

_____
Thomas L. DeVine, Jr.