## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09CV02858 CMA-BNB

ILONA KIRZHNER, an individual

    Plaintiff/Counterdefendant,

v.

DAVID SILVERSTEIN, an individual
EVERGREEN INDUSTRIES, INC., f/k/a
BREAKTHROUGH MANAGEMENT
GROUP INTERNATIONAL, INC., f/k/a
BREAKTHROUGH MANAGEMENT
GROUP, INC., a Colorado corporation
DAVID SILVERSTEIN INVESTMENTS,
LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado
limited liability company;
BMGI CORPORATION, a Delaware
corporation;
BMGI HOLDINGS LLC, a Delaware limited
liability
company,

    Defendants.

v.

DAVID SILVERSTEIN, an individual
EVERGREEN INDUSTRIES, INC., a
Colorado corporation,

Counterclaimants

---

**DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER CONCERNING
ILLEGAL RECORDINGS AND REQUEST FOR EVIDENTIARY HEARING**

Defendants, David Silverstein, Evergreen Industries, Inc. ("BMGI Inc."), David Silverstein

Investments, LLC, BMGI Corporation ("BMGI Corp."), BMGI Holdings LLC, and DSI Investments, LLC (collectively, "Defendants") hereby move pursuant to Fed. R. Civ. P. 26(c) for a protective order precluding any direct or indirect use of three illegally recorded telephone conversations that Defendant Ilona Kirzhner ("Kirzhner") made. Specifically, Kirzhner illegally recorded three telephone conversations that she had with a former BMGI Inc./BMGI Corp. employee, David Mansfield ("Mansfield"), in violation of 18 U.S.C. § 2511(2)(d), Md. Cts. & Jud. Proc. § 10-402, and 18 Pa. Cons. Stat. Ann. § 5703. This Motion seeks to preclude any use of the illegal recordings in this case, including, but not limited to, precluding any direct or indirect use during David Mansfield's April 6, 2011 deposition, any future deposition of any witness, and at trial. To the extent that the Court determines that the record is insufficient to establish propriety of granting the requested order, Defendants request an evidentiary hearing where Kirzhner will testify.

## CERTIFICATION REGARDING CONFERRING

Pursuant to Federal Rule of Civil Procedure 26(c)(1) and D.C.COLO.CivR 7.1(A), undersigned counsel certify that they have conferred in good faith with opposing counsel in an effort to resolve the dispute concerning the use of an illegal recording of a conversation with former BMGI Inc. and BMGI Corp. employee David Mansfield. Specifically, undersigned counsel have conferred in person requesting that Kirzhner's counsel refrain from using the illegally recorded conversation and have advised Kirzhner's counsel that the recording violates various Federal and state laws. Further, undersigned counsel corresponded with Kirzhner's counsel via email in January 2011 and March 2011 wherein Kirzhner's counsel's refused to refrain from using the illegally recorded conversation. (Copies of the Defendants' counsel

emails dated January 21st and 31st 2011 to the Sweetbaum firm as Exhibits A;  The Sweetbaum firm's email dated March 2, 2011 is attached as Exhibit B.)

## Factual Background

From the moment she learned that a Silverstein was trying to restructure the company's debt and avoid bankruptcy, Kirzhner has been on a mission to find a way to circumvent the Stock Purchase Agreement sole remedy clause so that she can find someone to sue for monetary damages.  Indeed, before the senior lender could even complete the Article 9 sale, Kirzhner had already retained Sweetbaum, Levine & Sands to assist in the witch hunt.  And on September 24, 2009, Kirzhner's other lawyer, Timothy J. Schafer ("Schafer"), was sent out to attend the auction and gather additional information.  During his undercover trip to BMGI, Inc.'s offices, Schafer posed as a furniture dealer and met personally with Silverstein.  Schafer, however, lied about the fact that he was Kirzhner's counsel and there for the purpose of uncovering facts for the Sweetbaum firm.  Schafer was told that BMGI, Inc. would only all of the assets in bulk – not sell a few lots of furniture – and, on that basis, Schafer concluded that the entire auction was a "sham."  As soon as he returned to his office, Schafer sent an email to Sweetbaum and Kirzhner updating them on the success of his undercover mission.

Not long after filing this case, the Sweetbaum firm set out to complete Schafer's aggressive fact-gathering mission.  The Sweetbaum firm participated in numerous conference calls among Kirzhner and former BMGI, Inc. employees that they knew were bound by written confidentiality agreements because (i) Kirzhner had signed some of the confidentiality agreements on behalf of BMGI Inc. when she was its Chief Operating Officer, (iii) because she knew it was the company's policy to require every employee to sign such an agreement, and (iii)

the Sweetbaum firm requested a copy of the agreement from at least one of the former employees. And as Kirzhner's trial counsel, it appears that the Sweetbaum firm was actively engaged in coordinating this effort to interview former employees.

As with Schafer's surreptitious interview of Silverstein, Defendants were not aware of the extensive interviews that Kirzhner and the Sweetbaum firm were conducting of people that were still bound by written confidentiality agreements with the company. But Defendants served Plaintiff with written discovery aimed at obtaining any written or recorded record of Schafer's site-visit in September 2009. To Defendants' surprise, the response to that written discovery request revealed that Kirzhner had secretly recorded a series of three consecutive telephone conversations with Mansfield, BMGI Inc.'s former Chief Financial Officer and had an interviewed a number of other former employees that were still bound by confidentiality agreements. Those recordings are a combined, approximate one hour and fourteen minutes in length.

Kirzhner made the Mansfield recordings in 2010 while Mansfield was on a train from Philadelphia to Baltimore, and the recordings continued after Mansfield arrived in Baltimore. (Affidavit of David Mansfield ("Mansfield Aff."), ¶ 5, attached as Exhibit C.) The majority of the conversations occurred when Mansfield was in Maryland. Mansfield told Kirzhner during the initial call that he was on a train in Philadelphia, Pennsylvania on his way to Baltimore, Maryland. (Id., ¶ 6.) Mansfield also advised Kirzhner during the call that he had arrived in Baltimore, Maryland. (Id., ¶ 7.) It appears that Mansfield's cellular phone dropped the call twice, and Kirzhner called Mansfield back shortly after each of the two dropped calls (for a total of three calls). It appears that Kirzhner either did not record the entirety of the initial phone call,

4

or if she did the entire recording was not produced, for the recording starts in mid-conversation.

Mansfield never consented to being recorded in any of the telephone calls. (Id., ¶ 8.) Kirzhner admitted in her November 15, 2010 deposition that Mansfield never consented to being recorded.

Defendants' counsel believes that they are legally prohibited from disclosing the contents of Kirzhner's illegal recording because the applicable statutes criminalize any use or disclosure of such evidence. And courts have interpreted these laws to preclude counsels' the use of illegal recordings in court cases. See e.g., United States v. Wuliger, 981 F.2d 1497 (6th Cir. 1992). Accordingly, Defendants will not address the contents of the illegally recorded conversations.

## Argument

### I. IT IS ILLEGAL UNDER FEDERAL AND APPLICABLE STATE LAW TO USE, DISCLOSE, OR ENDEAVOR TO USE OR DISCLOSE THE ILLEGAL MANSFIELD RECORDINGS.

A. The Use Of Mansfield Recordings Violate The Federal Wiretap Statute Because The Recording Were Done With The Purpose To Commit A Crime Or Tort.

It is a violation of the federal Wiretap Act for any person who:

(a) **intentionally intercepts**, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

\*\*\*

(c) intentionally discloses, or **endeavors to disclose**, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or **endeavors to use**, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

5

18 U.S.C. § 2510 (emphasis added). The federal Wiretap Act contains a one-party consent defense that is only applicable in a limited situation, which is not present in this case. Specifically, the federal Wiretap Act provides that "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception **unless such communication is intercepted for the purpose of committing any criminal or tortious act.**" 18 U.S.C. § 2511(2)(D) (emphasis added). In this case, Kirzhner recorded the telephone conversations without BMGI Inc.'s former Chief Financial Officer's consent for the purpose of engaging in both tortious acts and committing criminal acts. As a result, any use or disclosure of these recordings is illegal and should be prohibited by this Court.

    i. The Illegal Recordings Were Made For The Purpose Of Committing The Tort Of Tortious Interference With Contract.

The tort of tortious interference with contract is recognized in Colorado, Maryland, Virginia[1] and Pennsylvania. See e.g., Memorial Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc., 690 P.2d 207, 210 (Colo. 1984); Maier v. Maretti, 671 A.2d 701, 707 (Pa. Super. Ct. 1995); Rinaldi v. Tana, 250 A.2d 533 (Md. Ct. App. 1969); Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985). Here, Kirzhner made the recordings of her telephone calls with Mansfield for the purpose of committing the tort of tortious interference with (i) Mansfield's employee confidentiality agreement that he signed with the company and (ii) his BMGI Inc. employee handbook agreement, which also contained obligations to maintain the confidentiality of all non-public

---

[1] There is no evidence where the recording was made, but Kirzhner is a resident of Virginia.

information. Specifically, she made and recorded the calls for the purpose of gathering and memorializing non-public information on the company, and she received such information from Mansfield. (Mansfield Aff., ¶ 13, Ex. C; Mansfield's confidentiality agreement, §1(a), attached as Exhibit D; Affidavit of David Silverstein ("Silverstein Aff."), ¶ 13, attached as Exhibit E.)

Kirzhner was aware that every BMGI Inc. was subject to a confidentiality agreement. Kirzhner was a co-founder of BMGI Inc. and its former Chief Operating Officer. (Silverstein Aff., ¶ 4, Ex. E.) When Kirzhner was the company's Chief Operating Officer, Kirzhner and Silverstein instituted a policy that required all employees sign a standard confidentiality agreement that would protect all non-public information. (Id., ¶ 5.) By 2002 and continuing thereafter to this date, every employee of BMGI Inc./BMGI Corp. (other Silverstein and Kirzhner) signed an agreement with the company where the employee agreed to maintain the confidentiality of all non-public information. (Id., ¶ 6.)

Indeed, Kirzhner and her counsel even obtained copies of the confidentiality agreements during the process when Kirzhner and her counsel interviewed BMGI Inc.'s former employees without Defendants' knowledge or consent. Kirzhner even signed one of the BMGI Inc.'s confidentiality agreement while she was Chief Operating Officer, and then Kirzhner and the Sweetbaum firm later interviewed that former employee in 2010 in an effort to uncover non-public information.[2] (A copy of Mr. Kiehl's confidentiality agreement that is signed by Kirzhner is attached as Exhibit F.) Kirzhner and her counsel also interviewed another former employee without BMGI Inc.'s consent in an effort to uncover non-public information, and her counsel

---

[2] In her deposition, Kirzhner denied knowing that any employee of BMGI Inc. ever signed an confidentiality agreement despite having signed them herself on behalf of the company and having received them during her interview process with her counsel.

apparently requested and received a copy of that employee's confidentiality agreement from former employee.

The confidentiality agreement that Mansfield signed (as well as the other employees Kirzhner and/or her counsel interviewed) protected from disclosure "all information not generally known and which relates directly to the business or assets of the Company." (Mansfield's confidentiality agreement, §1(a), Ex. D; Kiehl's confidentiality agreement that Kirzhner signed, §1(a), Ex. F.) Mansfield's confidentiality agreement and the other confidentiality agreements also provided that "Employee agrees that his/her obligation to protect Confidential Information as defined above shall continue throughout employment with the Company, and remain in effect after termination of employment for as long as any Confidential Information remains Confidential." (Mansfield's confidentiality agreement, §1(a), Ex. D; Kiehl's confidentiality agreement, §1(a), Ex. F.)

Besides tortiously interfering with the written confidentiality agreement, Kirzhner also tortiously interfered with the written confidentiality agreement contained in the employee handbook Mansfield signed. When Kirzhner was the company's Chief Operating Officer, she also was behind instituting an employee handbook that each employee had to contractually agree to honor. (Silverstein Aff., ¶ 8, Ex. E.) Since 2004, when Kirzhner was Chief Operating Officer, every employee has contractually agreed to be bound by the employee handbook. (Id., ¶ 9.) Under the employee handbook agreement, Mansfield agreed to maintain the secrecy of any confidential information. (See The 2007 BMGI Inc. Employee Handbook, p. 7, attached as Exhibit G; Mansfield Acknowledgement of Employee Handbook, attached as Exhibit H;

8

compare the 2004 BMGI Inc. Handbook in place when Kirzhner was COO and its confidentiality obligations, pp. 13-14, attached as Exhibit I.)

Kirzhner cannot contest that she made the call to Mansfield, a one-time Chief Financial Officer of BMGI Inc., for the purpose of gathering and memorializing information that is "not generally known" because the recording speaks for itself. Kirzhner received non-public information of Mansfield in the one hour and fourteen minute recorded conversation. (Silverstein Aff., ¶ 11, Ex. E.)

Given that the law prohibits Defendants' counsel from disclosing or using the contents of that recorded communication in this pleading, counsel will not detail the non-public information that Kirzhner sought in the absence of a ruling from this Court that they are permitted to do so and will not be in violation of the law by doing so. However, the non-public that information that Kirzhner sought from Mansfield is illustrated by the non-public information contained in the Sweetbaum firm's interview notes that Kirzhner and the Sweetbaum firm had with other former BMGI Inc./BMGI Corp employees.[3] For the Sweetbaum firm's interview notes, it is apparent that Kirzhner and Sweetbaum firm asked other former BMGI Inc. employees that they knew were bound by confidentiality agreements such non-public information as the contractual value of the Raptor business acquisition, how another former CFO of BMGI Inc. (not Mansfield) accounted for and recorded various types of transactions on BMGI Inc.'s books, etc.

---

[3] Again, Kirzhner and Sweetbaum firm knew these employees were bound by confidentiality agreements when they interviewed them because she instituted the policy requiring them to sign the agreements. Kirzhner even signed the confidentiality agreement on behalf of the company for one of the employees that she and the Sweetbaum firm interviewed, and Kirzhner's counsel obtained a copy of the confidentiality agreement from at least one other employee her counsel interviewed. The confidentiality restrictions in these agreements, along with Mansfield's agreement, were identical.

### ii. The Illegal Recordings Were Made For The Purpose Of Committing The Tort Of Aiding and Abetting Breach of Fiduciary Duty.

Kirzhner's act of illegally recording Mansfield was also for the purpose of aiding and abetting Mansfield to breach the fiduciary duties he owed to BMGI Inc.[4] Mansfield is BMGI Inc.'s former CFO, and as such, owed fiduciary duties to BMGI Inc. to refrain from disclosing confidential information of BMGI Inc. to Kirzhner. Here, Kirzhner solicited Mansfield to divulge non-public information

### iii. The Illegal Recordings Were Made For The Purpose Of Violating 18 U.S.C. §§ 2511(1)(C) & 2511(1)(D).

The federal Wiretap Act makes it a crime if a person "intentionally discloses, or endeavors to disclose" or "intentionally uses, or endeavors to use" an illegal recording. 18 U.S.C. §§ 2511(1)(c) & 2511(1)(d); L.C. v. Central Pa. Youth Ballet, No. 1:09-cv-2076, 2010 WL 2650640 (M.D. Pa. July 2, 2010).[5] In L.C., a civil claim for violating the federal Wiretap Act was brought because members of a ballet company recorded an interview that they had with a girl that claimed she had been sexually assaulted. The L.C. court found that a proper claim for violating the federal Wiretap Act had been pled since the one-party consent defense was not applicable. As the L.C. court wrote:

> Ballet Defendants' [one-party consent] argument ignores the qualification contained in the language of § 2511(2)(d). That provision clearly states that if one of the communicants consents to the interception of the communication, such conduct is not prohibited unless the interception was 'for the purpose of committing any criminal or tortious act in violation of the Constitution or the laws of the United States or any state.' In the case at bar, Plaintiff have clearly averred that the interception of the communications on December 12 and 17, 2007, was executed with the express purpose of disclosing the contents of the communication to Defendant Kirk Moll and others. Since such disclosure is proscribed by § 2511(1)(C), the interception of the aforementioned communications was done for the purpose of committing

---

[4] Kirzhner's Eighth claim for relief against Defendants is also an adding and abetting breach of fiduciary duty claim.
[5] The decision is attached as Exhibit J.

10

an act in violation of federal law. Accordingly, the language contained in § 2511(2)(d) does not remove Ballet Defendants' conduct from the realm of illegality, meaning Plaintiffs may properly maintain a civil cause of action against them pursuant to § 2520.

Id. at *3 (internal citation omitted). In other words, since federal law prohibits the disclosure of any recorded conversation, the separate statutory provision that provides the one-party consent defense to wiretap claim is inapplicable when the party records the conversation for the purpose of disclosure to a third party since disclosure is prohibited by federal law. The plain language of § 2511(2)(d) does not provide that the one-party consent defense applies "unless such communication is intercepted for the purpose of committing any criminal **act other than a violation of § 2511(1)(C) or 2511(1)(d)** or tortious act."

Here, Kirzhner made the recordings for the purpose of disclosing the contents to her counsel and to the parties of this lawsuit in violation of § 2511(1)(C). Indeed, Kirzhner disclosed the recording to her counsel, and Kirzhner's counsel provided the recording to Defendants' counsel. The recordings were also made for the purpose of using the recording in this case in violation of §2511(1)(d), and Kirzhner's counsel has stated to Defendants' counsel in two emails that they will not refrain from using the recording at Mansfield's April 6th deposition. (See email from Tom Devine to Defendant's counsel attached as Exhibits B.) As in the L.C. case, Kirzhner's purpose for recording the conversation was to use and disclose it to third parties, which is prohibited by federal law. As a result, Kirzhner cannot avail herself of the exemption from liability contained in § 2511(2)(d).

11

      iv.    <u>The Illegal Recordings Were Made For The Purpose Of Violating Pennsylvania's Computer Crime Statute.</u>

Under Pennsylvania law it is illegal to:

> (1) accesses or exceeds authorization to access, alters, damages or destroys any … telecommunication device or any part thereof with the intent to interrupt the normal functioning of a person or **<u>to devise or execute any scheme or artifice to defraud or deceive</u>** or control property or services by means of false or fraudulent pretenses, representations or promises;
>
> (2) **<u>intentionally and without authorization accesses or exceeds authorization to access</u>**, alters, interferes with the operation of, damages or destroys any … telecommunication device or any part thereof;

18 Pa. Cons. Stat. Ann. § 7611(a) (emphasis added). Here, Kirzhner called Mansfield on his cellular phone for the purpose of "execut[ing] a scheme or artifice to defraud or deceive" as defined under § 7611(a)(1): namely to deceive Mansfield into violating his obligations to maintain the confidentiality of confidential information [as is detailed in the recording] and Mansfield into believing that his call was not being recorded. § 7611(a)(1). Kirzhner also violated § 7611(a)(2) by exceeding the authorization to access his cellular signals by recording those signals and the words he said during those calls without his consent. Kirzhner also interfered with the operation of his telecommunication device in violation of §7611(a)(2) by capturing and recording his conversations when he believed that the calls would not be recorded.

Under Pennsylvania law, it is no defense to a violation of §7611(a) if some of the acts occurred outside of Pennsylvania because the harm occurred in the Commonwealth of Pennsylvania where Mansfield resides. Specifically, under Pennsylvania law:

> [a]n offense under this chapter [the same chapter that contains § 7611(a)] may be deemed to have been committed either at the place where conduct constituting an element of the offense occurred or at a place where the result which is an element of the offense occurred within this Commonwealth in accordance with Section 102 (relating to

12

territorial applicability). <u>It shall not be a defense to a violation of this chapter that some of the acts constituting the offense occurred outside of the Commonwealth.</u>

18 Pa. Cons. Stat. Ann. § 7602; <u>see</u> also 18 Pa. Cons. Stat. Ann. § 102 (providing that a person may be convicted under Pennsylvania law if "the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth").

Here, Kirzhner called a person that she knew resided in Pennsylvania to a cell phone number that has Pennsylvania area code. Mansfield also told her that he was in Pennsylvania during a portion of the call. She knew or had reason to know that her conduct would cause harm in Pennsylvania, and it did in fact cause harm in that state.

### B. The Use Of Mansfield Recording Violates Maryland's Wiretap Statute Because That Statute Requires The Consent Of All Parties.

The majority of the three telephone calls occurred when Mansfield was in Maryland. Maryland's Wiretapping Act, Md. Cts. & Jud. Proc. § 10-402, requires consent of all parties before a conversation can be recorded. <u>Wood v. State</u>, 431 A.2d 93, 95 (Md. 1981). Maryland's Wiretapping Act applies so long as at least one party to the conversation was physically located in Maryland during the phone call. <u>Mustafa v. State</u>, 591 A.2d 481, 483 (Md. Ct. App. 1991) (applying the Maryland act to a recording made by a person in the District of Columbia to person physically located in Maryland); <u>Perry v. State</u>, 741 A.2d 1162, 1175 (1999) (recordings made outside of Md.); <u>Miles v. State</u>, 781 A.2d 787, 798-99 (Md. Ct. App. 2001). Like its federal counterpart, Maryland's Wiretapping Act makes it illegal to "willfully disclose, or endeavor to disclose" or "willfully use, or endeavor to use" any illegally recorded telephone conversation. Md. Cts. & Jud. Proc. § 10-402. Mansfield was in Maryland for a large portion of the recorded

13

conversation, and thus, the secret recording is illegal under Maryland's Wiretap Act, as well as its use and disclosure in this case.

      C. <u>The Use Of Mansfield Recordings Violates Pennsylvania's Wiretap Statute Because That Statute Requires The Consent Of All Parties.</u>

Pennsylvania's Wiretapping Act also requires the consent of all parties before a conversation can be legally recorded. 19 Pa. Cons. Stat. § 5703. The statute also proscribes "intentionally disclos[ing] or endeavors to disclose" and "intentionally us[ing], or endeavors to use" an illegal recording. Accordingly, the use or disclosure or the recordings in this case violate Pennsylvania law since Mansfield did not consent to the recordings. In light of the fact that the harm for violating the statute occurred in Pennsylvania, Kirzhner was subject to Pennsylvania's wiretap statute (as well as Maryland's) even though most of the recording took place while Mansfield was in Maryland and only a small portion was made was when he was in physically in Pennsylvania. 18 Pa. Cons. Stat. Ann. § 102 (providing that a person may be convicted under Pennsylvania law if "the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth").

II. **THE FEDERAL WIRETAP ACT HAS BEEN INTERPRETED TO PROHIBIT SUCH "USES" AS AN ATTORNEY WRITING OPPOSING COUNSEL WHERE IT WAS SUGGESTED THAT THE RECORDING MIGHT BE USED AND USING THE RECORDING TO FRAME DEPOSITION QUESTIONS.**

The broad sweeping language in the federal and state statutes that proscribes, such things as, "endeavoring to use" and "endeavoring to disclose" illegal recordings has been applied in the context of court proceedings. <u>See</u> <u>e.g.</u>, <u>Leach v. Bryam</u>, 68 F. Supp. 2d 1072, 1073-74 (D. Minn. 1999); <u>United States v. Wuliger</u>, 981 F.2d 1497, 1500 (6th Cir. 1992) (reversed on the grounds of improper jury instructions). For example, in <u>Leach,</u> the court found after a bench trial that an

14

attorney intentionally "used" illegal recordings in violation of 18 U.S.C. § 2511(1)(d) by simply writing a letter to opposing counsel where the attorney revealed the existence of the tapes and inferred that the attorney might use them in the case. Specifically, the attorney in <u>Leach</u> wrote a letter to opposing counsel that stated "[i]t will be interesting to see how your client's and witness' credibility stand up after discussing some of these past statements" even though the letter did not appear to disclose the contents of what was said in the recordings. 68 F. Supp. 2d at 1073. Likewise, in <u>Wuliger</u>, an attorney was convicted of violating the federal Wiretap Act for using the contents in a deposition to frame questions and using the recordings to cross examine a witness during a trial. 981 F.2d at 1500.

Here, any proposed use or any endeavor to use the Mansfield recording by Kirzhner's counsel is clearly prohibited by law. Kirzhner's counsel should be prohibited from using the recording in any manner in this case, including formulating questions, cross-examining witnesses, impeachment, and/or introduction into evidence.

### <u>Conclusion</u>

Based on the foregoing, this Court should preclude any use of the Mansfield recordings in this case. To the extent that the Court believes that these is insufficient evidence to establish the propriety of granting this Motion, Defendants' request an evidentiary hearing where Ms. Kirzhner will testify on any pertinent matters.

Respectfully submitted this 14th day of March, 2011.

PAPPALARDO LAW GROUP, LLC

*By:         /s Marc Pappalardo*
MARC F. PAPPALARDO #35339
Pappalardo Law Group, LLC
1919 14th Street, Suite 510
Boulder, CO 80302
Telephone 303-250-1507
Fax: 775-429-4091
E-mail: Marc@PappalardoLawGroup.com
*Attorneys for Defendants* David Silverstein, David Silverstein Investments, LLC, and DSI Investments, LLC


GLASSER LAW GROUP, LLC


*By:        s/ Daniel Glasser*
DANIEL GLASSER #37716
Glasser Law Group, LLC
4582 S. Ulster St. Pkwy, Suite 1650
Denver, Colorado 80237
Telephone 720-963-7557
E-mail: dglasser@glasserlawgroup.com

*Attorneys for Evergreen Industries, Inc., BMGI Corp. and BMGI Holdings LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2011, a true and correct copy of the foregoing **DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER CONCERNING ILLEGAL RECORDINGS AND REQUEST FOR EVIDENTIARY HEARING** was served by regular mail, addressed to:

    Alan D. Sweetbaum
    Tom Devine
    Fisher, Sweetbaum, Levin and Sands, P.C.
    1125 Seventeenth Street, Suite 2100
    Denver, CO 80202
    *Attorneys for Ilona Kirzhner*

                                              */s Marc Pappalardo*
                                              Marc Pappalardo