IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02858-CMA-BNB

ILONA KIRZHNER,

Plaintiff,

v.

DAVID SILVERSTEIN,
EVERGREEN INDUSTRIES, INC., a Colorado corporation, f/k/a Breakthrough Management
Group International, Inc., f/k/a Breakthrough Management Group, Inc.,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation, and
BMGI HOLDINGS, LLC, a Delaware limited liability company,

Defendants.

---

## ORDER

---

This matter arises on the following:

(1)     **Plaintiff's Motion for Protective Order Concerning Subpoena to Plaintiff's**

**Counsel** [Doc. # 135, filed 3/9/2011] ("Plaintiff's Motion for Protective Order");

(2)     **Plaintiff's Motion to Compel Relevant Financial Documents** [Doc. # 136, filed

3/9/2011] ("Plaintiff's Motion to Compel");

(3)     **BMGI, Inc.'s Motion to Compel Production of Documents Responsive to**

**Subpoena or, In the Alternative, for an In Camera Review** [Doc. # 143, filed 3/14/2011]

("BMGI's Motion to Compel");

(4)     **Defendants' Joint Motion for In Camera Review and to Compel Production of Documents Produced as KIRZ151-160** [Doc. # 151, filed 3/18/2011] ("Defendants' Motion to Compel"); and

(5)     **Defendants' Joint Motion for Designation of Confidential Restricted Information Pursuant to Protective Order** [Doc. # 154, filed 3/23/2011] ("Defendants' Motion for Designation").

I held a hearing on these motions on April 1, 2011, and made rulings on the record.

## 1. Plaintiff's Motion for Protective Order [Doc. # 135]

On February 28, 2011, Daniel Glasser, counsel for defendants, served a subpoena duces tecum on plaintiff's trial counsel, Sweetbaum, Levin & Sands (the "Sweetbaum Firm"), commanding the production of the following:

> 1. All communications sent or received by You from September 1, 2009 through the present, that refer or relate to Timothy J. Schafer's planned or actual attendance at and observations made during the September 24, 2009 auction of Evergreen's assets.
>
> 2. All handwritten notes, comments, drafts or suggested revisions--prepared by Timothy J. Schafer or members, employees and agents of Schafer Thomas, P.C.--regarding the Stock Purchase Agreement and Promissory Note dated September 15, 2004 between Ilona Kirzhner, David Silverstein and Evergreen.
>
> 3. All documents that refer, relate to or reflect communications among (1) You and/or Ilona Kirzhner, on the one hand, and (2) Lev Volftsun on the other regarding Evergreen, the September 24, 2009 auction and Evergreen's assets, the Stock Purchase Agreement, the Note, David Silverstein, Marc Pappalardo or the claims at issue in this litigation.
>
> 4. All correspondence between You and Timothy Schafer between September 1, 2009 and September 30, 2009.

Plaintiff's Motion for Protective Order [Doc. # 135] at p. 4.  The subpoena further commanded

2

that each responsive document be produced "in its original file folder, file jacket, or cover." Id.

Timothy Schafer is a lawyer and was transactional counsel for the plaintiff, Ilona Kirzhner ("Kirzhner"), in connection with drafting the documents which underlie this action, including the Stock Purchase Agreement and Promissory Note dated September 15, 2004. He also was her counsel at the time of a purported Article 9 sale by the defendants of corporate assets, although the attorney-client privilege has been waived with respect to certain communications drafted by Schafer concerning that sale. In addition, I previously ruled that the Sweetbaum Firm and Schafer are co-counsel in this action representing Kirzhner and that confidential communications between co-counsel in furtherance of the representation of their client is protected by the attorney-client privilege. Transcript of Proceedings 12/16/2010 [Doc. # 118] (the "12/16/2010 Trans.") at p. 53 line 9 through p. 56 line 7.

The Sweetbaum Firm resists compliance with the subpoena and seeks a protective order arguing that the subpoena seeks "information plainly protected by the attorney-client privilege." Plaintiff's Motion for Protective Order [Doc. # 135] at p. 4. The defendants respond that "[t]he documents requested . . . may include documents which are indisputably not privileged," including communications "sent to, or received by, third parties." Opposition [Doc. # 157, filed 3/25/2011] at p. 7. The defendants also argue that the Sweetbaum Firm made an improper "blanket assertion of privilege," id. at p. 2, and that it should be required to "produce all non-privileged documents responsive to the subpoena, along with a privilege log justifying any redactions or the withholding of any documents based on privilege." Id. at p. 11.

Discovery in federal court is governed by the Federal Rules of Civil Procedure, regardless of whether federal jurisdiction is based on a federal question or diversity of citizenship. Everitt v. Brezzel, 750 F. Supp. 1063, 1065 (D. Colo. 1990). In Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1987), the court condemned exactly the tactic undertaken here by the defendants, ruling:

> In recent years, the boundaries of discovery have steadily expanded, and it appears that the practice of taking the deposition of opposing counsel has become an increasingly popular vehicle of discovery. To be sure, the Federal Rules of Civil Procedure do not specifically prohibit the taking of opposing counsel's deposition. We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances.
>
> Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy. The practice of forcing trial counsel to testify as a witness, however, has long been discouraged. Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.
>
> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other

> means exist to obtain the information than to depose opposing
> counsel. . .; (2) the information sought is relevant and
> nonprivileged; and (3) the information is crucial to the preparation
> of the case.

Id. at p. 1327 (internal citations, quotations, and notes omitted). The Tenth Circuit Court of

Appeals adopted the reasoning of Shelton in Boughton v. Cotter Corp., 65 F.3d 823, 830 (10th

Cir. 1995). The use of a subpoena duces tecum to attempt to obtain opposing counsel's

documents and files is equally improper and may be more burdensome than merely attempting to

obtain testimony.

The defendants have made none of the showing required under Shelton and Boughton. In

addition, the defendants are engaged in discovery abuse by attempting to require the Sweetbaum

Firm to prepare a privilege log justifying its redaction or refusal to produce privileged documents

from trial counsel's file. Such an undertaking would be enormous; is unreasonably burdensome

and intended to be harassing and vexatious; and would unnecessarily expand the scope and cost

of the litigation.

Plaintiff's Motion for Protective Order [Doc. # 135] is granted; the subpoena is quashed;

and this discovery from the Sweetbaum Firm shall not be had.

## 2. Plaintiff's Motion to Compel [Doc. # 136]

The plaintiff seeks an order enforcing the parties' agreement to make informal discovery

and compelling the defendants to produce "two missing pieces of critical financial

documentation: BMGI, Inc.'s 2008 Consolidated Financial Statements and 2007 amended tax

return." Plaintiff's Motion to Compel [Doc. # 136] at p. 9. I was informed during the hearing

that the defendants subsequently produced the 2008 financial statements, but the 2007 tax returns

have not been produced.

This is not the first I have heard of these financial documents.  In November 2010, in connection with a motion to extend deadlines, the following colloquy occurred:

> THE COURT:    So you want principal experts extended until January 6th, and then I suppose rebuttal experts would be extended a month as well--
>
> MR. DEVINE (plaintiff's counsel):   That's true.  I suppose--
>
> THE COURT:   --to February 7th, right?
>
> MR. DEVINE:   I apologize.  The January 6th deadline, of course, presupposes that the defendants are going to produce financial documentation concerning BMGI Corp. in the short term.
>
> THE COURT: All right.  And then discovery cutoff would have to be extended at least for purposes of experts, so perhaps to March 1, and the dispositive motion deadline similarly extended to March 1. Is that sort of the schedule going forward that you have in mind?
>
> MR. DEVINE:   I believe so.  Again, assuming that we get the documentation that we need in short order.
>
>            *   *   *
>
> THE COURT:   Now, we went through a schedule which I might-- I am entertaining . . . and you said, okay, provided we get documents in a timely way.  What documents is it that you need [in] a timely way?
>
> MR. DEVINE:   We require BMGI Corp.'s financial documentation, which will include their general ledger, since they came into existence in the third quarter of 2009, consolidated financial statements; which are the documents that in the defendants' response brief say are the key critical documents that are short and brief, that don't require volumes to understand the assets of the company; cash flow statements; and then the 2009 tax returns for Evergreen if they exist.

And then at the same time we need anything from Evergreen--if Evergreen is in fact a different corporation to entity than BMGI Corp.--concerning their consolidated financials, general ledgers, et cetera, following the August 2009 documents which was the cutoff of the documents that were produced.  So it's two tracks, we need the BMGI Corp. financials and we need Evergreen since 2009.

THE COURT:   And are there outstanding requests for those?

MR. DEVINE:   No, there's a motion to compel which was filed yesterday which handles part of the request.
                              *     *     *
THE COURT:  . . . I'm going to extend the deadline even more substantially than the plaintiff requests, but I'm doing it with the expressed statement that I will not extend this schedule again.  So if there are disputes which need to be brought to my attention, they must be brought promptly.  I'll set them for hearing quickly and will get them resolved, but this schedule is not going to change.

Transcript of Proceedings 11/18/2010 [Doc. # 111] (the "11/18/2010 Trans.") at p. 13 line 18

through p. 14 line 8; p. 27 line 7 through p. 28 line 8; and p. 40 lines 11-17.  At the conclusion of

that hearing, I also found that the lawyers had lost their objectivity; had adopted the causes of

their clients as their own; and were not acting as professionals.  Id. at p. 47 lines 14-25.

My warnings notwithstanding, the plaintiff failed to serve a discovery request for the

documents she now seeks.  Although defendants' counsel does not dispute the agreement

claimed by the plaintiff, Record of Proceedings 4/1/2011 (the "4/1/2011 Record") at 9:40:10

a.m. through 9:40:25 a.m., I will not compel the production of documents not sought through the

formal discovery procedures.

I find that the plaintiff has failed to exercise reasonable diligence to obtain the documents

sought by Plaintiff's Motion to Compel [Doc. # 136], and it is denied.

### 3.  BMGI's Motion to Compel [Doc. # 143]

BMGI seeks an order compelling the production of specified documents subpoenaed

from the plaintiff's co-counsel, Timothy J. Schafer ("Schafer"), and withheld from production on

a claim of attorney-client privilege or work product immunity.

Where, as here, the "case [is] based upon a state cause of action, state law controls the

determination of privileges."  White v. American Airlines, Inc., 915 F.2d 1414, 1424 (10th Cir.

1990).  A party resisting discovery based on the attorney-client privilege or work product

immunity has the burden of establishing that the privilege applies.  Peat, Marwick, Mitchell &

Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984).  Under Fed. R. Civ. P. 26(b)(5), a party

withholding documents under the attorney-client privilege or the work product immunity must:

> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or
> tangible things not produced or disclosed--and do so in a manner
> that, without revealing information itself privileged or protected,
> will enable other parties to assess the claim.

Schafer has submitted an Amended Privilege Log [Doc. # 143-3] which satisfies the

requirements of Rule 26(b)(5) and the Peat, Marwick case.

The defendants claim that one category of subpoenaed documents withheld as

privileged--communications copied to Mish Vikhman, the plaintiff's husband--certainly are not

subject to the attorney-client privilege and must be produced.  BMGI's Motion to Compel [Doc.

# 143] at pp. 7-9.  I disagree.  In Hiskett v. Wal-Mart Stores, Inc., 180 F.R.D. 403, 406 (D. Kan.

1998), a court in the District of Kansas held:

> Defendant suggests plaintiff waived the attorney-client privilege
> by showing the document to her husband.  Neither federal law, nor
> the laws of Kansas, support such a suggestion.  It is not a waiver

8

> when the disclosure is made in the course of another privileged
> relationship, as when the client tells his wife that he told his
> lawyer. . . .  Plaintiff has shown that the marital privilege applies to
> her showing her husband the document in question.  The court
> finds no waiver of the attorney-client privilege by such disclosure.

(Internal quotations and citations omitted.)  <u>Accord</u> Thomas E. Spahn, <u>A Practitioner's Guide to</u>

<u>the Attorney-Client Privilege and the Work Product Doctrine</u> 127 n.5 (2001); Vol. I Edna Selan

Epstein, <u>The Attorney-Client Privilege and the Work-Product Doctrine</u> 266 (5th ed. 2007).

Colorado, like Kansas, recognizes a spousal privilege.  Section 13-90-107(1)(a), C.R.S.

The defendants cite <u>Mullin-Johnson Co. v. Penn Mut. Life Ins. Co.</u>, 2 F. Supp. 203 (N.D.

Calif. 1933), for a contrary rule.  That case addresses the California spousal and physician-

patient privileges, and not the attorney-client privilege, on completely distinguishable fact.

<u>Mullin-Johnson</u> concerned notes left by a decedent at the scene of his suicide, described by the

court as follows:

> Preliminary to trial, defendant took the deposition of Mildred P.
> Johnson, widow of the insured.  The deposition elicited the facts
> that Mrs. Johnson had found he husband, on the morning of
> February 24, 1932, lying dead on the floor of his garage, directly
> behind his automobile, with the motor running and the doors and
> windows of the garage closed.  Mrs. Johnson was asked if her
> husband left notes to her and to other persons, the contents of such
> notes, if any, the condition of her husband's health, and the nature
> of medical treatments given him by his physician in her presence.
> On advice of counsel the witness refused to answer all questions
> pertaining to such matters, claiming privilege. . . .

<u>Id</u>. at 204.

BMGI mischaracterizes the holding in <u>Mullin-Johnson</u>, misquoting it as holding that

"[c]onversation between an **<u>attorney and his client</u>**, had in the presence of the **<u>client's</u>** wife, is

not privilege."  BMGI's Motion to Compel [Doc. # 143] at p. 8 (emphasis added).  To the

9

contrary, the court held that "[c]ommunications between **physician and patient** made in the presence of the **patient's husband, mother, and brother** are not privileged." Mullin-Johnson, 2 F. Supp. at p. 205 (emphasis added).

BMGI's citation to Iwerks v. People, 120 P.2d 961 (Colo. 1941), is similarly misleading. Iwerks involved the physician-patient privilege, not the attorney client privilege, and holds that statements by a patient to a doctor in the presence of a deputy sheriff are not privileged. Id. at p. 559.

BMGI's argument that Schafer has failed to establish that he "*actually communicated*" the contents of notes made on documents, which BMGI claims is necessary to establish the applicability of the attorney-client privilege, ignores the Amended Privilege Log which states that the notes "reflect[] [Schafer's] communications, discussions and strategy nor negotiation"; "pertain to same day telephone conversation with Ms. Kirzhner"; 'reflect[] communication and discussions with Ms. Kirzhner"; "reflect[] telephone communications with Ms. Kirzhner"; and "reflect[] telephone conference and communications with Ms. Kirzhner." Amended Privilege Log [Doc. # 143-3] at pp. 4-6. The Amended Privilege Log establishes that the substance of the withheld notes was communicated by Schafer to his client. Disclosure of the notes would necessarily reveal the substance of Schafer's privileged attorney-client communications.

BMGI also argues that any privilege in the notes "has been waived by the production of Schafer's other notes on the same subjects (*e.g.*, 0431-433 and Schaf 0453-464)," BMGI Motion to Compel [Doc. # 143] at p. 14, but these "other notes" allegedly waiving the privilege have not been provided to me.

BMGI's Motion to Compel is unfounded and is denied.

### 4.  Defendants' Motion to Compel [Doc. # 151]

The defendants seek an order compelling the production of redactions from witness interviews prepared by Kirzhner's trial counsel.  Each of the witnesses formerly was affiliated with one of the defendants.  There is no indication that the defendants cannot conduct their own interviews of the witnesses.

The plaintiff resists production, arguing that the redacted materials are her "opinion work product," containing the "thoughts, strategies, legal opinions and conclusions by an attorney," and are "'discoverable only in rare circumstances where the party seeking discovery can show *extraordinary justification*.'" Response [Doc. # 160] at pp. 5-6, quoting <u>FDIC v. Wachovia Ins. Services, Inc.</u>, 241 F.R.D. 104, 106 (D. Conn. 2007) (original emphasis).

Rule 26 (b)(3), Fed. R. Civ. P., provides:

**(3)** *Trial Preparation: Materials.*

**(A)** *Documents and Tangible Things.*  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

**(I)** they are otherwise discoverable under Rule 26(b)(1); and

**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**(B)** *Protection Against Disclosure.*  If the court orders discovery of these materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Rule 26(b)(3) codifies the work product doctrine recognized in <u>Hickman v. Taylor</u>, 329

U.S. 495 (1947).  See American Banker's Ins. Co. of Florida v. Colorado Flying Academy, Inc.,

97 F.R.D. 515, 516 n.1 (D. Colo. 1983).  "Unlike the attorney-client privilege, the work product

privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R.

Civ. P. 26(b)(3)."  Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 702 n.10

(10th Cir. 1998)(internal quotation omitted).

Most of the content of the witness interviews has been disclosed to the defendants.

Defendants' Motion to Compel at Exh. A [Doc. # 151-1].  On review, it is apparent, and the

defendants do not seriously contend otherwise, that the witness interviews were prepared in

anticipation of this litigation by one of the plaintiff's attorneys.[1]

During the Rule 7.1A conferral process, plaintiff's counsel informed the defendants that

the redacted portions addressed counsel's "contemporaneous mental impressions, evidentiary

notes and opinions, and comments relative to legal theories as they relate to alleged claims for

relief," Response at Exh. 1 [Doc. # 160-1], and urged the defendants not to file a motion seeking

to compel further production.  Defendants proceeded nonetheless, and filed Defendants' Motion

to Compel [Doc. # 151] arguing that the "context of the witness interviews and the organization

of the notes (which seem to only reflect statements that the witnesses made about Defendants) . .

. suggest that the redacted information is neither privileged nor subject to the work product

doctrine."  Defendants' Motion to Compel [Doc. # 151] at p. 3.  The defendants fail even to

address the elements required to compel disclosure of work product materials.

---

[1]The interview summaries are dated October 2010, approximately 11 months after this
action was commenced.  They state on their face that they were prepared by Charles Westby,
formerly a lawyer at the Sweetbaum Firm representing the plaintiff.  The witness interviews
concern Kirzhner, "BMG," David Silverstein, and matters at issue in this action.  See
Defendants' Motion to Compel at Exh. A [Doc. # 151-1].

The facts here are essentially identical to those presented in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), and held to be not discoverable as attorney work product:

> Petitioner has made more than an ordinary request for relevant, non-privileged facts in the possession of his adversaries or their counsel. He has sought discovery as of right of oral and written statements or witnesses whose identity is well known and whose availability to petitioner appears unimpaired. He has sought production of these matters after making the most searching inquiries [through discovery and investigation] of his opponents as to the circumstances surrounding the [case]. . . . We are thus dealing with an attempt to secure the production fo written statements and mental impressions contained in the files and the mind of the [opposing] attorney without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice. For aught that appears, the essence of what petitioner seeks either has been revealed to him already through the interrogatories or is readily available to him direct from the witnesses for the asking.
>
> *    *    *
>
> In our opinion, neither Rule 26 nor any other rule dealing with discovery contemplates production under such circumstances. That is not because the subject matter is privileged or irrelevant, as those concepts are used in these rules. Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

<u>Id</u>. at p. 392-93.

And, as the plaintiff points out, a party's voluntary waiver of the protections afforded to factual work product does not effect a waiver as to undisclosed opinion work product, which enjoys heightened protection. <u>The Shinnecock Indian Nation v. Kempthorne</u>, 652 F. Supp. 2d 345, 362-64 (E.D.N.Y. 2009).

At the defendants' urging, and with encouragement from the plaintiff, I reviewed in camera the full text of the interview of Mark Menghini.  The redacted materials were exactly as represented by plaintiff's counsel in its Rule 7.1A email, and included only Mr. Westby's "contemporaneous mental impressions, evidentiary notes and opinions, and comments relative to legal theories as they relate to alleged claims for relief."  Response at Exh. 1 [Doc. # 160-1].  All of the redacted information is entitled to protection from disclosure as attorney opinion work product.

Defendants' Motion to Compel [Doc. # 151] is denied insofar as it seeks the production of the redacted portions of the witness interviews.

### 5.  Defendants' Motion for Designation [Doc. # 154]

Finally, the defendants seek to protect from disclosure to the plaintiff certain data relied on by their expert in reaching valuation opinions.  The defendants argue that the protection is necessary because the plaintiff is a competitor of the defendants and the information at issue is highly sensitive, non-public information.  In support, the defendants have provided an affidavit from defendant David M. Silverstein which states only that the information "is not made available to the public, is not publicly known, and is very sensitive information that could have value to BMGI Corp.'s competitors. . . ."  Affidavit of David M. Silverstein [Doc. # 154-1] (the "Silverstein Aff.") at ¶11.  The supporting affidavit is wholly conclusory and provides no facts upon which to base a finding that the information is sufficiently sensitive as to justify depriving a party-opponent from access.  In short, the defendants have failed to establish good cause to justify withholding this relevant and important information from the plaintiff.  Defendants' Motion for Designation [Doc. # 154] is therefore denied.

14

### 6. Attorneys Fees

Rule 37(a)(5)(A), Fed. R. Civ. P., provides that if a motion for protective order is granted "the court must, after giving an opportunity to be heard," require the party whose conduct necessitated the motion to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless there was no attempt to resolve the dispute without court intervention, the conduct requiring the filing of the motion was substantially justified, or the award of expenses would be unjust. Similarly, if a motion for protective order is denied, Rule 37(a)(5)(B) provides for the award of attorneys fees to the party resisting the motion under the same conditions.

(a) **Plaintiff's Motion for Protective Order [Doc. # 135]:** At page 8 of the Plaintiff's Motion for Protective Order [Doc. # 135], Kirzhner sought the award of her attorneys fees "for the inappropriate use of a subpoena." The defendants filed an Opposition [Doc. # 157] and were thereby afforded an opportunity to be heard on the issue of attorneys fees. Plaintiff's Motion for Protective Order was granted in full, and I have found that the defendants' subpoena which necessitated the filing of the motion constituted discovery abuse and was intended to be harassing and vexatious. Supra at p. 5. The plaintiff participated in the Rule 7.1A process, attempting to resolve the issue without court involvement, prior to filing her Motion for Protective Order. The defendants' conduct was not substantially justified, and an award of expenses would not be unjust. Accordingly, I award the plaintiff her attorneys fees incurred in bringing Plaintiff's Motion for Protective Order. Because the subpoena was issued under the authority of defense counsel and because lawyers, and not their clients, are responsible for the proper use of discovery tools, the award is made against defendants' counsel and not the

defendants.

To effectuate this award, the plaintiff shall prepare a fee application, in full compliance with the requirements of D.C.COLO.LCivR 54.3, and including copies of contemporaneous time records showing the services rendered and time spent. The fee application shall be served on the defendants on or before **April 12, 2011**. Thereafter the parties shall confer in an attempt to reach agreement as to the amount of the award. If the parties have not agreed and the fee award has not been paid, then not later than **April 26, 2011**, the plaintiff shall file the fee application. If a fee application is filed, defendants shall respond on or before **May 10, 2011**.

**(b)   Plaintiff's Motion to Compel [Doc. # 136]:** Defendants sought an award of fees in connection with resisting the Plaintiff's Motion for Protective Order [Doc. # 136]. Response [Doc. # 159] at p. 20. In view of the fact that defendants' counsel did not contest the existence of the informal agreement to produce documents which prompted the plaintiff to file her motion to compel, and in fact produced one of the documents at issue, I find that an award of attorneys fees to the defendants in resisting Plaintiff's Motion to Compel would be unjust.

**(c)   BMGI's Motion to Compel [Doc. # 143]:** No request for attorneys fees was made by the plaintiff in connection with resisting BMGI's Motion to Compel, although Schafer's counsel at the hearing orally sought the award of Schafer's attorneys fees in resisting that motion. BMGI has not been afforded an opportunity to respond to Schafer's oral request.

I improperly awarded attorneys fees against BMGI at the hearing, and I now withdraw that portion of my oral ruling. Instead, the plaintiff and Schafer may seek an award of attorneys fees in connection with resisting BMGI's Motion to Compel. The plaintiff and Schafer may prepare a fee application, in full compliance with the requirements of D.C.COLO.LCivR 54.3,

and including copies of contemporaneous time records showing the services rendered and time spent.  The fee application shall be filed and served, if at all, on or before **April 12, 2011**.  The defendants shall respond on or before **May 10, 2011**.

**(d)  Defendants' Motion to Compel [Doc. # 151]:**  The plaintiff sought an award of attorneys fees in resisting Defendants' Motion to Compel [Doc. # 151].  Response [Doc. # 160] at pp. 11-12.  The defendants have not been afforded an opportunity to respond to that request.  I again improperly awarded attorneys fees against BMGI at the hearing, and I now withdraw that portion of my oral ruling.  The plaintiff may prepare a fee application, in full compliance with the requirements of D.C.COLO.LCivR 54.3, and including copies of contemporaneous time records showing the services rendered and time spent.  The fee application shall be filed and served, if at all, on or before **April 12, 2011**.  The defendants shall respond on or before **May 10, 2011**.

**(e)  Defendants' Motion for Designation [Doc. # 154]:**  The plaintiff did not request attorneys fees in connection with resisting Defendants' Motion for Designation [Doc. # 154], and there does not appear to be a basis for the award of attorneys fees in connection with that motion.  My oral ruling awarding fees against the defendants in connection with Defendants' Motion for Designation is withdrawn.

IT IS ORDERED:

1.      Plaintiff's Motion for Protective Order [Doc. # 135] is GRANTED.  The subpoena is quashed, and the discovery shall not be had.  The plaintiff is awarded her attorneys fees incurred in bringing Plaintiff's Motion for Protective Order.  The award is against defendants' counsel.  To effectuate this award, the plaintiff shall prepare a fee application, in full

17

compliance with the requirements of D.C.COLO.LCivR 54.3, and including copies of

contemporaneous time records showing the services rendered and time spent.  The fee

application shall be served on the defendants on or before **April 12, 2011**.  Thereafter the parties

shall confer in an attempt to reach agreement as to the amount of the award.  If the parties have

not agreed and the fee award has not been paid, then not later than **April 26, 2011**, the plaintiff

shall file and serve the fee application.  If a fee application is filed, the defendants shall respond

on or before **May 10, 2011**.

2.      Plaintiff's Motion to Compel [Doc. # 136] is DENIED.  The defendants' request

for the award of attorneys fees in resisting Plaintiff's Motion to Compel is also DENIED.

3.      BMGI's Motion to Compel [Doc. # 143] is DENIED.  My previous award of

attorneys fees in connection with this motion made orally at the hearing is withdrawn. The

plaintiff and Schafer may seek an award of their attorneys fees in connection with resisting

BMGI's Motion to Compel.  Any such motion for attorneys fees must be made in full

compliance with the requirements of D.C.COLO.LCivR 54.3, and including copies of

contemporaneous time records showing the services rendered and time spent.  The motions for

attorneys fees shall be filed and served, if at all, on or before **April 12, 2011**.  The defendants

shall respond on or before **May 10, 2011**.

4.      Defendants' Motion to Compel [Doc. # 151]is DENIED insofar as it seeks the

production of the redacted portions of the witness interviews.  My previous award of attorneys

fees in connection with this motion made orally at the hearing is withdrawn.  The plaintiff  may

seek an award of her attorneys fees in connection with resisting Defendants' Motion to Compel.

Any such motion for attorneys fees must be made in full compliance with the requirements of

18

D.C.COLO.LCivR 54.3, and including copies of contemporaneous time records showing the services rendered and time spent.  The motion for attorneys fees shall be filed and served, if at all, on or before **April 12, 2011**.  The defendants shall respond on or before **May 10, 2011**.

     5.     Defendants' Motion for Designation [Doc. # 154] is DENIED.  My previous award of attorneys fees in connection with this motion made orally at the hearing is withdrawn.

     Dated April 5, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge