**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:09-cv-2858-CMA-BNB

ILONA KIRZHNER,

    Plaintiff,

v.

DAVID SILVERSTEIN, an Individual,
EVERGREEN INDUSTRIES, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP INTERNATIONAL, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP, INC., a Colorado corporation,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation, and
BMGI HOLDINGS, LLC, a Delaware limited liability company

    Defendants.

___

**PLAINTIFF'S HEARING BRIEF ON DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER CONCERNING ILLEGAL RECORDINGS**
___

Plaintiff Ilona Kirzhner, by and through her attorney, Thomas L. DeVine, Jr., Esq., hereby submits her Hearing Brief on Defendants' Joint Motion for Protective Order Concerning Illegal Recordings:

## **INTRODUCTION**

Defendants' Motion relates to a phone conversation Plaintiff had with a fact witness in this matter, David Mansfield. Mr. Mansfield has filed criminal charges against Plaintiff, which are pending in the applicable states, districts, and municipalities in which the charges were filed. Further factual detail will be solicited during the evidentiary

hearing. This brief will be limited solely to issues and application of law, including the determination of what law applies to this issue. No statement made within this brief is to be used or interpreted to be an admission of any fact of consequence related to the criminal action(s).

**BRIEF**

I. **PLAINTIFF HAS OFFERED TO STIPULATE TO A PROTECTIVE ORDER CONCERNING USE OF THE RECORDINGS. HOWEVER, THE SCOPE OF THE PROTECTIVE ORDER SOUGHT BY THE DEFENDANTS IS OVERBROAD, VAGUE, UNENFORCEABLE AND RENDERS IMPOSSIBLE ANY PROOF OF COMPLIANCE.**

As a threshold matter, Plaintiff has offered to Stipulate to the following terms concerning the alleged illegal recordings: (a) the Recording will not be played during any discovery activity or during trial by any party; (b) the Recording will not be played for use during the examination, cross-examination, impeachment or rehabilitation of any witness either during a discovery deposition or during trial by any party; (c) the Recording will not be introduced into evidence at trial; (d) no transcript of the Recording will be used during any discovery activity or during trial by any party; (e) no transcript of the Recording will be used during the examination, cross-examination, impeachment or rehabilitation of any witness either during a discovery deposition or during trial by any party; (f) no transcript of the Recording will be introduced into evidence at trial.

Defendants have refused that stipulation, and seek to impose the following terms in addition to those cited above: (1) the Recording will not be used in preparing for the examination, cross-examination, impeachment or rehabilitation of any witness either during a discovery deposition or during trial by any party; (2) no transcript of the

2

Recording will be used in preparing for the examination, cross-examination, impeachment or rehabilitation of any witness either during a discovery deposition or during trial by any party; (3) the parties and their agents (including counsel) shall refrain from consulting with anyone who has either listened to the Recording or read a transcript of the Recording for purposes of preparing for the examination, cross-examination, impeachment or rehabilitation of any witness either during a discovery deposition or during trial by any party.

Counsel for Plaintiff, Alan Sweetbaum and Thomas DeVine, have not listened to the recording. Undersigned counsel have also certified to Defendants' counsel that they will not use the recording for any of the purposes described above. However, should an objection arise at trial that any party consulted with someone who has listened to the recording, or that the recording was used to formulate a question for examination or cross examination of a witness, proving the objection, overcoming the objection, or demonstrating compliance with such a protective order would prove absolutely impossible. The terms of the Protective Order sought by Defendants, not stated in Defendants' Motion, are overbroad, vague, and unenforceable.

Defendants did not attach a proposed order to their Motion, and the specific relief sought by the Defendants is unclear and ambiguous. However, Defendants contend "any proposed use or endeavor to use the Mansfield recording by Kirzhner's counsel is clearly prohibited by law. Kirzhner's counsel should be prohibiting from using the recording in any manner in this case, *including formulating questions*, cross-examining witnesses, impeachment, and/or introduction into evidence." <u>Defendants' Motion</u>, Doc.

144, p. 15 (emphasis added).

Therefore, even though Plaintiff concedes and is willing to stipulate to a Protective Order concerning the alleged recording, the Court must analyze and determine whether or not the alleged recording requires the broad, unenforceable, and vague implications of such an expansive order. That analysis is dependent on a determination whether the alleged recording, as determined by applicable law governing this litigation, is illegal.

**I.      THE FEDERAL WIRETAP ACT, 18 U.S.C. § 2510 *ET. SEQ.*, IS THE CONTROLLING AUTHORITY OVER THIS MATTER.**

The Federal Wiretap Act provides, in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person who--
  (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
  (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when--
    (i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
    (ii) such device transmits communications by radio, or interferes with the transmission of such communication; or
    (iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or
    (iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or
    (v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or
> (e) (i) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511(2)(a)(ii), 2511(2)(b)-(c), 2511(2)(e), 2516, and 2518 of this chapter, (ii) knowing or having reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation,
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1).  Further:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

Under the Federal Wiretap Act it is not illegal to record a conversation when the person recording the conversation is a party to the conversation and the recording is not taken for the purpose of committing any criminal or tortious act.  Williams v. Poulos, 11 F.3d 271, 284 (1st Cir. 1993).

A.     **The Federal Wiretap Act Preempts State Laws Governing the Same Subject Matter.**

"A fundamental principle in the Constitution under the Supremacy Clause 'is that Congress has the power to preempt state law.'" Russell v. U.S., 551 F.3d 1174, 1178 (10th Cir. 2008) (citing Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000)). The preemptive effect of federal law may be apparent from the express terms of the statute, or it may be implicit. Russell, 551 F.3d at 1178 (citing Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 203-04 (1983)). "Implicit preemption of state law may occur in at least two circumstances, when: (1) Congress intends federal law to 'occupy the field,' or (2) state law is naturally preempted to the extent it conflicts with a federal statute." Id. at 1178 (citing Crosby, 530 U.S. at 372)).  A state law is preempted when it is in conflict with federal law such that "compliance with both federal and state regulations is a physical impossibility" or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (citing Pacific Gas, 461 U.S. at 204 (internal quotation marks and citations omitted)).

Courts have addressed this precise issue before: when a recording is made of a telephone call where the participants of the call reside in different states. See Roberts v. Americable Intern, Inc., 883 F. Supp. 499, 503 (E.D. Cal. 1995); Betancourt v. Nippy, Inc., 137 F. Supp. 2d 27, 32 (D.P.R. 2001); U.S. v. Testa, 548 F.2d 847, 855 (9th Cir. 1977) (finding that evidence gathered in violation of Pennsylvania law but in compliance with federal law was admissible, overruling contention that federal law did not preempt

the Pennsylvania law).

Specifically, in <u>Roberts</u> the Court reasoned:

> However, the court will not interpret the federal limited permission to intercept oral conversations granted by § 2511(2)(d) to be negated by state law which itself may invalidate such interception, and which itself may render such interception tortious. Clearly, Congress must have had in mind when enacting the "one party consent" exception pertinent here that state law regarding tape recording of conversations might be more strict than federal law.  Nevertheless, Congress chose to permit a "one party consent" rule, and it is therefore unwise to interpret this permission in federal cases in such a manner that it is automatically voided by the mere presence of a stricter state law. To so hold would be to state that Congress intended to have state law apply in federal actions which would otherwise be governed by a federal statute on point. Such an unusual result must be expressly provided by Congress and cannot be read by mere implication.

<u>Roberts</u>, 883 F.3d at 503.

The Federal Wiretap Act preempts State laws governing the same subject matter, including the Pennsylvania and Maryland laws cited by Defendants.

## II.     THE RECORDINGS WERE NOT ILLEGAL UNDER APPLICABLE FEDERAL LAW.

The Federal Wiretap Act contains an exception to liability for phone calls recorded by a party to the call so long as the recording was not made **for the purpose** of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.  18 U.S.C. § 2511(2)(d) (emphasis added).

### A.     **Defendants' Must Prove Plaintiff's Impermissible Purpose by a Preponderance of the Evidence**.

The party asserting that a recording was made for an impermissible purpose bears the burden of proving, by a preponderance of the evidence, that the recording was in fact made for an impermissible purpose.  <u>U.S. v. Phillips</u>, 540 F.2d 319, 326 n.3

(8th Cir. 1976); Betancourt v. Nippy, Inc., 137 F. Supp. 2d 27, 31 (D.P.R. 2001); Williams v. Poulos, 11 F.3d 271, 284 (1st Cir. 1993) (the party asserting impermissibility also bears the burden of overcoming the statutory defenses, demonstrating by a preponderance of the evidence that the statutory exceptions do not apply).

### B.  The Defendants Cannot Demonstrate the Appropriate Requisite Intent.

The singular fact that the recording itself is illegal under a state's laws, which Plaintiff does not admit, is not sufficient to trigger liability under the Federal Wiretap Act of making a recording "for the purpose of committing any criminal or tortious act." Boddie v. American Broadcasting Companies, Inc., 731 F.3d 333, 339 (6th Cir. 1984) (finding that the Federal Wiretap Act requires a tortious or illegal act separate from the recording itself); Stamatiou v. U.S. Gypsum Co., 400 F. Supp. 431, 436 n.3 (N.D. Ill. 1975).  Rather, the Defendants must demonstrate by a preponderance of the evidence a further criminal or tortious act.

> 1. *It is Legal to Record a Phone Conversation for the Purpose of Preserving an Accurate Record of the Conversation to Prevent Future Distortions.*

Under clear precedent in the Federal Courts, "when the purpose of an interception is to make or preserve an accurate record of a conversation in order to prevent future distortions by a participant, the interception is legal."  U.S. v. Underhill, 813 F.2d 105, 110 (6th Cir. 1987); U.S. v. Dale, 991 F.2d 819, 841 (D.D.C. 1993); By-Prod Corp. v. Armen-Berry Co., 668 F.2d 956, 959-60 (7th Cir. 1982) (commenting that taping phone calls to make an accurate record of a conversation "is not illegal, even when the recording is made in the hopes of producing evidence of an illegal

conspiracy"); U.S. v. Ruppel, 666 F.2d 261, 271 (5th Cir. 1982) (holding that a person may record his confederates in the hope of obtaining evidence against them); Betancourt v. Nippy, Inc., 137 F. Supp. 2d 27, 32 (D.P.R. 2001) (holding that a recording was legal where it was made to prevent the other party from distorting the conversation or any oral agreement reached, "and to otherwise keep the most accurate record possible of what transpired over the telephone"); Moore v. Telfon Communications, Corp., 589 F.2d 959, 965 (9th Cir. 1978) (reasoning that recording a phone call for the specific purpose of creating evidence for use in a subsequent suit against another individual is legal under the Federal Wiretap Act); Consumer Electric Prods., Inc. v. Sanyo Elec. Inc., 568 F. supp. 1194, 1197 (D. Colo. 1983) (holding that the interceptor is able to use the recording in the subsequent lawsuit regardless of whether the recording was made for offensive or defensive purposes).

> 2.  *The Purpose of the Recording Must be Criminal or Tortious. Liability under the Federal Wiretap Act does not Attach to the Mere Fact that the Conversation was Criminal or Tortious.*

A recording is legal even if the purpose of the conversation is criminal or tortious, but the purpose for making the recording is not. U.S. v. Turk, 526 F.2d 654, 657 n.1 (5th Cir. 1976) (citing Smith v. Cincinnati Post & Times-Star, 475 F.2d 740 (6th Cir. 1973); Smith v. Wunker, 356 F. Supp. 44 (S.D. Ohio 1972) (finding that "the party exemption is inapplicable only if the interception is 'for the purpose of committing any criminal or tortious act.' The exemption applies, then, even if the purpose of the conversation is criminal, as long as the purpose of the recording is not.")).

The Federal Wiretap Act expressly states its intent that a party to a conversation

is liable for recording his or her own conversation only under the narrowest circumstances. Under the Defendants' lone contention of tortious intent (tortious interference with contract), they must demonstrate by a preponderance of the evidence that Plaintiff made the <u>recording</u> for the purpose of inducing Mr. Mansfield to breach his confidentiality obligations to Defendants. Even if the Defendants prove that Plaintiff had a *conversation* with Mr. Mansfield for the purpose of interfering with Mr. Mansfield's confidentiality agreement, such a showing is insufficient under the Federal Wiretap Act; they must demonstrate that she made the *recording* for that purpose.

      3.    *The Person Unknowingly Recorded Must have had a Reasonable Expectation of Privacy Concerning his Statements.*

The Federal Wiretap Act is only applicable where parties to the communication have a reasonable expectation of privacy with respect to what is said and intercepted. <u>Bianco v. American Broadcasting Companies, Inc.</u>, 470 F. Supp. 182, 185 (N.D. Ill. 1979); <u>Kee v. City of Rowlett, Tex.</u>, 247 F.3d 206, 213 (5th Cir. 2001) (finding that a speaker who makes statements in the presence of others, even without the intention to be overheard, does not have a reasonable expectation of privacy in the communication; no liability under the Wiretap Act could attach); <u>Campiti v. Walonis</u>, 611 F.2d 387, 396 (1st Cir. 1979) (applicability of the Federal Wiretap Act turns on whether the privacy of the telephone conversation has been invaded in a manner offensive to the words and intent of the statute).

    **C.**    **<u>The Recording is Admissible Evidence under Federal Law and is therefore Admissible in the Federal Court for the District of Colorado</u>.**

Federal law is dispositive of this issue, not state law. If the evidence is

admissible under federal law it is admissible in federal court, even assuming *arguendo* its acquisition violated state law.  U.S. v. Testa, 548 F.2d 847, 855 (9th Cir. 1977); see also Consumer Electric Prods., Inc. v. Sanyo Elec. Inc., 568 F. supp. 1194, 1197 (D. Colo. 1983) (holding that the interceptor is able to use the recording in the subsequent lawsuit regardless of whether the recording was made for offensive or defensive purposes); Moore v. Telfon Communications, Corp., 589 F.2d 959, 965 (9th Cir. 1978) (reasoning that recording a phone call for the specific purpose of creating evidence for use in a subsequent suit against another individual is legal under the Federal Wiretap Act).

Being admissible into evidence in this Court, the Court should not impose the unreasonable limitations sought by the Defendants applicable to illegal recordings.

### III. ALTERNATIVELY, IF THE FEDERAL WIRETAP ACT DOES NOT PREEMPT STATE LAWS, COLORADO CONFLICT OF LAW RULES DICTATE APPLICATION OF COLORADO LAW TO THIS ISSUE.

When a question of law arises which implicates the interpretation or enforcement of multiple state's laws, the Federal Court sitting in diversity must look to the conflict of law rules of the forum state.  Ajjarapu v. AE Biofuels, Inc., 728 F. Supp. 2d 1154, 1163 (D. Colo. 2010).  The conflict of laws rule in Colorado is settled and established. "Where a conflict of laws question is raised, the objective of the Restatement (Second) is to locate the state having the "most significant relationship" to the particular issue.  In analyzing which state has the most significant relationship, the principles set forth in Restatement (Second) sections 6 and 188 are to be taken into account.  Once the state having the most significant relationship is identified, the law of that state is then applied

to resolve the particular issue." Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 601 P.2d 1369, 1372 (Colo. 1979).

The Restatement, section 6, sets forth considerations governing general conflict of laws objectives, and provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>     (a) the needs of the interstate and international systems;
>     (b) the relevant policies of the forum;
>     (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
>     (d) the protection of justified expectations;
>     (e) the basic policies underlying the particular field of law;
>     (f) certainty, predictability, and uniformity of results;
>     (g) ease in the determination and application of the law to be applied.

*Restatement (Second) Conflict of Laws* § 6.

The Restatement, section 188, sets forth considerations governing contract actions, and provides:

> (1) The rights and duties of the parties with respect to a contract issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in section 6.
> (2) In the absence of an effective choice of law by the parties, the contracts to be taken into account in applying the principles of section 6 to determine the law applicable to an issue include:
>     (a) the place of contracting;
>     (b) the place of negotiation of the contract;
>     (c) the place of performance;
>     (d) the location of the subject matter of the contract;
>     (e) the domicile, residence, nationality, place of incorporation and place of business of the parties;

*Restatement (Second) Conflict of Laws* § 188.

The Restatement, section 145, sets forth considerations governing tort actions,

and provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>    (a) the place where the injury occurred,
>    (b) the place where the conduct causing the injury occurred,
>    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>    (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Restatement (Second) Conflict of Laws* § 145.

### A. Colorado has a Statutory Directive Concerning the Subject Matter of Party Recordings of Telephone Conversations. Colorado State Law Applies.

The first consideration under the Colorado conflict of law analysis is whether Colorado has a statutory directive concerning the subject matter. Colorado has a statute specifically on point:

> (1) Any person ***not a sender or intended receiver*** of a telephone or telegraph communication commits wiretapping if he:
>    (a) Knowingly overhears, reads, takes, copies, or records a telephone, telegraph, or electronic communication with the consent of either the sender or a receiver thereof or attempts to do so....

C.R.S. § 18-9-303 (emphasis added). Colorado has adopted a version of the Federal "one party consent" rule, but is less restrictive than the Federal Wiretap Act insofar as there is no exception for recordation with the intent to commit a criminal or tortious act.

Under the Colorado conflict of laws analysis, the inquiry ends here, where Colorado has expressly adopted a statutory directive that "one party consent"

13

recordings are legal. Colorado law applies to this matter. The recording is not illegal under Colorado law.

### B. Colorado has the Most Significant Relationship to this Issue Concerning the Use of Evidence in the Federal District Court for the District of Colorado.

Even assuming Colorado's statutory directive is not dispositive of this analysis, Colorado has the most significant relationship to this issue. This action is taking place in Colorado, where Colorado has a significant interest in applying its own laws to the case and controversy. See Allison Drilling Co., Inc. v. Kaiser Steel Corp., 502 P.2d 967, 968-69 (Colo. Ct. App. 1972) (applying forum non conveniens analysis and reasoning that the forum state has a significant interest in the application of its own laws to the matter in dispute) (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220 (1957) and Int'l Shoe Co. v. Washington Office of Unemployment Compensation, 326 U.S. 310 (1945)).

The contract which is the subject of this dispute was negotiated in Colorado, executed in Colorado and performed/not performed in Colorado, involving Colorado individual and corporate defendants. *Restatement (Second) Conflict of Laws* § 188(2)(a), (b), (c), (d).

The tort alleged by Defendants (tortious interference with contract) relates to a Confidentiality Agreement executed in Colorado between then-Colorado residents; the potential Plaintiffs are Colorado residents; and the alleged injury would be to Colorado individuals and entities; and the relationship between Defendants and Mr. Mansfield is centered in Colorado. *Restatement (Second) Conflict of Laws* § 145(2)(a), (c), (d).

Colorado law applies to this matter.

14

    **C.  Alternatively, Virginia, the Venue Where the Recording Was Made, Has a Significant Relationship to the "Occurrence," and its Laws Should be Considered.**

Following the conflict of laws analysis, the state with the second most significant relationship to the occurrence is Virginia: the residence of the Plaintiff in this matter and the location where the recording was made.

Virginia law mirrors Colorado law on the legality of recordings made by parties to the conversation. Specifically:

> It shall not be a criminal offense under this chapter for a person to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

Va.Code.Ann. §19.2-62(B)(2).

Virginia is the home state of Plaintiff and the venue where the recording was made. To the extent Colorado is not the jurisdiction with the most significant relationship to the issue at hand, Virginia law should be applied to this matter. Plaintiff's recording of her conversation with Mr. Mansfield was legal under Virginia law.

    **D.  Pennsylvania, the State of Residence of Mr. Mansfield, has Disclaimed any Compelling Interest in the Enforcement of its Laws to Interstate Communications.**

Pennsylvania has specifically held that it has no state interest in applying Pennsylvania law to a phone call crossing state boundaries. <u>Larrison v. Larrison</u>, 750 A.2d 895, 898 (Pa. Super. Ct. 2000). In <u>Larrison</u>, Karen Larrison made a phone call from her home in Pennsylvania to her husband Timothy Larrison who was staying with his sister in New York. <u>Larrison</u>, 750 A.2d at 897. Timothy recorded the phone conversation from his place in New York; the call was originated by Karen in

15

Pennsylvania. Id. Karen "engaged in a continuous string of hostile and obscene comments directed at Timothy and his sister." Id. Pennsylvania was the venue of the divorce action between Timothy and Karen. Id.

The recording was introduced into evidence *in the Pennsylvania Court* over Karen's objection. Id. On appeal, Karen contended that "the trial court erred in admitting a tape-recorded conversation into evidence because the conversation was recorded in violation of Pennsylvania and Federal wiretap laws." Id. New York is a one-party consent state, requiring only the consent of the sender or receiver. Id. at 898 (citing NY CLS Penal § 250.00).

The Court affirmed the Pennsylvania trial court's admission of the recording into evidence, holding:

> While the Commonwealth [of Pennsylvania] has an interest in protecting its citizens from having telephone conversations recorded without proper consent, we, as the courts of this Commonwealth, have no power to control the activities that occur within a sister state. Timothy's sister did not violate any New York state law in obtaining the recording of the telephone conversation. Pennsylvania has no state interest in a recording of a telephone conversation placed to New York, even if the recording is later used in the Pennsylvania Courts.

Id. (citing Commonwealth v. Sanchez, 716 A.2d 1221, 1223-24 (Pa. 1998) (holding information obtained through valid and legal means in a sister state may be used to establish probable cause for a search warrant in Pennsylvania even though the means used were not valid in Pennsylvania) and Commonwealth v. Bennett, 369 A.2d 493 (Pa. Super. Ct. 1976) (holding that wiretap authorized under New Jersey wiretap law could be used to support a search warrant in Pennsylvania even though the New Jersey wiretap violated Pennsylvania law)); see also Broughal v. First Wachovia Corp., 14 Pa.

D. & C. 4th 525, 526-27 (C.P. Northampton 1992) (finding that Pennsylvania wiretap law does not apply when the recording is made in a different state, North Carolina in this instance).

The Pennsylvania Court held ***"[s]ince the recording of the telephone conversation did not violate New York law because Timothy's sister was a party to the conversation and consented to its recording, we find that it was admissible evidence in a Pennsylvania Court proceeding***." Larrison, 750 A.2d at 898-99 (emphasis added).

Larrison is dispositive of the Defendants' contention that the recording at issue here is in violation of Pennsylvania law. There, as here, the recording was made in a sister state (Virginia) that has a one-party consent law. When faced with a fact pattern nearly identical to the fact pattern presented here, the Pennsylvania Court disclaimed its ability or interest to control activities occurring in a sister state, and further disclaimed its own interest in its wiretap statute by finding *in four separate published opinions* (Larrison, Sanchez, Bennett, and Broughal) that evidence obtained in direct conflict with Pennsylvania's wiretap statute was admissible in Pennsylvania Courts when the recording was taken legally in a sister state.

To the extent Pennsylvania law is controlling of this issue in this Colorado District Court case, Pennsylvania has disclaimed any interest or ability to enforce its laws over a sister's state's inconsistent laws, and the recording was made legally and consistent with Pennsylvania law and precedent.

### E. Maryland and Delaware have Minimal, if any, Relationship to the Matters at Issue, and Application of Those Laws are Trumped by Colorado and Virginia Law and Pennsylvania Precedent.

Defendants contend that Mr. Mansfield was in transit from Philadelphia to Baltimore, and traveled from Pennsylvania, through Delaware, to Maryland. The issues concerning statements made which would arguably be in violation of Mr. Mansfield's confidentiality agreement with Plaintiff is a factual issue for resolution at the evidentiary hearing.

From the conflict of laws analysis, the respective state interests of Delaware and Maryland are minimal. The conversation was between a Pennsylvania and Virginia resident, recorded in Virginia, concerning a Colorado lawsuit, and contracts (either between Plaintiff and Defendants or between Defendants and Mr. Mansfield) negotiated, executed, and performed in Colorado. Indeed, Delaware and Maryland's interest in the phone call relates only to the portions of the phone call that occurred within each state, but which occurred on interstate railway lines, lending back to the Federal preemption and interstate commerce analyzed above. Neither Delaware nor Maryland law should be applied to this action.

Moreover, to the extent Delaware law could even conceivably be applicable, Delaware's Wiretap statute is identical to the Federal Wiretap Act, permitting one-party consent recordings so long as the intention of the recording is not criminal or tortious. 11 Del. C. § 2402.

### **CONCLUSION**

Plaintiff consents to a Protective Order governing the recording. However, the

18

recording is not illegal under Federal, Colorado, Virginia, or Delaware law, and is not illegal under the Pennsylvania Court's interpretation of Pennsylvania law as applicable to analogous facts. Under either a federal preemption framework or under a conflicts of law analysis, the Defendants' attempt to impose a Protective Order precluding "the formulation of questions" based on the recording is overbroad, vague, unenforceable, and unwarranted.

Plaintiff respectfully requests entry of a Protective Order consistent with the terms of the Proposed Order attached hereto.

Respectfully Submitted this 8th Day of April, 2011.

                                       *s/ Thomas L. DeVine, Jr.*
                                       Thomas L. DeVine, Jr., Esq.
                                       Sweetbaum, Levin & Sands, P.C.
                                       1125 Seventeenth Street, Suite 2100
                                       Denver, CO 80202
                                       tdevine@sweetbaumlevinsands.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of April, 2011, a true and correct copy of the foregoing **PLAINTIFF'S HEARING BRIEF ON DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER CONCERNING ILLEGAL RECORDINGS** was served electronically, to:

Marc F. Pappalardo, Esq.
Pappalardo Law Group, LLC
1919 14th St., Suite 510
Boulder, CO 80302
marc@pappalardolawgroup.com

Daniel W. Glasser, Esq.
Glasser Law Group, LLC
4582 S. Ulster Street Parkway, Suite 1650
Denver, CO 80237

*s/Thomas L. DeVine, Jr.*
_____
Thomas L. DeVine, Jr.