**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  <u>1:09-CV-02858 -CMA-BNB</u>

ILONA KIRZHNER, an individual,

    Plaintiff/Counterdefendant,

v.

DAVID SILVERSTEIN, an individual, *et al.*,

    Defendants,

---

**BMGI DEFENDANTS' SUMMARY JUDGMENT REPLY**

The BMGI Defendants submit this Summary Judgment Reply:

## <u>INTRODUCTION</u>

An ounce of prevention is worth a pound of cure.

When BMGI restructured its debts in October of 2009, Silverstein's obligation to Kirzhner remained fully-secured by his stock in BMGI Corp.  If Kirzhner thought otherwise, she could have provided the contractual notice and an opportunity to cure any perceived risk to her collateral.  Indeed, that is precisely what the contract required her to do (in writing, *via* certified mail).  Kirzhner failed to provide contractual notice and the right to cure because she does not like the remedy she bargained for.  Instead, she embarked on a three-year quest for a remedy beyond her contractual rights.  By asserting a laundry-list of perceived wrongdoings, Kirzhner hopes this Court will rewrite the bargain and award a vaguely-defined set of damages that *cannot be proven*. Summary judgment is proper because (1) Kirzhner admittedly failed to give the

Defendants notice of their alleged wrongdoing, and (2) she cannot prove any damage resulting from their supposed failure to take corrective action. BMGI will address notice and damages in greater detail and treat the subissues as succinctly as possible.[1]

## **STATEMENT OF UNDISPUTED MATERIAL FACTS**

1 & 2: Admitted (underlying description of transaction).

3: She denied contract interpretation issue but Section 2.01 does not prohibit an assignment of contract or contain any restrictions on the "Corporation."

4, 5, & 6: Admitted (SPA requires her to provide written notice by certified mail and cure period for default).

7: Despite her deposition testimony to the contrary, Kirzhner denies that Silverstein has never told her that she would never be repaid under the note.[2]

8: Kirzhner denies she failed to provide Defendants with a notice of default but she produced no such notice. Rather, her only support for a denial is a argument that "any required notice is superfluous and futile…."

9: Admitted (Valuation Covenant requires valuation by the company's auditors)

10: Kirzhner denies that the company's auditor has been ACM from 2002 (when she was COO) to date by stating that "Plaintiff did not understand ACM to be an independent auditor." Her purported lack of knowledge as to who the company's auditor was does not rebut the fact that ACM was the auditor.

11: Kirzhner denies ACM also did her tax returns for a "long period of time" because it was only 2 years.

12: Kirzhner denied the interpretation of Section 2.03 of the SPA.

13: Admitted (SPA has an express covenant of good faith).

14: Citing to irrelevant evidence, Kirzhner denies she did not know how §2.03 express covenant of good faith imposed a different obligation than the implied covenant of good faith. She fails to explain any difference between the obligations imposed.

15: Kirzhner denies she was never a creditor based on the legal argument that Silverstein's grant of a security interest in stock that he owned, which was BMGI Inc. Stock, made her a creditor and/or the obligation to maintain the value of the collateral

---

[1] While BMGI cannot – due to space constraints – re-visit every argument made in its Motion for Summary Judgment, Kirzhner did not respond to several dispositive points. The arguments made in these sections of the Motion for Summary Judgment are uncontested: Sections I(A), I(C), II(A), II(B), II(C), II(E), II(H), III(C), and VI.

[2] Q: "Again, you would agree with me that David Silverstein has never told you that you will not be repaid under your promissory note?" A: "Nor has he told me he will pay" Kirzhner2, Ex. E, p. 60:15-18
Q: "And nowhere in his [Silverstein's] October 2009 email, Ex. 14, does he say that you will never be repaid under the note?" A: "No, he doesn't say that he is never going to pay me under the Note. He says, you should not expect any money from me or BMG anytime soon." Kirzhner1, Ex. C, pp. 105:25 – 106:6

2

makes her a creditor.

16:  Kirzhner denies that the SPA and the Note did not give her the right to limit Silverstein's salary and distributions despite the fact that her cited testimony directly contradicts her denial.  (Kirzhner1, Ex. C, pp. 96:19-23, 133:8-16 & 134:13-17.)

17:  Kirzhner denies the SPA and Note do not require Silverstein to pay a portion of his salary/distributions to her despite the fact that her cited testimony directly contradicts her denial.  (Kirzhner2, Ex. E, p. 83:11-25.)

18:  Kirzhner denied that the SPA did not prevent any encumbrance of the company's assets despite the fact that her cited testimony directly contradicts her denial. (Kirzhner2, Ex. E, p. 80:14-19.)

19:  Kirzhner denied it was not wrong for DSI to lend money to BMGI and it created no conflict despite the fact that her cited testimony directly contradicts her denial. (Kirzhner2, Ex. E, p. 49:6-14.)

20:  Kirzhner is unable to deny BMGI Inc. was in default with FCP for covenant reasons.  However, Kirzhner admits the fact in her response to Silverstein Defendants' Motion for Summary Judgment.  (Ptf. Resp. to Silverstein Defs. SOF ¶ 6.)

21:  Kirzhner is unable to deny that FNB intended to foreclose because of covenant defaults.

22:  Citing irrelevant evidence, Kirzhner denies that DSI purchased FNB note in an effort to save the company.

23: Citing irrelevant evidence, Kirzhner denies that when DSI purchased the FNB note it acquired all rights of FNB.

24 & 25:  Kirzhner admitted that DSI was formed to orchestrate a loan workout with FCP and that DSI later took steps to foreclose.

26:  Citing irrelevant evidence, Kirzhner denies that the company switched from a strict foreclosure process to a public sale.  (*But See Silverstein's Reply to SOF ¶¶ 11 & 12*.)

27:  Citing to irrelevant evidence, Kirzhner denies the sale was not consummated on September 24, 2009.  (*But See* Silverstein's Reply to SOF ¶ *13*.)

28:  Kirzhner denies that her attorney Tim Schafer attended the auction posing as a furniture dealer despite the fact that Schafer wrote to Alan Sweatbaum a few hours after the auction: "he [Silverstein] thought I was just some guy looking for cheap furniture (and even asked if I was a furniture dealer); and I was purposefully dressed very casually." (Ex. J.)

29:  Kirzhner denies that no Defendant ever made any misrepresentations on which she relied, but fails to identify any misrepresentations on which she relied, and importantly, how she relied on them.  Kirzhner previously acknowledged that her fraud claim was not based on any alleged "false statements or fraudulent concealments aimed at inducing action." (Kirzhner's Response to Silverstein Defendants' Rule 11 Motion, Doc. 34, p. 9); *see also* Kirzhner's Response to Silverstein Defendants' Motion to Dismiss Initial Complaint, Doc. 18, pp. 24-26.)

30: Kirzhner denies that she never sent the company any correspondence where she threatened a lawsuit by stating "threatening suit would be superfluous" and Silverstein allegedly failed to return calls. But she provides no document that threatened suit.

31: Citing to evidence that does not identify a date the auction was connsumated, Kirzhner denies that the sale to BMGI Corp. was consummated on October 6, 2009 when the bill of sale and related documents were agreed upon.

32: Citing to irrelevant evidence, Kirzhner denies BMGI Corp. had to be BMGI Inc.'s successor in order for Silverstein to avoid millions of dollars in personal tax liability, and liability with the Department of Labor for eliminating an ESOP (and Kirzhner's expert agreed that the tax liabilities were real).[3]

33: Citing to irrelevant evidence, Kirzhner denies the agreements that consummated the BMGI reorganization were finalized in October 2009. (*But see* Ex. D, ¶ 42; Ex. 15 & 22).

34: Kirzhner is unable to deny that BMGI Holdings is wholly owned by BMGI Corp.

35: Without factual support, Kirzhner denies Silverstein took no money for himself when BMGI Corp. became BMGI Inc.'s successor based on an unsubstantiated argument that DSI made $250,000 in interest in August 2009. She presented no testimony from any lay or expert witness to substantiate this patently false claim. She also argues that he took a shareholder distribution from BMGI without providing any evidence (because there is none) that a shareholder distribution was made anytime around the 2009 Reorganization.

36: Admitted (BMGI Inc. and BMGI Corp. continuity of ownership).

37: Kirzhner denies that BMGI Corp. expressly assumed all of BMGI Inc.'s liabilities in October 2009 despite the fact that the October 2009 Minutes (Ex. O) expressly so state. She challenges the authenticity of the minutes without any corroborating evidence. (See Reply SOF ¶ 38). She erroneously argues that all debts were not assumed because of a workout in July 2009 (months before the Article 9 sale) regarding a $5,000 printer, but fails to mention that the date of that workout was months before the Article 9 auction.

38: Claiming an authenticity issue without corroborating evidence from her computer forensic expert John Bryan, Kirzhner denies the authenticity of BMGI Corp. October 6, 2009 Minutes that state all liabilities were assumed and BMGI Corp.'s successor status. Kirzhner's questions the authenticity of BMGI Corp.'s Minutes since BMGI North America Corp. ("BMGI NA"), a totally separate company, has corporate minutes that do not refer to BMGI NA's successor status to BMGI Inc. But BMGI NA is not a successor to BMGI Inc. and thus has no such language. Different minutes for different companies do not create an authenticity issue.

39: Kirzhner denies that BMGI Corp. treated itself for all purposes as BMGI Inc. based on her counsel's citation to filing statutory merger documents in November 2010.

---

[3] Kirzhner also indicated that it was "an abuse of the discovery process" to submit Silverstein's affidavit because counsel provided a limited objection in Silverstein's deposition as to privilege but Silverstein continued to answer the question.

39a-d: Citing to no evidence, Kirzhner denies that BMGI Corp. and BMGI Inc. employees received W-2's from one company, had all stock options carried over and used the same insurance, pension and benefit plans. She erroneously claims that "the Defendants have not disclosed documentations supporting these conclusory allegations," but these documents were produced by Defendants and are even referenced in Mr. Callison's expert report (Exhibit AA, p. C-2 (last page), item 26 - 29 of documents relied on).

40: Kirzhner states she is unable to deny that every employee, officer and director of BMGI Inc. became an officer, director and employee of BMGI Corp. Citing to no evidence, Kirzhner denies this fact in her Response Silverstein Defendants' Motion for Summary Judgment. (Ptf. Resp. to Silverstein Defs. SOF ¶ 27.)

41: Kirzhner denies that BMGI Corp. operated the same business as BMGI Inc. solely because "BMG Taiwan and BMG S. Africa were sold to BMGI Holdings." However, Kirzhner was unable to deny that in SOF ¶ 34 that BMGI Holdings is a wholly owned subsidiary of BMGI Corp.; so that business is still conducted under BMGI Corp.

42: Kirzhner admits that statutory merger documents were filed.

43: Kirzhner denies that she testified that she is fully collateralized despite her deposition testimony to the contrary. (Kirzhner2, Ex. E, p. 48:5-8.)[4]

43a: Kirzhner denies that the fair market value of BMGI Corp./BMGI Inc. was $9.45 million in October 2009 based on her expert's report. Her expert, however, testified that he is not qualified to render such an opinion. A Motion to Strike his opinion, filed contemporaneous with this Reply, is incorporated by reference. Kirzhner presents no evidence to contradict the value of the company was in December 2010.

43b: Citing to irrelevant evidence, Kirzhner denies that the valuation of the company was $17.447 million in July 2009, without submitting any converting evidence as to the value of the company.

43c: Kirzhner is unable to deny that the company is worth more today than it was in December 2010.

43d: Kirzhner denies that her expert valued BMGI Inc./BMGI Corp. at $21.66 million in December 2010 because "Plaintiff's expert valuation is of BMGI Corp." despite conceding in response to BMGI Defendants' SOF ¶ 42 that the companies statutorily merged a month before in November 2010 and thus are one company.

44: Kirzhner denies that Silverstein offered in writing in December 2010 and April 2011 to pay for a valuation that would be conducted by BMGI's by independent auditors they "are inadmissible under F.R.E. 408." However, Silverstein specifically

---

[4] Q: "So it's your understanding as you sit here today that BMGI Inc. is worth at least the unpaid purchase price of your stock, correct?" A: "Post November 2010, yes." (Kirzhner2, Ex. E, p. 48:5-8.) Q: "And you have no reason to believe that the collateral in BMGI Corp. is worth less than the unpaid purchase price for your stock, correct?" A: "As of the date of this deposition, that is correct." (*Id.*, p. 46:20-23.)

stated in his April 2011 letter that it was not being presented under Rule 408, since it was "not a settlement offer" and "asked for nothing in return." (Ex. Q.)

45:   Kirzhner denies Silverstein's reaffirmation in this SOF that she is fully collateralized and will do anything to provide her adequate assurance.

46:  Kirzhner denies that her expert testified that he did not have any opinion as to any specific damages she may have suffered regarding any specific claim in her Amended Complaint despite deposition testimony to the contrary. (Hazel Dep., Ex. R, p. 112:1-17.)[5]

47:  Kirzhner denies that she was unable to explain how she was damaged by any alleged breach of the Valuation Covenant or a fraudulent transfer despite providing no answer in response to Interrogatory No. 7 (Ex. F) or in her deposition when asked repeatedly: "I can't answer that question, Marc." (Kirzhner2, Ex. E, p. 63:11-22.)

48:  Kirzhner denies that she was unable to explain how she was damaged by any alleged breach of the Valuation Covenant or a fraud transfer.  But she gave no answer in response to Interrogatory No. 7 (Ex. F) or in her deposition when asked repeatedly: "I can't answer that question, Marc." (Kirzhner2, Ex. E, p. 63:11-22.)

49 & 50:  Citing to irrelevant evidence, Kirzhner denies that DSI never owned BMGI Inc.'s assets by quoting Silverstein's deposition where was he asked if "DSI conducted the auction" as an auctioneer and not asked if DSI ever owned the assets.[6]

## ARGUMENT

### I. SUMMARY JUDGMENT IS WARRANTED BECAUSE KIRZHNER CANNOT PROVE DAMAGES.

To prevail on her claims, Kirzhner must demonstrate that she has been damaged by the wrongdoing she alleges:

- **Breach of Contract**: *Terrones v. Tapia*, 967 P.2d 216, 218-19 (Colo. Ct. App. 1998) (holding that summary judgment in defendants' favor was appropriate where plaintiffs failed to provide evidence of breach of contract damages).

---

[5] Q: "So, again, just to make it clear on damages, your only opinion on damages is the amount that you believe is owed under the note, correct?" A: "Again, from a monetary standpoint, that the only calculation we make of damages specifically related to a number." (Hazel Dep., Ex. R, p. 112:1-17.) Q: "If BMGI Corp. has always been worth more than the unpaid purchase price and Ms. Kirzhner has a security interest in BMGI Corp. stock, can you tell me how she was damaged by any violation of the valuation covenant?" A: "You know… I'm not trying to assign to a specific covenant in the agreement or a specific claim in the complaint. We have calculated the unpaid amount of the promissory note that is due as of the date of our report." (*Id.* p. 111:6-21.)

[6] Q: "Then DSI conducted an auction of BMGI Inc.'s assets, which was the collateral for the DSI loan, correct" A: "Evergreen, yes" [NEED CITE]

- **Implied Covenant**: *Buell v. Sec. Gen. Life. Ins. Co.*, 987 F.2d 1467, 1472 (10th Cir. 1993) (rejecting that plaintiff's claim for extra-contractual damages for a breach of the implied covenant of good faith and fair dealing).
- **Fraud:** *Western Cities Broad., Inc. v. Schueller*, 830 P.2d 1074, 1078 (Colo. Ct. App. 1991) (lower court should have granted a directed verdict on fraud claim because of failure to demonstrate damages).
- **CUFTA**: *Miller v. Kaiser*, 433 P.2d 772, 775-75 (Colo. 1964) (no damages where there has not been devaluation of assets).
- **Breach of Fiduciary Duty**: *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 459-60 (Colo. Ct. App. 2003) ("[d]amages are a necessary part of establishing a prima facie case of breach of fiduciary duty").
- **Aiding and Abetting**: *Holmes v. Young*, 885 P.2d 305, 308-09 (Colo. Ct. App. 1994) (must prove damages for aiding and abetting a breach of fiduciary duty).
- **Conspiracy:** *In re Estate of Brooks*, 596 P.2d 1220, 1222 (Colo. Ct. App. 1979)(". . . without damages no action for conspiracy will lie") (citations omitted).

Kirzhner tries but fails to address this fatal deficiency. Kirzhner cannot sue for Silverstein's failure to pay the Note because her only remedy is to repossess her collateral. (Order Granting Motion to Dismiss, Document No. 59, p. 13) So instead, Kirzhner attempts to create the impression that the Court should exempt her damage theory from scrutiny since the Defendants are obviously "bad actors." But this is not a popularity contest. Regardless of how much mud Kirzhner flings, the hard fact remains that she cannot articulate a damage theory that is legally sound.

Kirzhner bargained for a nonrecourse Note secured by stock with value at least equal to the unpaid balance of the Note. She still possess what she bargained for, and more. Kirzhner's entire damage theory is that her collateral was somehow devalued. But Kirzhner cannot prove damages because she never attempted to repossess her collateral and that collateral is now worth five times the amount required under the contract.

II. **KIRZHNER'S FAILURE TO GIVE NOTICE AND AN OPPORTUNITY TO CURE WARRANTS SUMMARY JUDGMENT ON HER CONTRACT CLAIMS.**

It is also undisputed that the Note and SPA require Kirzhner to give written notice of any default and an opportunity to cure.  Although Kirzhner argues that filing a lawsuit is close enough to providing notice, she violated the contract by not providing the cure period that the parties bargained for.  *See Carleno Coal Sales, Inc. v. Ramsay Coal Co.*, 270 P.2d 755, 756 (Colo. 1954).  Thus, the real question is whether the law permits a court to disregard contractual notice and cure requirements when one party to the agreement decides that complying would be a waste of time.  There is no precedent for making that leap.

This Court must presume that each part of a contract has a purpose, and should adopt a construction which gives legal effect to every part of the contract.  Thus, the inclusion of a contractual notice and cure requirement makes that obligation mandatory.  Indeed, the failure to give contractually-required notice and an opportunity to cure waives any alleged default.  *Carleno Coal Sales, Inc. v. Ramsay Coal Co.*, 270 P.2d 755, 757 (Colo. 1954).  Compliance with a contract's notice and cure requirement is therefore a condition precedent to maintaining a breach of contract claim.  *Northwest Water Corp. v. City of Westminster*, 432 P.2d 757, 759 (Colo. 1967); *Century Enter., Inc. v. Blair*, 429 P.2d 291, 292-93 (Colo. 1967); *Denver Ventures, Inc. v. Arlington Lane Corp.*, 754 P.2d 785, 788 (Colo. App. 1998); *cf. Dillingham v. University of Colo.*, 790 P.2d 851, 855 (Colo. App. 1990) (failure of notice is a breach).

Kirzhner cites a repudiation of contract case to support the contention that her notice obligations were excused because complying would have been "futile."  (*See* Opposition at p. 19, citing *Highlands Ranch University Park, LLC v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1024 (Colo. App. 2005)).  There is no evidence, however,

that any of the Defendants ever repudiated their obligations.  (*See* fn. 2 *infra*.) Silverstein temporarily stopped making payments under the Note, but he had the contractual right to do so.  And Kirzhner's only gripe against BMGI is that she thinks the company let its stock value momentarily dip below the unpaid purchase price remaining on Silverstein's Note (a belief that flies in the face of the evidence).

Importantly, the default that Kirzhner complains about could have easily been cured if she had given the requisite notice.  As detailed in her Motion for Partial Summary Judgment (Docket No. 221), Kirzhner insists that BMGI Inc. was worthless from October 3, 2009 until the recordation of a statutory merger in November of 2010.  But Defendants recorded that document as soon they learned that Kirzhner objected to her security interest in Silverstein's BMGI Corp. stock.  Had she clarified this alleged default earlier and provided the contractual notice and cure opportunity, Defendants could have recorded a statutory merger immediately or found some other way to assure Kirzhner that the entities are one-in-the-same.  Instead, Kirzhner has forced Defendants to react to her ever-evolving legal theories and, each time, face a new allegation of breach without the contractual right to cure.  (*See* Exhibit Q.)

The latest evolution in Kirzhner's legal theory is both mistimed and glaringly problematic.  Despite failing to allege it in her Amended Verified Complaint, it now appears that Kirzhner contends that the merger between BMGI Inc. and BMGI Corp. amounted to an improper "substitution" of collateral in violation of Section 2.01 of the SPA.  Defendants addressed the substantive defects of this new theory in their Response to Kirzhner's Motion for Partial Summary Judgment (Document No. 261). And while those arguments apply equally here, her failure to give notice and an

opportunity to cure this alleged breach bars her claim.  Defendants had no opportunity to correct the supposedly improper "substitution" – for instance, by seeking Kirzhner's consent.  And more important, since this theory did not materialize until the summary judgment phase, Defendants had no chance to conduct discovery on the issue.

Having refused to satisfy this condition precedent, Kirzhner's contract claims (claims 1 and 2) should be dismissed.

## III. KIRZHNER REFUSAL TO SEEK A VALUATION BY THE CORPORATION'S INDEPENDENT AUDITORS BARS HER CONTRACT CLAIM.

The Valuation Covenant requires that "(i) the valuation of the Corporation, *as determined by the Corporation's independent auditors* and (ii) the value of any replacement collateral" be "at least equal to the then unpaid portion of the Purchase Price…." (Ex. A).  It is *undisputed* that Kirzhner has not obtained a valuation from the Corporation's independent auditors.  In fact, she declined Silverstein's repeated offers to assist in securing that opinion.  (SOF ¶ 44).  The mere fact that Kirzhner now claims she was unaware that ACM served as the Corporation's independent auditors is irrelevant.  The SPA requires their opinion.  And having failed to obtain it, Kirzhner's breach of contract claim fails as a matter of law.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON KIRZHNER'S IMPLIED COVENANT OF GOOD FAITH CLAIM.

### A. **There Can Be No Implied Covenant Of Good Faith In A Contract That Contains An Express Covenant Of Good Faith And Fair Dealing.**

Kirzhner does not dispute that the implied covenant of good faith and fair dealing is a gap-filling rule of construction that is intended to effectuate the reasonable expectation of the parties.  *Alpine Bank v. Hubbell,* 555 F.3d 1097, 1104-05 (10th Cir. 2009).  Here, since there is no gap to be filled, Kirzhner asks us to imagine one.  This

10

Court, however, need not accept Kirzhner's invitation into the land of make-believe.[7] The covenant of good faith and fair dealing is expressly stated in the SPA and there is no gap for the implied covenant to fill. Kirzhner's implied covenant claim fails.

### B. There Can Be No Implied Covenant That Contradicts The Express Terms Of The Contract.

Colorado has long recognized that the implied covenant of good faith and fair dealing cannot "contradict terms or conditions for which a party [to the contract] has bargained." *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995). Nevertheless, Kirzhner insists that this Court imply terms that are contrary to the SPA.[8] More importantly, Kirzhner fails to mention that she bargained for – but failed to secure – the exact same contractual protections she now seeks by "implication."

In a nutshell, Kirzhner contends that Defendants breached the implied covenant by permitting Silverstein to take "excessive" compensation while not paying the Note. Likewise, Kirzhner says it was "improper" for an entity that Silverstein owned to encumber BMGI's assets and/or to loan money to the company. When negotiating the SPA, however, Kirzhner asked for these exact same limitations and Silverstein would not agree. (SOF, ¶ 16-19). In a September 7, 2004 draft of the SPA, Kirzhner proposed (1) preventing the company from making any payments to Silverstein as "lender" or creditor," (2) placing a $350,000 limit on Silverstein's compensation if the Note remained unpaid, (3) preventing the company from issuing new stock and thereby diluting her collateral prior to payment of the Note, and (4) permitting Kirzhner to select the appraiser who would value the company for purposes of testing compliance with the

---

[7] Kirzhner initially asserted a breach of the express covenant in her complaint but dropped that claim because she did not want to be bound by the sole remedy clause.

[8] Ironically, Kirzhner makes this unfounded demand while simultaneously citing to the *Amoco* decision no less than nine times in her Opposition. (Opposition, pp. 20-22).

Valuation Coveant.  (Exhibit X to the Defendants Response to Kirzhner' Summary Judgment Motion (Document No. 261), § 2.03, p. Schaf0409 and p. Schaf0414, deleted § 7(g).)  None of these proposals exist in the final, agreed-upon contract.

## V.     KIRZHNER'S "ARTIFICE OR SCHEME OF FRAUD" CLAIM MUST BE DISMISSED.

Kirzhner's claim for artifice or scheme of fraud fails because no one lied to her or concealed any relevant information.  At most, Kirzhner alleges that Silverstein failed to return her phone call.  That is not fraud under any standard.  In lieu of addressing the merits of her fraud claim, Kirzhner demands that the Court ignore the claim's substantive deficiencies entirely since the Defendants raised similar arguments in their Motions to Dismiss.  Rule 12 motions, however, are governed by different standards:

> Law of the case does not apply because a motion to dismiss and a motion for summary judgment do not raise the 'same issues.'  Different 'legally relevant factors' are under consideration in a motion to dismiss and a motion for summary judgment. *Beherens v. Pelletier*, 516 U.S. 299, 309 (1996).  On a motion to dismiss, a court examines the conduct alleged in the complaint to determine if the plaintiff has alleged a violation of clearly established law, whereas, on a motion for summary judgment, a court examines the evidence gathered during discovery. *Id.*  Thus, reliance on law of the case in dismissing Defendant's motion for summary judgment in this case would be erroneous.

*Robbins v. Wilke*, 433 F.3d 755, 764-65 (10th Cir. 2006), *rev'd on other grounds, Wilke v. Robbins,* 551 U.S. 537, 567-78 (2007).  It is undisputed that Kirzhner fails to identify any actionable misrepresentation or concealment.

## IV.     THE CUFTA CLAIMS MUST BE DISMISSED.

### A.     <u>**Kirzhner Cannot Prove Any Transfer Damaged Her.**</u>

As a matter of statutory law, Kirzhner's only remedy under CUFTA is to unwind the transaction that she disputes.  And she cannot recover damages from the transferor

of any asset. C.R.S. § 38-8-108; *Miller v. Kaiser*, 433 P.2d 772, 775 (Colo. 1964). With respect to a transferee, if the asset is still in its possession and the value of the asset has not depreciated, the appropriate remedy is to declare the conveyance void and to return the asset. *Id*; *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1369 (Colo.App. 1993); *Epcon Co. v. Bar B Que Baron International, Inc.*, 512 P.2d 646, 648 (Colo. App. 1973). The Court may only award damages against the transferee in "special circumstances:" (1) when the transferee has caused the value of the asset to be depreciated;[9] or (2) when the transferee caused the property to be placed beyond the reach of the Court. *Epcon*, 512 P.2d 646 (upholding money judgment where transferee sold, leased and destroyed assets); *Double Oak Constr. LLC v. Cornerstone Dev. Int'l, LLC*, 97 P.3d 40 (transferee sold asset at issue). Because these special circumstances do not exist here, damages are not available as a remedy. *Emarine v. Haley*, 892 P.2d 343, 347 (Colo.App. 1994); *New Crawford*, 877 P.2d at 1369.

In each case that Kirzhner cites to support her CUFTA damage claim, the courts unwound an underlying transaction. Yet that is not what Kirzhner wants the Court to do here. And she refuses to seek rescission of the transaction. The CUFTA statute cannot be bent to accommodate her demand.

As additional grounds for avoiding her statutory remedy (i.e., unwinding an asset transfer), Kirzhner argues that there are special circumstances here that entitle her to cold, hard cash. According to Kirzhner, the Court should ignore the plain language of the statute because of "collusive and evasive nature of the transactions." But that statement is not enough. The actions alleged in this case do not fall within the "special circumstances" recognized by Colorado courts to justify an award of damages.

---

[9] In this instance, the award of damages is only for the value of the depreciation. *Epcon*, 512 P.2d at 648.

B. **There Was No Transfer Of Assets Since At All Relevant Times BMGI Corp. Was A Successor Company.**

Even if Kirzhner were willing to pursue the remedy provided for under CUFTA, she ignores the fact there is no transfer to unwind. The creation of a successor company – either by de facto merger or under the mere continuation doctrine – is not a transfer for purposes of CUFTA. *See e.g., Bosch v. Tessa Complete Health Care, Inc.*, No A.H.-03-3296, 2004 WL 1278225, at *4 (S.D. Tex. April 5, 2004) (attached as Exhibit A). Here, Kirzhner cannot establish the predicate transfer that CUFTA requires because BMGI Corp. is and always has been BMGI Inc.'s successor.

V. **THE ECONOMIC LOSS RULE BARS ALL TORT CLAIMS (3rd Claim, 4th Claim, 6th Claim, 7th Claim, and 8th Claim).**

Kirzhner hopes that, by clinging to the Court's initial decision under Rule 12, she can avoid the inevitable consequences of the economic loss doctrine. But at the outset of this case, the Court was obligated to accept as true Kirzhner's allegation that she was a creditor of BMGI. That assumption is untenable and need not be blindly adopted now. *See Robbins v. Wilke*, 433 F.3d at 764-65. Kirzhner cannot prove that she was a creditor of BMGI. And even if she could, Colo. Rev. Stat. § 7-108-401(5) makes clear that creditors are not owed the duties that Kirzhner alleges.

Kirzhner also urges the Court to consider whether the economic loss doctrine would also bar her conspiracy claim. *Compare* Opposition p. 20 ("no specific law governing whether a conspiracy claim is barred by the economic loss rule") and *Logixx Automation Inc., v. Lawrence Michaels Family Trust*, 56 P.3d 1224, 1231 (Colo. Ct. App. 2002) (finding that the economic loss doctrine bars conspiracy claims unless an independent duty of care exists); *see also Sweeny v. Marvin Windows, Inc.*, Kirzhner

14

can only sustain her conspiracy claim if she proves an independent duty of care. *Logixx*, 56 P.3d at 1231. Kirzhner attempts to meet that burden by arguing that non-signatories to the contract have a duty not to conspire for its breach. Yet it is undisputed that DSI is the only non-party to the agreement and DSI and Silverstein Investments are the only parties to the agreement and they are owned by Silverstein.

Even if Kirzhner could identify a "stranger" to the contract here, the economic loss doctrine would still bar her conspiracy claim. *See e.g., Anderson Elec. Inc., v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249-50 (Ill. App. Ct. 1986) (privity of contract not a prerequisite for the application of the economic loss doctrine); *Rardin v. T&D Mach. Handling, Inc.*, 890 F.2d 24 (7th Cir. 1989); *Sterling Chem. Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797 (Tex. App. 2007) (internal citations omitted); *United States Aviation Underwriters, Inc. v. Dessault Aviation*, 505 F. Supp. 2d 1252, 1268 (D. Wyo. 2007); *cf. A.C. Excavating v. Yacht Club Homeowners Ass'n*, 114 P.3d 862 (Colo. 2005) (applying the economic loss doctrine to third-party beneficiary of a contract). Kirzhner's conspiracy claim is subject to the economic loss doctrine and must be dismissed.

**VI. KIRZHNER'S CONSPIRACY CLAIM FAILS BECAUSE AN OFFICER/DIRECTOR OF A COMPANY CANNOT CONSPIRE WITH HIMSELF.**

Kirzhner ignores the fact that Silverstein controls ever entity that participated in the alleged conspiracy. That concession alone warrants summary judgment. *See Lockwood Grader Corp. v. Bockhaus*, 270 P.2d 193, 196-97 (Colo. 1954).

Respectfully submitted this 12th day of August, 2011.

                    CHIPMAN GLASSER, LLC

                    */s/ Daniel W. Glasser*
                    Daniel W. Glasser
                    CHIPMAN GLASSER LLC
                    2000 S. Colorado Blvd., Tower One
                    Suite 7500
                    Denver, Colorado  80222
                    Telephone:  (303) 578-5781
                    Facsimile:   (303) 578-5791
                    Email: dglasser@chipmanglasser.com

                    Attorneys for Defendants BMGI, Inc. BMGI
                    Corp. and BMGI Holdings, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August, 2011, a true and correct copy of the foregoing **BMGI DEFENDANTS's REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was served electronically, addressed to:

Alan D. Sweetbaum (asweetbaum@sweetbaumlevinesands.com)
Thomas L. DeVine (tdevine@sweetbaumlevinesands.com)
Sweetbaum, Levin and Sands, P.C.
1125 Seventeenth Street, Suite 2100
Denver, CO 80202

Marc Pappalardo (marc@pappalardolawgroup.com)
Pappalardo Law Group, LLC
1919 14TH St., Suite 510
Boulder, CO 80302
Telephone 303-250-1507
Fax: 775-429-4091


*s/ Daniel W. Glasser*
Daniel W. Glasser