**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09CV02858 CMA-BNB

ILONA KIRZHNER, an individual

      Plaintiff/Counterdefendant,

v.

DAVID SILVERSTEIN, an individual *et al.*,

      Defendants.

---

**MOTION TO STRIKE THE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT
STEPHEN J. HAZEL SUBMITTED IN OPPOSITION TO DEFENDANTS' SUMMARY
JUDGMENT MOTIONS**

---

Defendants, David Silverstein ("Silverstein"), Evergreen Industries, Inc. ("BMGI Inc."), David Silverstein Investments, LLC, BMGI Corporation ("BMGI Corp."), BMGI Holdings LLC, and DSI Investments, LLC ("DSI") (collectively, "Defendants") file this Motion to Strike the Testimony of Plaintiff's Proffered Expert Stephen J. Hazel.  Ilona Kirzhner ("Kirzhner") submitted the disputed testimony in her Oppositions to Defendants Summary Judgment Motions (Document Nos. 227 and 228).

<u>**CERTIFICATE OF CONFERRAL**</u>

Pursuant to Local Rule 7.1, counsel for Defendants conferred with Kirzhner's counsel regarding the relief sought in this Motion.  Kirzhner opposes the relief sought in this Motion.

<u>**INTRODUCTION**</u>

Under a Stock Purchase Agreement ("SPA"), Silverstein agreed to buy Kirzhner's 50% stock ownership interest in BMGI Inc.  The purchase price was paid by a

promissory note ("Note") and secured by Silverstein's stock.

Kirzhner's lawsuit hinges on her allegation that Silverstein and BMGI breached § 2.03's "Valuation Covenant."  That provision requires that the unpaid portion of the purchase price of the stock was to be equal to "(i) the valuation of the Corporation, *as determined by the Corporation's independent auditors* and (ii) the value of any replacement collateral."[1]  (Ex. B, Stock Purchase Agreement, p. 2) (emphasis added). Kirzhner contends that Silverstein and BMGI Inc. breached § 2.03 by merging into BMGI Corp. because the reorganization/merger caused all of BMGI Inc.'s assets to be transferred to BMGI Corp.

Kirzhner, however, has never requested or obtained the valuation opinion required by § 2.03 (i.e., from the company's independent auditors), despite Silverstein's repeated offers to share in the cost of securing that opinion.[2]  Instead, Kirzhner chose to file this lawsuit without giving any Defendant a written notice of default or an opportunity to cure.  She then waited eighteen months before disclosing the opinion of a retained expert, Stephen J. Hazel, to support her claim that Defendants breached the Valuation Covenant.

Hazel's expert report is self-contradicting: stating in the analysis section that the company had $6,144,459 in assets at year end 2009 but then concluding  that the company was "worthless" because it purportedly had no assets.  Hazel reached this opinion of "worthless" based on his assumption that BMGI Corp. was <u>not</u> BMGI Inc.'s successor under either (i) a contract assignment, (ii) the mere continuation doctrine or

---

[1] The "Corporation" is defined as Breakthrough Management Group, Inc., which is now BMGI Corp. after the assignment of the SPA and reorganization in 2009.  *See* Silverstein's Summary Judgment Motion, Doc. 278.

[2] Silverstein offered to pay for half of the costs despite having no obligation to do so.  (*See* the BMGI Defendants' Summary Judgment Motion, Doc. 227, Statement of Fact ("SOF") ¶ 44.)

(iii) the de facto merger doctrine.  Thus, Hazel refused to consider the value of BMGI

Corp.'s assets or the assets of the combined companies despite the fact that he admits

all four factors relevant to the de facto merger doctrine were satisfied.

Mr. Hazel's report also proffered conflicting opinions on solvency.  Mr. Hazel's

report states that his current-ratio analysis showed that "for all periods" the company's

assets exceeded liabilities and that "Evergreen's [BMGI's] reported operations

demonstrate adequate liquidity and financial solvency and the company should have

been able to meet the current and ongoing obligations of the business. . . ." (*Id.*, p. 7-8.)

Yet, Mr. Hazel then concludes that the company was "insolvent" but fails to identify what

standard of insolvency.  Any opinion that Mr. Hazel has that the company was insolvent

is based on his this assumption that (i) BMGI Corp. did not pay all of BMGI Inc.'s

liabilities and (ii) that BMGI Corp. was not a successor company.   This critical

assumption, however, conflicts with Hazel's true assessment of the company's finances.

<u>Use of the Hazel Report In Opposition to Summary Judgment Motions</u>

The BMGI Defendants' moved for summary judgment because Kirzhner's claim

for breach of the Valuation Covenant fails since she cannot prove that the Corporation

was ever worth less than the unpaid purchase price of the Stock.  (BMGI Summary

Judgment Motion, Document No. 227.)  In her Opposition, Kirzhner relies upon Hazel to

demonstrate a breach of the Valuation Covenant.  The key opinion evidence, of course,

is Hazel's assertion that the documents "indicate a foreclosure/sale rather than a

merger of entities for purposes of ongoing operations" and as a result the company had

no value because it had no assets.   (Hazel Report, Ex. A, p. 8.)

Similarly, the Silverstein Defendants moved for summary judgment because

Kirzhner cannot demonstrate that the company was in the "zone of insolvency" for purposes of supporting a fiduciary duty claim.  In her Opposition, Kirzhner again relies on Hazel for proof the Company was insolvent as of the date of the reorganization.[3]

Mr. Hazel's opinion should be stricken for three independent reasons.  First, it is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).  Mr. Hazel admits that he is unqualified to opine that BMGI Inc. was "worthless" or insolvent in light of the *de facto* merger doctrine, the mere continuance doctrine, statutory merger and other successor liability theories.  Moreover, his written opinion and testimony fail to identify which methodology he used to reach his opinion, and ignores key facts and evidence unfavorable to his opinion.  These deficiencies are fatal under *Daubert.*

Second, Mr. Hazel's opinion is irrelevant under Rule 401, as § 2.03 of the Stock Purchase Agreement unambiguously requires that the contractual valuation be performed by the Corporation's "independent auditors," not Kirzhner's hired witness 18-months later.  Not only must she obtain such a valuation, but she must do it as a precedent to filing suit.  And third, given the opinion's defects as to qualification, methodology, reliability, and relevancy, the opinion creates an unreasonable risk of confusion and prejudice under Rule 403.  For each of these reasons, set forth in detail below, Mr. Hazel's opinion should be stricken.

## STATEMENT OF FACTS

---

[3]   This reliance is badly misplaced since Hazel's report on insolvency is inconclusive.  The only financial analysis Hazel performs using the current ratio demonstrates that the company was solvent at all times. Indeed, his report states that "the current ratio is greater than one in all periods" from 2006 through year end 2009.  (Ex. A, Hazel Expert Report, p. 6)

As detailed further in Defendants' Motions for Summary Judgment, Kirzhner and Mr. Silverstein entered into the Stock Purchase Agreement in 2004 when Kirzhner decided she wanted to retire early.  Pursuant to the SPA, Silverstein delivered a Note to Kirzhner in exchange for the BMGI stock.  Silverstein's payment obligation was then secured by stock that Silverstein owned.  In addition to the Valuation Covenant in § 2.03 (referenced above), the Stock Purchase Agreement provided, in § 3.01, that Kirzhner's sole remedy for any breach was to reclaim Silverstein's stock.  (Ex. B, Stock Purchase Agreement, § 3.01.)

A few years after the parties signed the SPA, the nation was hit hard by recession.  Reduced sales ultimately caused BMGi Inc. to default on the covenants set forth in its loans with senior secured and junior secured lenders.[4]

BMGI Inc.'s senior lender threatened to foreclose on all of the company's assets and Silverstein, through DSI, purchased the senior loan.  DSI then used its senior position stave off foreclosure by the junior lender and re-negotiated the terms of the junior loan.  Specifically, DSI conducted a public auction at which BMGI Corp. bid on all of the company's assets (directly and through a wholly owned subsidiary, BMGI Holdings).

When BMGI Inc. reorganized/merged with BMGI Corp., business operations continued without interruption.  BMGI Corp. acquired all of BMGI Inc.'s assets, and assumed, and paid, its valid obligations.  And, even though there was reorganization, BMGI Corp. maintained the company ownership structure, the same company employees, and the same company directors in the same capacities.  The transition

---

[4] Those defaults, however, were earnings-based and BMGI Inc. continued to make payments to its lenders.

was seamless.  Indeed, every employee who worked for both BMGI Inc. and BMGI Corp. in 2009 received only one W-2 from a single employer.

Despite these undisputed facts, Kirzhner contends that the reorganization somehow devalued her security interest in Silverstein's stock.  Indeed, although Kirzhner admits that she is now fully collateralized, Kirzhner insists that the Defendants breached the Valuation Covenant somewhere in the process of completing the merger. Hazel's opinion regarding the value of the Corporation is necessary for Kirzhner to establish this claim.

## ARGUMENT

Mr. Hazel's opinion must be stricken as inadmissible under Federal Rule of Evidence 702, irrelevant under Federal Rule of Evidence 401, and confusing under Federal Rule of Evidence 403.

## I.    MR. HAZEL'S OPINION FAILS TO MEET THE ADMISSIBILITY STANDARDS Of RULE 702.

Rule 702 governs the admissibility of expert testimony.[5]  The trial court acts as a "gatekeeper" to ensure that any testimony proffered by an expert is relevant and reliable under Rule 702.  *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 137, 149 (1999) (holding that *Daubert* extends not only to scientific testimony, but also testimony that is technical in nature).

To perform its gatekeeping function, the Court first determines "whether the expert is qualified by 'knowledge, skill, experience, training or education' to render the

---

[5] The full text of Rule 702 reads: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

opinion." *Hauck v. Michelin N. Am., Inc.*, 343 F. Supp. 2d 976, 980 (D. Colo. 2004). Next, the court determines "whether the opinion rendered is 'reliable' under the principles set forth in *Daubert* and *Kuhmo*." *Id.* (citation omitted).   In determining whether an expert opinion is reliable, the court must examine whether the expert used appropriate methodology in arriving at his or her opinion, and whether the expert relied on sufficient factual data in reaching his or her conclusions. *Id.   See also Noel v. Martin*, 21 F. App'x 828, 835 (10th Cir. 2001) (not selected for publication); *In re Breast Plant Litig.*, 11 F. Supp. 2d 1217, 1223 (D. Colo. 1998).   The proponent of the expert opinion has the burden to demonstrate its admissibility. *Student Marketing Group, Inc. v. College P'ship, Inc.*, 247 F. App'x 90, 102-03 (10th Cir. 2007) (not selected for publication) (citations omitted).

Mr. Hazel's opinion is inadmissible under Rule 702 for three reasons:   (1) he admits he is unqualified to render the opinion; (2) he fails to provide or articulate an acceptable methodology in reaching his opinion; and (3) he fails to consider critical facts thus rendering his opinion unreliable.

A. Mr. Hazel Is Unqualified to Opine About Whether BMGI Inc. and BMGI, Corp. Should Be Treated as the Same Company.

Testimony outside an expert's proffered area of expertise is inadmissible. *Hauck*, 343 F. Supp. 2d at 982-83 (excluding expert's testimony outside his expertise); *In re Breast Plant Litig*, 11 F. Supp. 2d at 1239-40; 1243-44 (same).   Mr. Hazel's opinion that BMGI Inc. was "worthless" and insolvent is based on his opinion that BMGI Inc. and BMGI, Corp. should not be treated as the same entity.   (See Ex. A, Hazel Report, 7-8.) By his own admission, however, Mr. Hazel is unqualified to proffer an opinion on the issue of successor status in light of the *de facto* merger doctrine, the mere continuation

doctrine, statutory merger, or otherwise.  Without this qualification, Mr. Hazel cannot opine about whether BMGI Inc. ever was "worthless."

Mr. Hazel has never rendered an expert opinion on whether a company is deemed a successor of another company.  (Ex. C, Hazel Dep., Apr. 19, 2011, 24:17-22.)  In fact, he concedes that he is not qualified to render an expert opinion on the subject matter of successor liability as interpreted by Colorado law or Delaware law:

> Q: Just to make it clear, have you ever served as an expert witness where you rendered an opinion as to whether one company was a successor of another company.
>
> A: I don't remember that specific term being used.
>
> . . .
>
> Q: Do you believe you're qualified to render an expert opinion on the subject matter of successor liability as interpreted under Colorado Law?
>
> A: No.
>
> Q: Do you believe that you're qualified to render an expert opinion on the subject of successor liability as interpreted under Delaware law?
>
> A: No.
>
> Q: Have you ever testified as an expert witness where you rendered an expert opinion as to whether a statutory merger was properly effectuated under Delaware law?
>
> A: No.
>
> Q: Have you ever testified as an expert witness where you rendered an expert opinion as to whether a statutory merger was properly effectuated under Colorado law?
>
> A: No.
>
> Q: Have you ever rendered—testified as an expert witness where you rendered an expert opinion as to whether a statutory merger was properly effectuated under the laws of any state?

A: No.

(*Id.*, 24:17-22, 27:5-28:20.)   He admits further that he has never rendered an opinion about whether a *de facto* merger has occurred (*Id.*, 22:20-24), has not written about *de facto* mergers or successor liability (*Id.*, 23:11-16), and does not know the difference between a *de facto merger* and a statutory merger under Colorado or Delaware law. (*Id.* 31:25-32:10.)   Surprisingly, Hazel refused to acknowledge that a de facto merger had occurred despite the fact that he testified that all four determining factors for a de facto merger were present.   (Hazel Deposition, attached as Ex. Q to Silverstein's Summary Judgment Motion, Doc. 278, pp.151:8-15, 151:16-21, 151:22 – 152:5, 152:20 – 153:4.)

Mr. Hazel's opinions that BMGI Inc. was "worthless" and insolvent are based on Hazel's opinion that BMGI Inc. and BMGI, Corp. were not successor entities – an opinion that Mr. Hazel is unqualified to render.   The opinion, therefore, does not satisfy Rule 702 and must be stricken.

   B.   <u>Mr. Hazel's Valuation and Insolvency Opinions are Unreliable Because He Fails To Provide A Methodology Used To Reach His Conclusions.</u>

Mr. Hazel's valuation opinion also is inadmissible because he fails to provide a methodology used to conclude that BMGI Inc. was "worthless."   His written opinion is devoid of any methodology to reach that conclusion.   (Ex. A, Hazel Report, 8.)   Hazel's report contains no statement, analysis or explanation regarding the value of the company under any of the three accepted valuation methodologies: Cost of Asset approach (valuation of the assets alone), Income approach (a valuation based on the income generating potential), or the Market approach (valuation based on sales of

similar companies).   *See, e.g.*, *Caracci v. C.I.R*, 456 F.3d 451, 456 (5th Cir. 2006). Indeed, his report is devoid of any reference to his valuation methodology or his decision to ignore well-establish valuation tests.

Hazel's valuation opinion consists of three lines at the end of his report, which simply states:

> The "Recording and Acceptance of Bid" and the "Bill of Sale" documents executed in September/October 2009 indicate a foreclosure/sale rather than a merger of entities for purposes of ongoing operations despite questionable merger filings more than a year later in November 2010.   With the foreclosure/sale of all of its assets to BMGI Corp., Evergreen [BMGI Inc.] no longer had any assets, and thus, no value, making the Evergreen stock worthless.   Kirzhner's collateral for the Note still relates to Evergreen, a corporation that is by its definition insolvent, and not BMGI Corp.

(Ex. A, Hazel Report, 8.)   While Hazel provides the conclusory statement that BMGI Inc. had no assets after the October 2009 reorganization, he contradicts his own opinion when analyzing the company's assets from 2003 to 2010.   Hazel's report lists the value of the company's assets at "$6,144,459" as of "12/31/09."   (*Id.*, Schedule B, 10.)   There is no known methodology what permits this kind of contradiction.

Similarly, Hazel offers no viable method by which he reaches the conclusion that the company was both solvent and insolvent:

> Liquidity is generally defined as the measure and quality of the current assets to meet the current obligations of the business as they come due.   A current ratio of one is an indication that current assets are equal to current liabilities.   <u>Generally, it is better to have a current ratio of greater than one, which reflects that current assets are greater than current liabilities</u>.   As is indicated on Schedule F, during the period under review, the company reported current ratios of less than one at the end of 2005 and 2006.   <u>It shows current ratio of greater than one for each year ended 2007 through 2009</u>.   However, when excluding deferred revenue, the current ratio is <u>greater than one in all periods</u>."

(Ex. A, Hazel Report, 6) (emphasis added.)    Despite finding that the company was

obviously solvent, Hazel goes on to state that the company was insolvent and opines

that the documents produced "indicate a foreclosure/sale rather than a merger of

entities for purposes of ongoing operations" and as result, "Kirzhner's collateral for the

Note still relates to Evergreen, a corporation that is by its definition[6] insolvent, and not

BMGI Corp."  (*Id*., p. 8.)

By failing to identify the methodology used to reach these *ad hoc* conclusions,

Mr. Hazel insulates himself from scrutiny.  *Lippe v. Bairnco Corp.* 288 B.R. 678, 689-

700 (S.D.N.Y. 2003) (precluding valuation expert testimony because the "absence of

explanations for so many of [the expert's] decisions makes it extremely difficult for a jury

to evaluate his testimony").   BMGI Inc. becomes "worthless" and "insolvent" because

Mr. Hazel says so.   The U.S. Supreme Court has rejected this kind of "it-is-because-I-

say-it-is" opinion as inadmissible under Rule 702.   *Gen. Elec. Co. v. Joiner,* 522 U.S.

136, 146 (1997) ("[n]othing in either *Daubert* or the Federal Rules of Evidence requires

a district court to admit opinion evidence which is connected to existing data only by the

*ipse dixit* of an expert").   Without establishing that an expert's opinion is analytically

sound, with a specified and recognized methodology, an opinion becomes nothing more

than "subjective belief or unsupported speculation."   *See Daubert*, 509 U.S. at 590.

Even a "supremely qualified expert cannot waltz into the courtroom and render opinions

unless those opinions are based upon some recognized scientific method and are

reliable and relevant under the test set forth by the Supreme  Court in *Daubert*."   *Clark*

*v. Takata Corp.*, 192 F.3d 750, 759 n. 5 (7th Cir. 1999).    Mr. Hazel's approach

---

[6] Again, Hazel never provides what definition or test of insolvency he used.

represents just the type of *ipse dixit* testimony rejected by *Daubert* and its progeny. Even if Mr. Hazel had identified a particular methodology used to reach his conclusion, his determination performed in his head provides no way to check the reliability of how he applied the methodology. The finder of fact cannot be asked to accept his opinion just because he says so.

C. The Rationale Behind Mr. Hazel's Opinion that BMGI Inc. Was "Worthless" and Insolvent Is Too Unreliable To Be Admissible.

An expert opinion is not sufficient under Rule 702 if there is an analytical gap between the expert's assumptions and conclusions and the available facts, even if the expert uses a recognized methodology. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). Any step that renders the analysis unreliable renders that expert's methodology inadmissible, "whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 782 (10th Cir. 1999); *Hauck*, 343 F. Supp. 2d at 983 (holding that even though the methodology may have been sound, "the application of that methodology by [the expert] is not sufficiently reliable in this case"). Thus, if an expert applies a recognized methodology in a way that deviates from principles followed by other experts in the field, the opinion is not grounded in the "knowledge and experience of his discipline" and runs afoul of Rule 702. *Hauck*, 343 F. Supp. 2d at 983.

An "analytical gap" exists between the facts and Mr. Hazel's conclusion that BMGI Inc. became "worthless" and insolvent. Even if Mr. Hazel's opinion had utilized a methodology used by experts in his field, he failed to consider important facts, rendering his conclusion uninformed and unreliable. *Student Marketing Group*, 247 Fed. App'x at 102-03; *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir.

12

2000); *Ed Peters Jewelry Co. v. C&J Jewelry Co.*, 124 F.3d 252, 259-61 (1st Cir. 1997);

*MTX Comm. Corp. v. LDDS/Worldcomm, Inc.*, 132 F. Supp. 2d 289, 292 (S.D.N.Y. 2001).

The opinion's reliability is undermined by the misplaced opinion that BMGI Corp. is not BMGI Inc.'s successor and that he did not believe a de facto merger occurred.  As discussed above, Mr. Hazel is unqualified to render such an opinion.   Second, the opinion simply ignores key factors unfavorable to Mr. Hazel's conclusion.  For example, and there are many others, he fails to consider that BMGI Corp. assumed all of BMGI Inc.'s valid debts and liabilities at its first shareholder meeting.   (Ex. D, Meeting Minutes.)   Specifically, the organization minutes of BMGI Corp.'s Board of Directors show a resolution was passed that stated:

> RESOLVED, that BMGI Corporation is the successor company of Breakthrough Management Group International, Inc. ("Breakthrough") for all purposes and intents.  The Company hereby assumes all liabilities of Breakthrough as if Breakthrough was statutorily merged with the Company.  Any debts, claims or liabilities that are secured by any assets of or the stock of Breakthrough shall be deemed secured by the stock of the Company.  The Company is directed to report on its state and federal income tax returns that it is a successor corporation of Breakthrough.  The Company hereby adopts and assumes Breakthrough Management Group International, Inc. Employee Stock Ownership Plan ("ESOP"), including but not limited to the fact that the ESOP shall be an owner of the Company in the same proportion of ownership that the ESOP had in Breakthrough.

(*Id.* ¶ 48.)   Omitting these unfavorable facts undermines the opinion's reliability and renders it inadmissible.  *Concord Boat Corp.*, 207 F.3d at 1056-57 (holding that expert testimony was unreliable and thus inadmissible because expert omitted "inconvenient" facts in reaching his conclusion).

Moreover, because BMGI Corp. assumed BMGI Inc.'s liabilities (something Mr. Hazel ignores) BMGI Inc. had *zero* liabilities.   Thus, at no time did BMGI Inc. have *greater* liabilities than it had assets.   This is even assuming, *arguendo*, that BMGI Inc. had zero assets, as Mr. Hazel contends. Equally important, BMGI Corp. paid all valid obligations after the reorganization.   No evidence has been presented that BMGI Corp. has failed to do so.  Mr. Hazel ignores all of this.

Finally, the opinion's reliability is undermined by Hazel's inconsistent statements in his written opinion.  Hazel's report states that the company had no assets but goes on to show assets as of "$6,144,459" as of "12/31/09".  (Hazel Report, Ex. A, Schedule B, p. 10.)  Likewise, Hazel's written opinion concludes that BMGI Inc. was solvent because its "current ratio is greater than one in all periods," which means assets exceed liabilities through the end of 2009.   (Ex. A, Hazel Report p. 6).   In fact, according to Hazel "Evergreen's [BMGI's] reported operations demonstrate adequate liquidity and financial solvency and the company should have been able to meet the current and ongoing obligations of the business. . . ." (*Id.* at 8).   Hazel himself is unsure whether it is his opinion that BMGI was insolvent or solvent.   This inconsistency demonstrates the unreliability of his opinion.  *Lippe*, 288 B.R. at 696-97 (stating that the expert's "own lack of confidence in many of her conclusions, coupled with her lack of experience, undermines the reliability of her findings").

## II.   MR. HAZEL'S OPINION IS IRRELEVANT UNDER RULE 401.

Pursuant to Rule 401, "'Relevant Evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  Mr. Hazel's

opinion fails to meet this standard.  At the core of Kirzhner's claims is her contention that there was as breach of § 2.03's valuation covenant.  Section 2.03 is clear, however, that the valuation must be performed by the Corporation's (as defined by the Stock Purchase Agreement) "independent auditors."  (Ex. B, Stock Purchase Agreement, § 2.03); *see also* Ex. D, September 7, 2004 Draft of the Stock Purchase Agreement, § 2.03, deleting a provision that allowed Kirzhner to select the valuation company.)  The Corporation's independent auditors were at the time, and still are, the firm of Anton, Collins, Mitchell ("ACM").[7]  Because § 2.03's valuation is the exclusive duty of ACM, Mr. Hazel's valuation opinion is irrelevant to the valuation issue.

## III.   MR. HAZEL'S OPINION IS CONFUSING AND PREJUDICIAL UNDER RULE 403.

Any probative value Mr. Hazel's opinion may have is far outweighed, under Rule 403, by the likelihood to mislead or confuse the jury.  "Expert evidence can be both powerful and quite misleading because of the difficulty of evaluating it.  Because of this risk, the judge in weighing the possible prejudice against the probative force under Rule 403 . . . exercises more control over experts than lay witnesses."  *Daubert*, 509 U.S. at 595; *see also Precision Fitness Equip. of Pompano Beach, Inc. v. Nautilus, Inc.*, No. 08-cv-01228-CMA-KLM, 2010 WL 5349852, at *4 (D. Colo. Dec. 20, 2010) (valuation report was inadmissible because it would be likely to lead to jury confusion) (citations omitted).  Given the lack of Mr. Hazel's qualifications, the lack of a stated methodology, the numerous holes in Mr. Hazel's analysis, and the fact that he is not contractually permitted to perform a valuation under § 2.03, allowing him to present his valuation and

---

[7] Mr. Silverstein, on two separate occasions, proposed to have a valuation performed by ACM.  Ms. Kirzhner refused both times.

solvency opinions to a jury would create an unreasonable risk that the jury could be unfairly confused and misled.  Therefore, the opinions should be barred under Rule 403.

## **CONCLUSION**

Mr. Hazel's opinions that BMGI Inc. was "worthless" and insolvent do not survive Rule 702's requirements.  Nor are they admissible under Rules 401 or 403.  For all of these reasons, the Court, as "gatekeeper," should order that the valuation and insolvency opinions as of October 2009 be stricken.  WHEREFORE, the Defendants respectfully request the Court grant this Motion and strike Mr. Hazel's testimony in its entirety.

Respectfully Submitted this 12th day of August, 2011

PAPPALARDO LAW GROUP, LLC

By:        */s Marc Pappalardo*
MARC F. PAPPALARDO #35339
Pappalardo Law Group, LLC
1919 14th Street, Suite 510
Boulder, CO 80302
Telephone 303-250-1507
Fax: 775-429-4091
E-mail:  Marc@PappalardoLawGroup.com
*Attorneys for Defendants* David Silverstein, David Silverstein Investments, LLC, and DSI Investments, LLC

CHIPMAN GLASSER, LLC


By:        *s/ Daniel Glasser*
DANIEL GLASSER #37716
CHIPMAN GLASSER, LLC
2000 S. Colorado Blvd., Tower I, Suite 7500
Denver, Colorado 80222
Telephone 303-578-5780
E-mail:  dglasser@chipmanglasser.com


*Attorneys for Evergreen Industries, Inc.,
BMGI Corp. and BMGI Holdings LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2011, a true and correct copy of the foregoing **MOTION TO STRIKE THE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT STEPHEN J. HAZEL SUBMITTED IN OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTIONS** was served electronically, addressed to:


Alan D. Sweetbaum (asweetbaum@sweetbaumlevinesands.com)
Thomas L. DeVine (tdevine@sweetbaumlevinesands.com)
Fisher, Sweetbaum, Levin and Sands, P.C.
1125 Seventeenth Street, Suite 2100
Denver, CO 80202
*Attorneys for Ilona Kirzhner*

Burkeley N. Riggs (burke.riggs@moyewhite.com)
Moye White LLP
16 Market Square, 6th Floor
1400 16th Street
Denver, CO 80202
*Attorney for Tim Shafer*


*/s Daniel W. Glasser*
Daniel W. Glasser