**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09CV02858 CMA-BNB

ILONA KIRZHNER, an individual,

    Plaintiff/Counterdefendant,

v.

DAVID SILVERSTEIN, an individual *et al.*

    Defendants,

## THE SILVERSTEIN DEFENDANTS' SUMMARY JUDGMENT REPLY

The Silverstein Defendants reply in support of their summary motion as follows.

## REPLY CONCERNING UNDISPUTED FACTS

1: Admitted (underlying description of transaction).

2, 3, 4, 5: Kirzhner denies contract interpretation issue.

6: Admitted (BMGI subject to earnings-based covenant default with FCP.

7: Unable to deny BMGI was never in payment default with FCP or FNB.

8: Admitted (DSI purchased FNB note).

9: Admitted (DSI sent strict foreclosure notice).

10: Unable to deny that FCP objected to strict foreclosure.

11: Citing to irrelevant evidence, Kirzhner denies that the company switched from a strict foreclosure process to a public sale. (*But see* SOF ¶ 12; Ex. G, ¶ 6; Ex. I.)

12: Admitted. (DSI sued FCP re: that the planned public sale was reasonable).

13: Kirzhner believes the sale consummated on September 24, 2009 and not in October 2009 when the Bill of Sale and other documents completed. (Ex. 13-16, stating Oct. 4, 2009.)

14: Citing to irrelevant evidence, Kirzhner denies that as of Silverstein's September 23rd email about a potential structure of the reorganization, Silverstein had not received tax or legal advice on the best structure, thus had not made a final decision as of that date on the structure of the reorganization.

15: Citing to no evidence, Kirzhner denies Silverstein spent "$47,000" on advice from multiple tax and legal experts on how to structure the transaction, and that because of the advice he received, the proposed reorganization would be a successor company structure. Her denial rests on the argument that "it is beyond belief that . . .Silverstein had not received tax or legal advice as of September 23, 2009…." Her counsel also states "the assertions contained in this paragraph are an abuse of the discovery process" even though her counsel questioned Silverstein on this matter and this email during his deposition. (*See* Ex. L, p. 404:23 – 406:4.)

16: Citing to irrelevant evidence, Kirzhner denies BMGI Corp. had to be BMGI Inc.'s successor in order for Silverstein to avoid millions of dollars in personal tax liability, and liability with the Department of Labor for eliminating an ESOP (and Kirzhner's expert agreed that the tax liabilities were real).[1]

17: Citing to irrelevant evidence, Kirzhner denies McLeese's Sept. 2009 handwritten notes: "want to shift to Delaware Corp . . .can do successor plan" confirms that Silverstein advised McLeese that BMGI Corp. would be a successor to BMGI Inc. (*But see* McLeese Aff., Ex. G., ¶ 9.) Kirzhner presents no evidence to contradict what McLeese meant by his notes. Kirzhner attempts to create the false impression that McLeese's notes were not disclosed until July 20, 2011 when in fact Kirzhner provided those notes to Defendants in March/April 2011.

18: Citing to irrelevant evidence, Kirzhner denies the agreements that consummated the BMGI reorganization were finalized in October 2009. (*But see* Ex. D, ¶ 42; Ex. 15 & 22).

19: Citing to irrelevant evidence, Kirzhner denies that DSI never owned BMGI Inc.'s assets by quoting Silverstein's deposition where he was asked if "DSI conducted the auction" as an auctioneer and was not asked if DSI ever owned the assets.

20: Without factual support, Kirzhner denies the SPA was assigned to BMGI Corp. *(But see* Ex. O, § 4, noting successor status and how any debts "secured by the assets or stock of Breakthrough shall be deemed to be secured by the stock of the Company.") The evidence cited by Kirzhner (Bid and the Bill of Sale, Ex. 13 & 15) do not mention the SPA or controvert an assignment.

21: Kirzhner denies that BMGI Corp. expressly assumed all of BMGI Inc.'s liabilities in October 2009 despite the fact that the October 2009 Minutes (Ex. O) expressly state so. She challenges the authenticity of the minutes without any corroborating evidence. (See Reply SOF ¶ 21). She erroneously argues (in Response to BMGI's SOF) that all debts were not assumed because of a workout months before the Article 9 sale regarding a $5,000/mo. printer, but fails to mention that the date of that workout was months before the Article 9 auction.

22. Claiming an authenticity issue without corroborating evidence from her computer

---

[1] Kirzhner also indicated that it was "an abuse of the discovery process" to submit Silverstein's affidavit because counsel provided a limited objection in Silverstein's deposition as to privilege but Silverstein continued to answer the question.

forensic expert John Bryan, Kirzhner denies the authenticity of BMGI Corp. October 6, 2009 Minutes that state all liabilities were assumed and states BMGI Corp.'s successor status.  Kirzhner's questions the authenticity of BMGI Corp.'s Minutes since BMGI North America Corp. ("BMGI NA"), a totally separate company, has corporate minutes that do not refer to BMGI NA's successor status to BMGI Inc.  But BMGI NA is not a successor to BMGI Inc. and thus has no such language.  Different minutes for different companies do not create an authenticity issue.

23:  Citing to no evidence, Kirzhner denies that no assets of BMGI Inc. were ever concealed or hidden from any creditor.  Kirzhner's only support for her denial that no substantial debt was incurred by BMGI Inc. at any time in 2009 is her counsel's argument that BMGI Inc. entered into an "amended" promissory note with FCP (ex. 22) that did <u>not</u> increase the principal amount from the initial FCP note (ex. 35).

24:  Citing to no evidence and despite her expert's unambiguous testimony, Kirzhner denies that her expert believes that all of four factors used to prove a *de facto* merger are present.  (Hazel Dep., Ex. Q, pp.151:8-15, 151:16-21, 151:22 – 152:5, 152:20 – 153:4.)

25:  Admitted (BMGI Inc. and BMGI Corp. continuity of ownership).

26:  Kirzhner denies that BMGI Corp. treated itself for all purposes as BMGI Inc. based on her counsel's citation to filing statutory merger documents in November 2010.  But filing merger documents is not inconsistent with treating two companies as one.

26a-d:  Citing to no evidence, Kirzhner denies that BMGI Corp. and BMGI Inc. employees received W-2's from one company, had all stock options carried over and used the same insurance, pension and benefit plans.  She erroneously claims that "the Defendants have not disclosed documents supporting these conclusory allegations," but these documents were produced by Defendants and are even referenced in Mr. Callison's expert report (Exhibit AA, p. C-2 (last page), item 26 - 29 of documents relied on).

27:  Kirzhner cross-references her response to BMGI SOF ¶ 40 where she states she is unable to deny that every employee, officer, and director of BMGI Inc. became and officer, director, and employee of BMGI Corp.  But there appears to be a typo because she states that she denies the same allegation herewithout any factual support.

28:  Kirzhner denies that BMGI Corp. operated the same business as BMGI Inc. solely because "BMG Taiwan and BMG S. Africa were sold to BMGI Holdings." (Response to BMGI's SOF ¶ 41) However, Kirzhner was unable to deny that in BMGI's SOF ¶ 34 that BMGI Holdings is a wholly owned subsidiary of BMGI Corp.; so that business still conducted under BMGI Corp.

29:  Kirzhner's questions the authenticity of the BMGI Corp.'s 2009 tax returns that state that it had "merged" with BMGI Inc. and was the "Surviving corporation," which means it assumed all of BMGI Inc.'s liabilities.  Kirzhner's expert, Mr. Hazel, was provided an IRS release at his deposition and a check for the fees so that Kirzhner could obtain copies directly from the IRS to quell any authenticity doubts.  Thus, the onus was Kirzhner to present the actual return they received from the IRS to claim that this return is not authentic, which she has not done.  (See Portions of Krizhner's expert S. Hazel,

attached as Ex. BB to this Response, pp. 69:6 – 70:13.) Kirzhner's expert testified "I'm not sure I ever suggested that you're doctoring them [the returns]." (*Id.*, p. 70:14-20.) Her authenticity argument is premised on the fact that she was given the drafts (with watermarks labeling them as such) and the final version. Her expert testified, however, <u>that there were no differences in the numbers</u>. (*Id.*, pp. 72:20 – 73:9.)[2]

30: Kirzhner denies that BMGI Inc. ceased all business activities based solely on an erroneous claim that the company paid rent in November and December in 2009. This claim is at odds with her assertion that all of the company's assets were transferred in October 2009 and that it is "worthless." Kirzhner cites to BMGI Inc.'s general ledger "accrued rent" account (not an "account payable" account that would show an actual payment) where prior accruals of rent in that account were <u>removed</u> because BMGI Inc. was no longer paying rent.[3] Kirzhner was unable to present any deposition testimony from any of the multitude of BMGI Inc. employees, or heads of competitors deposed and interviewed to substantiate any business activities (or even a rent payment) after the reorganization. Kirzhner also misleadingly cites to a passage from oral argument on a motion by DSI's counsel, where he explained that under a SubFReorganization "it's not the same company," by omitting the words immediately prior to that statement: "BMGI Corporation is a successor company to Evergreen. It's not the same company." (Ex. 21, p. 17.) She also fails to cite the remainder of the explanation of Sub-F-Reorganization at that hearing: that it "is basically the equivalent of a statutory merger, is you basically treat these two companies exactly the same. And if you look at BMGI Corporation's minutes it says we are a successor, we assume all debts…." (*Id.* p. 18:1-11.)

31: Kirzhner is unable to deny that BMGI Inc. changed its name to "Evergreen" in October 2009 since there was concern that news that a dissolution by a company with the name similar to BMGI Corp.'s might cause impact BMGI Corp.'s business.

32: Kirzhner is unable to deny that BMGI Inc. planned to dissolve.

33: Citing to irrelevant evidence, Kirzhner denies that her lawsuit delayed the

---

[2] **Q:** "And just to make it clear when you say you've received multiple versions of the BMGI Corp. and [BMGI Inc.] tax returns, the numbers aren't different in any of the tax returns you've received, correct? **A:** I don't remember any difference of the numbers on page 1, for example. Page 4 that we looked at earlier [the page referred to in this ¶29C of the SOF], I don't have any recollection of any differences in those figures. **Q:** And the only difference that you're aware of at all is whether the treasury regulation disclosure that you refer to on page 5 of your expert report, whether it was actually attached to a copy that was produced in this case?" **A:** Well, again, besides being actually attached, it's where it's located. But based on those two issues, yes, that is correct. **Q:** And just based on your knowledge and experience is it – if the treasury regulation disclosure appeared in the middle of the tax return or the end of the return, does it have any impact on the disclosure at all or the effectiveness of the disclosure?**A:** Not if the IRS is paying attention."

[3] Ex. 36 demonstrates that on the same date that there are entries in the debit and credit for the same amount to cause the net sum to be zero. Kirzhner knows that no rent was paid by BMGI Inc. after the reorganization. Further, the center of each page reveals that it is a "rent accrual" account next to the word "Description" and not an "accounts payable" from the general ledger, meaning this account does not track actual payments. Kirzhner received BMGI Corp. accounting records that actually shows payments being recorded for this rent.

liquidation/dissolution of BMGI Inc.[4]

34: Without factual support, Kirzhner denies Defendants' stated reasons for filing an annual report for BMGI Inc.

35: Kirzhner denies that her first challenge to BMGI Corp.'s successor status was at the November 2010 hearing but fails to demonstrate when her first challenge occurred.

36: Kirzhner denies that merger documents were filed after she challenged BMGI Corp.'s successor status. Kirzhner also erroneously states that "Plaintiff made no challenge to the 'successor status' at the hearing." (*But see* Ex. 21, p. 24:23-25.)

37: Citing to irrelevant evidence, Kirzhner denies statutory merger documents were filed in 2010 and were drafted in 2009. Kirzhner admits her computer forensic expert testified "what I could derive from the metadata was the date the file [with the merger documents] was purportedly created," which was October 2009.

38: Citing to no evidence, Kirzhner denies that statutory merger documents were prepared but not filed in 2009 because Silverstein believed the advice he had received that there was no need to file them when you do Sub-FrReorganization.

39 & 40: Unable to deny facts related to Delaware merger documents.

41: Kirzhner denies that she never sent the company any correspondence where she threatened a lawsuit by stating "threatening suit would be superfluous" and Silverstein allegedly failed to return calls. But she provides no document that threatened suit.

42: Citing to no evidence, Kirzhner denies she was never a creditor.

43: Kirzhner denies that her expert testified that he did not have any opinion as to any specific damages she may have suffered regarding any specific claim in her Amended Complaint despite deposition testimony to the contrary. (Hazel Dep., Ex. Q, p. 112:1-17.)[5]

44: Kirzhner denies that she was unable to explain how she was damaged by any alleged breach of the Valuation Covenant or a fraudulent transfer dispite providing no answer in response to Interrogatory No. 7 (Ex. W) or in her deposition when asked repeatedly: "I can't answer that question, Marc." (Kirzhner2, Ex. E, p. 63:11-22.)

45: Kirzhner denies Silverstein's reaffirmation in this SOF that she is fully

---

[4] In response to this paragraph, Kirzhner erroneously states that the "'reorganization'" theory was not expressed in this litigation until <u>after</u> the November 18, 2010 hearing." Defendants asserted the argument before the hearing, and also argued it at the Nov. 18th hearing (Ex. 21, p. 17:3-11) It was also extensively explored at Silverstein's November 16th deposition (Ex. L, p. 400:1-6).

[5] **Q:** "So, again, just to make it clear on damages, your only opinion on damages is the amount that you believe is owed under the note, correct?" **A:** "Again, from a monetary standpoint, that the only calculation we make of damages specifically related to a number." (Hazel Dep., Ex. R, p. 112:1-17.) **Q:** "If BMGI Corp. has always been worth more than the unpaid purchase price and Ms. Kirzhner has a security interest in BMGI Corp. stock, can you tell me how she was damaged by any violation of the valuation covenant?" **A:** "You know . . . I'm not trying to assign to a specific covenant in the agreement or a specific claim in the complaint. We have calculated the unpaid amount of the promissory note that is due as of the date of our report." (*Id.* p. 111:6-21.)

collateralized and will do anything to provide her adequate assurance.

46:   Kirzhner denies that she testified that she is fully collateralized despite her deposition testimony to the contrary. (Kirzhner2, Ex. E, p. 48:5-8.)[6]

46a:   Kirzhner denies that the fair market value of BMGI Corp./BMGI Inc. was $9.45 million in October 2009 based on her expert's report.  Her expert, however, testified that he is not qualified to render such an opinion.  A Motion to Strike his opinion, filed contemporaneous with this Reply, is incorporated by reference.  Kirzhner presents no evidence to contradict the value of the company in December 2010.

46b:   Without submitting any converting evidence as to the value of the company, Kirzhner denies that the valuation of the company was $17.447 million in July 2009.

46c:   Kirzhner is unable to deny that the company is worth more today than it was in December 2010.

46d:   Without citing evidence, Kirzhner denies that her expert testified that he has no opinion on: (i) BMGI Inc.'s value if a merger would have occurred in 2009; or (ii) the value of BMGI Corp. in 2009.

47:   Kirzhner denies that BMGI Inc. has never been insolvent by referring to her expert's report, Mr. Hazel, which is the subject to the Motion to Strike filed contemporaneous with this Reply and incorporated by reference.  Mr. Hazel's report stated that BMGI Inc. "shows current ratio of greater than one for each year ended 2007 through 2009" and he noted that such a current ratio "reflects that current assets are greater than current liabilities."  (Hazel Report, Ex. Y, p. 6.)  His report also opines "Evergreen's [BMGI Inc.'s] reported operations demonstrate adequate liquidity and financial solvency and the company should have been able to meet the current and ongoing obligations of the business. . . ."  (*Id.* at 8.)  *See also* Reply to SOF ¶ 49 (below).

48:   Without citing to any facts to contradict the plain language of her expert's report, Kirzhner attempts to deny that her expert's report that the current ratio was greater than one "for all periods" through year-end 2009 (meaning assets exceed liabilities) and that "Evergreen's [BMGI Inc.'s] reported operations demonstrate adequate liquidity and financial solvency and the company should have been able to meet the current and ongoing obligations of the business. . . ."  (Hazel Report, Ex. Y, p. 6 & 8.)

49:   Citing to irrelevant evidence, Kirzhner denies that BMGI Inc. was concerned that it might face a multi-million dollar judgment at a hearing involving its landlord and, thus, drafted two contradictory minutes of a July 2009 meeting that authorized different forms

---

[6] **Q:** "So it's your understanding as you sit here today that BMGI Inc. is worth at least the unpaid purchase price of your stock, correct?" **A:** "Post November 2010, yes." (Kirzhner2, Ex. E, p. 48:5-8.) **Q:** "And you have no reason to believe that the collateral in BMGI Corp. is worth less than the unpaid purchase price for your stock, correct?" **A:** "As of the date of this deposition, that is correct." (*Id.*, p. 46:20-23.)

of a bankruptcy filing in case a judgment rendered the company insolvent. Hazel did not believe the company was insolvent in July 2009 when the two minutes were drafted. (Ex. Q, p. 120: 11-22.)

## RESPONSE CONCERNING DISPUTED FACTS:

1: Denied. There was no substitution of collateral under § 2.03 as they are the same company.

2: Denied. The SPA (Ex. A) grants the security interest. In an April 2011 email to Kirzhner, she was told she would be given any assurance or document she wanted for her security interest in BMGI Corp.'s stock and was told it was "her right" to "file a new UCC-1 on the stock of the merged company. . . ." (Ex. Q to BMGI Mot. Summ. J.)

3: Denied. Section 3.01(a) – (c) of Ex. A defines default.

4 & 5: Denied. *See* Silverstein's SOF ¶¶ 14-19.

6: Admitted.

7: Denied that the letter (Ex. 33) refers to "dispensing with Plaintiff's collateral interest through the lawsuit," as Kirzhner asserts. Silverstein wrote that her lawsuit was "incredibly stupid" because "she's trying to circumvent an iron-clad sole remedy clause" and "she assumed I'd been setting it all up for years to defraud her."

8: Denied. No documents or deposition testimony support the conclusion Kirzhner asks the Court to reach through parsed statements.

9: Denied that a reference to "oldco" or "newco" has any relevance.

10 & 11: Admitted.

12: Denied. *See* Silverstein's Reply SOF ¶ 30, above.

13: Denied. *See* Defendants' Response to Kirzhner Summary Judgment Motion, Doc. 261, SOF ¶ U.)

14: Denied. *See* Motion to Strike Hazel's opinion filed contemporaneously.

15: Denied. *See* Ex. V to this Reply; Kirzhner2, Ex. E, p. 46:20-23.

16 & 17: Denied. Kirzhner is not mentioned in the 2009 Amended Loan with FCP because the only references to Kirzhner in the 2008 FCP agreement pertained to: (i) financial covenants and all financial covenants were removed in the amendement, (ii) making additional advances under the FCP loan and that possibility was removed given the lower interest rate and (iii) an exception to shareholder distribution caps, which was removed.

18: Denied. *See* Silverstein's Reply SOF ¶¶ 47-48, above.

19: Denied. Tax payments for the company's millions of dollars of income are listed as "distributions" because the company is an "S-Corp."

20: Denied. *See* Silverstein's Reply SOF ¶ 29, above.

21: Denied. Kirzhner waited to the eve of the expert disclosure deadline to request any documents, and Kirzhner's document requests called for the production of in excess of 30,000 pages. Kirzhner Ex. 21, pp. 19:15-21:14.

22: Denied. *See* Silverstein's Reply SOF ¶ 30, above.

### Use Of Silverstein's Affidavit And Deposition Testimony

Kirzhner fails to rebut any of Silverstein's proffered testimony despite deposing him twice and deposing and interviewing over ten former officers and employees of BMGI Inc. Instead, Kirzhner asks this Court to erect a impenetrable barrier to summary judgment by ignoring all "sell-serving" evidence offered by the movant under Rule 56. (Resp. to BMGI Summ. J. Mot., Doc. 263, p. 3.) That request is inconsistent with established law.

Kirzhner suggest that there is authority for denying summary judgment where the evidence is "sell-serving." But she does so by omitting a substantial portion of the case to which she directs the Court's attention. According to Kirzhner, "Summary judgment should not be based on the deposition or affidavit of an interested party . . . as to facts only known to him." Madison v. Desert Livestock Co., 574 F.2d 1027, 1037 (10th Cir. 1978) (*Id.*) Kirzhner's rendition, however, places a period before the end of the sentence she supposedly quotes from *Madison*. The unredacted sentence says that "summary judgment should not be based on the deposition or affidavit of an interested party, like Taylor, as to facts known only to him **a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony**." 574 F.2d at 1037 (emphasis added to omitted portion).

Courts that disregard "demeanor" evidence on summary judgment do so only where that evidence goes to knowledge, intent, or state of mind, or where the testimony was contradicted by earlier testimony. *See, e.g., Curl v. Int'l Bus. Mach. Corp.*, 571 F.2d

8

212, 214 (5th Cir. 1975) (holding that on summary judgment "the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve uncontested proof"); *Corrugated Paper Prod., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 913-15 (7th Cir. 1989) (same). Indeed, the cases Kirzhner cites involved precisely these situations. (*See* Resp. BMGI Summ. J. Mot., Doc. 263, p. 3).[7]

In addition to redacting unfavorable language from the cases she cites, Kirzhner urges this Court to apply *Weissman*, without mentioning that the Colorado Supreme Court reversed and reinstated summary judgment in that case. (*Id.*, p. 4); *Weissman v. Crawford Rehab. Serv., Inc.* 914 P.2d 380 (Colo. App. 1995) *rev'd by Crawford Rehab. Serv., Inc. v. Weissman*, 938 P.2d 540, 550-51 (Colo. 1997).

None of the dispositive facts at issue here turn on Silverstein's state of mind, and none of his affidavit evidence was contradicted by earlier testimony. An affidavit properly supports summary judgment when the affidavit has not been contradicted, especially when a party had a chance to depose the affiant. *Camellia City Telecasters, Inc. v. Tribune Broad. Co., Inc.*, 762 F. Supp. 290, 292 (D. Colo. 1991) (rejecting argument that affidavits should be ignored as conclusory affidavits of interested parties and granting summary judgment in favor of defendants). Kirzhner's effort to avoid her evidentiary burden misses the mark.

## ARGUMENT

### I. KIRZHNER IS UNABLE TO REFUTE BMGI CORP.'S SUCCESSOR STATUS.

#### A. Kirzhner Presented No Evidence To Refute The Assignment Of The SPA.

---

[7] Although Kirzhner cites *Rivera v. Pitt*, 44 Fed. App'x 934, 936 (10th Cir. 2002) for the proposition that testimony can be ignored on summary judgment if proper foundation is lacking, Kirzhner fails to assert how any proffered testimony is in way lacking in foundation.

Kirzhner presented no evidence to refute the fact that BMGI Corp. is the assignee of SPA. (SOF ¶ 20.) Instead, Kirzhner took a more esoteric approach – challenging whether the chain of the transfer of assets was BMGI Inc. to DSI to BMGI Corp. or, alternatively, BMGI Inc. directly to BMGI Corp. (Reply SOF ¶ 20.) But the chain of transfer is irrelevant. Kirzhner cannot and has not marshaled any evidence to rebut the assignment of the SPA.[8]

Kirzhner also tries to assert that the express terms of the SPA prohibit an assignment. *Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins.* Co., 874 P.2d 1049, 1052 (Colo. 1994).[9] But no such limitation exists. Section 12 of the SPA (entitled "Successors and Assigns") does not require any consent before BMGI Inc. (the "Corporation") assigns the contract. (Ex. A.) Kirzhner argues that § 2.01 somehow limits BMGI Inc.'s ability to assign the SPA. Yet, Section 2.01 does <u>not</u> mention the "Corporation" anywhere. In contrast, Section 2.03 makes clear that it was intended to bind the Corporation: "the Corporation and the Buyer covenant and agree…." Also, BMGI Inc. did not grant a security interest to Kirzhner. Thus, § 2.01 SPA deals with Silverstein (as "Buyer"). It does not bind or limit BMGI Inc. activities. (Kirzhner2, Ex. E. pp. 105:24 – 106:12.) If the parties intended § 2.01 to prevent an assignment of the contract, that language would have appeared in § 12 of the SPA which expressly addresses assignments. (*See* Defs.' Resp. to Ptf. Summ. J. Mot., Doc. 261, p. 20.)

---

[8] While Ex. O evidences the assignment as a successor company with the reference having any debts that were secured by the BMGI Inc.'s stock to be now secured by BMGI Corp.'s stock, an oral assignment of the SPA is also proper.

[9] In her Response, Kirzhner erroneously states that "Defendants cite <u>Parrish</u> to support their argument, but neglected to note that <u>Parrish</u> holds that contracts can by their terms forbid or restrict assignment." (p. 11, n. 2.) Yet, in the Silverstein's Motion for Summary Judgment, *Parrish* was quoted as follows: "[c]ontract rights generally are assignable, except where assignment **is prohibited by contract** or by operation of law or where the contract involves a matter of personal trust or confidence." (Silverstein Motion, p. 15, emphasis added.)

### B. All Of The Factors Under The "Mere Continuation" Doctrine Were Met.

The "mere continuation" doctrine "applies when there is a continuation of directors, management, and shareholder interest and, in some cases, inadequate consideration." *CMCB Enter., Inc. v. Ferguson*, 114 P.3d 90, 93 (Colo. App. 2005). Here, Kirzhner admits that there was an exact continuity of shareholder interests. (SOF ¶ 25.) Kirzhner also says that she cannot "admit or deny" the assertion that the directors and management of the company remained the same yet she pled continuity of management in her Amended Verified Complaint.[10] (BMGI's SOF ¶ 40; Verified Am. Compl., ¶ 57.)

Unable to challenge that Defendants have factually established the mere continuation doctrine, Kirzhner argues that "[n]o case, in any jurisdiction, has ever used the 'mere continuation' and the 'de facto merger' doctrines as the Defendants seek here…." (Resp., p. 15). Kirzhner is wrong. Courts have used both doctrines in the same context; to allow an entity to become a party to a contract. *See e.g., Bowen Eng'g v. Reeve*, 799 F. Supp. 467 (D.N.J. 1999) (mere continuation); *Westoil Terminals Co. v. Harbor Ins. Co.*, 86 Cal.Rptr.2d 636 (Cal. App. 1999) (de facto merger). In *Bowen*, the court held that the mere continuation doctrine allowed the directors of a New Jersey corporation to use the indemnification provisions in the by-laws of an Idaho corporation. 799 F. Supp. at 487.

### C. Kirzhner's Argument That The *De Facto* Merger Doctrine Cannot Be Applied To The Construction of a Contract Is Also Misplaced.

As with the mere continuation doctrine, Kirzhner's sole argument against the

---

[10] BMGI SOF ¶ 40 and Silverstein SOF ¶ 27 have the exact same wording. Kirzhner was unable to deny BMGI SOF ¶ 40. Responding Silverstein's SOF ¶ 27, Kirzhner stated she "incorporates her response to paragraph 40 of BMGI's statement of facts" but she denied the fact assertion without factual support.

11

application of the *de facto* merger doctrine is her misplaced claim that it has never been applied to the construction of a contract. *See Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, No. 1:03-cv-1322, 2008 WL 5111087, at *7 (N.D. Ohio Dec. 1, 2008) (rejecting as "unfounded" the argument "that there is no legal authority for applying the de facto merger doctrine to the construction of a contract") (attached as Ex. DD). Again, Kirzhner is wrong. The court in *Westoil* held that a partnership became the defined named insured under an insurance contract that a separate corporation had purchased because of the *de facto* merger doctrine. 86 Cal. Rptr.2d at 639-40; *Bondex*, 2008 WL 5111087 (same). *Westoil* rejected an argument similar to Kirzhner's "consent to assignment" theory under § 2.01. The *Westoil* court rejected an argument that the *de facto* merger doctrine could not be used to treat the partnership as the named insured because under the contract the "insurer must consent to an assignment and none was obtained. . . ." 86 Cal. Rptr.2d at 641.

Here, all of the factors for *de facto* merger are present and BMGI Corp. is the "Corporation" as defined in the SPA. Indeed, it is undisputed that Kirzhner's own expert agrees that all four factors under a *de facto* merger analysis were satisfied. (SOF ¶ 24.) Kirzhner also concedes that the most important factor was met (continuity of shareholders) as well as the continuity enterprise factor. (*Id.*, ¶ 25-26; BMGI SOF ¶ 40; Verified Am. Compl., ¶¶ 57 & 70.) Nor does Kirzhner dispute that BMGI Corp. agreed in writing to assume the liabilities. (Ex. O, § 4; Ex. P, p. DS 50986; Kirzhner's Additional SOF ¶ 10 re: the statutory merger documents which cause an assumption of liabilities; Hazel Dep., Ex. BB to this Reply, p. 51:10-16.) BMGI Inc. also satisfied the last factor of ceasing business operations because there can be no operations after all of its

assets were transferred. (Verified Am. Compl., ¶¶ 70 & 113; SOF ¶ 30; *See Morales v. City of New York*, 849 N.Y.S.2d 406, 412 (N.Y. Sup. Ct. 1992) (finding a cessation of business activities where a company was not dissolved for eight years so that it could collect payments from a debtor).

## II. THE BREACH OF FIDUCIARY DUTY CLAIMS MUST BE DISMISSED.

### A. **The Fiduciary Duty Claims Are Abrogated by Colorado Law.**

Section 7-108-401(5) of the Business Corporation Act ("BCA") provides that officers and directors of corporations do not owe any fiduciary duties to the corporation's creditors. By selectively quoting to a recent grant of certiorari by the Colorado Supreme Court, Kirzhner attempts to create the misleading appearance that the Supreme Court is reviewing the applicability or scope of COLO. REV. STAT. § 7-108-401(5). (Resp., p. 19); *Colborne Corp. v. Weinstein*, No. 09CA0724, 2010 WL 185416 (Colo. App. Jan. 21, 2010), *cert. granted* 2010 WL 3213046 (Colo. Aug. 16, 2010).[11] In *Colborne*, the Court of Appeals held that members of a limited liability company could be sued for taking excess member distributions under § **7-80-606** of the Limited Liability Company Act ("LLC Act"). But the LLC Act does not contain a provision like § 7-108-401(5) of the BCA that states that no fiduciary duty is owed to a corporation's creditors. Colorado's Supreme Court accepted certiorari to consider whether there might be a common law bar to claims by creditors of an LLC, which the lower court refused to find. Kirzhner's citation to *Colborne* is misleading. *Colborne* does not suggest that the Court might address the scope of § 7-108-401(5) since that case involves LLCs and the LLC Act. *Colborne* did not even discuss the existence § 7-108-401(5). Nevertheless, Kirzhner

---

[11] The Court of Appeals decision is attached as Ex. CC and the Supreme Court decision as DD.

insists that *Colborne* "accept[ed] the petition to analyze whether the fiduciary duty owed by officers of an insolvent corporation can be extended to managers of an insolvent LLC." (Resp., p. 19.) At most, *Colborne* suggests that the Court might create a common law bar to suits by creditors of an LLC even in the absence of statutory prohibition like § 7-108-401(5) that applies only to corporations. Yet, when Kirzhner quoted the grant of certoriari, she omitted the highlighted language that indicates that the Court is construing provisions of the LLC Act: "Whether the creditors of a limited liability company ('LLC') have standing to sue individual members of the LLC who have allegedly received an unlawful distribution **under section 7-80-606, C.R.S. (2009), the Colorado Limited Liability Company Act ('LLC Act')**." 2010 WL 3213046; (Resp., p. 19.) Also, Kirzhner's citation to cases with operative facts that occurred prior to July 2006 is equally unavailing. Section 7-108-401(5) was enacted in July 1, 2006, and thus, Kirzhner's reliance on cases decided prior to effective date is misplaced.

B. **Kirzhner Was Never A Creditor Of BMGI Inc.**

Kirzhner contends that she is a BMGI Inc. creditor of because she "has asserted a breach of contract claim for eradicating the value" of the company. (SOF, ¶ 42.) But Kirzhner has no valid contract claim against BMGI Inc. as set forth in BMGI's Summary Judgment Motion. If Silverstein had granted Kirzhner a security interest in his Microsoft stock, for instance, that would not make her a creditor of Microsoft. Silverstein's grant of a security interest in BMGI stock does not make her a BMGI creditor.

C. **The Company Was Never Insolvent.**

In order to sustain her fiduciary duty and CUFTA claims, Kirzhner has the burden to prove that the company was insolvent. Insolvency is generally defined as: "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation," or "a

debtor who is generally not paying his debt's as they become due is presumed insolvent." *C.f.* § 3-8-103(1) & (2) (CUFTA).  Here, it is undisputed that BMGI Inc. had a positive valuation at all times.[12]  (SOF ¶ 46 A-C.)  Likewise, Kirzhner has no evidence that BMGI Inc. was "generally not paying [its] debt's as they become due…." § 3-8-103(2).  Despite being given access to every accounting entry of BMGI Inc./BMGI Corp. in 2008-2010, including every account payable, Kirzhner was unable to identify one single creditor who was not paid in the July-October 2009 timeframe when she maintains the company was insolvent.  Instead, she relies exclusively on two contradictory draft minutes dated July 2009 that say the company is "insolvent" (without defining that term or explaining the purpose for which it was used).  (Ex. 27 & 28.)  The mere fact that a draft document uses the word "insolvent" is not enough to satisfy Kirzhner's burden of proof.  She must come forward with evidence that the company's debts were not being paid as they came due. § 3-8-103(2).  The undisputed evidence shows that the draft minutes Kirzhner relies upon were prepared – not because the company was insolvent – but so that the company could file for bankruptcy quickly if a million-plus dollar judgment was entered that week (which never materialized). (SOF ¶ 49.)  Even Kirzhner's expert's report rebuts a finding of insolvency at the time these two minutes were created in July 2009 (which was prior to the reorganization).[13] (*See* Reply to SOF ¶ 47, above.)

---

[12] Kirzhner's expert valuation by Mr. Hazel is the subject of a motion to strike that is incorporated by reference.

[13] Hazel testified: "**Q**: And besides the date that Evergreen's assets were transferred, you're not rendering an opinion that Evergreen was insolvent at any date prior to the date those assets were transferred, correct?" "**A:** Well, again, if you define that the word insolvency in most contexts means the inability to pay liabilities as they become due.… We believe generally that it was solvent at all points in time." Ex. R, 120:12-22

Respectfully submitted this 12th day of August, 2011.

                          PAPPALARDO LAW GROUP, LLC

                          *By:       s/ Marc Pappalardo*
                          MARC F. PAPPALARDO #35339
                          Pappalardo Law Group, LLC
                          1919 14TH St., Suite 510
                          Boulder, CO 80302
                          Telephone 303-250-1507
                          Fax: 775-429-4091
                          E-mail:  Marc@PappalardoLawGroup.com

                          *Attorneys for Defendants* David Silverstein,
                          David Silverstein Investments, LLC, and DSI
                          Investments, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of August, 2011, a true and correct copy of the foregoing **THE SILVERSTEIN DEFENDANTS REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was served electronically, addressed to:

Alan D. Sweetbaum (asweetbaum@sweetbaumlevinesands.com)
Thomas L. DeVine (tdevine@sweetbaumlevinesands.com)
Sweetbaum, Levin and Sands, P.C.
1125 Seventeenth Street, Suite 2100
Denver, CO 80202
*Attorneys for Ilona Kirzhner*

Daniel W. Glasser
CHIPMAN GLASSER LLC
2000 S. Colorado Blvd., Tower One
Suite 7500
Denver, Colorado  80222
*Attorneys for Defendants BMGI Holdings, LLC, BMGI Inc., and BMGI Corp.*

*s/ Marc Pappalardo*
Marc Pappalardo