**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-02858-CMA-BNB

ILONA KIRZHNER, an individual,

      Plaintiff,

v.

DAVID SILVERSTEIN, an individual,
EVERGREEN INDUSTRIES, INC., f/k/a Breakthrough Management Group
    International, Inc., f/k/a Breakthrough Management Group, Inc., a Colorado
    Corporation,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation, and
BMGI HOLDINGS, LLC, a Delaware limited liability company,

      Defendants.

---

**ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
AND PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS**

---

This matter is before the Court on Defendants' Motion to Dismiss the Amended

Complaint (Doc. ## 113, 114), and Plaintiff's Motion to Dismiss the Defendants'

Amended Counterclaims (Doc. # 80). The motions are fully briefed and ripe for

adjudication. For the following reasons, Defendants' Motion to Dismiss the Amended

Complaint is DENIED, and Plaintiff's Motion to Dismiss the Defendants' Amended

Counterclaims is GRANTED.

# I. BACKGROUND

## A.    ALLEGED FACTS

Plaintiff Ilona Kirzhner's ("Kirzhner's") operative First Amended Verified Complaint ("FAC") (Doc. # 105) alleges as follows.  On September 23, 2004, Kirzhner entered into a Stock Purchase and Sale Agreement (the "Agreement") with Defendant David Silverstein ("Silverstein") and Defendant Evergreen Industries, Inc., then known as Breakthrough Management Group, Inc. ("BMGI").  (*Id.,* ¶ 14.)  Under the Agreement, Kirzhner agreed to sell and Silverstein agreed to purchase 5,000,000 shares of BMGI common stock (the "Stock") for $1.00 per share.  (*Id.*)  Silverstein paid the purchase price for the Stock by executing and delivering to Kirzhner a Promissory Note Secured by Stock Pledge (the "Note") payable to Kirzhner in the amount of $5,000,000.  (*Id.,* ¶ 15.)  Kirzhner alleges that, as of the date of the filing of the FAC, Silverstein was in default on the Note, had been in default for more than a year, and had refused repeated demands by Kirzhner for amounts owed on the Note.  (*Id.,* ¶¶ 18-19.)

The Agreement, however, contained a "sole remedy" provision stating that, "[i]n the event that [Silverstein] is in breach of this Agreement for failing to pay any installment of the [p]urchase [p]rice . . ., then [Kirzhner's] sole and exclusive remedy for the default or breach of the Agreement shall be for [Kirzhner] . . . to recover possession of all of the Stock not paid for at the time the default is declared . . . ."  (Doc. # 59 at 3-4.)  Kirzhner concedes in the FAC that Silverstein has attempted to return to Kirzhner 3,670,000 shares of BMGI stock, representing the unpaid amount still owing under the

Note.  (Doc. # 105, ¶ 36.)  Kirzhner refused to accept the stock.  (*Id.*)  Silverstein and

BMGI have filed counterclaims in this action alleging that Kirzhner fraudulently induced

Silverstein to enter into the Agreement, despite never actually intending to abide by

the "sole remedy" provision, and instead intending all along to file a lawsuit against

Silverstein should Silverstein ever be in default on his payments under the Note.

(*See* Doc. ## 74, 287.)

Although the FAC does not explain why Kirzhner refused to accept Silverstein's

offer to return the stock, the FAC does detail an alleged scheme by Silverstein to

devalue BMGI's stock in order to defraud Kirzhner, which resulted in BMGI's stock

being worthless.  (*Id.*, ¶¶ 23-72.)  The alleged scheme consisted of Silverstein

transferring BMGI's assets through two investment companies created by him

(Defendants David Silverstein Investments, LLC and DSI Investments, LLC ("DSI"))

to two newly created entities (Defendants BMGI Corp. and BMGI Holdings, LLC).

(*See id.*)  As a result of the alleged scheme, BMGI's stock is worthless and BMGI Corp.

now carries on BMGI's previous business, but free and clear of BMGI's obligation to

Kirzhner.  (*Id.,* ¶ 70.)[1]

---

[1]  Kirzhner alleges that the stock and assets of BMGI are distinct and different than the stock and assets of BMGI Corp., and that no Defendant has offered Kirzhner a security interest in BMGI Corp.'s stock.  (*Id.,* ¶¶ 71-72.)  However, the FAC also states that Silverstein, at his deposition, stated that Kirzhner has a security interest in BMGI Corp.'s stock by nature of successor liability.  (*Id.,* ¶71.)  Silverstein's pending motion to dismiss suggests the same: "Kirzhner was unaffected by the transfer and remains fully collateralized by the stock of BMGI[]'s successor, BMGI Corp. – a thriving company."  (Doc. # 113 at 4.)

**B.     PROCEDURAL HISTORY**

Kirzhner originally filed this action in Boulder County District Court on November 18, 2009.  (Doc. # 2.)  On December 7, 2009, Defendants removed this action to federal court pursuant to 28 U.S.C. § 1446, based on diversity jurisdiction.  (Doc. # 1.)  On December 13, 2010, Kirzhner filed the operative FAC, bringing nine claims for relief against various combinations of defendants.  (Doc. # 105.)  The claims are:  breach of contract, breach of the implied covenant of good faith and fair dealing, artifice or scheme of fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), conspiracy, joint and several liability for action in concert, and accounting.  (*Id.* at 7-14.)

On December 23, 2010, Defendants David Silverstein, DSI Investments, LLC, and David Silverstein Investments LLC (collectively, "the Silverstein Defendants") filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss four of the nine claims asserted in the FAC:  the claims for artifice or scheme of fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of CUFTA.  (Doc. # 113.)  Defendants BMGI, BMGI Corp., and BMGI Holdings, LLC (collectively, "the BMGI Defendants") joined in the Silverstein Defendants' motion to dismiss.  (Doc. # 114.)  Kirzhner filed a Response to Defendants' motion to dismiss (Doc. # 116), and the Silverstein Defendants filed a Reply (Doc. # 119), to which the BMGI Defendants joined (Doc. # 120).

On August 5, 2010, Silverstein and BMGI both filed counterclaims against Kirzhner. (Doc. ## 62, 63.) These two counter-claimants have now both filed First Amended Counterclaims, each bringing a single claim of fraud in the inducement against Kirzhner. (Doc. ## 74, 287.) On November 4, 2010, Kirzhner filed a motion to dismiss the First Amended Counterclaims under Federal Rule of Civil Procedure 12(b)(6). (Doc. # 80.) Each counter-claimant filed a Response to Kirzhner's motion to dismiss (Doc. # 92, 93), and Kirzhner filed a Reply (Doc. # 112).

## II. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a claim for relief in any pleading for "failure to state a claim upon which relief can be granted." A complaint or counterclaim will survive a Rule 12(b)(6) motion to dismiss only if it "contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant [or counter-defendant] has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation marks omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("The allegations must be enough that, if assumed to be true, the plaintiff [or counter-claimant] plausibly (not just speculatively) has a claim for relief.").

In reviewing a Rule 12(b)(6) motion to dismiss, a court "must accept all the well-pleaded allegations of the complaint [or counterclaim] as true and must construe them in the light most favorable to the [non-moving party]." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (citation and internal quotation marks omitted). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Also, "a complaint [or counterclaim] does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Further, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [complaint or counterclaim] alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation and internal quotation marks omitted).

## III. ANALYSIS

### A. DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants move to dismiss four claims from the FAC: the artifice or scheme of fraud claim, the breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims, and the CUFTA claim. (Doc. # 113 at 8-12.)

#### 1. Artifice or Scheme of Fraud Claim

Kirzhner's artifice or scheme of fraud claim against all Defendants alleges, *inter alia*, that Defendants "have been or are engaged in a scheme and artifice to defraud

Kirzhner out of the value of the Stock by causing the encumbrance of the Assets by DSI and the subsequent transfers of the Assets from BMGI to DSI, and from DSI to BMGI Corp. and BMGI Holdings" and that the scheme or artifice to defraud "causes [Kirzhner] damage by causing devaluation of the Stock thereby creating a situation in which the likelihood of payment to [Kirzhner] under the Note is diminished as a result of the Stock becoming worthless."  (Doc. # 105, ¶¶ 90-91.)

In their motion to dismiss, Defendants argue that the Court should dismiss Kirzhner's artifice or scheme of fraud claim for failure to state a claim because Kirzhner has failed to allege that any Defendants made any misrepresentation to her or that she detrimentally relied on any such misrepresentation, which are necessary elements of a common law fraud claim.  (Doc. # 113 at 8-9.)[2]  In response, Kirzhner argues that her scheme or artifice of fraud claim is actionable even though the alleged wrong "does not fall within the cookie cutter common law fraud rubric nor constitute a [statutory] fraudulent transfer [claim]."  (Doc. # 116 at 3-5.)

Although Kirzhner has failed to frame the nature of her claim effectively in response to the motion to dismiss, the Court concludes that the FAC has sufficiently pled a common law fraud claim, and more specifically, a fraudulent concealment claim. A common law fraud claim can be based on a defendant's fraudulent concealment of a material fact from the plaintiff.  *See Colo. Motor Vehicle Dealer Bd. v. Butterfield*, 9 P.3d

---

[2]  Defendants also concede at several places in their briefs that a common law fraud claim can be based on an omission of material fact (fraudulent concealment), as opposed to an affirmative misrepresentation of material fact.  (*See* Doc. # 113 at 7; Doc. # 119 at 6, 7, 8.)

1148, 1152 (Colo. App. 2000) (listing the elements of a common law fraud claim, and stating that the claim can be based on "a false representation" or a "fail[ure] to disclose a material fact"); *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1386 (Colo. App. 1986) (stating that common law fraud includes a claim of "concealment of a material existing fact, that in equity and good conscience should be disclosed"); *see also In re Cisneros,* 430 P.2d 86, 89 (Colo. 1967) ("[F]raud may be committed by the suppression of truth as well as by the suggestion of falsehood. . . . [F]ailure to disclose a material fact with intention to mislead or defraud is equivalent to a fraudulent concealment of the fact, and stands no better than the affirmation of a material misrepresentation.") (citation omitted).

> The elements of the tort of fraudulent concealment are (1) the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed; (2) the defendant's knowledge that the fact is being concealed; (3) the plaintiff's ignorance of the fact; (4) the defendant's intent that the plaintiff act on the concealed fact; and (5) the plaintiff's action on the concealment resulting in damage.

*Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 292 (Colo. App. 2010); *see also Kopeikin v. Merchs. Mortg. & Trust Corp.*, 679 P.2d 599, 601 (Colo. 1984).

Common law fraud claims must be pled with particularity in federal court. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994) (holding that Rule 9(b) applies to common law fraud claims brought in federal court); 5A Wright & Miller, Federal Practice and Procedure: Civil 3d § 1297 (2011) ("Since Rule 9(b) is a special pleading requirement, it concerns

procedure in the federal courts and should govern in all civil actions, including all suits in which subject matter jurisdiction is based on diversity of citizenship . . . ."). In the Tenth Circuit, in order to satisfy this particularity requirement, "a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). Two Tenth Circuit decisions have applied this rule in fraudulent concealment cases. *See Caprin v. Simon Transp. Servs., Inc.*, 99 F. App'x 150, 158-61 (10th Cir. 2004); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236-37 (10th Cir. 2000).[3]

The FAC does not contain a recitation of the elements of a fraudulent concealment claim. However, in determining whether a claim is plead with sufficient particularity, it is not a recitation of elements of a claim that is important, but instead, whether there are sufficient factual allegations such that the court can reasonably infer that the elements of the claim are met. *See Larson*, 379 F. Supp. 2d at 1153 ("Rule 9(b) states that it is the circumstances constituting the fraud, not the elements, that must be pleaded with particularity. Although plaintiff need not state precisely each element of the claim, it must plead minimal factual allegations on those material elements that must

---

[3]  The Court notes, however, that two United States District Court Judges in the District of Kansas have rejected the rigid use of this rule in fraudulent concealment cases. *See In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. 05-md-1721, 2009 WL 2780258, at *3 n.1 (D. Kan. Sept. 1, 2009) ("[T]he particularity requirements of Rule 9(b) cannot be strictly applied in concealment cases because an omission often cannot be described in terms of the time, place and contents of the misrepresentation or the identity of the person making the misrepresentation."); *see also Larson v. Safeguard Props., Inc.*, 379 F. Supp. 2d 1149, 1153 (D. Kan. 2005).

be proved.") (citations and quotation marks omitted); 37 Am. Jur. 2d Fraud and Deceit § 463 (2011) ("[O]ne pleading fraud must make such allegations of fact that the existence of all the requisite elements of fraud that constitute the basis of a cause of action or a defense, as the case may be, will appear from the facts recited either directly or by fair implication."); 27 Federal Procedure, Lawyers Edition § 62:147 (2011) ("[T]he requirement that fraud be pleaded with particularity does not mean that a textbook pleading of all the elements of fraud is required . . . ."); *see also Turner v. Schultz*, 187 F. Supp. 2d 1288, 1291 (D. Colo. 2002) (stating, in Rule 8 context, that "[a] plaintiff is not required to state precisely each element of the claim. Nonetheless, a plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.") (quotation marks omitted).

As to each element of a fraudulent concealment claim, Kirzhner has pled sufficient factual matter with particularity. The FAC details Defendants' numerous acts of alleged wrongdoing:

> 23. On June 6, 2008, BMGI entered into a Business Loan Agreement with First National Bank of Boulder ("First National Bank"), creating a $2,000,000 line of credit. (The "First Loan"). . . .
>
> 25. On June 9, 2008, BMGI entered into a "mezzanine" Loan Agreement with First Capital Partners, LLC ("First Capital Partners") creating a $5,000,000 line of credit (the "Mezzanine Loan"). . . .
>
> 27. Silverstein immediately distributed $2,000,000 from the Mezzanine Loan to himself.

28.     Beginning May 11, 2009, Silverstein began to explore bankruptcy options concerning BMGI. In June and July, 2008 BMGI held a special meeting of shareholders regarding bankruptcy, and the board of BMGI authorized Silverstein to seek Chapter 7 or 11 bankruptcy protection, if needed. . . .

31.     Silverstein funded DSI using the $2,000,000 distributed from BMGI, from the Mezzanine Loan, to Silverstein. Rather than using the $2,000,000 to pay off the First Loan, Silverstein distributed the funds to himself to acquire the First Loan through one of his affiliates. . . .

42.     On August 21, 2009, DSI proposed to acquire all collateral for the First Loan, comprised of BMGI's Assets, as full satisfaction of the First Loan. . . .

60.     . . . DSI sold substantially all of BMGI's assets to BMGI Corp. for $5,700,000. . . .

62.     DSI obtained the funding to acquire the Assets from money distributed to Silverstein by BMGI. BMGI obtained the funds it paid to Silverstein from loan proceeds from the Mezzanine Loan made to BMGI by First Capital Partners. This transfer of funds depleted the Assets that had belonged to BMGI and were subsequently transferred to BMGI Corp. . . .

66.     Upon completion of this series of transactions, BMGI's stock was worthless.

67.     Silverstein and DSI had taken and used BMGI's funds to effect this scheme to the benefit of Silverstein and to the detriment of Plaintiff.

(Doc. # 105, ¶¶ 23, 25, 27, 28, 31, 42, 60, 62, 66, 67.) These allegations are sufficiently detailed such that the Court can reasonably infer that the elements of fraudulent concealment are met. These transfers of funds are material facts. One can reasonably infer that Defendants did not inform Kirzhner regarding these transfers at the time they were made. Given that Kirzhner's remedy for Silverstein's breach of the Agreement

was the unpaid stock, and given that prior to the Agreement Kirzhner and Silverstein were the sole shareholders of BMGI, Defendants should have disclosed these transfers to Kirzhner. Kirzhner's allegations, including that Defendants engaged in this scheme in order to defraud Kirzhner, are sufficient to show that Defendants knew they were improperly concealing the existence of the transfers and, by doing so, intended to harm Kirzhner. 27 Federal Procedure, Lawyers Edition § 62:147 (2011) ("[A]llegations must be made with sufficient particularity and with sufficient factual basis to support inference that they were knowingly made."); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Finally, the allegations indicate resulting harm, namely, the devaluation of the stock and Kirzhner's inaction (where, if she had known of the concealed fact, she may have, for example, tried to stop the transfers or rescind the Agreement). These allegations adequately detail "the time, place and contents of the [omissions], the identity of the party making the [omissions] and the consequences thereof." *Tal*, 453 F.3d at 1263.

The Court therefore denies Defendants' motion to dismiss Kirzhner's artifice or scheme of fraud claim. In so doing, the Court rejects Kirzhner's argument that she should be allowed to proceed with an artifice or scheme of fraud claim based on some other theory of fraud in which the essential elements of a common law fraud claim need

not be proven.[4]  In order to ultimately prevail on her artifice or scheme of fraud claim, Kirzhner must prove that the essential elements of a common law fraud claim are met.

2.    Breach of Fiduciary Duty Claims

Kirzhner's FAC brings a breach of fiduciary duty claim against Silverstein, and a separate claim against the other Defendants alleging that they aided and abetted in Silverstein's breach of fiduciary duty.  (Doc. # 105, ¶¶ 94-105, 130-135.)  The claims are based on Silverstein's common law fiduciary duty, as a director of an insolvent corporation (BMGI), to Kirzhner, a creditor of that insolvent corporation.  (*Id.*, ¶¶ 96-98.)

"Under the common law, when a corporation becomes insolvent, a duty arises in its directors and officers to the corporation's creditors . . . to avoid favoring their own interests over creditors' claims."  *Alexander v. Anstine*, 152 P.3d 497, 502 (Colo. 2007) (citations omitted).  This limited fiduciary duty on the part of directors of an *insolvent* corporation to creditors is, in essence, an exception to the general common law rule that directors of a corporation owe no fiduciary duty to the corporation's creditors. *See Paratransit Risk Retention Grp. Ins. Co. v. Kamins*, 160 P.3d 307, 319 (Colo. App. 2007) ("Creditors typically may not bring breach of fiduciary duty claims against corporate directors."); *id.* at 320 ("[A] director's fiduciary duty to corporate creditors *arises only upon insolvency*.") (emphasis added); *Alexander*, 152 P.3d at 502 ("Under

---

[4]  The cases Kirzhner cites on page 4 of her Response do not support the proposition that some type of common law fraud claim exists for which the traditional elements of common law fraud need not be proven.

the common law, *when* a corporation becomes insolvent, a duty *arises* in its directors and officers to the corporation's creditors.") (emphasis added).

In their motion to dismiss, Defendants argue that an amendment to a Colorado statute has abrogated this limited common law fiduciary duty owed by directors of an insolvent corporation to the corporation's creditors. (Doc. # 113, at 9-10.) Colorado Revised Statute § 7-108-401(5), added in 2006 as a new provision of section 7-108-401, provides, "A director or officer of a corporation, in the performance of duties in that capacity, shall not have any fiduciary duty to any creditor of the corporation arising only from the status as a creditor."

The Colorado Supreme Court has not resolved the question of whether section 7-108-401(5) abrogates the limited common law fiduciary duty where a corporation is insolvent. In *Alexander*, the Colorado Supreme Court expressly declined to reach the issue. *See* 152 P.3d at 502 n.9 ("A 2006 amendment to the Colorado Revised Statutes, which does not apply to this case, states that directors and officers of corporations owe no fiduciary duties to the corporation's creditors. § 7-108-401(5), C.R.S. (2006). We express no opinion on whether this provision applies where a corporation is insolvent.").

"[The duty of a] federal court sitting in diversity is generally to predict how the state supreme court would rule on an unsettled question of state law presented to us." *Mowry v. United Parcel Serv., Inc.*, 280 F. App'x 702, 708 n.5 (10th Cir. 2008).[5]

---

[5]  Neither party has asked the Court to certify this question to the Colorado Supreme Court, and the Court declines to do so. *See Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) ("Whether to certify a question of state law to the state supreme court is within the discretion of the federal court. Certification is not to be routinely invoked whenever a federal

In attempting to predict how the state supreme court would rule, the federal court "may look to other state court decisions, federal decisions, and the general trend and weight of authority." *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 780 (10th Cir. 2001). The Court has not found any other relevant case law affirmatively deciding this issue.[6]

Thus, the Court must interpret the statute itself. Because the issue here is whether a statute abrogates a common law rule, the legislative intent to abrogate the common law rule must be clear. Absent such clear legislative intent, the common law rule prevails. *See Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1212 (10th Cir. 2001) ("Absent clear legislative intent, the common law prevails in any conflict with statutory law."); *Robbins v. People*, 107 P.3d 384, 387 (Colo. 2005) ("[A] statute may not be construed to abrogate the common law unless such abrogation was clearly the intent of the general assembly. Absent such clear intent, statutes must be deemed subject to the common law."); *Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 74-75 (Colo. 1998) ("[W]e infer no abrogation of a common law right of action absent clear legislative intent. If the legislature wishes to abrogate rights that

---

court is presented with an unsettled question of state law.") (citations omitted).

   [6] A Colorado Court of Appeals decision has also identified this issue but declined to resolve it. See *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 79-80 (Colo. App. 2009) (stating that the common law rule "arguably conflicts" with the statutory amendment, and then "[a]ssuming, without deciding" that the common law rule still applied). Another Colorado Court of Appeals decision, decided after the statute was amended, did not identify the statute or the potential conflict between it and the common law rule. *See Paratransit Risk Retention*, 160 P.3d at 319-20.

would otherwise be available under the common law, it must manifest its intent expressly or by clear implication.") (citations and quotation marks omitted).

A completely reasonable reading of the statute is that the statute protects directors from claims by creditors under *any* circumstances, even where a corporation is insolvent. However, the question is whether the legislature's intent to abrogate the common law rule is clear. Several considerations lead the Court to conclude that the legislature's intent to do so is not sufficiently clear. First, the legislature may have simply intended this statutory amendment to serve as a codification of the common law rule that directors generally owe no fiduciary duties to creditors. This viable interpretation is reinforced by the fact that this statutory provision was added to a statute which deals with *general* standards of conduct for directors (indeed, the very title of the statute is "General standards of conduct for directors and officers"). Second, if the legislature had actually intended to go farther and abrogate the limited common law exception in cases where the corporation is insolvent, the legislature could have explicitly drafted the statute to make clear that the statute applies regardless of whether or not the corporation is solvent.[7] And third, the statutory amendment is drafted in general terms, and thus, absent clear legislative intent, is not properly construed as abrogating a specific, limited exception to the common law rule. *See Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004) ("We have said that '[a] statute, general in its terms,

_____

[7] The Court has found nothing in the legislative history revealing the legislature's intent in amending the statute.

is always to be taken subject to [any exceptions which] the common law [requires].'") (quoting *Bradley v. People*, 9 P. 783, 786 (1886)); *Denver & R. G. R. Co. v. Gannon,* 90 P. 853, 856 (Colo. 1907) ("A statute, general in its terms, is always to be taken as subject to any exceptions which the common law requires.") (quoting same passage from *Bradley*).

The Court holds that the Colorado legislature's intent in adopting Colorado Revised Statute § 7-108-401(5) is unclear, and therefore the statute is not properly read as abrogating the common law rule that directors of insolvent corporations owe a limited fiduciary duty to the corporation's creditors. The Court denies Defendants' motion to dismiss as to Kirzhner's two breach of fiduciary duty claims.

3. <u>CUFTA Claim</u>

Kirzhner's FAC brings a fraudulent transfer claim against all Defendants under CUFTA, Colorado Revised Statute § 38-8-105, which prohibits a debtor from fraudulently transferring funds in order to escape his obligations to a creditor.

Defendants move to dismiss the claim as to Silverstein only, arguing that the complaint does not allege that Silverstein himself was an actual transferor or transferee of funds under CUFTA, which they argue is required for liability under the statute. (Doc. # 113 at 10-11 (citing cases).) Defendants point the Court to the language in the FAC under the CUFTA cause of action, which only specifically lists the other Defendants as transferors and transferees (*see* Doc. # 105, ¶¶ 114-117), and states more generally

as to Silverstein that "Silverstein engaged in a course of conduct, through his various entities, to [fraudulently transfer assets]" (*id.*, ¶ 113).

In response, Kirzhner argues, *inter alia*, that she did plead facts indicating that Silverstein himself was both a transferee and transferor of wrongfully transferred assets. (Doc. # 116 at 11-12.)  Specifically, earlier in the FAC, Kirzhner alleged, "Silverstein immediately distributed $2,000,000 from the Mezzanine Loan [intended to fund BMGI] to himself" and "Silverstein funded [Defendant] DSI using the $2,000,000 distributed from BMGI, from the Mezzanine Loan, to Silverstein."  (Doc. # 105, ¶¶ 27, 31; *see also id.* ¶ 62 ("DSI obtained the funding to acquire the Assets from money distributed to Silverstein by BMGI.  BMGI obtained the funds it paid to Silverstein from loan proceeds . . . ."); *id.*, ¶ 67 ("Silverstein and DSI had taken and used BMGI's funds to effect this scheme . . . .").)

The Court concludes that it is appropriate to construe Kirzhner's FAC as bringing a claim against Silverstein based on his being a transferee and transferor of wrongfully transferred funds.[8]  To hold otherwise would be to limit Kirzhner's claim based on what appears to be a pleading error.  *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962) ("It is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities.  The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel

---

[8]  In so doing, the Court notes that, at the beginning of the CUFTA claim, Kirzhner specifically incorporated all of the foregoing paragraphs of the FAC into that claim.  (*See id.*, ¶ 106.)

may be decisive to the outcome . . . ."); *Denver & Rio Grande Western R. Co. v. Union Pacific R. Co.*, 119 F.3d 847, 848 (10th Cir. 1997) ("Although practitioners are expected to carefully comply with procedural rules, case law interpreting those rules is founded upon a policy which favors deciding cases on the merits as opposed to dismissing them because of minor technical defects.").  The Court holds that Kirzhner's CUFTA is adequately pled as to Silverstein.

In accordance with the foregoing, the Court denies Defendants' Motion to Dismiss the Amended Complaint (Doc. ## 113, 114).

## B.    KIRZHNER'S MOTIONS TO DISMISS THE AMENDED COUNTERCLAIMS

Silverstein and BMGI's Amended Counterclaims each bring a single fraud in the inducement claim, alleging that Kirzhner never actually intended to abide by the "sole remedy" provision in the Agreement by accepting back BMGI stock, instead intending all along to file a lawsuit against Silverstein should Silverstein ever be in default on his payments under the Note.  (*See* Doc. ## 74, 287.)

The elements of a fraudulent inducement claim are:  (1) the defendant's misrepresentation of a material fact; (2) the plaintiff's justifiable reliance on that misrepresentation; and (3) such reliance resulting in damage to the plaintiff.  *See J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 132 (Colo. 2007); *see also Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1378 (10th Cir. 1989) (stating that, in order to support a fraud claim, the defendant must have known, at the time that the representation was made, that it was false); *H & H Distribs., Inc. v. BBC Int'l, Inc.*, 812 P.2d 659, 662 (Colo.

App. 1990) ("[A] promise concerning a future act, when coupled with a present intention not to fulfill that promise, can be actionable fraud.").[9]

Kirzhner moves to dismiss the Amended Counterclaims on the grounds that: (1) the Amended Counterclaims contain no facts plausibly suggesting that Silverstein had the intent at the time the parties entered into the Agreement of not abiding by the "sole remedy" provision; (2) Kirzhner's alleged misrepresentation involved an opinion with respect to legal issues (as opposed to fact), and is therefore not actionable; and (3) neither Silverstein nor BMGI has suffered any damages as a result of the alleged misrepresentation. (Doc. # 80 at 8-14.)

Kirzhner's first argument warrants dismissal of the Amended Counterclaims.[10] The Amended Counterclaims repeatedly state the same conclusory allegation, without supporting facts, that Kirzhner had no intention of complying with the "sole remedy" provision at the time that the Agreement was entered into. (Doc. # 74, ¶ 35 ("At the time that Kirzhner entered into the Stock Purchase Agreement, she had the then-present intention to take the action of [breaching the "sole remedy" provision and] suing [BMGI] and Silverstein in the event that either of them ever committed any breach or default of the [Agreement]."); *see also* Doc # 74, ¶¶ 24, 40-45; Doc. # 287, ¶¶ 24, 35, 40-45.) With one exception, Silverstein and BMGI cite only to these same paragraphs

---

[9] The cases cited by Silverstein on pages 11-12 of his Response Brief do not call into question the fact that, under Colorado law, a plaintiff's claim of fraudulent inducement requires a showing that the defendant had no intention to perform the promise at the time the promise was made.

[10] The Court declines to address Kirzhner's second and third arguments.

of the Amended Counterclaims in arguing that their allegations of then-present intention are sufficient (which they are not because they are conclusory allegations unsupported by pleaded facts).

The one exception is paragraph 35 of the Amended Counterclaims, which states, "Kirzhner has taken the action of suing both [BMGI] and Silverstein for monetary damages for express and implied breaches of contract in this case." (Doc. # 74, ¶ 35; Doc. # 287, ¶ 35.) Silverstein argues in opposition to the motion to dismiss that this allegation constitutes "post-transactional conduct that . . . provides support of Kirzhner's intent at the time she made her misrepresentations." (Doc. # 93 at 12-13.) The argument is unpersuasive. The fact that someone ultimately breaches a contract does not provide any factual support for an allegation that the person intended to breach the contract at the time of contract formation. *See H & H Distribs., Inc.*, 812 P.2d at 662 ("A claim for the tort of fraud cannot be predicated upon the mere nonperformance of a promise or contractual obligation or upon the failure to fulfill an agreement to do something at a future time."); *Ardente, Inc. v. Shanley*, No. C 07-4479, 2010 WL 546485, at *7 (N.D. Cal. Feb. 10, 2010) ("While a plaintiff may aver intent generally [under Rule 9(b)], something more than nonperformance is required to prove the defendant's intent not to perform his promise.") (quotation marks omitted); *Garnier v. J.C. Penney Co., Inc.*, No. 91 Civ. 5563, 1993 WL 42233, at *4 (S.D.N.Y. Feb. 17, 1993) ("Scienter be averred generally, but plaintiff must provide some factual basis for conclusory allegations of intent. Proof of fraudulent intent must be based on more than

mere showing of later nonperformance of the alleged promise.") (citations and quotation marks omitted).

Thus, Silverstein and BMGI have pleaded no facts that support their allegation that, at the time of contract formation, Kirzhner had no intention of complying with the "sole remedy" provision. Given this, it appears that Silverstein and BMGI's claim would have been more properly brought as a simple breach of contract claim. *See Ardente, Inc.*, 2010 WL 546485, at *7 ("Courts are justifiably loathe to allow tort claims and damages in actions that are fundamentally about enforcing legitimate business expectations rather than vindicating social policy."); *European Roasterie, Inc. v. Dale*, Civil No. 10-53, 2010 WL 1782239, at *3 (D. Minn. May 4, 2010) ("Broken promises [which could support a breach of contract claim] generally do not constitute fraud unless the plaintiff shows affirmative evidence that the promisor had no intention to perform.") (citations and quotation marks omitted); *see also* 27 Federal Procedure, Lawyers Edition § 62:134 (2011) ("The requirement that the circumstances constituting fraud or mistake shall be stated with particularity seeks to eliminate the type of fraud action in which all the facts are learned through discovery after the complaint is filed, and to deter plaintiffs from advancing fraud claims solely for their nuisance or settlement value by requiring the plaintiff to show at the outset that he or she has an actual fraud claim.").

Accordingly, the Court grants Kirzhner's motion to dismiss the Amended Counterclaims.

**C.    KIRZHNER'S REQUEST FOR ATTORNEY'S FEES**

Kirzhner has moved the Court for an award of her attorney's fees in having to respond to Defendants' motion to dismiss.  (Doc. # 116 at 16-19.)  Kirzhner argues that Defendants' motion is frivolous, groundless, and vexatious, arguing generally that the motion seeks to dismiss claims already held to be viable by this Court in its order on Defendants' previous motion to dismiss the original complaint.  (*See id.*)

Kirzhner's argument lacks merit.  Each of the specific issues raised in Defendants' current motion to dismiss are issues that were not addressed by the Court in its previous order.  For example, the Court's previous order recognized that Kirzhner had a viable claim for breach of fiduciary duty based on the common law rule that directors of an insolvent corporation owe a fiduciary duty to the corporation's creditors. However, the Court at that point had not been apprised of the amendment to Colorado Revised Statute § 7-108-401, and therefore did not address the specific issue of whether that statute abrogated the common law rule.  The Court also notes that each of the arguments raised by Defendants in their pending motion to dismiss are viable arguments that resulted in somewhat close and difficult decisions for the Court. Therefore, the Court denies Kirzhner's request for attorney's fees.[11]

---

[11]  Given the extent of the parties' litigiousness during the course of this action, the Court encourages the parties to begin devoting some of their time, money, and energy into seeking an out-of-court resolution to this action, rather than continuing to pile up more and more attorney's fees.

## IV. CONCLUSION

Therefore, based on the foregoing, IT IS ORDERED THAT:

(1)     Defendants' Motion to Dismiss the Amended Complaint (Doc. ## 113, 114) is DENIED, and

(2)     Plaintiff's Motion to Dismiss the Defendants' Amended Counterclaims (Doc. # 80) is GRANTED.

(3)     Plaintiff's request for an award of attorney's fees is DENIED.

DATED:  September   20  , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge