**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09CV02858 RBJ-BNB

ILONA KIRZHNER, an individual

    Plaintiff/Counterdefendant,

v.

DAVID SILVERSTEIN, an individual *et al.*,

    Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO RECONSIDER THE COURT'S SEPTEMBER 20, 2011 ORDER REGARDING PLAINTIFF'S FIDUCIARY DUTY CLAIMS, REQUEST FOR EVIDENTIARY HEARING OR IN THE ALTERNATIVE REQUEST FOR CERTIFICATION TO THE COLORADO SUPREME COURT**

---

Defendants, David Silverstein ("Silverstein"), Evergreen Industries, Inc. ("BMGI Inc."), David Silverstein Investments, LLC, BMGI Corporation ("BMGI Corp."), BMGI Holdings LLC, and DSI Investments, LLC ("DSI") (collectively, "Defendants") hereby submit their Reply in support their motion to reconsider the September 20, 2011 order (the "Order") denying Defendants' Motion to Dismiss Plaintiff's fourth claim (breach of fiduciary duty) and the eighth claim (aiding and abetting fiduciary duty).

## **INTRODUCTION**

Judge Arguello – in ruling on Defendant's Motion to Dismiss – found that the Colorado legislature was not sufficiently clear about its intent to abrogate the common law duties previously imposed on corporate officers and directors operating in the "zone of insolvency." But Judge Arguello was unaware of the extensive legislative history contradicting her conclusion. Indeed, Defendants neither looked for nor presented any

evidence on legislative history because the abrogating statute is clear on its face. Having presented that evidence, this Court must decide whether the error should be corrected.

The intent of the legislature, of course, is only relevant if the statute at issue is ambiguous. Thus, the genesis of Judge Argullo's error stems from her misinterpretation of the statute. Ilona Kirzhner's ("Kirzhner") Response to the Motion ignores this problem entirely. The statute – COLO. REV. STAT. § 7-108-401(5) – provides that officers and directors owe no fiduciary duty to creditors, under any circumstance. The statutory language is clear and Kirzhner makes no effort to demonstrate an ambiguity that would support Judge Arguello's decision.

It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker,* 533 U.S. 167, 174, (2001) (internal quotation marks and citation omitted). Before Colorado adopted Section 7-108-401(5), the only time officers and directors owed fiduciary duties to the corporation's creditors was when the corporation entered the zone of insolvency. Kirzhner, however, advocates an interpretation of the statute that would do nothing to modify the common law rule, thereby rendering the statute meaningless. The legislative history makes clear that the statute's purpose was to eradicate any fiduciary duty towards creditors when a corporation is in the zone of insolvency. And this Court must effectuate that legislative purpose.

**ARGUMENT**

I. **MOTIONS TO RECONSIDER ARE NOT SUBJECT TO THE PROCEDURAL MANDATES OF FED. R.CIV. P. 59 OR 60.**

Faced with an unambiguous statute and a wealth of legislative history supporting Defendant's Motion, Kirzhner resorts to the Rules of Civil Procedure as the substantive basis for letting an erroneous order stand. According to Kirzhner, Defendants should have filed under FED. R. CIV. P. 60(b) and meet the "extraordinary circumstances" test set forth in that rule. (Kirzhner Resp. 3.) Motions for reconsideration of orders that do not dispose of all claims in a case, however, are not subject to the strict procedural mandates of either Rules 59 or 60. *Raytheon Constructors Inc. v. Asarco Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003); *see Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962).

Motions for reconsideration filed prior to entry of a final judgment are governed by Rule 54(b) and fall "within a court's plenary power to revisit and amend interlocutory orders as justice requires." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-cv-00037-PAB-CBS, 2010 WL 420046, at *3 (D. Colo. Feb. 1, 2010). Rule 54(b) provides that "any order . . . however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties . . . may be revised <u>at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities.</u>" (emphasis added). Kirzhner's effort to pigeon-hole this matter into a more stringent procedural framework misses the mark.

Even if Kirzhner's procedural argument had merit, however, Defendant's Motion satisfies the Rule 60(b) standard she advocates. Rule 60(b)(2) allows relief from judgment if "newly discovered evidence that, with reasonable diligence could have been

discovered in time to move for a new trial under Rule 59(b)." Defendants' Motion is largely based on the legislative history of COLO. REV. STAT. § 7-108-401(5) that Defendants discovered only after Judge Arguello entered her order. Even if Defendants' Motion were subject to Rule 60(b), Defendant's Motion complies with Rule 60(b)(2), since the Defendants discovered the new evidence and filed their Motion within the 28 day window required by Rule 59(b). Judge Arguello indicated in her September 20, 2011 Order, (Doc. 293 at 16, n.7) that she was unable to find any legislative history on this statute. Defendants, like Judge Arguello, were completely unaware that any legislative history on this statute existed until Defendants' counsel discussed the September 20, 2011 Order with their expert witness, William Callison. In short, Defendants' Motion satisfies the requirements of Rule 60(b)(2) because there is newly discovered evidence that, despite reasonable diligence, both Defendants' Counsel and the Court were unaware of.[1] Indeed, the annotated version of the statute makes no reference to this legislative history, and that information is not available in any electronic database.

Defendants' Motion also satisfies the requirements of Rule 60(b)(6)'s catch-all provision. Courts have described this provision as a "grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (internal citation omitted). And, "the rule should be liberally construed when substantial justice will thus be served." *Id.* (citation omitted).

---

[1] It is important to note that Defendants could not anticipate that the Court would reject the plain language of § 7-108-401(5), which provides that "[a] director or officer of a corporation, in the performance of the duties in that capacity, shall not have any fiduciary duty to any creditor of the corporation arising only from the status as a creditor." And Kirzhner did not present any arguments why § 7-108-401(5) does not bar her fiduciary duty claims other than reference to cases that were resolved prior to the statute's effective date. (*See* Kirzhner's Resp. to Defs' Mot. to Dismiss, Doc. 116 at 6-8.)

Here, it is beyond dispute that COLO. REV. STAT. § 7-108-401(5) was intended to abrogate the common law rule imposing fiduciary duties in the zone of insolvency. And applying the statute in a manner consistent with that legislative history would advance the interests of justice. More significant, doing so is critically important for officers and directors in Colorado who are operating companies during these financially troubled times.

## II.   THE CANNONS OF STATUTORY CONSTRUCTION MANDATE THAT COLO. REV. STAT. § 7-108-401(5) BAR KIRZHNER'S FIDUCIARY DUTY CLAIMS.

Kirzhner's ignores the most important questions presented in Defendants' Motion: (1) is the statute ambiguous; and, if so, (2) does the legislative history support Defendants' reading of the statute? The traditional and well-established cannons of statutory construction provide clear answers to both of these questions. Yet Kirzhner insists that this Court embrace a new test – one that would only permit the General Assembly to modify the common law when "expressly mandated by or necessarily implied by subsequent legislation." (Kirzhner Resp. 7.) The cases that Kirzhner cites for this newfangled rule, however, employ the same principles of statutory construction that necessitate undoing the Court's prior order.

Perhaps the most well-established rule of statutory construction is this: "If a statute is clear and unambiguous on its face, we need not look beyond the plain language and must apply the statute as written." *Sheffield Serv. Co. v. Trowbridge*, 211 P.3d 714, 719 (Colo. App. 2009) (citation omitted) (cited in Kirzhner Resp. 8-9); *see also Bayer v. Crested Butte Mt. Resort, Inc.*, 960 P.2d 70, 73 (Colo. 1998) (cited in Kirzhner Resp. 7); *Kauntz v. HCA-Healthtone, LLC*, 174 P.3d 813, 816 (Colo. App. 2007) (cited in Kirzhner Resp. 8). "If a statute appears ambiguous, then a court must

proceed beyond a plain language analysis and consider legislative history, prior law, the goal intended to be achieved by the statute, and the consequences of a given construction of the statute in order to ascertain its meaning." *People v. Norton*, 63 P.3d 339, 345 (Colo. 2003); *see also Kauntz*, 174 P.3d at 816.

### A. The Plain Language Of The Statute Unambiguously Bars Any Fiduciary Duty Claims By Creditors.

The language of COLO. REV. STAT. § 7-108-401(5) is plain and unambiguous: "[a] director or officer of a corporation, in the performance of duties in that capacity, shall not have any fiduciary duty to any creditor of the corporation arising only from the status as a creditor." Thus, the Court need look no further than the statute itself to see that Kirzhner's fiduciary duty claims are barred. None of the decisions Kirzhner cites suggest that the General Assembly is required to identify – expressly or by implication through subsequent legislation – all common law rights that are modified by statute.

In *Kauntz*, for instance, the court was asked to consider a statute exempting medical licensing boards from liability. In that case, the statute said that professional review bodies "shall not be liable for damages in any civil action." 174 P.3d at 817. (cited in Kirzhner Resp. 8.) But the statute did not "expressly" address what would happen if a medical licensing board negligently failed to revoke a doctor's license and that doctor hurt a patient. Just as Kirzhner does here, the plaintiff in *Kauntz* challenged the unambiguous langue of the statute because it failed to specify every "civil action" that it barred. *Id.* at 819. The *Kauntz* court rejected this argument, though, because the statute was unambiguous – patients could not bring any civil action against a professional review body, even though the statute fails to specifically reference patient-initiated claims. *Id.*

6

This plain-meaning rule was affirmed by the Tenth Circuit in *Kokins v. Teleflex, Inc.*, 621 F.3d 1290 (10th Cir. 2010). There, the court was asked to decide whether a statute directing courts to give a products liability jury instruction was truly mandatory. The statute said that "the court shall instruct the jury concerning the [rebuttable] presumption" that a product is not defective after a product has been on the market for ten years. *Id.* (emphasis added in the opinion) (cited in Kirzhner Resp. 7, 10). But the plaintiff argued that this language merely permitted – but did not require – courts to give the jury instruction since, as a matter of common law, the plaintiff bears the burden of proving a product is defective. *Id.* at 1301-1302. The *Kokins* court rejected that argument and stuck with the plain language of the statute since doing otherwise "would require us to assume that the Colorado General Assembly passed a mandatory directive that the General Assembly did not intend to be mandatorily implemented." *Id.* at 1305.

Kirzhner also cites to the *Sheffield* case – another Colorado decision that demonstrates the importance of courts applying the plain language of statutory law. 211 P.3d at 719 (cited in Kirzhner Resp. 8-9.) *Sheffield* involved a claim against a non-member manager of a limited liability company. And the manager relied on COLO. REV. STAT. § 7-80-107(1) as a defense to the plaintiff's claims: "In any case in which a party seeks to hold the members of a limited liability company personally responsible" the corporate veil may be pierced in accordance with case law. *Id.* (emphasis added in the opinion). The problem with that defense, of course, is that the statute says nothing about the liability of a manager (as opposed to a member). Thus, the *Sheffield* court

7

applied the plain language of the statute and declined to extend its protections to managers of the limited liability company. *Id.* at 720.

The Colorado Supreme Court's decision in *Norton* is also instructive. That case involved a criminal statute that allowed presentence confinement credits (PSCC) for "the sentence the defendant is currently serving for the previous offense." 63 P.3d at 343. Norton sought to reduce his sentence for a subsequent offense, citing the Colorado statute governing PSCC. The Court of Appeals, however, rejected that argument because Norton was a "mandatory parolee." *Id.* It reasoned that the statute could only apply to discretionary parolees, since Colorado's criminal law was amended to add this second class of parolees (mandatory parolees), after the statute governing PSCC went into effect. *Id.* The Legislature, of course, provided no guidance on whether it intended the law to apply to all classes of parolees or only to the class that existed when it adopted the statute because there was only one class of parolees at that time. *Id.* Nonetheless, the Supreme Court found that the statute had to cover mandatory parolees since the plain language of the law applies to any "sentence the defendant is currently serving." *Id.* at 344.

Kirzhner cites each of these cases, and they all require the Court to follow the plain language of COLO. REV. STAT. § 7-108-401(5). The statute bars Kirzhner's fiduciary duty claims, and her Response gives no reason to abandon the plain-meaning rule of statutory construction.

### B. The Express Legislative Intent Of The Statute Was To Bar Fiduciary Duty Claims By Creditors.

Even if Kirzhner could establish some statutory ambiguity that would necessitate judicial interpretation, the legislative history here puts the purpose of the statute beyond dispute. Indeed, Kirzhner does not even bother to suggest that COLO. REV. STAT. § 7-108-401(5) was intended to allow creditor claims against the officers and directors of distressed corporations. She simply ignores the legislative history entirely. It is, thus, undisputed that the General Assembly intended to bar fiduciary duty claims (like Kirzhner's) when it determined that directors and officers "shall not have any fiduciary duty to any creditor of the corporation. . . ."

As Kirzhner points out in her Response, Colorado courts – for many years – held that officers and directors owed fiduciary duties to the creditors of the corporation when they were operating in the zone of insolvency. But that was before the General Assembly changed the law. Indeed, the only possible legislative aim for this statute was to eradicate the common law rule. The legislative history makes this goal clear:

> **MR. VAN WESTRUM:** *** We have added a provision to clarify the rights or the obligations of officers and directors of corporations and non-profit corporations to creditors. And we have an amendment composed to the bill as it is before you with respect to that particular issue.
>
> In our view and it's long been the view of corporate practitioners that officers and directors owe their duties to the corporation. They can't be put in conflicted positions. *We have clarified that they do not owe fiduciary duties to creditors acting as creditors.*
>
> ***
>
> **REP. WITWER:** Thank you, Madam Chair. Representative Carroll, I knew exactly what you're asking and Tony can address this further, but the intention here is to clarify that there aren't conflicting duties. *You can imagine a situation where a company is approaching the zone of insolvency and there's a -- it would be*

9

> *in the creditors' interest to have the company monetize its assets and pay the creditor, but it wouldn't be in the best interest of the shareholders necessarily to do that.*
>
> **SEN. CARROLL:** Uh huh.
>
> **REP. WITWER:** *And so in those situations your directors are on the horns of a dilemma. And what this language does if I'm not mistaken would be to clarify the fact that the duty, the fiduciary duty, is owed to the shareholders in the company.*

(Colorado Senate Housing Committee on Business Affairs and Labor Committee considering SB 06-487, attached as Exhibit B to Motion 8-14) (emphasis added).

As with the plain-meaning rule, Kirzhner again cites to a number of cases that affirm Defendants' point – the Court should effectuate the legislative intent of the statute. In *Farmers Grp., Inc. v. Williams*, 805 P.2d 419, 424 (Colo. 1991), for example, the court was asked to decide whether the No Fault Act barred common law bad faith claims by creating a class of statutory bad faith. (cited in Kirzhner Resp. 8.) The *Farmers* court started with the plain language rule and found that it was "undisputed that the plain words of section 10-4-708(1) do not eliminate or otherwise restrict common law remedies." 805 P.2d at 424. Thus – unlike the statute at issue in this case – the No Fault Act did not expressly address the common law duty.

Because the statute in *Farmers* did not address the common law rule, the court went on to evaluate the legislative history and found nothing to support a change in the bad faith doctrine: "there are no contemporaneous statements by individual legislators indicating an intent to abrogate common law." *Id.* (footnote omitted). In this case, by contract, the General Assembly went out of its way to make its purpose clear. Indeed, all of the statements from individual legislators and the bill's authors demonstrate that

the statute was designed to abrogate common law claims brought by creditors while a corporation is in the "the zone of insolvency." (Ex. B to Mot. 14.)

*Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70 (Colo. 1998) (cited in Kirzhner Resp. 7), likewise, demonstrates that Kirzhner's fiduciary duty claims are barred. *Bayer* involved a negligence claim against the operator of a ski tramway. The ski resort argued that Colorado had adopted a statutory scheme that supplanted the common law duty of care. 960 P.2d at 72. But because the express language of the statute was silent on whether the common law duty of care had been displaced, the court examined its legislative history. *Id.* at 76-77. The court simply found no expression of intent to change the common law standard, but rather found an indication that the legislature intended to leave the common law duty of care intact with regard to ski lift operation: "[t]his bill does not exclude a ski area from negligence and the liability it faces with ski lifts." *Id.* at 76-77 (citation omitted).

This case stands in sharp contrast to *Bayer* because in enacting COLO. REV. STAT. § 7-108-401(5) the General Assembly made its purpose clear. There is no question that the General Assembly intended to abolish the fiduciary duties previously imposed on officers and directors of distressed corporations. Thus, Kirzhner's fiduciary duty claims are barred.

### C. Even If The General Assembly Provided No Indication Of Its Purpose, Judge Arguello's Reading Of The Statute Renders It Superfluous.

It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall

11

be superfluous, void, or insignificant." *Duncan,* 533 U.S. at 174 (internal quotation marks and citations omitted); *see also Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005) ("[W]hen examining a statute's plain language, we give effect to every word and render none superfluous . . . ."). Prior to the enactment of COLO. REV. STAT. § 7-108-401(5), directors and/or officers *only* owed fiduciary duties to creditors when a company was in the zone of insolvency. Thus, unless the statute abolishes this common law fiduciary duty, it could serve no other purpose. Kirzhner's insistence that this court embrace a meaningless interpretation of the statute is not well founded.

### D. There Is No Colorado Supreme Court Precedent Concerning The Interpretation Of § 7-108-401(5).

Kirzhner erroneously argues that the "Colorado Supreme Court declined to address whether C.R.S. § 7-108-401(5) applies where a corporation is insolvent." (Kirzhner Resp. 10) (citing *Alexander v. Anstine*, 152 P.3d 497, 502 n.9 (Colo. 2007)). But the argument made by implication is misleading. The Court did not choose to sidestep some thorny issue of statutory interpretation – the law simply did not apply because it was not effective until after the events at issue in *Alexander*: the "2006 amendment to the Colorado Revised Statutes, [] does not apply to this case." 152 P.3d at 502 n.9. Indeed, as set forth in the declaration of William Callison (attached as Exhibit A to the Motion), the 2006 Amendment was the legislature's direct response to *Alexander*'s holding that creditors could bring fiduciary duty claims against the directors of an insolvent corporation.

Kirzhner's reliance on *Colborne Corp. v. Weinstein*, No. 09CA0724, 2010 WL 185416 (Colo. App. Jan. 21, 2010), *cert. granted* 2010 WL 3213046 (Colo. Aug. 16,

2010), is likewise badly misplaced. There, the Court of Appeals held that members of a limited liability company could be sued for taking excess member distributions under § 7-80-606 of the Limited Liability Company Act ("LLC Act"). But the LLC Act does not contain a provision like COLO. REV. STAT. § 7-108-401(5) (i.e., a law that abolishes fiduciary duties owed to creditors of an LLC).

In *Colborne*, the Colorado Supreme Court granted certiorari to consider whether creditors of an LLC can sue the members for breach of a fiduciary duty. It did not, however, agree to interpret the scope of COLO. REV. STAT. § 7-108-401(5), which clearly does bar a creditor's fiduciary duty claims against the officers or directors of a corporation. Indeed, nothing in *Colborne* suggests that the Supreme Court might address the scope of COLO. REV. STAT. § 7-108-401(5) since the case involves an entirely different body of statutory law. *Colborne* did not even discuss the existence of COLO. REV. STAT. § 7-108-401(5).

Kirzhner's strained interpretation of *Colborne* is unfounded. There is no Colorado Supreme Court authority on the statute at issue in this case. And the fact that that court granted cert to consider the LLC Act is irrelevant.

### III.    CERTIFICATION TO THE SUPREME COURT IS APPROPRIATE.

The statute is clear on its face and it bars Kirzhner's claims. Nevertheless, Defendants asked, in the alternative, that this Court either hold an evidentiary hearing or certify the matter to the Colorado Supreme Court if there is any uncertainty about what the statute means. Kirzhner, of course, opposes that request. But her analysis is wrong.

The Colorado Supreme Court should have the first opportunity to interpret COLO. REV. STAT. § 7-108-401(5). This statute intricately interplays with the statutory scheme

set forth in the Colorado Business Corporations Act, § 7-101-101 *et seq.* And that statutory scheme governs how Colorado corporations operate and establishes the duties that officers and directors owe to a variety of interested constituents. Statutes governing the structure and operation of business entities are within the exclusive province of the state, and each state has the exclusive right to promulgate its own laws.

In the interest of comity, Federal Courts may certify important questions of state law to the Colorado Supreme Court. *See* COLO. R. APP. P. 21.1. And the Federal Courts in Colorado recognize the "importance of allowing the Colorado Supreme Court to decide questions of state law and policy, and thus define state law." *State Farm Mut. Auto. Ins. Co. v. Fisher*, 609 F.3d 1051, 1058-59 (10th Cir. 2010). Certification is, thus, a vital tool for resolving questions of state law where no state court has interpreted or applied the statute at issue or ruled on an essential question of common law.

Here, the statute at issue is extremely important to Colorado businesses but the Colorado Supreme Court has given no guidance on the matter. Likewise, there are no decisions from state appellate courts to provide datum that would assist this Court in predicting how Colorado courts would interpret and apply COLO. REV. STAT. § 7-108-401(5). Thus, certification is necessary.

Under COLO. R. APP. P. 21.1, the Colorado Supreme Court may answer questions certified to it by the federal district court if it may be dispositive of at least one of the issues before the certifying court and there is no controlling precedent from the Colorado Supreme Court. *AE, Inc. v. Goodyear Tire & Rubber Co.*, No. 05-CV-01317-LTB-MJW, 2007 WL 1202289, at *2 (D. Colo. Apr. 23, 2007) (noting the issue certified was "dispositive of at least one, and perhaps all of the issues before me"); COLO. R.

APP. P. 21.1(a).[2] Here, the certification request satisfies the requirements set forth in COLO. R. APP. P. 21.1.[3]

First, the interpretation of the statute would be dispositive of at least one and potentially all of the claims before this Court. Each of Kirzhner's tort claims hinges on a fiduciary duty that COLO. REV. STAT. § 7-108-401(5) expressly abrogates. Judge Arguello, early in this case, held that the economic loss doctrine did not bar Kirzhner's tort claims because Kirzhner might allege a special duty (i.e., one that might be owed by officers and directors of a company in the zone of insolvency). (Order, July 23, 2010, Doc. 59 at 21.) Although Kirzhner had not, at that time, alleged any fiduciary duty or even asserted that she was a creditor of the corporation, Judge Arguello reasoned that Kirzhner pled enough facts from which one could infer a special duty that would exempt her tort claims from the economic loss rule. (*Id.* at 21.) Judge Arguello, however, did not consider the implications of COLO. REV. STAT. § 7-108-401(5) because Kirzhner had not asserted any special duty. (*See* Kirzhner's Resp. to Mot. to Dismiss, Doc. 18 at 18-20.)

By the time the Colorado Supreme Court can rule on whether the statute abrogated fiduciary duties, that will likely be the only remaining issue in this case. Kirzhner's other claims (breach of contract, breach of the implied covenant of good faith, and accounting) should be dismissed on summary judgment. Kirzhner's contract claims turn on the theory that her collateral (the stock in the company) was momentary

---

[2] Indeed, the Colorado Supreme Court has noted that some issues aside from the question answered may remain. *Cf. Garman v. Conoco, Inc.*, 886 P.2d 652, 654-655 (Colo. 1994) (answering general legal question certified by the United States District Court for the District of Colorado but withholding opinion on the ultimate issue regarding the interpretation of oil and gas lease).

[3] Kirzhner cites 10th Cir. APP. R. 27.1, which has no analog in the United States District Court for the District of Colorado and is thus inapplicable here. COLO. R. APP. P. 21.1 is the applicable rule. *See, e.g. AE, Inc.* 2007 WL 1202289 at *1 (citing COLO. R. APP. P. 21.1 not 10th Cir. APP. R. 27.1).

devalued. As set forth in the BMGI Defendants' Summary Judgment Motion, however, Kirzhner has failed to provide Defendants the contractually required default notice of this hypothetical default, much less an opportunity to cure. More importantly, Kirzhner's own valuation expert admits that Kirzhner's collateral is currently worth more than five times the amount required by the contract. Kirzhner is, thus, unable to prove any damages.[4] Accordingly, the fiduciary duty question is likely to be fully dispositive because it is the only viable claim that might remain in this case.

Second, there is no controlling precedent from the Colorado Supreme Court on this issue. Despite Kirzhner's contention, all of the cases Kirzhner cites involve facts that arose before the statute in this case became effective. Although the Colorado Supreme Court decided *Alexander v. Anstine* in 2007, after the effective date of the statute, the operative events at issue in that case occurred before the critical date. *See* 152 P.3d 497 (Colo. 2007) (noting the court was reviewing the Court of Appeal's decision decided in 2005). Thus, there has been no Colorado Supreme Court decision interpreting the statute.

## **CONCLUSION**

This Court should reconsider its previous ruling and dismiss Kirzhner's fiduciary duty claims because the plain language of the statute bars Kirzhner's fiduciary duty claims. Even if the statute were ambiguous, the legislative history demonstrates that

---

[4] By way of example, if Kirzhner's interest was secured by Apple stock, if stock in Apple momentarily dips below an agreed value on one day and the next day is worth more than the value then how was someone damaged if no actions were taken during that time? Kirzhner's ability to prove damages is even more tenuous in light of her "valuation expert" statement in response to the motion to strike his alleged valuation opinion where he acknowledged that he never performed a valuation opinion to establish that the company stock ever dipped below the agreed upon value: "it does not represent a conclusion of value in the context of business valuation, it represents a conclusion of solvency using recognized solvency methodology." (Hazel Aff., Ex. C to Pl.'s Resp. to Mot. to Strike Hazel's Testimony Proffered In Resp. to Defs' Summ. J. Mot., Doc. 291, at 3, ¶ 13.)

the General Assembly enacted the statute for the purpose of abolishing fiduciary duty claims while corporations are in the zone of insolvency. If there is any doubt regarding the purpose behind the statute, Defendants request an evidentiary hearing. In the alternative, Defendants respectfully request that the Court certify this issue to the Colorado Supreme Court.

Respectfully submitted this 9th day of December, 2011.

PAPPALARDO LAW GROUP, LLC

*By:        /s Marc Pappalardo*
MARC F. PAPPALARDO #35339
Pappalardo Law Group, LLC
1919 14th Street, Suite 510
Boulder, CO 80302
Telephone 303-250-1507
Fax: 775-429-4091
E-mail:   Marc@PappalardoLawGroup.com
*Attorneys for Defendants* David Silverstein, David Silverstein Investments, LLC, and DSI Investments, LLC


CHIPMAN GLASSER, LLC

*By:        s/ Daniel Glasser*
DANIEL GLASSER #37716
CHIPMAN GLASSER, LLC
2000 S. Colorado Blvd.,
Tower I, Suite 7500
Denver, Colorado 80222
Telephone 303-578-5780
E-mail: dglasser@chipmanglasser.com

*Attorneys for Evergreen Industries, Inc., BMGI Corp. and BMGI Holdings LLC*

17

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2011, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO RECONSIDER THE COURT'S SEPTEMBER 20, 2011 ORDER REGARDING PLAINTIFF'S FIDUCIARY DUTY CLAIMS, REQUEST FOR EVIDENTIARY HEARING OR IN THE ALTERNATIVE REQUEST FOR CERTIFICATION TO THE COLORADO SUPREME COURT** was served electronically, addressed to:

Alan D. Sweetbaum (asweetbaum@sweetbaumlevinesands.com)
Thomas L. DeVine (tdevine@sweetbaumlevinesands.com)
Sweetbaum Sands, P.C.
1125 Seventeenth Street, Suite 2100
Denver, CO 80202
*Attorneys for Ilona Kirzhner*

                              */s Cheryl Graysar*
                              *Cheryl Graysar*