IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 09-cv-02858-RBJ-BNB

ILONA KIRZHNER,

      Plaintiff,

v.

DAVID SILVERSTEIN, an individual,
EVERGREEN INDUSTRIES, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP
INTERNATIONAL, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP, INC., a
Colorado corporation,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation, and
BMGI HOLDINGS, LLC, a Delaware limited liability company,

      Defendants.

---

## ORDER on PENDING MOTIONS

---

      This order resolves all motions pending on this date except those that were previously

referred to a magistrate judge.

      **Facts**

      This case arises from a contract, the "Stock Purchase and Sale Agreement," dated

September 23, 2004 among Ilona Kirzhner, David Silverstein and Breakthrough Management

Group, Inc. ("BMGI").[1] Ms. Kirzhner sold 5,000,000 shares constituting 50% of the stock of

BMGI to Mr. Silverstein for $1.00 per share.  In exchange, Mr. Silverstein, who thus became the

owner of all of BMGI's stock except a small fraction owned by a stock option plan, executed a

---

[1] Breakthrough Management Group, Inc. went through a series of name changes including Breakthrough
Management Group International, Inc. and later Evergreen Industries, Inc.  The term "BMGI" is used throughout
this order to refer to the same entity regardless of the name it was using at various times.

promissory note providing for a series of payments of the purchase price over an approximate six-year period.  The note was secured by the stock.  The collateral would be reduced by one share for each dollar paid on the note.  Mr. Silverstein has not made all of the required payments and is in default of his obligations under the note.  Ms. Kirzhner originally brought this lawsuit against Mr. Silverstein, two limited liability companies created by Mr. Silverstein, and BMGI.

The dispute focuses primarily on plaintiff's remedy.  Defendants point to paragraph 3.01 of the contract that includes the provision, "Seller's sole and exclusive remedy for the default or breach of the Agreement shall be for the Seller . . . to recover possession of all of the Stock not paid for at the time the default is declared."  Mr. Silverstein has attempted to return stock not paid for to the plaintiff, but she refuses to accept it.  In her original complaint plaintiff alleged that defendants have intentionally depleted the assets and value of BMGI in order to render its stock worthless and thereby effectively eliminate plaintiff's remedy for Mr. Silverstein's default.  She asserted claims of (1) breach by Mr. Silverstein and BMGI of the requirement of paragraph 2.03 of the contract that requires that the value of BMGI plus any "replacement collateral" would be kept at least equal to the unpaid portion of the purchase price; (2) breach by Mr. Silverstein of another requirement of paragraph 2.03 that that requires the parties to conduct themselves in "utmost good faith, and to deal with each other and the Corporation fairly and equitably in all respects;" (3) breach by Mr. Silverstein and BMGI of the implied covenant of good faith and fair dealing; (4) fraud; and (5) an accounting.

Shortly after the case was removed from state court, Mr. Silverstein and his LLC's, David Silverstein Investments and DSI Investments (the "Silverstein defendants") filed a motion to dismiss the claims asserted against them.  BMGI filed a similar motion to dismiss.  In a written order issued on July 23, 2010, the Court, by Judge Arguello, issued an order granting in

part and denying in part both motions.  [#59]  The Court (1) granted the Silverstein defendants' motion to dismiss the express contract (first and second) claims; (2) denied their motion to the extent that it sought dismissal of the implied covenant (third) claim; (3) denied BMGI's motion to dismiss the first and third claims; (4) denied the motions to dismiss the fraud (fourth) claim; and (5) denied BMGI's motion to dismiss the accounting (fifth) claim.

Following the denial of the motions to dismiss, defendants answered and counterclaimed. The gist of the counterclaim, as amended by the first amended counterclaim, is that Ms. Kirzhner fraudulently induced Mr. Silverstein to enter into the contract by assuring him that she would limit her remedy to recovery of the stock and concealing her "apparent belief" that she could sue for damages in the event of a default.  She moved to dismiss the first amended counterclaim.

At this point I will pause to note some additional transactions that have involved BMGI and have complicated this case somewhat.  In 2008 BMGI pledged its assets to secure a $2,000,000 line of credit from the First National Bank (also guaranteed by Mr. Silverstein and related entities) and a $5,000,000 line of credit from First Capital Partners, LLC.  In 2009 BMGI, experiencing financial difficulties, declared itself insolvent and explored bankruptcy options.  It was in default on its obligations to these third party lenders.  Mr. Silverstein formed DSI Investments, LLC ("DSI") which purchased the First National Bank note.  DSI then took BMGI's assets in lieu of foreclosure on the note.  On September 4, 2009 Mr. Silverstein formed BMGI Corporation ("Delaware BMGI") and another entity, BMGI Holdings, LLC.  A few days later DSI published notices of a sale of the assets of BMGI in an auction to be held on September 24, 2009.  Ms. Kirzhner sent her attorney, Timothy Schafer, to the auction.  His alleged misrepresentation of who he was and report that Mr. Silverstein admitted that the auction was a sham have given rise to disputes that are discussed in more detail later in this order.

3

Delaware BMGI acquired substantially all (all but a fraction sold to BMGI Holdings) of the assets formerly held by BMGI from DSI.  Thereafter, Mr. Silverstein implemented a statutory merger of Delaware BMGI and BMGI.  The formal merger documents were filed with the Colorado Secretary of State in November 2010.  DSI and First Capital Partners, LLC recorded UCC filing statements against the assets now held by Delaware BMGI.  BMGI's stock was converted into Delaware BMGI stock.  Plaintiff alleges that upon completion of these transactions, her security for the note obligation owed by Mr. Silverstein, i.e., the portion of the stock she sold to Mr. Silverstein for which he had not yet paid, was worthless.  Defendants contend that Delaware BMGI has substantially the same assets and debt structure as BMGI, and that plaintiff holds the same interest in the stock of Delaware BMGI as she did in the stock of BMGI.

On December 13, 2010 plaintiff filed a First Amended Verified Complaint.  The amended complaint names Mr. Silverstein, BMGI, Mr. Silverstein's two LLC's, Delaware BMGI and BMGI Holdings, LLC as defendants.  Plaintiff asserted nine claims in the amended complaint: (1) BMGI broke the requirement of paragraph 2.03 of the contract that the sum of the value of BMGI and any replacement collateral would at least equal the unpaid purchase price; (2) breach by Mr. Silverstein and BMGI of the implied covenant of good faith and fair dealing; (3) fraud against all defendants; (4) breach by Mr. Silverstein of a fiduciary duty not to transfer BMGI's assets for the purpose of defeating plaintiff's claim against BMGI; (5) fraudulent transfer against all defendants; (6) conspiracy against all defendants; (7) joint and several liability for action in concert against all defendants; (8) aiding and abetting a breach of fiduciary duty against defendants other than Mr. Silverstein; and (9) an accounting against BMGI.

Defendants promptly filed motions to dismiss the third (fraud), fourth (fiduciary duty), fifth (fraudulent transfer) and eighth (aiding and abetting fraudulent transfer) claims. In a written order issued September 20, 2011 the Court denied the motions to dismiss. [#293] The Court granted plaintiff's motion to dismiss the first amended counterclaim.

Between the filing of the motions to dismiss and the Court's denial of those motions, the parties filed numerous other motions in this case. Five of those motions remain pending before the magistrate judge. Five of those motions, one of which is in the form of an objection to a magistrate judge order, plus a sixth motion seeking alteration of the order denying the motions to dismiss, are pending before this Court and are addressed below.

Meanwhile, as if all of this litigation were not enough, BMGI on March 10, 2011 filed a separate lawsuit, no. 11CV599, alleging that Ms. Kirzhner is in breach of an agreement to repay a loan in the amount of $130,000 plus interest and asked that it be consolidated with the present case. The motion to consolidate was denied. On December 15, 2011 Judge Babcock in a sharply worded order denied Ms. Kirzhner's motion to dismiss the loan case.

I now turn to the objection and motions presently pending in this Court.

**[Defendants'] Objection to Magistrate Judge's Order Dated April 5, 2011 [#180]**

The Court can modify or set aside a magistrate judge's order on a non-dispositive matter only if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). The order [#164], which was issued following a lengthy hearing [# 176, transcript] has five parts.

Plaintiff's Motion for Protective Order [#135]

The magistrate judge granted a protective order quashing defendants' efforts to obtain documents from the files of plaintiff's trial counsel. He held that discovery of the files of opposing counsel is prohibited in all but very limited circumstances which defendants had not

established.  Order of April 5, 2011 (hereafter "Order") at 2-5.  *See* Transcript of April 1, 2011

hearing (hereafter "Tr.") at 11-14.  The magistrate judge awarded attorney's fees to the plaintiff

against defendants' counsel pursuant to Fed. R. Civ. P. 37(a)(5)(A), in an amount to be

determined.  Order at 15-16.  *See* Tr. at 109-112.

Defendants not only requested production of documents in the files of plaintiff's trial

counsel but demanded that they be produced in the original file folders and that counsel prepare a

privilege log detailing the documents withheld and any redactions from documents produced.

The magistrate judge essentially noted the ugliness of that type of discovery.  He had support in

the case law.  *Cf. Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.

1986)(deposition of opposing counsel).  *See also Theissen v. General Electric Capital Corp.,* 267

F.3d 1095, 1112 (10th Cir. 2001); *Boughton v. Cotter Corp.,* 65 F.3d 823, 830 (10th Cir. 1995).

The narrow basis of the ruling focused on the three exceptions to discovery levied against

opposing trial counsel: (1) no other means exist to obtain the information; (2) the information

sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the

case.  *Shelton,* 805 F.3d at 1327.  Having reviewed defendants' motion #135, and defendants'

presentation at the hearing, Tr. at 6-11, I agree.  Counsel all but conceded that he did not know if

the information was available from another source.  Tr. at 10-11.  Counsel provided nothing that

showed that nonprivileged documents were likely to be in opposing counsel's files, much less

that if counsel possessed relevant and nonprivileged documents, they had not already been

produced.  Counsel's argument that the events surrounding the September 2009 auction and

corporate counsel's deceptive conduct at the time of the auction are critical to the case (a claim

that strikes me as exaggerated based on my review of the file), Tr. at 9, does not begin to show

that information critical to the defense of the case but unavailable elsewhere is in the file.  Given

6

the minimal showing, essentially little more than a fishing expedition, and the context of

discovery of an opposing trial counsel's files, I am not persuaded that even an *in camera* review

of plaintiff's trial counsel's files was called for.

The magistrate judge's ruling should also be placed in context.  Because the case has only

recently been reassigned to me, I reviewed the entire file up to the point of the objection to the

magistrate judge's order in order to familiarize myself with the case and its history.  Based upon

what I read, it was clear to me that the acrimony and incivility between counsel has been a

continual blight on what should be a zealously contested but professionally litigated case.  Near

the end of the magistrate judge's oral ruling at the hearing he found that the conduct of the

defense lawyers in particular has been repeatedly unprofessional.  *See* Tr. at 110-12.  There is

substantial evidence in the record to support that finding.  This case is far from over.  I trust and

expect that the kind of behavior that has occurred historically in this case will not be repeated by

any lawyer on either side.

The Court finds that the magistrate's granting of a protective order was not clearly

erroneous.  Absent any substantial justification for the subpoena duces tecum served on

plaintiff's trial counsel, an award of attorney's fees was mandatory.  Fed. R. Civ. P. 37(a)(5)(A).

The rule provides that the fees may be awarded against the party or the attorney.  In the

circumstances, it was appropriate to award the fees against defense counsel.

<u>Plaintiff's Motion to Compel Relevant Financial Documents [#136]</u>

The magistrate judge denied plaintiff's motion to enforce an alleged informal agreement

between counsel for the production of certain BMGI financial records, holding that he would not

compel production of documents not sought through formal discovery procedures.  Order at 5-7.

*See* Tr. at 35-36.  However, the judge found that an award of attorney's fees in favor of the

defendants would be unjust because "defendant's counsel did not contest the existence of the informal agreement to produce documents which prompted the plaintiff to file her motion to compel, and in fact produced one of the documents at issue." Order at 16. Defendants object to the magistrate judge's failure to award attorney's fees as a sanction.

The background to this motion is that counsel for the parties had engaged in a series of discussions and exchanges of email correspondence in an attempt to reach agreements on production of certain documents. Informal exchanges of documents without formal requests to produce are common in civil litigation. The word "civil" is apropos in this case. As indicated above, the relationship among counsel to date has been anything but civil.

Defendants argue that fees should have been awarded because (1) the magistrate judge had previously commented on the significance of informal agreements; (2) the magistrate judge's explanation of his decision not to award fees was based upon a mischaracterization of defendants' position; and (3) informal negotiation does not justify the filing of a motion to compel documents not formally requested in discovery. Objection at 8.

Under Fed. R. Civ. P. 37(a)(5)(B), if a motion to compel is denied, the Court must award reasonable expenses incurred in opposing the motion, including attorney's fees, unless "the motion was substantially justified or other circumstances make an award of expenses unjust."

Plaintiff's counsel acknowledged during the hearing that, in retrospect, he should have proceeded by formal discovery rather than by informal agreements. He explained that he believed that counsel had an agreement and, by the time he realized that defendants' counsel would not honor the agreement, there was not enough time left to serve formal discovery and obtain the documents before the deadline for expert disclosures and felt that his only option was to file a motion. Tr. at 20-22. *See* Tr. at 22-33. In my review of the transcript I did not find an

indication that defendants denied that they had agreed to produce the disputed records.  In their objection to the magistrate's order, they state that they "never admitted there was an *enforceable* informal agreement that obligated them to produce documents."  Objection at 8 (emphasis added).  That misses the point.

The magistrate implicitly found that it was naïve for plaintiff's counsel to think that, given the acrimonious history of this case, he could resolve matters of this nature informally.  He was not willing to permit plaintiff to bypass formal discovery procedures before entertaining a motion to compel.  However, in the circumstances, he found that it would be unjust to award fees.  I do not doubt that his decision was influenced by his overall assessment of the conduct of defense counsel, as discussed above.  This Court concludes that that finding was not clearly erroneous.

BMGI, Inc.'s Motion to Compel Production of Documents Responsive to Subpoena or, in the Alternative, for an In Camera Review [#143]

The magistrate judge denied a motion to produce certain notes prepared by plaintiff's corporate counsel.  He found, based on a privilege log, that the notes were protected by the attorney-client privilege.  He held that plaintiff's provision of copies of attorney-client privileged documents to her husband was not a waiver of the privilege because it was done in the course of another privileged relationship, the marital privilege.  *See Hiskett v. Wal-Mart Stores, Inc.,* 180 F.R.D. 403, 406 (D. Kan. 1998).  He further held that he could not determine whether corporate counsel's production of other notes might be a waiver because the other notes had not been provided to the court.  Order at 7-10.  *See* Tr. at 65-70.  During the hearing the magistrate judge awarded attorney's fees to the plaintiff, but in his written order, he found that this was improper, because defendants had not been afforded an opportunity to respond to the oral request of

plaintiff's counsel.  Instead, he permitted plaintiff to prepare and file a fee application in compliance with local rule 54.3.  D.C.COLO.LCivR 54.3.  Order at 16-17.

This Court agrees that disclosure of documents to one's spouse does not waive the attorney-client privilege.  I also agree that if attorney Schafer made notes of points that he planned to discuss with his client, then those notes fall within the ambit of the attorney-client privilege.  Plaintiff's analogy to redaction of entries in itemized billing statements concerning topics discussed with the client – which defense counsel themselves apparently recognize to be privileged – is apt.  Finally, I find that because the magistrate judge was not provided copies of Mr. Schafer's notes that were produced, he cannot be faulted for finding that he could not consider whether those notes waived a privilege.

The rest of defendants' argument amounts to counsel's implied suggestion that plaintiff's counsel's determination of what portions of documents should be redacted based upon a claim of privilege cannot be trusted, and therefore, that the magistrate judge should have reviewed the redactions *in camera*.  A mere suspicion is not enough, or judges would have to, if asked, examine *in camera* every document ever withheld on privilege grounds.  Here, two different lawyers described the lengthy and expensive process that they undertook to screen documents for privilege and to prepare a privilege log.  Tr. at 46-56.  Ordinarily that would and should be enough.

However, plaintiff's counsel acknowledged that at least some of the redaction was done by Mr. Schafer.  Tr. at 49.  I am certainly not prepared to assume that Mr. Schafer's review was conducted in bad faith.  My assumption is the opposite.  I note as well, as discussed below, that when the magistrate judge did, at defendants' urging, review *in camera* a redacted witness statement, he found that the redactions were precisely as described by plaintiff's counsel and

were entirely appropriate.  Nevertheless, there is at least some evidence in the file that Mr.

Schafer misrepresented himself in his conversation with Mr. Silverstein at the September 2009

purported auction.  That evidence gives defendants some basis, however slight, for concern about

the veracity of the redactions.  In that circumstance, I reluctantly find that it was clearly

erroneous not to have accepted plaintiff's offer to review the documents redacted by Mr. Schafer

and the corresponding originals *in camera*, and I remand the case to the magistrate judge to

conduct that specific *in camera* review.

> Defendants' Joint Motion for In Camera Review and to Compel Production of
> Documents Produced as KIRZ151=160 [#151]

The magistrate judge refused to compel production of redactions of witness interviews

prepared by plaintiff's trial counsel, holding that these redactions were claimed to be attorney

opinion work product, and that defendants had not made or attempted to make the showing

required to obtain such materials.  The magistrate judge reviewed *in camera*, at defendants'

urging, the full text of one interview and found that the redacted materials "were exactly as

represented by plaintiff's counsel . . . and included only [counsel's] 'contemporaneous mental

impressions, evidentiary notes and opinions, and comments relative to legal theories as they

relate to alleged claims for relief.'"  He permitted plaintiff's counsel to file a fee application

pursuant to local rule 54.3.  Order at 11-14, 17.  *See* Tr. at 88-90.

I am in one sense surprised that defendants have included this issue in their objection.

Defense counsel argued that plaintiff's interrogatory answers had caused him to suspect that

redactions in memoranda of six witness interviews on the basis of work product or privilege

might not be appropriate.  This again is little more than a bald suspicion that plaintiff's lawyers

(not even involving Mr. Schafer in this instance) are untrustworthy.  More importantly, however,

the magistrate judge did grant defense counsel's request and examined one of the six statements

*in camera.*  I find that his decision not to review the other five statements *in camera* to have been reasonable and certainly not clearly erroneous.

Defendants' Joint Motion for Designation of Confidential Restricted Information
Pursuant to Protective Order [#154]

The magistrate judge rejected defendants' argument that data relied upon by defendants' expert in reaching valuation opinions and discussed in his expert report could nevertheless be protected from disclosure to the plaintiff because the information was confidential business information.  He found that an affidavit of Mr. Silverstein regarding the sensitive nature of the information was "wholly conclusory" and provided no facts on which to justify withholding the information.  Order at 14.  *See* Tr. at 107-09.  Although the magistrate judge awarded attorney's fees to the plaintiff during the hearing, he withdrew that ruling in the written order, finding that there did not appear to be a basis for a fee award.  Order at 17.

Mr. Silverstein's affidavit simply states that the information in question "is not publically known, and is very sensitive information that could have value to BMGI Corp's competitors." Document 154-1 ¶11.  The magistrate judge's finding that this was conclusory and short on facts is hard to criticize in view of the affidavit's own wording – the disclosure of the information "*could*" have value to BMGI's competitors, such as the plaintiff.  Moreover, defendants elected to provide the information to their expert.  An expert's report must disclose the basis of his opinion.  Fed. R. Civ. P. 26(a)(B)(2)(i).  Defendants provided no authority either in their motion [#154] or during the hearing, Tr. at 90-99, for the proposition that the information can be provided for counsel's eyes but kept from the plaintiff.  Such a restriction would be justified, if ever, only for good cause.  The Silverstein affidavit did not provide good cause.

The Court finds that the magistrate judge's denial of the motion to designate this information as confidential such that plaintiff could not have access to it was not clearly erroneous.

**Plaintiff's Motion for Partial Summary Judgment Regarding Statutory Merger Issues [#221]**

Plaintiff asks the Court to determine, as a matter of law, that (1) the statutory merger between BMGI and Delaware BMGI occurred on November 29, 2010; (2) the "pledged stock," meaning the BMGI stock securing the note payable to the plaintiff, was converted to Delaware BMGI stock on November 29, 2010; and (3) the BMGI stock was not issued as replacement collateral for the "pledged stock."  With the exception that both parties agree that Colorado law applies, they do not agree on any of the three issues.  Neither party has requested oral argument. The Court finds that it can resolve the issues on the briefs.

<u>Effective Date of Statutory Merger.</u>

The Colorado Corporations and Associations Act provides that unless an organic act provides otherwise, a merger takes effect "at the time and on the date the statement of merger becomes effective as determined pursuant to section 7-90-304 or, if no statement of merger is required to be filed, at the time and on the date determined by the owners of the merging entity." C.R.S. § 7-90-203.7(3).  Neither party argues that there is an organic statute, other than the Act itself, that provides an effective date.  Neither party argues that a statement of merger was not required to be filed.  Therefore, the effective date is determined by section 7-90-304(a), which provides that, with exceptions not relevant here, if no effective date is provided in the filed document, then the effective time and date is the time and date of the filing.

The Statement of Merger, Exhibit I to plaintiff's motion [docket #221-9] does not specify an effective date or time.  Therefore, the Court concludes that the effective date of the statutory

merger was November 29, 2010. Defendants have provided no authority for their argument that their filing of a "Statement of Correction" on July 12, 2011, indicating that the effective date was October 3, 2009, changed the effect of what the statute provides.

### Effective Date of Stock Conversion

It follows from the foregoing that the stock conversion technically occurred on November 29, 2010.

### Replacement Collateral

Plaintiff asks the Court to grant partial summary judgment "as to whether or not the Substitute Stock, as a matter of law, was issuable and issued as replacement collateral for the Pledged Stock under the terms of the Kirzhner Purchase Agreement." Motion at 13. Plaintiff argues that the Delaware BMGI stock is not replacement collateral because (1) the "pledged stock" was diluted from a 35% interest in BMGI to a .35% interest in Delaware BMGI (with a corresponding decrease in value from $3.3 million to approximately $48,000), and (2) Mr. Silverstein did not follow the contractual procedure for substituting collateral.

If the first argument were truly the issue, then summary judgment on the issue would be denied. Defendants contend that plaintiff's collateral interest in his stock was approximately 37% of his BMGI stock and is now approximately 37% of his Delaware BMGI stock, i.e., that there has been no dilution of her interest. Implicitly, defendants are arguing that the value of her collateral has not diminished. Those issues present factual disputes that are not appropriate for summary judgment.

However, I do not reach that issue, because I agree with plaintiff's second argument, even though it is advanced only in a footnote. The Stock Purchase and Sale Agreement in paragraph 2.01 requires plaintiff to accept a substitution of different securities or property as

collateral if (1) Mr. Silverstein is not in default of his performance under the agreement, (2) he makes a written request, and (3) the substituted collateral puts plaintiff in the same or better financial and security position as if a substitution had not been completed.  Replacement of BMGI stock with Delaware BMGI stock, assuming as defendants contend that this is what occurred, is a substitution of different securities or property for the original collateral, whether the Delaware BMGI stock is labeled as "replacement collateral" or "Substitute Stock" or any other name that counsel may ascribe to it.  Because Mr. Silverstein was in default when he purported to substitute the new stock for the old, he could not, under the terms of the contract as drafted, force plaintiff to accept the substituted collateral even if it does have, as he contends, equal or greater value than the old stock.  Therefore, under the terms of the contract, plaintiff is left with a security interest in the stock of BMGI which, as she has suggested, may very well be worthless at this point.

The problem here as I see it starts with a poorly drafted contract.  Beginning with paragraph 2.03, the first clause is all but impossible to perform if it is interpreted literally.  Mr. Silverstein and BMGI agreed that the sum of the value of BMGI (as determined by the corporation's independent auditors) and the value of any replacement collateral would be at least equal to the unpaid portion of the purchase price.  That amounts to a guarantee of BMGI's financial performance, which neither Mr. Silverstein nor BMGI could rationally make.  Changes in the economy, deaths or departures of key personnel, the advent of powerful competitors, natural disasters, and any number of other events could make it impossible to achieve.  The only reasonable interpretation of that language is that they would exercise their best efforts, in good faith, to maintain the value at that level.  The good faith clause built into the same paragraph 2.03 likewise suggests that interpretation.

Defendants' filings in this case suggest that BMGI suffered financial difficulties as a result of the downturn of the U.S. economy, ultimately resulting in BMGI's declaration of insolvency in 2009.  Meanwhile, he stopped making payments on his note obligation to the plaintiff, which put him into default under the contract.  BMGI's claim of insolvency and the subsequent deeding of its assets to DSI in lieu of foreclosure may have put both Mr. Silverstein and BMGI in default under paragraph 3.01(b) of the contract as well.

According to defendants, Mr. Silverstein did what he had to do to save the company.  Mr. Silverstein suggests that in the process he either kept plaintiff in a fully secured position or, if not, he restored her to that position, albeit with different collateral.  He doggedly insists that plaintiff's only recourse under the contract for his failure to pay is to recover the unpaid for stock, which he considers to be stock in Delaware BMGI.  The problem is that by his failure to comply with paragraph 2.01, and therefore failure properly to substitute Delaware BMGI stock for the "pledged stock" as security for his performance, he has put the plaintiff in a position that her security is now reduced to arguably worthless stock in BMGI.  He cannot, by volunteering to convert her security to an interest in his Delaware BMGI stock (or under corporate succession theories, *see* the Court's order of September 20, 2011 at 3 n.1), force the plaintiff to accept his breach of the contract's requirements, whether or not he is right that this would put her in a better position vis-à-vis collateral than if her only collateral is BMGI stock.[2]

Moreover, the Court previously construed the sole remedy clause as applicable only to a breach by Mr. Silverstein but not to a breach by BMGI.  July 23, 2010 Order [#59] at 12.  That ruling leaves plaintiff with a contract claim against BMGI, which presumably has few if any

---

[2] I am aware that the plaintiff has testified in a deposition that the Mr. Silverstein has "given" her a collateral position in Delaware BMGI.  *See* BMGI defendants' motion for summary judgment, "undisputed facts ¶43 and response ¶43.  Apparently, per this motion, she has elected not to accept the gift.  That is her right under the contract's language.

assets, but not against Mr. Silverstein, who owns and controls BMGI.  Whether or not this distinction makes sense in the abstract, it reflects the wording of the contract.

I note that if Mr. Silverstein had kept current on his note until making a request that plaintiff approve substitution of collateral, she would have been under the contractual obligation to act in good faith, which may well have meant that she would have had to go along with his series of save-the-company transactions so long as her substituted collateral had equal value. She was not in a position to ignore the sole remedy clause and insist on being cashed out if Mr. Silverstein had done what the contract required of him.  However, he did not.

There is an old and often repeated maxim that where there is a wrong there is a remedy. As a result of the wording of this contract, and Mr. Silverstein's failure to comply with his part of the bargain (however well-intentioned he might have been), the remedy provided to the plaintiff by the contract is essentially meaningless.  As a result, the parties are embroiled in tort litigation that may well continue through trial, appeal, and potentially more proceedings in the district court.  In the course of litigating these claims the parties are awash in accusations and speculation about one another's motives.  I say these things only to indicate that unless these two people, who appear to be sophisticated and successful business men and women, set aside their apparent animosity and negotiate a business solution to the problem, they may be in for a long and expense road ahead.

In any event, motion #221 is GRANTED for the reasons set forth above.

**Defendants BMGI Corporation, BMGI Holdings LLC and Evergreen Industries, Inc.'s Motion for Summary Judgment [#227]**

The BMGI defendants move for summary judgment as to all claims in the amended complaint. The motion has been fully briefed. Neither party has requested oral argument. The Court finds that it can decide the motion on the briefs.[3]

First Claim for Relief (Express Contract)

Plaintiff alleges that BMGI committed a breach of paragraph 2.02 of the Stock Purchase and Sale Agreement which provides, in pertinent part, "Until Buyer has paid for all of the Stock in full, the Corporation and the Buyer covenant and agree that the sum of the following figures shall at least be equal to the then unpaid portion of the Purchase Price: (i) the valuation of the Corporation, as determined by the Corporation's independent auditors and (ii) the value of any replacement collateral."

BMGI argues that (1) she cannot establish the claim because she has not obtained a valuation by the corporation's independent auditors; (2) she did not properly declare a default or provide an opportunity to cure; (3) her breach of the same paragraph's good faith clause excused BMGI's performance; and (4) in any event she is now fully collateralized, so she has no damages. Although I might not be inclined to agree with arguments two through four, I do not reach or decide them, because I agree with argument one.

The contract requires, in plain and unambiguous language, that the value of the corporation for purposes of paragraph 2.03 is to be determined by the corporation's independent

---

[3] Defendants' 28-page motion is supported by 27 exhibits containing 316 pages. The motion lists 50 separate "undisputed facts." Plaintiff responds with a 31-page brief supported by 38 exhibits containing 242 pages. She admits only 11 of the 50 "undisputed" facts, disputing 35 and indicating that she cannot admit or deny the other four. She adds a list of 22 additional facts that she contends preclude summary judgment. BMGI replies with a 17-page brief in which, among other things, it disputes plaintiff's disputes. A motion of this length and complexity which on the surface at least is laden with fact issues does not lend itself easily to summary disposition.

auditors.  Plaintiff has not obtained such a valuation, even though it has been more than two years since the alleged breach occurred.  Her response to the motion does not mention this issue.

The Court has held as a matter of law (*see* Order on plaintiff's motion #221) that there is no replacement collateral.  One can speculate that BMGI did not maintain the value of the corporation at least equal to the unpaid portion of the purchase price.  This is a company that became by its own admission "insolvent," was on the verge of filing for bankruptcy protection, and ultimately deeded its assets to DSI in lieu of foreclosure.  Nevertheless, these parties who wish to live by the terms of the contract, at least when it supports their respective positions, also must die by the terms of the contract, when it does not.  Without an independent evaluation as agreed, plaintiff cannot prove this claim.

The motion for summary judgment dismissing the first claim in the amended complaint is GRANTED.

### Second Claim (Breach of the Implied Covenant of Good Faith)

Plaintiff alleges that Mr. Silverstein and BMGI broke a covenant of good faith and fair dealing implied in the promissory note that Mr. Silverstein executed and implied in the Stock Purchase and Sale Agreement by causing BMGI's assets to be encumbered by a Silverstein-owned entity (DSI), causing BMGI to transfer its assets to DSI in lieu of foreclosure, causing BMGI to make substantial payments to Mr. Silverstein while he was defaulting on his obligations to the plaintiff, causing BMGI to be devalued, and causing BMGI's stock to be devalued, all with the purpose and effect of decreasing the likelihood that Mr. Silverstein will fulfill his payment obligation to the plaintiff under the note.

It is important to recall plaintiff's original complaint, defendants' initial motions to dismiss, and the Court's rulings.  Plaintiff's first claim in its original complaint was a breach by

Mr. Silverstein and BMGI of the requirement of paragraph 2.03 of the contract to maintain the value of BMGI and any replacement collateral at a level at least equal to the unpaid portion of the purchase price. Plaintiff's second claim, against Mr. Silverstein only, asserted a breach of the requirement of paragraph 2.03 that the parties would act in utmost good faith and deal fairly with one another. Plaintiff's third claim, against Mr. Silverstein and BMGI, asserted breach of the implied covenant of good faith and fair dealing. Plaintiff sought an award of money damages on each of these claims.

The Court granted the motion to dismiss the first and second claim, as to Mr. Silverstein, because the "sole remedy" clause of paragraph 3.01 of the contract precluded an award of damages against him for breach of contract. The Court did not dismiss plaintiff's first claim against BMGI, which was not bound by the sole remedy clause. The Court denied the motion to dismiss the third claim against either defendant. However, in doing so, the Court indicated that the parties had not briefed whether the "express" good faith clause precluded the application of an implied covenant of good faith, or whether the sole remedy provision barred plaintiff's claim against Mr. Silverstein on an implied covenant theory. July 23, 2010 Order at 9-14.

In her amended complaint, plaintiff did not, understandably, reassert a breach of contract against Mr. Silverstein. She did reassert her breach of paragraph 2.03's clause requiring that the value of BMGI plus any replacement collateral be kept at least equal to the unpaid portion of the purchase price against BMGI. That is the claim as to which the Court has now granted summary judgment in favor of BMGI. She did not reassert her claim of breach of paragraph 2.03's clause requiring that the parties act in good faith and deal fairly against BMGI, even though the Court had not dismissed that claim as asserted in her original complaint. She did reassert her claim against both defendants for breach of the implied covenant of good faith and fair dealing.

BMGI asserts eight separate arguments as to why this claim should be dismissed.  I address only one.  First, it argues that there cannot be an implied covenant of good faith, because there is an express requirement of good faith in the contract.  That argument assumes that the express covenant imposes precisely the same burden on BMGI as does the implied covenant.  BMGI provides no authority for that proposition, and I am not convinced.

Under Colorado law, which applies in this diversity case, "*every contract* contains an implied covenant of good faith and fair dealing."  *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995)(emphasis added).  The duty exists when the contract grants a party discretionary authority.  That party may not exercise its discretion in a manner that defeats the reasonable expectations of the other party.  *Ibid.*  The implied covenant exists even where the contract expressly states that there were no implied covenants.  *Id.* at 499.  Therefore, the fact that the contract contains an express requirement that the parties must act in good faith does not negate the existence of the implied covenant, with its specific meaning as defined in Colorado law, that is implied in every contract.  *Alpine Bank v. Hubbell,* 555 F.3d 1097 (10th Cir. 2009), on which defendants rely, is not to the contrary.  The case, citing *Amoco,* holds only that the implied covenant cannot contradict express terms for which a party has bargained.  *Id.* at 1104-05.

Second, BMGI argues that there is no independent cause of action for breach of the implied covenant of good faith and fair dealing.  BMGI's Colorado authority for that proposition is *Denny Const., Incl. v. City and County of Denver,* 170 P.3d 733 (Colo. App. 2007), *rev'd on other grounds,* 199 P.3d 742 (Colo. 2009).  That is not a reasonable citation of the case.  The issue there was whether the trial court erred in allowing a claim for breach of the implied covenant and fair dealing to go to the jury because it was not separately pled.  The trial court found that the cross claim adequately alleged facts that supported an implied covenant claim, and

because the cross claim did assert a breach of contract, this was sufficient to assert a claim of a breach of the covenant implied in the contract.  The court of appeals agreed that a breach of the implied covenant did not have to be pled separately in order for the claim to go to the jury.  *Id.* at 737.  It does not follow that a claim for breach of the implied covenant cannot be separately pled and pursued.

Third, BMGI argues that there cannot be a breach of an implied covenant if there is no breach of an express covenant.  Again, the Colorado authorities that BMGI cites for this proposition do not support this.  Rather, in *RHC, LLC v. Quizno's Franchising, LLC,* 2005 WL 1799536 (an unreported order of a state district court judge from July 19, 2005) the court, consistent with *Amoco* and similar authorities, found that an implied covenant cannot be used to contradict a contract's express terms and "rewrite the contract."  *Id.* at *6.  *Accord Test Services, Inc. v. Princeton Review, Inc.,* 2005 WL 3211594 (D. Colo. 2005)(a decision of a magistrate judge applying New York law).  The whole point of an implied covenant is to impose the requirement of good faith on a party exercising discretion even where there is no breach of an express requirement of the contract.

Fourth, BMGI argues that plaintiff failed to give notice of the breach and an opportunity to cure.  BMGI states that paragraph 15 of the contract requires notice of a breach.  Paragraph 15 in fact is gibberish.  At most it might indicate that where the contract requires that notice be given, it should be given in writing.  BMGI states that paragraph 3.01 requires that BMGI be given an opportunity to cure.  Paragraph 3.01 applies only to Mr. Silverstein.  Therefore, even setting aside that plaintiff has notified BMGI again and again, including by filing this suit, of her claim that BMGI broke the implied covenant, and that BMGI has had literally years to cure the

alleged breach if it wished to do so, the parts of the contract that BMGI invokes to support this argument do not do so.

Fifth, BMGI argues that the alleged implied covenant conflicts with the terms of express contract.  This proposition, if supported by the facts, at least correctly states the law.  However, perhaps forgetting momentarily the distinction between BMGI and Mr. Silverstein, the argument is expressed entirely in terms of alleged conflicts with express contractual provisions concerning him.

Sixth, BMGI argues that plaintiff cannot prove the facts she alleges in support of the claim.  Once again it phrases its arguments in terms of Mr. Silverstein, not BMGI.  Apart from that, the substance of the argument stems from the proposition that plaintiff is fully collateralized today, which the Court has determined to be untrue as a matter of law.  Finally, BMGI cites deposition testimony of the plaintiff to the effect that the contract does not limit payments that BMGI could make to Mr. Silverstein.  That misses the point of an implied covenant, which holds that when a party exercises discretion under a contract, such as by making payments to its owner, it cannot do so in a manner that defeats the reasonable expectations of the other party, here to be paid the purchase price or to have her collateral maintained.  That in turn involves issues of disputed fact inappropriate for summary judgment.

Seventh, BMGI argues that plaintiff cannot prove damages because she is fully collateralized.  Once again, the Court has held as a matter of law that she is not.

Finally, BMGI argues that because plaintiff broke her express covenant of good faith, she cannot assert that BMGI broke its implied covenant of good faith.  BMGI explains plaintiff's alleged violation by reference back to paragraph I(C) of the motion, where it accuses plaintiff of bad faith because she did not obtain a valuation of the corporation by the corporation's

independent auditors, did not give BMGI notice of breach, and did not give BMGI an opportunity to cure.  This, of course, simply regurgitates arguments that BMGI had already made.  Apart from that, the notion that plaintiff's failure to do these things, even if true, would violate her covenant to act in good faith is wholly unpersuasive.  Her failure to obtain the independent audit caused her to lose her express contract claim but is certainly not indicative of bad faith.  Her alleged failure to give notice and allow cure, even if those things were required by the contract, is not indicative of bad faith.  She has made BMGI well aware of her claims about its alleged misconduct, and BMGI has had every opportunity to cure the alleged breaches.

The motion for summary judgment as to the Second Claim against BMGI is DENIED.

Third Claim (Fraud)

Plaintiff asserts a common law fraud claim against all defendants.  The BMGI defendants argue that she did not properly plead the claim because she has not alleged the specific elements of such a claim.  This argument, as defendants acknowledge, is a repetition of its similar claim in its motion to dismiss plaintiff's amended counterclaim.  They did not have the benefit of the Court's ruling on the motion to dismiss when they filed their motion for summary judgment, and therefore, they cannot be faulted for raising the issues again.  However, the Court's order of September 20, 2011 addressed the argument and resolved it against defendants' position.  *Id.* at 6-12.  Accordingly, the motion for summary judgment as to the Third Claim against the BMGI defendants is DENIED.

Fifth Claim (Violation of the Colorado Uniform Fraudulent Transfer Act)

Plaintiff alleges that all defendants violated the Act, which provides in summary that a debtor's transfer of assets is fraudulent if it was made with the intent to hinder, delay or defraud a creditor or without receiving equivalent value in return. C.R.S. § 38-8-105.  She alleges that

Mr. Silverstein and BMGI fraudulently transferred BMGI's assets to transferee DSI, and Silverstein Investments, Delaware BMGI and BMGI Holdings are also transferees within the meaning of the statute.  The BMGI defendants argue that (1) plaintiff cannot prove that any transfer damaged her; (2) she cannot prove that she was a creditor of BMGI; and (3) there was no transfer of assets, because Delaware BMGI is a successor to BMGI.  The Court has discussed the fraudulent transfer issues in both orders denying motions to dismiss.

I do not agree that plaintiff cannot prove that the transfer damaged her.  Mr. Silverstein and BMGI transferred BMGI's assets to DSI and, ultimately, to Delaware BMGI.  Her collateral for the money Mr. Silverstein owes her was thereby rendered "worthless."  Defendants cite *Miller v. Kaiser,* 433 P.2d 772 (Colo. 1964) for the proposition that the statute does not permit an award of money damages against the transferor.  That is too narrow a reading of the case and the law.  As defendants' quotation from *Miller* indicates, the primary remedy for a fraudulent conveyance is to restore the property conveyed to its pre-transfer status.  *Id.* at 775.  In the present case that would require restoring BMGI's assets to BMGI.  If, as defendants have repeatedly asserted during the history of this case, plaintiff does not want her collateral restored and only wants a money judgment, it might be that her remedy on this claim would be disappointing to her.  The Court's objective is not to fulfill the private agendas of either party.  However, that remedy might be undesirable, conceivably all but impossible, from the standpoint of either Delaware BMGI or BMGI, regardless of what plaintiff might want.  As indicated in plaintiff's response to the Silverstein defendants' motion, the law permits the fashioning of a remedy to fit the particular circumstances.

I likewise do not agree that plaintiff cannot prove that she was a creditor of BMGI.  This issue has already been addressed by the Court in response to the motions to dismiss.  *See* July 23,

2010 Order at 14-22; September 20, 2011 Order at 17-19.  The BMGI defendants argue now that plaintiff has no contract claim against BMGI.  One does not have to have a contract claim to be a creditor.  Moreover, plaintiff does have a contract claim (implied covenant of good faith) against BMGI.

Finally, I do not agree that there was no transfer of assets.  Obviously there was a transfer to DSI.  There was another transfer to Delaware BMGI.  It is of no comfort to the plaintiff that BMGI and Delaware BMGI have purportedly merged.  She has no collateral interest in the assets of Delaware BMGI for reasons the Court has previously discussed.

The motion for summary judgment as to the Fourth Claim is DENIED.

<u>Third, Fourth, Sixth, Seventh and Eighth Claims (economic loss rule)</u>.

These are the fraud, fiduciary duty, conspiracy, joint and several liability and aiding and abetting breach of fiduciary duty claims.  I note that the Fourth Claim was asserted against Mr. Silverstein alone and might have been included inadvertently in the BMGI defendants' motion.

The Court has ruled against defendants' position on the economic loss rule with respect to fraud and fiduciary duty issues previously.  July 23, 2010 Order at 16-22.  Defendants advance no argument with respect to the "conspiracy" and "joint and several liability" claims.  Without commenting on whether those claims (Sixth and Seventh Claims) might fail to state a claim for other reasons not briefed, the Court concludes that the motion for summary judgment as to these claims must be DENIED.

**Defendants David Silverstein, Silverstein Investments, LLC and DSI Investments, LLC's Motion for Summary Judgment [#228]**

For the most part the Silverstein defendants' motion is substantively the same as the BMGI defendants' motion.  The Court's rulings on motion #227 apply to #228, unless otherwise indicated, and will not be repeated here.

These defendants first argue that Delaware BMGI is the successor to BMGI.  That may or may not be so.  However, the Court has held that Mr. Silverstein did not provide substitute or replacement collateral to the plaintiff in conformance with the Stock Purchase and Sale Agreement, and therefore, that her collateral continues to be solely Mr. Silverstein's stock in the still existent, but now apparently assetless, BMGI.

Next, defendants argue that the "sole remedy" clause bars plaintiff's claim against Mr. Silverstein for violation of the implied covenant of good faith and fair dealing.  Plaintiff only seeks an award of money damages on the claim.  First Amended Complaint ¶88.  Accordingly, I agree with defendants.  If, as the Court has held, the sole remedy clause bars the express contract claim for money damages, logically it bars the implied contract claim for the same relief.  The motion for summary judgment is GRANTED to the extent that plaintiff's Second Claim for Relief is dismissed as against Mr. Silverstein.

The Court has previously addressed most of the arguments regarding the fiduciary duty claims.  July 23, 2010 Order at 19-21; September 20, 2011 Order at 13-17.  One new argument is that BMGI was never insolvent.  It takes a certain amount of hutzpah to make this argument in light of the fact that BMGI declared itself to be insolvent in 2009 at or near the beginning of the chain of events of which plaintiff complains.  In any event, whether BMGI was insolvent when it declared itself to be so, or became insolvent as a result of the allegedly fraudulent transfers, are fact issues that are disputed.

These defendants argue that plaintiff cannot prove that the transfer of assets, allegedly in violation of the Colorado Uniform Fraudulent Transfer Act, was made with the intent to defraud, hinder or delay any creditor.  Questions of intent are inherently factual in nature.  The Court finds that plaintiff has come forward with sufficient evidence concerning alleged "badges of

fraud" to show that defendants' intent presents a factual dispute that is not appropriate for summary disposition.

Except as indicated, this motion is DENIED.

**[Defendants'] Motion to Strike the Testimony of Plaintiff's Proffered Expert Stephen J. Hazel Submitted in Opposition to Defendants' Summary Judgment Motions [#278]**

This motion is DENIED as moot. The Court did not consider Mr. Hazel's testimony in resolving defendants' summary judgment motions.

**Defendants' Joint Motion to Reconsider the Court's September 20, 2011 Order Regarding Plaintiff's Fiduciary Duty Claims, Request for Evidentiary Hearing or in the Alternative Request for Certification to the Colorado Supreme Court [#299]**

Judge Arguello's order thoughtfully addressed these issues, including whether the interpretation of the statute should be certified to the Colorado Supreme Court. Defendants now provide excerpts from testimony on the floor of the Colorado Senate and the opinion of an attorney, J. William Callison.[4] These materials do not persuade me that Judge Arguello was necessarily wrong.

The Court recognized both that the statute could be interpreted either way and that the Colorado Supreme Court has expressly noted the issue in another case but did not reach it. One could ask, if the intent of the legislature were to absolve corporate officers and directors of all fiduciary duties to creditors, even in insolvency situations, why was that not clearly set forth in the statute? Also, the concern of the legislature, to the extent that a legislature's intent can be inferred from the testimony of a few Senators, arose from the dilemma a director or officer would have if he faced conflicting duties to the corporation's shareholders and creditors. Here, with the exception of a small fraction of the shares apparently held by a stock option plan (whose interest should not be affected by a damages award against the Silverstein defendants), the

---

[4] Mr. Callison's "testimony" is the subject of a motion pending before the magistrate judge [#225].

shareholder is Mr. Silverstein himself.  The point of a fiduciary duty is that one should not prefer his own interest to that of an individual to whom he owes the duty.  Whether the statute would be applied as defendants argue to the facts of this case is still an unresolved question except as it was resolved by Judge Arguello's order.

Therefore, I decline to revisit or overrule my colleague's order.  The motion is DENIED.

**Summary of Order**

1. The objection to magistrate's order [#180] is GRANTED IN PART and DENIED IN PART.

2. Motion #221 is GRANTED.

3. Motion #227 is GRANTED IN PART and DENIED IN PART.

4. Motion #228 is GRANTED IN PART and DENIED IN PART.

5. Motion #278 is DENIED.

6. Motion #299 is DENIED.

DATED this 12th day of January, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge