IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02858-RBJ-BNB

ILONA KIRZHNER,

Plaintiff,

v.

DAVID SILVERSTEIN,
EVERGREEN INDUSTRIES, INC., a Colorado corporation, f/k/a Breakthrough Management Group International, Inc., f/k/a Breakthrough Management Group, Inc.,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation, and
BMGI HOLDINGS, LLC, a Delaware limited liability company,

Defendants.

_____

**ORDER**
_____

This matter arises on the following:

(1)     The Order of the district judge directing the in camera review of certain

documents, Order [Doc. # 305] at p. 11; and

(2)     Plaintiff's **Motion to Strike or Exclude Testimony of Defendants' Proffered**

**Expert J. William Callison** [Doc. # 225] (the "Motion to Exclude").

I.

I am informed that following entry of the Order [Doc. # 305] the parties conferred and

were able to resolve their dispute necessitating an in camera review except with respect to one

document. Consequently, I reviewed the document during the hearing on February 6, 2012, and

determined that all redactions are appropriate with one small exception. One redacted sentence,

however, constitutes a cover sheet to the electronic transmittal of certain documents. The documents being transmitted are not specifically identified, and no privileged information is contained in that portion of the email. Consequently, redactions of the document shall be revised to disclose the single sentence specified, and the revised document shall be disclosed to the defendants on or before **February 10, 2012**.

II.

The Motion to Exclude [Doc. # 225] seeks an order precluding J. William Callison, a lawyer designated by the defendants as an expert witness, from offering the following opinion testimony at trial:

> (a) the transaction whereby Defendant David Silverstein ("Silverstein") caused the assets of Evergreen Industries, Inc. ("Evergreen") to be conveyed to BMGI Corporation ("BMGI") constituted a "de facto merger" such that the BMGI stock held by Silverstein should be viewed as collateral for Silverstein's debt obligation to Plaintiff Ilona Kirzhner ("Kirzhner"), (b) the subsequent statutory merger of Evergreen and BMGI had the same result, (c) Kirzhner's sole remedy for Silverstein's failure to make payments on her promissory note is to foreclose on a portion of the BMGI shares owned by Silverstein and (d) Silverstein did not breach an implied covenant of good faith and fair dealing with respect to any distributions or compensation he received from Evergreen.

Expert Report of J. William Callison [Doc. # 225-1] (the "Callison Report") at p. 1.

Turning first to the "merger opinions," I note that the district judge has ruled that pursuant to the Stock Purchase and Sale Agreement, Ms. Kirzhner must accept a substitution of collateral only under certain conditions and that:

> [b]ecause Mr. Silverstein was in default when he purported to substitute the new stock for the old, he could not, under the terms of the contract as drafted, force plaintiff to accept the substituted collateral even if it does have, as he contends, equal or greater

2

> value than the old stock. . . . [Mr. Silverstein] cannot, by
> volunteering to convert her security to an interest in his Delaware
> BMGI stock 9or under corporate succession theories . . .), force the
> plaintiff to accept his breach of the contract's requirements,
> whether or not he is right that this would put her in a better
> position vis-a-vis collateral then if her only collateral is BMGI
> stock.

Order [Doc. # 305] at pp. 14-16. In view of this ruling, it is difficult to understand how any expert testimony about "de facto" or statutory mergers could have any relevance to matters still in dispute. Relevance objections are better left to determination during the trial, however, and I will not exclude any testimony based on the argument that it is not relevant.

The plaintiff's principal argument for excluding Mr. Callison's opinions is that they are legal opinions which invade the province of the trial judge and the jury by applying the facts to the law and telling the jury the result it should reach.

The proponent of expert testimony bears the burden of showing that the expert's testimony is admissible. United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009). The Tenth Circuit Court of Appeals has described the burden as follows:

> Under Rule 702, the district court must satisfy itself that the
> proposed expert testimony is both reliable and relevant, in that it
> will assist the trier of fact, before permitting a jury to assess such
> testimony. In determining whether expert testimony is admissible,
> the district court generally must first determine whether the expert
> is qualified by knowledge, skill, experience, training, or education
> to render an opinion. Second, if the expert is sufficiently qualified,
> the court must determine whether the expert's opinion is reliable
> by assessing the underlying reasoning and methodology, as set
> forth in Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S.
> 579 (1993)].
>
> Reliability questions may concern the expert's data, method, or his
> application of the method to the data. The party offering the expert
> must show that the method employed by the expert . . . is
> scientifically sound and that the opinion is based on facts which

> satisfy Rule 702's reliability requirements. . . . In making a
> reliability determination, generally, the district court should focus
> on an expert's methodology rather than the conclusions it
> generates.

Id. (internal quotations and citations omitted except as shown).

Although Daubert concerned experts offering scientific testimony, the court's gatekeeping function to ensure that expert testimony is both relevant and reliable was extended to all expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).

Daubert instructs that the court's focus should be on the expert's methodology rather than the conclusions it generates. However:

> [C]onclusions and methodology are not entirely distinct from one
> another. . . . [N]othing in either Daubert or the Federal Rules of
> Evidence requires a district court to admit opinion evidence that is
> connected to existing data only by the *ipse dixit* of the expert. A
> court may conclude that there is simply too great an analytical gap
> between the data and the opinion proffered.

General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997) (internal citation omitted).

In Specht v. Jensen, 853 F.2d 805, 808-09 (10th Cir. 1988), the Tenth Circuit Court of Appeals recognized a special rule with respect to lawyers serving as expert witnesses:

> While other experts may aid a jury by rendering opinions on
> ultimate issues, our system reserves to the trial judge the role of
> adjudicating the law for the benefit of the jury. When an attorney
> is allowed to usurp that function, harm is manifest. . . .

The court in Specht cited with approval Marx & Co. v. Diner's Club, Inc., 550 F.2d 505 (2d Cir. 1977), where the Second Circuit Court of Appeals held that it was error to allow a lawyer to render his opinions on the legal obligations arising from a contract and on the legal significance of various facts in evidence. Specht, 853 F.2d at 808.

The Sprecht court explained further:

> The line we draw here is narrow.  We do not exclude all testimony regarding legal issues.  We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.  Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.  For example, we have previously held that a court may permit an expert to testify that a certain weapon had to be registered with the Bureau of Alcohol, Tobacco, and Firearms.  In that case, however, the witness did not invade the court's authority by discoursing broadly over the entire range of the applicable law.  Rather, the expert's opinion focused on a specific question of fact.
>
> \* \* \*
>
> [A]n expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.  However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.  In no instance can a witness be permitted to define the law of the case.

Id. at 809-10 (internal citations and note omitted).

In United States v. Jensen, 608 F.2d 1349, 1356 (10th Cir. 1979), the circuit court noted that "an expert witness cannot state legal conclusions by applying law to the facts, passing upon weight or credibility of the evidence, or usurping the province of the jury by telling it what result should be reached."  Accord A.E. By and Through Evans v. Independent School Dist. No. 25, 936 F.2d 472, 476 (10th Cir. 1991)(citing Jensen and stating that "an expert may not state legal conclusions drawn by applying the law to the facts"); Holman Enterprises v. Fidelity and Guaranty Ins. Co., 563 F. Supp. 2d 467, 472 (D. N.J. 2008)(holding that the court "must limit expert testimony so as to not allow experts to opine on what the law required or testify as to the governing law," and explaining that this prohibition on experts testifying as to their own legal conclusions is "so well established that it is often deemed a basic premise or assumption of

evidence law--a kind of axiomatic principle. In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law") (internal quotations and citations omitted).

In <u>Rieger v. Orlor, Inc.</u>, 427 F. Supp. 2d 99, (D. Conn. 2006), the court distinguished between permitted expert opinions and impermissible opinions that invade the jury's province to apply the law to the facts:

> Kleiner's first opinion--that defendants could have accommodated plaintiff's disability without significant impact, but instead retaliated against plaintiff by moving her to a less desirable position . . .--includes two legal conclusions based on certain facts in the record and therefore impermissibly invades the jury's province to apply the applicable law to the facts of the case and reach ultimate legal conclusions. While Kleiner is qualified, given his education and experience in the human resources field, to opine on accommodations that could have been made, or are frequently made, to accommodate conditions such as plaintiff's insomnia, Kleiner's opinion is not framed in those terms. Rather, because Kleiner's opinion does not proffer any specialized knowledge, and invokes legal standards (*i.e.*, that defendants could have accommodated plaintiff's disability without significant impact, and that defendants retaliated against plaintiff), his opinion would "not *aid* the jury in making a decision, but rather attempts to substitute [his] judgment for the jury's.

(Internal quotations and citations omitted.)

I agree with the plaintiff that Mr. Callison's four principal opinions, quoted above, improperly usurp the function of the trial judge and the jury. Mr. Callison may not testify as to those four opinions.

The defendants stress, however, that Mr. Callison has been endorsed as a rebuttal expert and that they intend to call him to testify, if at all, in rebuttal to expert opinions expected to be offered by William Hazel, an expert endorsed by the plaintiff. In addition, the defendants argue,

any attempt to preclude all testimony by Mr. Callison is premature until the testimony of Mr. Hazel is known and Mr. Callison's rebuttal testimony is offered. In this regard, the defendants note that Mr. Callison's expert report contains numerous subsidiary opinions and facts in support of those opinions which may properly be offered to rebut the testimony of Mr. Hazel. On this point, I agree with the defendants.

III.

IT IS ORDERED:

(1) Redactions of the single disputed document shall be revised to disclose the sentence specified in my oral ruling On February 6, 2012, and the revised document shall be disclosed to the defendants on or before **February 10, 2012**; and

(2) The Motion to Exclude [Doc. # 225] is GRANTED IN PART and DENIED IN PART as premature as follows:

- GRANTED to exclude the following four opinions:

  "(a) the transaction whereby Defendant David Silverstein ("Silverstein") caused the assets of Evergreen Industries, Inc. ("Evergreen") to be conveyed to BMGI Corporation ("BMGI") constituted a "de facto merger" such that the BMGI stock held by Silverstein should be viewed as collateral for Silverstein's debt obligation to Plaintiff Ilona Kirzhner ("Kirzhner"), (b) the subsequent statutory merger of Evergreen and BMGI had the same result, (c) Kirzhner's sole remedy for Silverstein's failure to make payments on her promissory note is to foreclose on a portion of the BMGI shares owned by Silverstein and (d) Silverstein did not breach animplied covenant of good faith and fair dealing with respect to any distributions or compensation he received from Evergreen";

- DENIED in all other respects as premature.

Dated  February 7, 2012.

                                        BY THE COURT:

                                         s/ Boyd N. Boland
                                        United States Magistrate Judge