IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 09-cv-02858-RBJ-BNB

ILONA KIRZHNER,

    Plaintiff,

v.

DAVID SILVERSTEIN, an individual,
EVERGREEN INDUSTRIES, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP
INTERNATIONAL, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP, INC., a
Colorado corporation,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation, and
BMGI HOLDINGS, LLC, a Delaware limited liability company,

    Defendants.

## ORDER

    Defendant moves for "partial reconsideration" of the Court's order of January 12, 2012 in which the Court addressed and resolved motions then pending. [#305]. The Court has considered the motion, response and reply. Oral argument was not requested.

**I.    Non-Payment Default**

    As discussed at length in the Court's January 12 order, this case arises from the sale of Ilona Kirzhner's 5,000,000 shares of the stock of Breakthrough Management Group, Inc. ("BMGI"), representing a 50% ownership, to the other 50% owner, David Silverstein, for $5,000,000. The unpaid portion of the purchase price is evidenced by a promissory note and secured by the 5,000,000 shares of BMGI that she sold. Mr. Silverstein stopped making payments when a substantial portion of the purchase price remained unpaid. Subsequently,

1

through a series of transactions, he converted BMGI stock into the stock of a new entity to which the Court has previously referred as Delaware BMGI. The basic dispute in this lawsuit is whether Ms. Kirzhner has a remedy for this "default" and various other wrongs that she attributes to Mr. Silverstein other than recovery of shares of what now is Delaware BMGI stock.

In addressing Plaintiff's Motion for Partial Summary Judgment Regarding Statutory Merger Issues [#221], the Court concluded that the stock of Delaware BMGI was not "replacement collateral" for Mr. Silverstein's note obligation under the terms of the Stock Purchase and Sale Agreement ("SPSA"). Paragraph 2.01 of the SPSA required Ms. Kirzhner, upon Mr. Silverstein's written request, to permit the exchange or substitution of different securities or property as collateral so long as Mr. Silverstein was not "in default of performance of his obligations under the Agreement." Paragraph 2.01 added that "it is the intent of the parties that any substitution shall be substitute only as long as Seller will be in the same or better financial and security position with respect to Seller's security interest as if a substitution of collateral had not occurred." The Court concluded that, because Mr. Silverstein was in default by reason of his failure to make the required payments under the note, he could not substitute collateral. Because he nevertheless did so, or purported to do so, he has essentially left Ms. Kirzhner with a security interest in worthless BMGI stock and a lawsuit.

Defendants argue that the Court erred in finding that Mr. Silverstein's non-payment of the purchase price constituted a default. Section 3.01(a) of the SPSA provides that the buyer is deemed to be in breach or default upon "[n]on payment of any required installment when due (including any grace period(s)), *upon notice to Buyer pursuant to paragraph 2.05 and 15 and failure to cure such default within seven (7) days of receiving notice in writing to do so.*" (emphasis added). Paragraph 2.05 provides that in the event of a default of payment, Ms.

Kirzhner "is entitled to declare the Buyer in default of this purchase agreement and to recover and receive possession of all of the shares of Stock not paid for by Buyer prior to the default." Paragraph 15 provides that notice must be in writing by certified mail to Mr. Silverstein at a designated address. The argument is that Ms. Kirzhner never gave notice of a default based upon non-payment and, therefore, there was no non-payment default.

While at first blush this argument seems to elevate form over substance, defendants argue that it is not a mere technicality. As indicated in paragraph 2.05, upon declaring Mr. Silverstein to be in default of payment, Ms. Kirzhner would recover the stock not paid for – a remedy that she does not want. Therefore, defendants contend, Ms. Kirzhner has intentionally avoided giving notice and declaring a non-payment default. Defendants back this up with (1) a letter from Ms. Kirzhner to Mr. Silverstein dated June 19, 2009 in which she indicates that she has elected to refrain from exercising her right to call a default [#321-2]; (2) deposition testimony that she never called a payment default and that she knew that if she did her remedy would be to take the stock back [#321-3]; and (3) Ms. Kirzhner's responses to requests for admissions in which she acknowledges that she has not sent Mr. Silverstein a written notice of default or declare that he is in default for failing to make payments required by the note [#321-4].

Plaintiff's response for the most part is not helpful:

- She reminds the Court that she has prevailed against defendants' motions time after time, which is irrelevant to the present motion.
- She argues that the pending motion is procedurally deficient because the federal rules do not recognize a motion to reconsider, Rule 59(e) is not a vehicle to rehash argument previously considered, and Rule 60(b)(6)(allowing relief from an order or judgment for "any other reason that justifies relief,") should be reserved for

3

- extraordinary circumstances. However, if the Court makes a mistake on an issue that is potentially fundamental to the resolution of a case, the Court has ample latitude under either rule to correct it.

- Plaintiff indicates that the lawyers for the parties have, in times past, both referred to Mr. Silverstein's "default" for failure to pay for the stock. However, the express terms of the SPSA prevail over the lawyers' jousting.

- Plaintiff distinguishes between a "default in performance" and a "declaration of default." However, by the terms of the contract, there can be no default in performance by reason of non-payment of payments when due if there is no written notice and declaration of default.

- Ms. Kirzhner still does not assert that she has ever given written notice of default or that she has ever declared a default.

In short, it appears that the Court did err. If so, then the only way to correct an error is to correct it. The Court is inclined to grant the motion with respect to the non-payment issue.

However, plaintiff points out, correctly, that under paragraph 3.01 of the SPSA there are two other occurrences of default:

> (b) Any voluntary or involuntary filing or declaration of Bankruptcy by the Corporation or Buyer or any creditor of Corporation, or Buyer the appointment of a receiver for Corporation in any jurisdiction, any assignment of Corporation's or Buyer assets or arrangement for the benefit of creditors(s) of the Corporation or Buyer, unless such proceeding(s) are involuntary and dismissed within one hundred eighty (180) days of commencement or filing;

> (c) Buyer's breach of any other material provision of this Agreement except for non-payment, including any warranty, representation, or indemnification of Buyer set forth herein, and the occurrence of any event of default described in this Agreement. In the event of a breach under this paragraph (c), Buyer shall have a period of thirty (30) days to cure or remedy any such breach, and restore the parties to the position they would have if no breach had occurred before Seller may declare a default as provided in this Agreement.

4

Paragraphs 3.01(c) and 2.01 are circular. As indicated, paragraph 2.01 provides that Mr. Silverstein may substitute collateral "[so] long as the Buyer is not in default of performance of his obligations under this Agreement." Paragraph 3.01(c) provides that a breach of the Agreement is a default. It adds nothing other than its own cure period, which is not relevant on these facts.

Paragraph 3.01(b), however, is relevant. There is no evidence of any bankruptcy filing or the appointment of a receiver. However, it is not disputed that in 2009 Mr. Silverstein formed DSI Investments, LLC ("DSI"). DSI then purchased a note evidencing a debt owed by BMGI to the First National Bank. DSI thus became a creditor of BMGI. DSI then instituted foreclosure proceedings and foreclosed on BMGI's assets according to a Non-Disclosure Agreement. [#263-17]. It appears that the formal transaction might have been a deed in lieu of foreclosure, but that distinction is not significant to the present argument. Most of the assets were then sold by DSI to Delaware BMGI in what purported to be a public auction. *See* Exhibits 13 and 15 to Plaintiff's Response to Defendant BMGI Corporation, BMGI Holdings, LLC and Evergreen Industries, Inc.'s Motion for Summary Judgment [#263-13, -15].

In defendants' motion to dismiss filed December 8, 2009 [#3], in the course of providing "telling background" to the Court, defendants stated that a "breach and/or default" under the SPSA is defined in paragraph 3.01 to include "in subsection '(b),' any conduct that constitutes a foreclosure sale, such as 'assignment of the Corporation's . . . assets' or an 'arrangement for the benefit of any creditor(s).'" This statement appears consistent with the terms of the SPSA and with the facts.

A default as defined by paragraph 3.01(b) is still a default. Thus, even if the Court erred in relying on non-payment as a default, its conclusion that he was in default when the alleged exchange or substitution of collateral occurred does not change. I do not agree with defendants that this turns on disputed issues of fact.

**II.    Merger**

Defendants argue, alternatively, that even if there was a default, there was no substitution of collateral. They point to provisions in the corporate laws of Colorado and Delaware that the statutory merger of November 29, 2010 merged all of the rights and responsibilities of BMGI into Delaware BMGI. They argue that, therefore, there was no "substitution" or replacement of collateral as a matter of law.

In her response Ms. Kirzhner does not take issue with the proposition that the statutory merger replaced BMGI stock with Delaware BMGI stock, nor does she argue that Mr. Silverstein could not proceed with a statutory merger if he was in default under the SPSA. Although she does not say so in so many words, she implies that she agrees with the defendants that the Court erred in concluding that it did not have to reach the merger argument because Mr. Silverstein was in default.

Rather, she argues that (1) she was uncollateralized between September 24, 2009 and November 29, 2010; and (2) the stock collateralizing the note was worth 35% of BMGI, which defendants' experts valued at approximately $9,445,000 (total collateral value $3,312,928.20), whereas after the merger, the stock that collateralizes the note is worth 0.35% of Delaware BMGI (total collateral value $47,990.98).

With respect to the first argument, plaintiff's point appears to be that the September 24, 2009 "foreclosure sale" was collusive and was designed to eliminate her collateral. She argues

6

that defendants cannot escape a "fraud" by subsequent acts. Defendants reply that whether plaintiff was uncollateralized for a period of time and whether defendants committed fraud fact arguments that must be resolved at trial. I agree.

Regarding the second argument, paragraph 2.01 of the SPSA states that "it is the intent of the parties that any substitution shall be substituted only so long as Seller will be in the same or better financial and security position with respect to Seller's security interest as if a substitution of collateral had not been completed." SPSA ¶2.01. If the value of the collateral decreased from more than $3 million to less than $50,000, then the expressed intent of the parties was not realized. As indicated in the January 12, 2012 order, the alleged dilution or diminishment of the value of the collateral presents a fact issue that would not be appropriate for summary disposition. Jan. 12, 2012 Order at 14.

Plaintiff also appears to argue that the merger was a sham, devised by Mr. Silverstein or his attorneys to create a defense to her claims. That too presents fact issues unsuitable for summary judgment.

### Order

Defendants' motion for partial reconsideration [#321] is GRANTED. The Court reverses the portion of its order of January 12, 2012 that granted plaintiff's motion #221.

DATED this 10th day of April, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge