**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>1:09-cv-2858-RBJ-BNB</u>

ILONA KIRZHNER,

      Plaintiff,

v.

DAVID SILVERSTEIN, an Individual,
EVERGREEN INDUSTRIES, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP
INTERNATIONAL, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP, INC., a
Colorado corporation,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation, and
BMGI HOLDINGS, LLC, a Delaware limited liability company

      Defendants.

_____

**PLAINTIFF'S TRIAL BRIEF**
_____

      Plaintiff Ilona Kirzhner, by and through her attorney, Thomas L. DeVine, Jr., Esq.,

hereby submits her Trial Brief as follows:

## <u>INTRODUCTION</u>

      Plaintiff's Trial Brief is respectfully submitted to the Court to identify the elements

of the Plaintiff's claims for relief and legal issues surrounding those claims.   Unless

necessary, the Plaintiff will not discuss specific factual issues or bases supporting those

claims.

<u>PLAINTIFF'S CLAIMS FOR RELIEF</u>

I. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – BMGI**

"Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing." <u>Amoco Oil Co. v. Ervin</u>, 908 P.2d 493, 498 (Colo. 1995). "The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations." <u>Amoco</u>, 908 P.2d at 498 (citations omitted). "Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" <u>Amoco</u>, 908 P.2d at 498 (quoting <u>Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.</u>, 872 P.2d 1359, 1362 (Colo. Ct. App. 1994)).

Judicial enforcement of the parties' justified and reasonable expectations is at odds with certain contract "hornbook rules," overriding, for example, the "precept that contracts which are free from ambiguity are to be enforced as written." <u>Amoco</u>, 908 P.2d at 498. As a result, the implied duty of good faith and fair dealing may be used to impose additional terms or obligations concerning a party's performance of a contract, *even when the imposed terms are contrary to express terms in the parties' contract*. <u>Amoco</u>, 908 P.2d at 499; <u>cf.</u> <u>Amoco</u> 908 P.2d at 505 (Vollack, C.J.) (dissenting that the implied covenant of good faith and fair dealing may be utilized to limit or rewrite contract provisions).

Moreover, the implied covenant of good faith and fair dealing cannot be limited or abrogated by any contract language. <u>Id.</u> at 499. In <u>Amoco</u>, the Court reasoned that "the covenant of good faith and fair dealing exists in every contract to enforce the

reasonable expectations of the parties," and ruled that the covenant applied despite express contract language *precluding* implied covenants.   Id.   Indeed, the implied covenant of good faith and fair dealing overrides express, unambiguous terms, when strictly applying the contractual obligations could lead to absurd results.   New Design Constr. Co., Inc. v. Hamon Contractors, Inc., 215 P.3d 1172, 1182 (Colo. Ct. App. 2008) (finding that the general contractor's express contractual discretion would not permit the general contractor to force its subcontractor "to perform its paving work at midnight using teaspoons.").   Therefore, even a party's strict adherence to contract terms and performance obligations is in violation of the covenant of good faith and fair dealing when such adherence does not meet, or violates, the other party's reasonable expectations concerning the contract.   Amoco, 908 P.2d at 498.   "A party's justified expectations are violated if evidence indicates it would not have signed the contract had it known of the manner in which the party given discretion would exercise its discretion to determine open terms under a contract."   ADT Security v. Premier Home, 181 P.3d 288, 293 (Colo. Ct. App. 2007).

The implied covenant of good faith and fair dealing prohibits a variety of types of conduct that can be characterized as "bad faith," including "subterfuges and evasions." Hamon Contractors v. Carter & Burgess, Inc., 229 P.3d 282, 293 (Colo. Ct. App. 2009) (citing *Restatement (second) of Contracts* § 205 cmt. d (1979)).

The Plaintiff's presentation of evidence at trial will include direct and circumstantial evidence that Silverstein intended to, and did, strip the assets of BMGI, Inc. to render Plaintiff's collateral worthless.   Additionally, Silverstein took considerable

cash distributions for himself while representing that he could not continue making payments to Plaintiff, and hid his actions to prevent Plaintiff from discovering his conduct.  Indeed, Silverstein continues to attempt to hide his actions and motivations to avoid liability to Plaintiff.

## II.     FRAUDULENT MISREPRESENTATION – ALL DEFENDANTS

Plaintiff must prove, by a preponderance of the evidence, the following elements to prevail on her fraudulent misrepresentation claim: (1) The defendant made a false representation of a past or present fact; (2) The fact was material; (3) At the time the representation was made, the defendant: (a) knew the representation was false; or (b) was aware that he did not know whether the representation was true or false; (4) The defendant made the representation with the intent that the plaintiff would rely on the representation; (5) The plaintiff relied on the representation; (6) The plaintiff's reliance was justified; and (7) This reliance caused damages or losses to the plaintiff.  See CJI:Civ. 19:1 (CLE Ed. 2012).

### A.     False Representation

A false representation is any oral or written words, conduct, or combination of words and conduct that creates an untrue or misleading impression in the mind of another.  CJI:Civ.  19:3 (CLE ed. 2012).

### B.     Material Fact

A fact is material if a reasonable person under the circumstances would regard it as important in deciding what to do.   A fact may also be material even though a reasonable person might not regard it as important, if the person stating it knows that, or

the person concealing it knows that, the person receiving the information would regard it as important in deciding what to do.  CJI:Civ.  19:4 (CLE ed. 2012).

### C.    Reliance Defined

The plaintiff, Ilona Kirzhner, relied on the claimed representation if she believed it was true, and based on that representation: (1) Took action she otherwise would not have taken; or (2) Decided not to take action she otherwise would have taken.  CJI:Civ. 19:7 (CLE ed. 2012).  A person is justified in assuming that a representation is true if a person of the same or similar intelligence, education, or experience would rely on that representation.  CJI:Civ. 19:8 (CLE ed. 2012).

### D.    Justifiable Reliance

A person's reliance is justified even though she did not make an investigation that would have revealed the facts unless: (1) She knew specific facts that would have caused a person of the same or similar intelligence, education or experience to be suspicious and investigate; and (2) She had a reasonable opportunity to investigate. CJI:Civ. 19:10 (CLE ed. 2012).

### E.    Promise of Future Performance as False Representation

A promise to do something in the future is a false representation if the person making the promise did not intend to keep the promise when he or it made it.  A statement of intent to do something in the future is a false representation if the person making the statement did not intend to do it when he or it made the statement.  CJI:Civ. 19:12 (CLE ed. 2012).

A statement about what will or will not happen in the future is a false

representation only if it turns out to be false and the person making the statement: (1) Claimed to have special knowledge to support the statement that he or she did not have; or (2) Had special knowledge that he or she failed to disclose and that he or she knew would make the future event unlikely to happen.  CJI:Civ. 19:13 (CLE ed. 2012)

### F.  **Statement of Opinion is not a Misrepresentation**

A statement that is made and reasonably understood to be only an opinion is not a false representation of a past or present fact.  However, a statement in the form of an opinion is a false representation of a past or present fact if: (1) The statement is intended by the speaker and reasonably understood by the listener to be a statement of a past or present fact; and (2) The statement is false.  CJI:Civ. 19:15 (CLE ed. 2012).

### III.  **FRAUDULENT CONCEALMENT – ALL DEFENDANTS**

Plaintiff must prove, by a preponderance of the evidence, the following elements to prevail on her fraudulent concealment claim: (1) One or more of the defendants either concealed a past or present fact or failed to disclose a past or present fact which he or it had a duty to disclose; (2) The fact was material; (3) One or more of the defendants concealed it or failed to disclose it with the intent of creating a false impression of the actual facts in the mind of the plaintiff; (4) One or more of the defendants concealed or failed to disclose the fact with the intent that the plaintiff take a course of action she might not take if she knew the actual facts; (5) The plaintiff took such action or decided not to act relying on the assumption that the concealed or undisclosed fact did not exist or was different from what it actually was; (6) The plaintiff's reliance was justified; and (7) This reliance caused damages or losses to the plaintiff. CJI:Civ. 19:2 (CLE ed.

2012).

## A.    The Defendants' Duty to Disclose

The defendants, David Silverstein, Evergreen Industries formerly known as Breakthrough Management Group International, Inc. or BMGI, Inc., David Silverstein Investments, LLC, DSI Investments, LLC, BMGI Corporation, and BMGI Holdings, LLC, had a duty to disclose material facts if he or it knew about them and if: (1) The defendant and the plaintiff were in a fiduciary relationship; or (2) The defendant stated some facts, but not all material facts, knowing that they would create a false impression in the mind of the plaintiff; or (3) The defendant knew that by his or its own unclear or deceptive words or conduct that he or it created a false impression of the actual facts in the mind of the plaintiff; or (4) The defendant knew that the plaintiff was not in a position to discover the facts for herself; or (5) The defendant communicated material facts that were true or that he or it believed were true at the time the time they were communicated. Later, the defendant learned that the material facts were no longer true and knew that the plaintiff was acting under the impression that the facts were true; or (6) The defendant promised to perform an act or communicated an intention to perform an act knowing that undisclosed facts made his or its performance unlikely.  CJI:Civ. 19:5 (CLE ed. 2012).

## B.    Concealment Defined

The defendants, David Silverstein, Evergreen Industries formerly known as Breakthrough Management Group International, Inc. or BMGI, Inc., David Silverstein Investments, LLC, DSI Investments, LLC, BMGI Corporation, and BMGI Holdings, LLC,

concealed a fact that he or it knew, if, by conduct, or by written or oral words, or by a combination of conduct and words, he or it created a false impression of the actual fact in the mind of the plaintiff, Ilona Kirzhner: (1) By covering up the truth; or (2) By preventing the plaintiff from discovering the actual fact for herself.  CJI:Civ. 19:6   (CLE ed. 2012).

### C.    Justifiable Reliance

When dealing with someone else, a person is justified in assuming that the other person will not intentionally fail to disclose a past or present material fact which the other person knows and has a duty to disclose or conceal a material fact.  However, a person is not justified in relying on this assumption when someone of the same or similar intelligence, education, or experience would not rely on it.  CJI:Civ. 19:9 (CLE ed. 2012).

## IV.    FRAUDULENT TRANSFER – ALL DEFENDANTS (TRIED TO THE COURT)

Colorado statute recognizes a claim for relief available to a creditor against a debtor who transfers assets to hinder, delay, or defraud a creditor.  C.R.S. § 38-8-101 *et seq.* ("Colorado Uniform Fraudulent Transfer Act").  The Colorado Uniform Fraudulent Transfer Act provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(I) Was engaged or was about to engage in a business transaction
for which the remaining assets of the debtor were unreasonably
small in relation to the business or transaction; or

(II) Intended to incur, or believed or reasonably should have
believed that he would incur, debts beyond his ability to pay as
they became due.

(2) In determining the actual intent under paragraph (a) of subsection (1)
of this section, consideration may be given, among other factors, to
whether:

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property
transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

\*\*\*

(e) The transfer was of substantially all the debtor's assets;

\*\*\*

(g) The debtor removed or concealed assets;

\*\*\*

(i) The debtor was insolvent or became insolvent shortly after the
transfer was made or the obligation was incurred

\*\*\*

(k) The debtor transferred the essential assets of the business to a
lienor who transferred the assets to an insider of the debtor.

COLO. REV. STAT. § 38-8-105.

The Colorado Uniform Fraudulent Transfer Act provides remedies available to

creditors when the debtor fraudulently transfers assets:

(1) In an action for relief against a transfer or obligation under the article, a
creditor, subject to the limitations in section 38-8-109, may obtain:

(a) Avoidance of the transfer or obligation to the extent necessary to
satisfy the creditor's claim;

(b) An attachment or other provisional remedy against the asset
transferred or other property of the transferee in accordance with
the procedure prescribed by the Colorado rules of civil procedure;

\*\*\*

(2) If a creditor has obtained a judgment on a claim against the debtor, the
creditor, if the court so orders, may levy execution on the asset
transferred or its proceeds.

COLO. REV. STAT. § 38-8-108.

Transferees of fraudulent conveyances are subject to the remedies provided by the Act, and are appropriate parties defendant in fraudulent transfer actions.  C.R.S. § 38-8-109(2) ("The judgment may be entered against ... [t]he first transferee of the asset or the person for whose benefit the transfer was made; or ... [a]ny subsequent transferee other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee....").

Plaintiff qualifies as a "creditor" of Defendants BMGI, Inc. and Silverstein under the Colorado Uniform Fraudulent Transfer Act as of the date she had a claim against either Defendant.[1]  Walk-In Medical Centers, Inc. v. Breuer Cap. Corp., 778 F. Supp. 1116, 1124 (D. Colo. 1991) ("As a matter of law, a party has creditor status before the cause of action is reduced to judgment") (citing Pierce v. U.S., 255 U.S. 398 (1921)).  As a creditor of Defendants BMGI, Inc. and Silverstein, Plaintiff has grounds to assert that the Defendants fraudulently transferred assets with the actual intent to hinder, delay, or defraud Plaintiff.   The Colorado Uniform Fraudulent Transfer Act contemplates claims against each of these entities, as well as Defendant Silverstein, as transferors, transferees, and secondary transferees.

**A.   Defendant Silverstein, Personally, Was Both a Transferee and Transferor of Assets.  Aside from Orchestrating the Fraudulent Transfers, he Acted as a Vessel to Fraudulently Transmit Assets To and From his Affiliated Entities.**

Silverstein was a fraudulent transferee and transferor of assets.   By taking $2,250,000 from BGMI, Inc., distributing it to himself personally, then transferring the

---

[1] The Court has already ruled that Plaintiff was a creditor pursuant to the fraudulent transfer statute.  Doc 59, p. 21, n. 12.

money to DSI, Inc., which then used that money to buy one of BMGI, Inc.s' loans, foreclose on the loan, and sell to BMGI Corp. (while Silverstein was the sole shareholder and director of each transferee and transferor entity), Silverstein exposed himself to personal liability under the Fraudulent Transfer Act.  Silverstein orchestrated this fraud.  Apart from aiding and abetting the fraud, he used himself as a transferee and transferor.

### B.    Defendant Silverstein is Personally Liable for a Fraudulent Transfer to the Extent he Coordinated a Collusive Foreclosure.

Colorado recognizes collusive foreclosures as fraudulent transfers under the Colorado Uniform Fraudulent Transfer Act.  Megabank Fin. Corp. v. Alpha Gamma Rho Fraternity, 841 P.2d 318, 320 (Colo. Ct. App. 1992).  To the extent that Defendants Silverstein and BMGI, Inc. colluded to permit DSI to foreclose their interests in BMGI, Inc. to "wipe out" Plaintiff's collateralized interest in BMGI, Inc.'s stock, Silverstein and BMGI, Inc. may be held liable under the Colorado Uniform Fraudulent Transfer Act. Megabank, 841 P.2d at 319-20.

Silverstein orchestrated a collusive foreclosure between each of his closely held entities:  BMGI, Inc., DSI, Inc., and BMGI, Corp.  Collusive foreclosures are recognized as fraudulent transfers.  Defendant Silverstein may be held personally liable for his conduct.  The Defendants' Motion to Dismiss must be denied.

### C.    The Fraudulent Transfer was Executed for Less than Equivalent Value.

The second type of fraudulent transfer recognized in Colorado occurs when a transfer is done without receiving a reasonably equivalent value in exchange for the

transfer or obligation.  C.R.S. § 38-8-108.

BMGI Corp purchased BMGI, Inc.'s assets from DSI for $5,700,000.  According to the Defendants' experts, BMGI, Inc. was worth $9,445,000 as of the date of the transfer.  Whether BMGI Corp's acquisition of BMGI, Inc.'s assets for 60% of their value constitutes a fraudulent transfer is a question of fact.  Schempp v. Lucre Mgmt. Group, LLC, 18 P.3d 762, 765 (Colo. Ct. App. 2000).

> **D.    The Court May Award Monetary Damages Against the Defendants Pursuant to the Court's Equitable Powers which Supplement the Enumerated Statutory Remedies.**

While the statute codifies certain available remedies under the Colorado Uniform Fraudulent Transfer Act, the Court may impose remedies separate from those enumerated in the Act.  Double Oak Constr. LLC v. Cornerstone Dev. Int'l, LLC, 97 P.3d 140, 148 (Colo. Ct. App. 2003) ("The remedies in §§ 38-8-108 and 38-8-109(2) do not limit other remedies available at law."); New Crawford Valley, Ltd. v. Benedict, 877 P.2d 1363, 1369 (Colo. Ct. App. 1993) (reasoning that there are "special circumstances in which a court's equity powers permit it to hold a fraudulent transferee personally liable for damages resulting from the conveyance").  Indeed, Colorado courts have specifically rejected "the notion that remedies available to a victim of a fraudulent conveyance are limited to those expressed in statute."   Double Oak Constr., 97 P.3d at 146-47 (reasoning that if "a combination of persons acts to increase a creditor's damages in hopes that the frustrated creditor will weigh the expense of the chase and go away. In these instances, equitable relief will not make the creditor whole.").

Further, Colorado and other jurisdictions contemplate and permit monetary

damages arising from a fraudulent transfer action.  New Crawford Valley, 877 P.2d at 1369-70 ("If a money judgment...will accomplish the desired result, it will be imposed in favor of the judgment creditor.") (citing Epcon Co. v. Bar B Que Baron Int'l, Inc., 512 P.2d 646, 648 (Colo. Ct. App. 1973); see also Sullivan v. Kodsi, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) ("New York law permits *money damages* to be recovered against parties who participate in the fraudulent transfer *and* are either transferees of the assets or beneficiaries of the conveyance.") (emphasis in original); cf. Neshewat v. Salem, 365 F. Supp. 2d 508, 521-22 (S.D.N.Y. 2005) ("[W]here the assets fraudulently transferred no longer exist or are no longer in possession of the transferee, a money judgment may be entered in an amount up to the value of the fraudulently transferred assets.").

Special circumstances exist here warranting imposition of monetary damages against the Defendants.

## V.   BREACH OF FIDUCIARY DUTY – DAVID SILVERSTEIN

While creditors may not typically assert breach of fiduciary duty claims against corporate directors, "a corporation's insolvency alters the dynamics among the corporation, its directors, and its creditors.  Directors of an insolvent corporation are deemed to be trustees for the corporation and for its creditors, and therefore, they owe a duty to creditors not to divest corporate property for personal benefit, to prefer themselves over creditors, or to defeat a corporate creditor's claim.  Paratransit Risk Retention Group Ins. Co. v. Kamins, 160 P.3d 307, 319-20 (Colo. Ct. App. 2007) (citing Rosebud Corp. v. Boggio, 561 P.2d 367 (Colo. Ct. App. 1977) and Crowley v. Green, 365 P.2d 230 (Colo. 1961)).

Corporate officers and directors of an insolvent corporation owe a fiduciary duty to creditors not to favor their interests over creditors' claims. Alexander v. Anstine, 152 P.3d 497, 503 (Colo. 2010).  This fiduciary duty applies as a matter of long-standing Colorado common law, notwithstanding C.R.S. § 7-108-401(5).  Colborne Corp. v. Weinstein, 09CA0724, 2010 WL 185416 (Colo. Ct. App. 2010) cert. granted 2010 WL 3213046 (granting certiorari as to "whether the court of appeals erred in extending the limited common law fiduciary duty which directors of insolvent corporations owe to an insolvent corporation's creditors to managers of LLCs").  While the Court in Alexander declined to address whether C.R.S. § 7-108-401(5) applies where a corporation is insolvent, Alexander, 152 P.3d at 502 n9, the Court answered its own question in its certiorari grant in Colborne, accepting the petition to analyze whether the fiduciary duty owed by officers of an insolvent corporation can be extended to managers of an insolvent LLC.  See 2010 WL 3213046.

Moreover, "[t]he duty owed in such circumstances requires that the directors not transfer corporate property for their own benefit and, thus, defeat a creditor's claim. And, if a director breaches this duty, he or she is personally liable to the creditor for such malfeasance."  New Crawford Valley, Ltd. v. Benedict, 877 P.2d 1363, 1369 (Colo. Ct. App. 1993).

"Insolvent" is defined by Colorado statute as when the debts of the debtor exceed the fair value of the debtor's assets. C.R.S. § 38-8-103(1).  Further, a debtor who is generally not paying his debts as they become due is presumed to be insolvent. C.R.S. § 38-8-103(2).

Plaintiff has standing to assert a claim against Defendant Silverstein for breach of a fiduciary duty owed to Plaintiff if BMGI, Inc. was insolvent <u>or</u>, as a result of distributions made by BMGI, Inc., "*it would become insolvent*." <u>Paratransit Risk</u>, 160 P.3d at 320 (emphasis added). Colorado Courts have expressly found that this fiduciary duty specifically requires that Defendant Silverstein not "make payments ... to another corporation in which defendants were the sole shareholders ... to defeat the claims of plaintiff.... <u>New Crawford Valley</u>, 877 P.2d at 1369.

Plaintiff will present evidence at trial that BMGI, Inc. was rendered insolvent, that Plaintiff was treated as, and was, a creditor of BMGI, Inc., and that Silverstein took action in violation of his fiduciary duty to the Plaintiff when he executed the corporate scheme that eliminated Plaintiff's collateral interest in valuable stock.

## A.   <u>Plaintiff's Cause of Action is Direct, Not Derivative</u>

During the jury instruction conferences, Defendants raised for the first time the question of whether a breach of fiduciary duty claim is a derivative claim owned by the corporation, or a direct claim owned by the creditor. Colorado case law is abundantly clear that a breach of fiduciary duty claim is a ***direct*** right of action by a corporation's creditors against a director or officer of an insolvent corporation. <u>Alexander v. Anstine</u>, 152 P.3d 497, 501-02 (Colo. 2007) (reasoning that "[u]nder Colorado law, directors and officers owe both statutory and common law duties to the corporation's creditors" and examining the <u>derivative nature of a statutory claim</u> against the <u>direct nature of a common law claim</u>).

1.    <u>Plaintiff's Claim is a Direct Claim for Breach of Fiduciary Duty Arising from BMGI, Inc.'s Insolvency</u>.

The common law fiduciary duty owed to creditors by directors and officers of an insolvent corporation was first articulated as follows:

> [W]here the corporation is insolvent or has reached such condition that its directors or officers see that they must deal with its assets in view of its probable suspension, they cannot use those assets to prefer themselves as creditors in respect of preexisting debts to the prejudice of other general creditors.  The principle underlying the rule denying a preference is that the directors or managing agents of an insolvent corporation are trustees for the creditors, as well as for the corporation, and will not be allowed to use the trust property for their own benefit to the disadvantage of other creditors, nor will they be allowed to use their position, with the superior knowledge or opportunity of acquiring information which it affords, to secure an advantage for themselves over other creditors.

<u>Crowley v. Green</u>, 365 P.2d 230, 232 (Colo. 1961) (citing <u>Fishel v. Goddard</u>, 69 P. 607 (Colo. 1902).  This common law duty evolved in the following decades, adding nuances to the fiduciary duty owed by directors or officers of insolvent corporations.  <u>Collie v. Becknell</u>, 762 P.2d 727, 731 (Colo. Ct. App. 1988) (reasoning that the fiduciary duty owed by a director to creditors of an insolvent corporation is to "not divest corporate property for their own benefit and thus defeat a corporate creditor's claim" and that a "if a director breaches this duty, corporate creditors may sue the director and hold him personally liable for his malfeasance."); <u>New Crawford Valley, Ltd. v. Benedict</u>, 877 P.2d 1363, 1369 (Colo. Ct. App. 1993) (incorporating the prior rule and adding that the fiduciary duty is not unlimited, but includes a duty not to cause "a corporate debtor to make payments due to the corporation to another corporation in which the directors and officers were the sole shareholders").

The Defendants' contention that Plaintiff's breach of fiduciary duty claim is

derivative is defeated by the Colorado Supreme Court's extensive analysis in <u>Alexander v. Anstine</u>, 152 P.3d 497, 500 (Colo. 2007).  There, the Court analyzed the distinction between the derivative statutory duty owed by a director or officer not to make distributions to shareholders that otherwise precludes payment of debts to creditors, against the direct common law duty owed by a director or officer of an *insolvent* corporation to avoid favoring their own interests over a creditor's claims.  <u>Alexander</u>, 152 P.3d at 501-02.  Specifically:

> Under the common law, when a corporation becomes insolvent, a duty arises in its directors and officers to the corporation's creditors....The trustee role with regard to creditors does not encompass the full set of fiduciary duties owed by directors and officers to shareholders of a solvent corporation.  Rather, it is a limited duty that requires officers and directors to avoid favoring their own interests over creditors' claims.

<u>Id.</u> at 502.  The Court then enumerates many of the limited fiduciary duties owed by officers and directors of an insolvent corporation:

- To not favor themselves over other creditors to the prejudice of those creditors

- To not transfer corporate property for their own benefit

- To not divest corporate property for their own benefit to defeat a creditor's claims

<u>Id.</u> at 503 (citing <u>Crowley</u>, 365 P.2d at 232-33; <u>New Crawford Valley</u>, 877 P.2d at 1368-69; <u>Collie</u>, 762 P.2d at 731).

<u>Paratransit Risk</u> adds another layer to the limited fiduciary duty analysis, clarifying that insolvency is the touchstone of the claim and adding that a director or officer of a corporation not only has a limited fiduciary duty to creditors if the corporation is insolvent, but also if it *would become insolvent* as a result of distributions.  <u>Paratransit Risk Retention Group Ins. Co. v. Kamins</u>, 160 P.3d 307, 320 (Colo. Ct. App. 2007); <u>see</u>

also Sheffield Servs. Co. v. Trowbridge, 211 P.3d 714, 723 (Colo. Ct. App. 2009) (extending the fiduciary duty to managers of an insolvent LLC); Colborne Corp. v. Weinstein, 2010 WL 185416 (Colo. Ct. App. 2010).  All of these Colorado cases stand for the proposition that Plaintiff's fiduciary duty claim is a direct, not derivative claim.

2.      The Defendants' Arguments and Jury Instructions Relate to the Derivative Statutory Claim, which is not part of Plaintiff's Case.

Ficor, Inc. v. McHugh, 639 P.2d 385 (Colo. 1982) is inapplicable to this action.  In Ficor, the Court analyzed exclusively the statutory duty owed by a director or officer of a dissolved corporation to creditors of the corporation under the corporations code, C.R.S. § 7-8-105.  Ficor, 639 P.2d at 390, 392-93.  There, the Court found that, in the context of corporate dissolution, a creditor may make a claim against a director or officer of the dissolved corporation if the director or officer made a distribution upon dissolution that could have been used to satisfy the creditor's claim.  Id. at 393.  However, since the claim depends upon an equitable distribution towards all outstanding creditors, the rule only applies if all the creditors make the claim as a group, or the creditor is the only creditor, thus eliminating the fairness considerations associated with multiple creditors not being satisfied if one creditor is paid.  Id.  In this regard, the creditor obtains the derivative rights of a shareholder under C.R.S. § 7-8-105 to prosecute a claim for an inappropriate distribution.  Ficor is inapplicable here.

Indeed, the Colorado Supreme Court has substantially limited the scope of Ficor's holding, stating "our reasoning in Ficor is not broad enough to reach claims brought **outside of that statutory realm**.  Ficor extended a specific statutory right of

the corporation to creditors when their claims are precluded by improper distributions to shareholders.  This case did not confer general standing on creditors to bring claims belonging to the insolvent corporation."   Alexander v. Anstine, 152 P.3d at 502 (emphasis added).  The Alexander Court then continued its analysis into whether the separate, distinct direct common law fiduciary duty claim had been properly plead by the creditor, since the derivative statutory claim was inapplicable.  Id.

Paratransit Risk further clarifies the distinction between the derivative statutory claim against a director or officer of a corporation and the direct common law fiduciary duty claim.  Paratransit Risk Retention Group Ins. Co. v. Kamins, 160 P.3d 307 (Colo. Ct. App. 2007).  There, the Court analyzes the Plaintiff's two distinct claims, one under statute the other under common law.  Citing Ficor, the Court in Paratransit Risk sets out the two standards under the *statutory duty* that the Defendants seek to apply to Plaintiff's *common law duty* claim: that the statutory duty claim under C.R.S. § 7-108-403 is derivative and may only be asserted if the creditor is the only creditor of the corporation.  Paratransit Risk, 160 P.3d at 314.  In its examination, the Court makes clear what the Colorado Supreme Court enunciated two days previously in Alexander, that Ficor is limited exclusively to the statutory duty analysis.  Id.  Colorado law is clear that Plaintiff's fiduciary duty claim is not derivative in nature and does not require a showing that Plaintiff is the only creditor of BMGI, Inc.

**B.     Plaintiff is a Creditor of BMGI, Inc. and therefore Owed a Fiduciary Duty.**

A "creditor" is defined by the Colorado Uniform Fraudulent Transfer Act simply as "a person who has a claim."  C.R.S. § 38-8-102(5).  As this Court noted in its denial of

the Defendants' Motions to Dismiss:

> Plaintiff's status as a creditor holds true even though she has not yet obtained a judgment against either BMGI or Silverstein. "As a matter of law, a party has creditor status before the cause of action is reduced to judgment." *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 778 F. Supp. 1116, 1122 (D. Colo. 1991) (citing *Pierce v. United States*, 255 U.S. 398 (1921)). "[T]he right to follow the distributed assets applies not only to those who are creditors in the commercial sense, but to all who hold unsatisfied claims. A corporation cannot by divesting itself of all property leave remediless the holder of a contingent claim, or the obligee of an executory contract or the holder of a claim in tort[.]" *Pierce*, 255 U.S. at 403 (internal citations omitted).

Doc. 59, p. 21, n. 12.

Plaintiff held a security interest in BMGI, Inc.'s stock.  Plaintiff has asserted a claim against the Defendants for eradicating the value of Plaintiff's collateral interest in BMGI, Inc.'s stock, and, as it relates to her fraud claims, Plaintiff has asserted that BMGI, Inc. participated in fraudulently transferring the assets of BMGI, Inc. to BMGI, Corp through DSI.  It is plain, and has previously been addressed by the Court, that Plaintiff has a "claim" against the Defendants, and is therefore a creditor of the Defendants.  Plaintiff has standing to assert her fraudulent transfer claims as a "creditor."

## VI.   AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – ALL DEFENDANTS (EXCEPT DAVID SILVERSTEIN)

Colorado law recognizes a distinct cause of action arising from aiding and abetting another's breach of a fiduciary duty.  See Holmes v. Young, 885 P.2d 305, 309 (Colo. Ct. App. 1994); Nelson v. Elway, 971 P.2d 245, 249 (Colo. Ct. App. 1999).  While similar in nature, "[a] claim of aiding and abetting a breach of fiduciary duty is not identical to a claim of civil conspiracy."  Elway, 971 P.2d at 249.  "The elements of the

tort of aiding and abetting a breach of fiduciary duty include: (1) breach by a fiduciary of a duty owed to a plaintiff; (2) a defendant's knowing participation in the breach, and (3) damages." Id. It is not necessary to allege wrongful intent to establish a claim for aiding and abetting a breach of fiduciary duty, distinguishing this cause of action from a claim for civil conspiracy. Id. at 250 (citing Holmes v. Young, 885 P.2d 305, 309 (Colo. Ct. App. 1999) ("[W]rongful intent is not necessary as the factfinder is required only to find that the [defendant] knew of the breach of duty and participated in it."); see also MS55, Inc. v. Gibson Dunn & Crutcher, 2008 WL 23558699 (D. Colo. 2008) (upholding claim against corporate lawyers for aiding and abetting breach of fiduciary duty by corporation's president) (citing Alexander v. Anstine, 152 P.3d 497, 501-03 (Colo. 2007) and Sender v. Mann, 423 F. Supp. 2d 1155, 1173-74 (D. Colo. 2006)).

The Plaintiff will show that Defendants Evergreen, DSI, and Silverstein Investments, together with BMGI Corp. and BMGI Holdings, LLC acted in concert to transfer the assets of BMGI, Inc. to BMGI Corp. and BMGI Holdings, LLC. The Defendants' intention is irrelevant to the fact that each entity worked with, aided, and abetted Defendant Silverstein in breaching his fiduciary duty to Plaintiff by cooperating with his scheme to transfer corporate property for his own benefit to defeat Plaintiff's claim, or in making payments to another corporation in which Defendant Silverstein was a sole shareholder to defeat Plaintiff's claims.

## VII.   CONSPIRACY – ALL DEFENDANTS

Plaintiff must prove, by a preponderance of the evidence, the following elements to prevail on her claim that the defendants engaged in a conspiracy: (1) The defendants

agreed, by words or conduct, to accomplish an unlawful goal or accomplish a goal through unlawful means; (2) One or more acts were performed to accomplish the unlawful goal or accomplish a goal through unlawful means; (3) The plaintiff had damages or losses; and (4) The plaintiff's damages or losses were caused by the acts performed to accomplish the goal.  CJI:Civ. 27:1 (CLE ed. 2012)

What constitutes an "unlawful goal" is a question of law for the Court, and no Colorado decision provides a comprehensive definition of "unlawful goal."  CJI:Civ. 27:3 (Notes on Use, ¶ 2; Source and Authority).

Plaintiff submits that an unlawful goal means any goal whose outcome would defeat a legitimate claim or interest held by Plaintiff under the Stock Purchase Agreement and Promissory Note.  Any legal wrong will support a conspiracy claim. Double Oak Const., L.L.C. v. Cornerstone Development Intern., L.L.C., 97 P.3d 140, 146-47 (Colo. Ct. App. 2003) (citing McElhanon v. Hing, 728 P.2d 256 (Ariz. Ct. App. 1985)(a legal wrong will support a conspiracy claim).  A claim for conspiracy to commit a fraudulent conveyance is actionable in Colorado.  Double Oak Const., 97 P.3d at 147 ("CUFTA changes the common law rule, and we conclude that a transfer in violation of CUFTA is a legal wrong which will support a conspiracy claim.").  This rule applies even when the defendant accomplished the unlawful goal through perfectly legitimate, legal actions.  Magin v. DVCO Fuel Systems, Inc. 981 P.2d 673, 675 (Colo. Ct. App. 1999).

Colorado recognizes a cognizable action for conspiracy to defraud.  Magin, 981 P.2d at 675 (citing Schreiber v. Burton, 256 P. 1 (Colo. 1927), where an action for conspiracy to defraud was held to "exist where defendants depleted company assets

prior to bankruptcy with intent to procure the company's contracts and good will for their own benefit to the harm of the corporation and its creditors.  There, the defendants transferred contracts, prevented potential asset purchases, damaged the company's good will, and used company assets for their own benefit before the company filed for bankruptcy.").  Magin and Schreiber are both controlling and instructive.  There, the Court held that conspiracy to accomplish an unlawful goal was found when "(1) Marcum entered negotiations to purchase or merge with Shoreline; (2) Marcum later purchased Shoreline's assets at the bankruptcy sale for substantially less than market value; (3) Marcum hired the Tills and other Shoreline employees; (4) Marcum acquired many profitable contracts with Shoreline's former clients shortly after the bankruptcy was filed; and (5) several of these contracts that were originally between Shoreline and its customers were renegotiated on terms favorable to Marcum."  Magin, 981 P.2d at 675. The facts supporting the claim for relief in Magin closely resemble Plaintiff's allegations against Defendant Silverstein and his network of closely held entities.

## VIII.   JOINT AND SEVERAL LIABILITY AMONG THE DEFENDANTS

Similar to the Colorado Uniform Fraudulent Transfer Act, Colorado has enacted a statute prescribing conspiratorial acts.  C.R.S. § 13-21-111.5(4).  "Joint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act."  C.R.S. § 13-21-111.5(4).  If two or more persons expressly or impliedly agree on a course of conduct they are jointly liable for any damages flowing from that conduct.  See Resolution Trust Corp. v. Heiserman, 898 P.2d 1049, 1054-55 (Colo. 1995).  Pursuant to C.R.S. § 13-21-111.5(4), "[j]oint

liability shall be imposed on two or more defendants" under much broader circumstances than simply where the defendants engage in an "active" conspiracy. The Heiserman Court found that two or more tortfeasors are jointly liable for their conduct when there exists an express or implied plan or design to act or refrain from acting that results in injury to another. Heiserman, 898 P.2d at 1054-55. There, the Court reasoned:

> The proper question is ... whether when two or more persons consciously conspire and deliberately pursue a common plan or design, the execution of such common plan or design results in wrongful conduct causing injury or damages. Such conduct would constitute a "tortious act" for purposes of section 13-21-111.5(4).
>
> ***
>
> As we have indicated, the term "tortious act" has a broad definition that encompasses any wrongful conduct.... [W]e conclude that the General Assembly intended the term to have its full meaning, and that therefore both negligent and intentional acts are sufficient to give rise to joint liability for purposes of section 13-21-111.5(4).
>
> ***
>
> The defendants assert that to be subject to joint liability the actors must knowingly agree to engage in conduct that is known at the time of the agreement to be tortious. We do not agree. *__While there must be a conscious and deliberate decision to pursue a common plan or design, the actors need not have a 'specific intent' to commit a tortious act to be subject to joint liability under section 13-21-111.5(4).__*

Id. at 1054-55 (emphasis added).

Liability under section 13-21-111.5(4) is thus a separate and distinct cause of action from a claim for common law civil conspiracy, even though the claims for relief both relate to a plan or design between multiple parties. See id. Statutory liability does not require that the parties intend to commit an unlawful overt act, as is required by civil conspiracy. Rather, the defendants may be held jointly and severally liable if their

actions or conduct cause damage to the Plaintiff, regardless of whether that damage was known or intended. Id.

The plaintiff has alleged that one or more of Defendants David Silverstein, Evergreen Industries formerly known as Breakthrough Management Group International, Inc. or BMGI, Inc., David Silverstein Investments, LLC, DSI Investments, LLC, BMGI Corporation, and BMGI Holdings, LLC acted "in concert" with one or more of each other to pursue a common plan or design, which common plan or design resulted in a wrongful act.   The Verdict Forms tendered by Plaintiff include a special interrogatory concerning action in concert, properly submitting to the jury the question of whether the various defendants acted in concert and are therefore jointly liable for their actions.

## IX.   DAMAGES

A defendant may not simply "undo" a fraud or breach and escape liability for his actions.  "It is axiomatic that one may not undo a fraud by subsequent acts." Southern Life and Health Ins. Co. v. Turner, 571 So.2d 1015, 1020 (Ala. 1990) (citing National States Ins. Co. v. Jones, 393 So.2d 1361, 1367 (Ala.1980)).  "Once the fraud is perpetrated, a cause of action has accrued and the rescission of the contract does not cause the plaintiff to forfeit his cause of action in tort." National States Ins. Co., 393 So.2d at 1367-68 (citing Old Southern Life Insurance Co. v. Woodall, 348 So.2d 1377 (Ala.1977) and Pihakis v. Cottrell, 243 So.2d 685 (Ala. 1971).

The Defendants do not have the option to undo the fraud to escape liability. U.S. v. Radziszewski, 474 F.3d 480, 485 (7th Cir. 2007).  The Defendants are not allowed to

select Plaintiff's remedy for her by contending that they have cured their fraud and that she is in the same or better position as before they committed the fraud. Altergott v. Yeager, 543 P.2d 1293, 1297-98 (Colo. Ct. App. 1975) ('[T]he choice of remedies belongs to the one who has been defrauded, and may not be forced upon him by the wrongdoer."); Rogers v. Crest Motors, Inc., 516 P.2d 445, 447 (Colo. Ct. App. 1973) ("However, the choice of remedy belongs to the one who has been defrauded, and the wrongdoer cannot force a choice upon the plaintiff."); Johnson v. Overnight Trucking, Inc., 2005 WL 1719738 (D. Colo. 2005) (same).

Moreover, that a Defendant may have intended to return the benefit fraudulently conferred, or may have had some beneficial interest in mind while committing the wrong, is no defense to the wrong committed. U.S. v. Lillie, 669 F.Supp.2d 903, 907-08 (N.D.Ill. 2009) ("[W]here a defendant has obtained funds by making false statements, the district court may exercise its discretion to exclude evidence of the defendant's intent to repay his victims or make them whole.") (citing United States v. Stafford, 136 F.3d 1109, 1112 (7th Cir.1998) (finding no error in exclusion of defendant's good faith defense that they intended to obtain loans for victims with money fraudulently obtained from those victims) and United States v. Masquelier, 210 F.3d 756, 759 (7th Cir. 2000) (excluding evidence of the defendant's good intentions since "fraud is complete when the defendant obtains money by false pretenses"). "Similarly, where a defendant intentionally exposes another to an increased risk of loss of which that person is unaware, the defendant's hope that the risk will never materialize is irrelevant to the question of intent to defraud." U.S. v. Lillie, 669 F.Supp.2d at 908.

Plaintiff is entitled to damages from the Defendants as necessary to make her whole or obtain the benefit of the bargain.  See Black v. First Federal Sav. and Loan Ass'n of Fargo, 830 P.2d 1103 (Colo. Ct. App. 1992) (the appropriate measure of damages when fraud is committed as the result of a contract is "typically the difference between the actual value of the property at the time of purchase and its value at the time of the damage award had the misrepresentation been true") (citing Colorado Performance Corp. v. Mariposa Associates, 754 P.2d 401 (Colo. Ct. App.1987)); Ballow v. PHICO Ins. Co., 878 P.2d 672 (Colo. 1994) (finding the measure of damages in both contract actions and tort actions for fraud involving a contract between parties is the "benefit of the bargain rule," designed to give the plaintiff her expectation interest for loss of the bargain); Western Cities Broadcasting, Inc. v. Schueller, 830 P.2d 1074 (Colo. Ct. App.1991) (finding that damages for loss of "benefit of bargain" are measured by difference between value of benefits actually received under contract and value those benefits would have had if false representations had been true); accord Hansen v. Halliburton, 326 S.W.3d 478, 482 (Mo. Ct. App. 2010) ("[A] victim of fraud has a choice, he can either rescind the transaction, tender return of any benefits he obtained by the transaction, and seek judicial aid to recover the benefits he conveyed, or he can adhere to the transaction, retaining whatever benefits inured to him, and seek to recover in damages the difference in value between what he actually received and what he would have received had there been no fraud.").  Notably, even the Defendants' post-fraud or post-breach return of the assets or collateral (which Plaintiff can prove has not occurred) does not absolve the Defendants of liability for consequential damages.  Van

<u>Hoof v. Van</u> Hoof, 997 So.2d 278, 297-98 (Ala. 2008) (awarding damages, even on funds returned to an IRA account, for the time value of the money paid in premiums, lost opportunity, and out-of-pocket expenses).

The Defendants repeatedly contend that the current value of BMGI Corp's stock redresses whatever damage she may have incurred by the Defendants' express and implied breach of contract or fraudulent activities.   Such defense is invalid as an operation of law.   The Defendants' cannot undo their wrongful conduct and impose a remedy upon Plaintiff.

_____
Thomas L. DeVine, Jr., Esq.
Sweetbaum Sands Anderson, P.C.
1125 Seventeenth Street, Suite 2100
Denver, CO 80202
tdevine@SweetbaumSands.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2012, a true and correct copy of the foregoing **PLAINTIFF'S TRIAL BRIEF** was served electronically, to:

Timothy R. Beyer
Amy L. Benson
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202


*s/Thomas L. DeVine, Jr.*
_____
Thomas L. DeVine, Jr.