**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:09-cv-2858-RBJ-BNB

ILONA KIRZHNER,

    Plaintiff,

v.

DAVID SILVERSTEIN, an Individual,
EVERGREEN INDUSTRIES, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP INTERNATIONAL, INC., f/k/a BREAKTHROUGH MANAGEMENT GROUP, INC., a Colorado corporation,
DAVID SILVERSTEIN INVESTMENTS, LLC, a Colorado limited liability company,
DSI INVESTMENTS, LLC, a Colorado limited liability company,
BMGI CORPORATION, a Delaware corporation, and
BMGI HOLDINGS, LLC, a Delaware limited liability company

    Defendants.

_____

**RESPONSE TO MOTION TO ENFORCE SETTLEMENT, OR IN THE ALTERNATIVE, TO SET CASE FOR TRIAL AND COUNTERMOTION TO ENFORCE SETTLEMENT**
_____

Plaintiff Ilona Kirzhner, by and through her attorney, Thomas L. DeVine, Jr., Esq., hereby submits her Response to Motion to Enforce Settlement or In the Alternative, to Set Case for Trial and Countermotion to Enforce Settlement:

**Response to Certificate of Conferral**

Undersigned counsel has been diligently, and indeed desperately, working to try to reach a settlement of this matter. These attempts continued through the afternoon of June 19, and continue even still. The Defendants filed the Motion to Enforce following (1) a phone call wherein Defendants' counsel *hung up the phone* during the discussion

of Plaintiffs second of three points of discussion; and (2) after an email <u>imploring</u> counsel to wait to file the Motion to Enforce until considering additional points on which the Plaintiff was making major compromises in continued attempts to reach an agreement. There was a fundamental failure to confer by the Defendants in advance of filing the Motion.

## **RESPONSE AND COUNTERMOTION TO ENFORCE SETTLEMENT**

The Defendants identify five areas of contention regarding the settlement agreement prepared by Defendants' counsel. In reality, there are three disputed items – the other two either having been in the process of substantive compromise and negotiation when the Motion was filed, or being raised for the first time in the Motion and representing a failure to confer prior to filing the Motion to Enforce. The three areas of actual contention relate to (1) the personal liability of David Silverstein for non-monetary obligations specifically identified in the Term Sheet; (2) non-standard restrictions on Plaintiff's collateral interest in BMGI stock owned by David Silverstein and securing the settlement agreement that are not set forth in the Term Sheet; and (3) whether affiliates of BMGI are obligors as set forth in the Term Sheet.

Each of these issues is plainly and unambiguously covered in the Term Sheet, and this Motion is before the Court notwithstanding the Plaintiff's repeated attempts to make material deviations from the Term Sheet in favor of the Defendants to achieve a settlement. The Plaintiff asks the Court to merely enforce the plain language and meaning of the Term Sheet. A new trial date is not warranted.

### A.     Personal Liability of David Silverstein for Non-Monetary Obligations

The Term Sheet, Exhibit A to Defendants' Motion, contains the following terms:

> "Silverstein is not personally liable for these payments, but if he is unable to make such payments he is precluded from paying any compensation from BMGI (which is to be construed as including distributions and repayment of debt obligations) to himself more than $500,000 (plus amounts distributed by BMGI for payment of taxes)."

**Exhibit A**, ¶ 5.B.2.

> "Silverstein will cause BMGI, and BMGI agrees, to provide to Kirzhner any audited financial statements or reviews for the consolidated company... In the interest of full transparency, Silverstein will produce any other financial information concerning BMGI or any successor or related entity on Kirzhner's request."

**Exhibit A**, ¶ 5.B.3.

> "Silverstein has a duty to disclose any changes in BMGI stock ownership, in addition to the other disclosure obligations contained herein."

**Exhibit A**, ¶ 6.

> "Silverstein may not transfer his stock to avoid liability or otherwise dilute Kirzhner's interest."

**Exhibit A**, ¶ 6.

> ***Except as provided herein***, there will be no personal liability to Silverstein for any of the payments described herein or any default of any express or implied term of the settlement agreement, stock purchase agreement, or Note.[1]

**Exhibit A**, ¶ 6 (emphasis added).

In response to those limited personal and non-financial obligations of Silverstein,

Defendants circulated, *and will not negotiate* the following language:

---

[1] The Defendants contend that the phrase "except as contained *herein*" means "except as contained in this paragraph 6." This reading is illogical and inconsistent with the language of the paragraph, which also references "payments

3

> 8.  **Covenant Not To Sue.**  Kirzhner will have no right, under any circumstances, to bring any action or proceeding against Silverstein arising out of this Note, the Stock Purchase Agreement (or note under that agreement) or the Settlement Agreement, including but not limited to for any payment default, **with the exception of the limited right to sue only for those monies described in Section 7(A) under the limited conditions set forth in Section 7**.  Kirzhner hereby covenants not to sue or otherwise to bring any action or proceeding against Silverstein for any action whatsoever, whether in tort or contract, except as is expressly authorized against Silverstein in the prior sentence, provided that such covenant shall not preclude Kirzhner from naming Silverstein as a party in connection with any action specifically and exclusively for repossession of the Collateral.  It is expressly understood and acknowledged by the Parties that while Silverstein is undertaking certain limited obligations in the Note, he is not undertaking any personal liability with respect to payment of this Note other than the $90,000 owed under Section 2(B)(i).  Kirzhner's only other remedies for any action arising out of the Note are against BMGI, but only to the extent expressly set forth in this Note.  Without limiting the foregoing, Kirzhner expressly waives any argument that her waiver of the rights and remedies set forth in this Section would leave Kirzhner without a remedy.
>
> If any of the provisions in this Section are deemed to be unenforceable in whole or in part for any reason, then Kirzhner's sole remedy for any claim, whether in tort or in contract, shall be for (i) a declaration by the Court that a violation of the contract or tort law has occurred and (ii) Kirzhner, and her successors and assigns, expressly waive any right to receive any money damages, attorneys' fees or costs of suit, as well as all other remedies available at law or in equity, even if such waiver leaves her without a real remedy based on any circumstances that could conceivably occur in the future.

**Exhibit B**, ¶ 8 (emphasis in original).

The Settlement Agreement and Promissory Note ("New Note") drafted by Defendants' counsel include terms never discussed, negotiated, or agreed to. They are not standard "gap fillers" for commercial documents. Moreover, Plaintiff <u>agrees</u> that Silverstein is not personally liable for the financial obligations of the New Note except as specifically identified in the Term Sheet. However, Silverstein specifically agreed in the

---

described *herein*" when there are no payments described in paragraph 6, lending to the only reasonable interpretation of that language as including anything within the entire document, not within only paragraph 6.

Term Sheet that he was obligated for the non-financial obligations set forth above. Defendants ask this Court to find that the agreement was specifically drafted to provide that Plaintiff has no recourse of any kind for even a deliberate or *fraudulent* violation of the above obligations. Such a position would make the agreement illusory and contrary to the language and intent of the Term Sheet.

The Defendants will not consider or accept numerous of Plaintiff's suggested compromises on these provisions. See **Exhibit 3**, Redline version of Promissory Note, identifying rejected language and changes from the Plaintiff, and **Exhibit 4**, Redline version of Settlement Agreement, identifying rejected language and changes from the Plaintiff. Instead, Plaintiff's counsel are accused of being unreasonable and refusing to comply with the meaning, letter, and intent of the Term Sheet.[2]

### B.     Plaintiff's Collateral

The Term Sheet provides the following:

"Kirzhner will be granted a security interest in Silverstein's stock."

**Exhibit A**, ¶ 6.

The Defendants circulated, and with exception of minor and insignificant revisions, will not negotiate the following language:

> This Note is secured by stock in BMGI Corporation owned by Silverstein (the "Collateral") in an amount equal to 1% of the outstanding common stock of BMGI Corporation for each $100,000 outstanding on the note, rounded to the highest 1% (for example, if the amount outstanding is $3.67 million, then the collateral requirement is 37%). The initial collateralization requirement is 40% of the total issued shares of BMGI Corporation that are owned by Silverstein, which

---

[2] There are additional minor problems within the Defendants' drafted documents that were, or should, have been compromised by the parties that Plaintiff will not raise here. Indeed, Exhibit B does not appear to be the last exchanged draft of the settlement documents – First Capital Partners was removes as a releasee, for example.

> will subsequently be reduced by 1% for each $100,000 paid to Kirzhner under any of Sections 2A, 2B or 2C. For clarity, Silverstein will always own at least the number of shares comprising the percentage of BMGI required as Collateral under this section, regardless of the actual number of issued shares at the time including any stock splits, reverse stock splits, or other adjustments to the number of shares (this prevents any risk of dilution). Kirzhner is permitted to file a UCC-1 financing statement naming Silverstein as the "debtor" in such jurisdictions as Kirzhner deems appropriate in her sole discretion, but may not list BMGI in the financing statement in any place except in the description of the Collateral. Kirzhner will file an amended UCC-1 upon request reflecting any reduction in collateral resulting from payments, but such request shall not be made more than twice per year. Upon execution of this Agreement, Kirzhner will release the prior UCC-1 filed in accordance with the 2004 SPA and Note.

**Exhibit B**, ¶ 5.

These terms were not discussed during the settlement negotiations and were not incorporated into the Term Sheet. As above, these terms are not ordinary "gap fillers." They represent new and non-standard terms. For instance Kirzhner never agreed to a security interest of 40% of Silverstein's stock and to have the amount reduced as payments were made. Plaintiff agrees that certain 'gaps' in the Term Sheet need to be addressed, but Plaintiff should not be accused of trying to change the deal by trying to negotiate, remove, change, or amend the foregoing paragraph that does not reflect the provisions of the Term Sheet. Plaintiff also directs the Court to Exhibit B of Defendants' Motion to Enforce, paragraph 6.A., which contains non-standard foreclosure restrictions that are so exotic there can be no discussion that they are a reasonable gap-filler to complete the meaning and intent of the Term Sheet. <u>Again</u>, the Defendants refuse to negotiate on that non-standard language. Indeed, the Plaintiff simply requested language that she was entitled to foreclose on her collateral as permitted by the Uniform Commercial Code.

Moreover, the Plaintiff has repeatedly sought to compromise on this issue to reach an agreement that is fair to both parties. These attempts have been construed as an attempt to recast the deal, when the language presented by the Defendants (which Plaintiff seeks to negotiate) have nothing to do with the Term Sheet. This characterization is unfair.

## C.     DSI as an Obligor on the Note

DSI is a Defendant in this lawsuit and a releasee under the Term Sheet. DSI was created exclusively to conduct business as BMGI's lender, does not do business except with BMGI, and was created during the series of transactions that gave rise to this lawsuit. David Silverstein is the sole owner, member and manager of DSI.

The Term Sheet provides:

> BMGI, as used in this document includes any related or affiliated entities, will be an obligor on the New Note.

**Exhibit A**, ¶ 4.

As the Court is aware, this litigation followed a series of transactions between a network of closely held entities whereby the assets of BMGI, Inc. were transferred to BMGI Corp through a foreclosure sale held by DSI, which owned a lien in first position against the assets of BMGI, Inc. For reasons not standing scrutiny under the UCC or corporate law of either Colorado or Delaware, the foreclosure sale purportedly did not 'wipe out' DSI's security interest by way of foreclosure and satisfaction, and DSI continued in first secured position against the assets of BMGI Corp. That transaction did, however, wipe out Plaintiff's security interest in valuable stock of BMGI, Inc., and it took over two years of heated and expensive litigation to reach the Term Sheet on the

eve of trial in this matter.

As presently positioned by the Defendants' draft settlement documents – taking the position that DSI is not an obligor – there is nothing precluding Silverstein from using DSI to do the exact same thing, and again wipe out Kirzhner's collateral interest in BMGI Corp stock and simultaneously eliminate any value in BMGI Corp by using DSI to foreclose on its lien and transfer the assets to another closely held corporation owned by David Silverstein. This was not the deal arranged in the Term Sheet, because if DSI is an obligor as an "affiliate" of BMGI, DSI could not eliminate Kirzhner's rights and remedies in the same manner as before.

An "affiliate" is defined as "1. A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation. 2. *Securities*. One who controls, or is controlled by, or is under common control with an issuer of security." **Exhibit 1**, *Black's Law Dictionary*, Seventh Ed., 59 (1999).

An "affiliate" is defined in BMGI's own Loan Agreement with First Capital Partners as:

> "Affiliate" means any entity (of any type of legal form) (i) which directly or indirectly controls, or is controlled by, or is under common control with any Credit Party; (ii) which directly or indirectly beneficially owns or holds twenty (20%) or more of any class of stock of any Credit Party; or (iii) where fifty percent (50%) or more of such entity's voting interests is owned by any Credit Party or any officer, shareholder, or director of any Credit Party, or any spouse or any relative (by blood, adoption or marriage) within the third degree of consanguinity of such individual or in aggregate by one or more such officers, shareholders or directors.

**Exhibit 2**, pp. 1-2, Amended and Restated Loan Agreement.

The Defendants removed DSI from the definition of "Obligor" in Exhibit B. Under

8

any reasonable definition, DSI is an "affiliate" of BMGI.  There is no way to reconcile the Term Sheet's language of "related <u>or</u> affiliated entities" that includes all companies owned by BMGI that excludes entities under common ownership or control.  Again, Plaintiff is accused of manipulating the deal when the Defendants' position is contrary to the Term Sheet.  Moreover, Plaintiff is accused of being unreasonable notwithstanding Plaintiff's repeated, and continuing, attempts to compromise this issue to the satisfaction of both parties.  Since this matter is only relevant if Mr. Silverstein presently intends not to live up to his obligations, Plaintiff is highly concerned about Mr. Silverstein's refusal to make any compromise on this issue.

**D.     Loan Payments and Foreclosure Limitations**

In their Motion, the Defendants present issues concerning BMGI's repayment of debt to DSI and express concern that Plaintiff's unrestricted collateral interest in BMGI stock would permit Plaintiff to wreak havoc to BMGI by destroying its S-Corp status, by eliminating Silverstein's ability to contribute to the ESOP, to patently violate securities law, and eliminating Silverstein's right of first refusal.  These issues were not specifically raised prior to Defendants' filing their Motion.  Were these actually the subject of ongoing negotiations between the parties, Defendants would have learned that Plaintiff does not object to those provisions and there is no disagreement between the parties.  As postured, Defendants' only insisted upon binding Plaintiff to a shareholders agreement that had not been provided to Plaintiff.

These issues are not fairly construed as disagreements or obstructions requiring enforcement of the settlement, and represent a key issue in the Defendants failure to

9

adequately confer before filing the Motion.

## **CONCLUSION**

The Term Sheet is a fair deal for the Plaintiff. It induced Plaintiff to represent in open Court that she was satisfied with the deal represented by the Term Sheet and confident that an ultimate deal would be reached in the short term. Further, it induced Plaintiff to vacate the trial, eliminating the pressure upon Defendants to agree to a reasonable resolution.

The draft settlement documents, Plaintiff's substantive redline additions having been rejected by the Defendants, are a <u>horrible</u> deal for Plaintiff. The restrictions on Plaintiff's collateral, recovery for breaches and default, and limitations on even plain items from the Term Sheet, are expanded restrictions from the original deal that the Plaintiff settled her fraud claim to terminate.

That the Plaintiff is seeking to escape the Term Sheet by negotiating the terms of the settlement documents is not a fair or accurate representation of the negotiations. That the Defendants are using undersigned counsel's increasingly desperate attempts to keep the parties at the settlement table is also unfair. Plaintiff submits that the provisions of the Term Sheet were agreed-to by Defendants in haste because of the pending trial; but with the Term Sheet signed and the pressures of a trial removed, the Defendants are not satisfied with the deal reached in the Term Sheet and are using the "failed negotiations" (which were discontinued by the Defendants midstream) as a 'get out of jail free' card to avoid rights and remedies granted to the Plaintiff by mutual agreement in the Term Sheet. This is unfairly to the clear disadvantage of Plaintiff, who

continues to go unpaid.[3]

As set forth in the foregoing, the impediments to this matter settling relate to the language insisted-upon by the Defendants that are on the one hand, contrary to the Term Sheet and on the other hand, non-negotiable in the minds of the Defendants.

The Plaintiff therefore moves for enforcement of the Term Sheet to enforce the settlement reached by the parties as evidenced by the plain language of the Term Sheet, specifically relating to David Silverstein's personal liability, Plaintiff's collateral interest in BMGI Stock, and DSI's position as an obligor on the New Note. This matter should not be re-scheduled for trial based on the Defendants' contention that the Term Sheet does not represent an enforceable agreement between the parties. By its plain language it does.

    *s/ Thomas L. DeVine, Jr.*
Thomas L. DeVine, Jr., Esq.
Sweetbaum Sands Anderson, P.C.
1125 Seventeenth Street, Suite 2100
Denver, CO 80202
tdevine@SweetbaumSands.com

---

[3] The first payment date in the Term Sheet is long-since passed, the Defendants contending that the May 21 $150,000 payment was merely a "placeholder" with no real intention of actually being paid on the date identified in the Term Sheet.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of June 2012, a true and correct copy of the foregoing **RESPONSE TO MOTION TO ENFORCE SETTLEMENT, OR IN THE ALTERNATIVE, TO SET CASE FOR TRIAL AND COUNTERMOTION TO ENFORCE SETTLEMENT** was served electronically, to:

Timothy R. Beyer
Amy L. Benson
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202

*s/Thomas L. DeVine, Jr.*
_____
Thomas L. DeVine, Jr.